# IN THE UNITED STATES DISTRICT COURT
## FOR THE  MIDDLE DISTRICT OF NORTH CAROLINA
### DURHAM DIVISION
### CIVIL ACTION NO: _____

|  |  |  |
|---|---|---|
| **NORTH CAROLINA MUTUAL LIFE INSURANCE COMPANY, a North Carolina corporation,** | ) ) ) ) ) ) |  |
| **Plaintiff,** | ) ) |  |
| **v.** | ) ) | **COMPLAINT** |
| **STAMFORD BROOK CAPITAL, LLC, a Delaware limited liability company,** | ) ) ) ) ) |  |
| SERVE: The Company Services Corporation 2711 Centerville Rd. Suite 400 Wilmington, DE 19808 | ) ) ) ) ) |  |
| **FOREFRONT CAPITAL HOLDINGS, LLC, a Delaware limited liability company,** | ) ) ) ) |  |
| SERVE: The Company Services Corporation 2711 Centerville Rd. Suite 400 Wilmington, DE 19808 | ) ) ) ) ) |  |
| **FOREFRONT CAPITAL, LLC, a Delaware limited liability company,** | ) ) ) |  |
| SERVE: The Corporation Trust Company Corporation Trust Center 1209 Orange Street Wilmington, DE 19801 | ) ) ) ) ) ) |  |

|  | ) |
| --- | --- |
| **PORT ROYAL REASSURANCE** | ) |
| **COMPANY SPC, LTD., a Cayman** | ) |
| **Island corporation,** | ) |
|  | ) |
| SERVE: | ) |
| Steven W. Fickes, President | ) |
| 8600 Country Club Drive | ) |
| Bethesda, Maryland 20816 | ) |
|  | ) |
| **SUMMIT TRUST COMPANY, a** | ) |
| **Nevada corporation,** | ) |
|  | ) |
| SERVE: | ) |
| Kevin C. Brown | ) |
| 8861 W. Sahara Ave., Suite 215 | ) |
| Las Vegas, NV 89117, | ) |
|  | ) |
| **BRADLEY REIFLER**, | ) |
|  | ) |
| SERVE: | ) |
| 123 Fraleigh Hill Road | ) |
| a/k/a Shooter Hill Lane | ) |
| Millbrook, NY 12545-4951 | ) |
|  | ) |
| **MICHAEL FLATLEY**, | ) |
|  | ) |
| SERVE: | ) |
| 50 Sherman St. | |
| Lynbrook, NY 11563 | |

**Defendants.**

## COMPLAINT

North Carolina Mutual Life Insurance Company ("North Carolina Mutual"), by counsel, sets forth the following for its Complaint against Defendants Stamford Brook Capital, LLC ("Stamford Brook"), Forefront Capital Holdings, LLC ("Forefront Capital

2

Holdings"), Forefront Capital, LLC ("Forefront Capital," which along with Stamford Brook and Forefront Capital Holdings are collectively, the "Forefront Entities"), Port Royal Reassurance Company SPC, Ltd. ("Port Royal"), Summit Trust Company ("Summit"), Bradley Reifler ("Reifler"), and Michael Flatley ("Flatley") (collectively, "Defendants").

## INTRODUCTION

On behalf of its policyholders, North Carolina Mutual entrusted Defendants with investing and holding a significant amount of its assets. Defendants have violated North Carolina Mutual's trust, failing to invest and hold North Carolina Mutual's assets in compliance with North Carolina law and the applicable agreements. Moreover, Defendants have provided North Carolina Mutual with conflicting information and documents regarding North Carolina Mutual's investments. Notwithstanding the conflicting information that it has received, one thing is clear—the Forefront Entities, Reifler, and Flatley engaged in a fraudulent scheme to invest North Carolina Mutual's assets in investments designed to benefit the Forefront Entities and themselves, individually. Accordingly, for the reasons set forth below, North Carolina Mutual respectfully requests that the Court order an accounting of its assets from Defendants, that it find certain defendants liable for breach of contract, and that it award North Carolina Mutual damages that is has suffered as a result of Defendants' actions.

3

## PARTIES

1.     Plaintiff, North Carolina Mutual, is a corporation organized and existing under the laws of North Carolina, with its principal office and place of business in Durham, North Carolina.

2.     Upon information and belief, Defendant Stamford Brook is a limited liability company organized and existing under the laws of Delaware with its principal office and place of business in New York, NY.

3.     Upon information and belief, Defendant Forefront Capital Holdings is a limited liability company organized and existing under the laws of Delaware with its principal office and place of business in New York, NY.

4.     Upon information and belief, Defendant Forefront Capital is a limited liability company organized and existing under the laws of Delaware with its principal office and place of business in New York, NY.

5.     Upon information and belief, Defendant Port Royal is a corporation organized and existing under the laws of the Cayman Islands with its principal office and place of business in the Cayman Islands.

6.     Upon information and belief, Defendant Summit is a corporation organized and existing under the laws of Nevada with its principal office and place of business in Las Vegas, Nevada.

7.     Upon information and belief, Defendant Reifler is an individual who is a resident of New York.

8. Upon information and belief, Defendant Flatley is an individual who is a resident of New York.

## JURISDICTIONAL STATEMENT AND VENUE

9. Jurisdiction is proper pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship of the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper in the Middle District of North Carolina pursuant to 28 U.S.C. § 1391(b)(2) because it is a judicial district in which a substantial part of the events giving rise to the claim occurred.

## FACTUAL ALLEGATIONS

**A. North Carolina Mutual's Reinsurance.**

11. North Carolina Mutual is an insurance company that was founded in 1898 and serves the insurance needs of both individuals and groups.

12. North Carolina Mutual services over 200,000 individual policyholders and there are over 250,000 people covered under its group policies nationwide.

13. In or around December 2003, North Carolina Mutual and non-party Max Re Ltd., which subsequently changed its name to, or was purchased by, Markel Bermuda, Limited ("Markel"), entered into a Co-Insurance Agreement wherein North Carolina Mutual agreed to cede to Markel liabilities and obligations with respect to certain of North Carolina Mutual's insurance policies.

5

14.     Port Royal and North Carolina Mutual subsequently entered into an indemnity reinsurance agreement, through a Novation Agreement effective April 24, 2015 (the "Novation Agreement"), pursuant to which Port Royal accepted and reinsured on a one-hundred percent (100%) coinsurance basis certain risks, liabilities, and obligations of North Carolina Mutual under certain of its life-insurance policies and annuity contracts.

15.     The Novation Agreement allowed Markel to keep $5,000,000 as a ceding commission (the "Novation Commission") from the Novation Premium.

16.     Pursuant to, and as required by the Novation Agreement, on April 23, 2015, North Carolina Mutual, Port Royal, and Summit executed a Reinsurance Trust Agreement (the "Trust Agreement").

17.     A true and accurate copy of the Trust Agreement is attached hereto as **Exhibit A**.

18.     Pursuant to the Trust Agreement and the Novation Agreement, Markel—on behalf of Port Royal as the Grantor under the Trust Agreement—deposited a significant amount of cash (the "Trust Assets") into a trust account (the "Trust Account").

19.     Pursuant to the Novation Agreement, Port Royal was required to make up the shortfall between the Novation Premium and the required reserves—which was equal to the $5,000,000 Novation Commission kept by Markel.

20.     Forefront Capital Holdings was to fund the $5,000,000 shortfall on behalf of Port Royal into the Trust Assets.

6

21.     Pursuant to the Trust Agreement, Summit serves as the Trust Account's trustee.

22.     North Carolina Mutual is the Trust Account's beneficiary.

23.     The Trust Agreement permits Port Royal to appoint an "Investment Manager" to manage the investment of the Trust Assets.

24.     Section 4(d) of the Trust Agreement requires that the Investment Manager manage the Trust Assets "subject to the terms and conditions of" the Trust Agreement.

25.     Section 4(b) of the Trust Agreement requires that the Trustee invest the Trust Assets only in Eligible Assets.  In order to be an Eligible Asset, the "Eligible Investment" must:

> i.   meet all of the requirements of North Carolina General Statute § 58-7-173, and
>
> ii.  be limited to income producing securities, with
>
> iii. appropriate duration or maturity dates after consideration of the duration of the reinsured liabilities, and
>
> iv.  have an average rating of a 2 or better rating based upon the ratings of the NAIC's Security Valuation Office ("SVO"), or equivalent rating thereof, and
>
> v.   [be] subject to certain concentration limitations prescribed by the North Carolina Insurance Code, [and]
>
> vi.  Meet[] the level of collateral and term limitations as provided by North Carolina General Statute § 58-7-173 section (15).

7

*See* Exhibit C to the Trust Agreement.

26.     Compliance with these investment requirements, and in particular with North Carolina General Statute § 58-7-173, is critical for anyone or any entity investing North Carolina Mutual's assets.

27.     As stated in Section 4(d) of the Trust Agreement, Port Royal appointed Stamford Brook as Investment Manager of the Trust Assets, of which North Carolina Mutual is the beneficiary.

28.     Pursuant to Section 4(d) of the Trust Agreement, and for the direct benefit of North Carolina Mutual, Port Royal and Stamford Brook entered into an Investment Advisory Agreement.

29.     A true and accurate copy of the Investment Advisory Agreement is attached hereto as **Exhibit B**.

30.     The Investment Advisory Agreement was signed by David Wasitowski, as Forefront Capital Holdings' CFO on behalf of Stamford Brook, and Steven W. Fickes as President of Port Royal.

31.     North Carolina Mutual subsequently determined that sometime after April 24, 2015, and unbeknownst to North Carolina Mutual, representatives of Forefront Capital Holdings provided an altered and/or forged copy of the same Investment Advisory Agreement to Summit (the "Fraudulent Investment Advisory Agreement").  A true and accurate copy of the Fraudulent Investment Advisory Agreement is attached hereto as **Exhibit C**.

8

32.     The alterations made to the Fraudulent Investment Advisory Agreement were that Reifler signed the agreement for Stamford Brook; and Flatley, an employee of Forefront Capital Holdings, signed for Port Royal.

33.     Flatley has never held any position with Port Royal, in any capacity.

34.     North Carolina Mutual has only become aware of the Fraudulent Investment Advisory Agreement in the last few weeks.

35.     In addition, Forefront Capital Holdings submitted to Summit and/or the Trust Account's administrator, at the time Gemini Fund Services, LLC, a "List of Authorized Signers" for the Port Royal North Carolina Mutual Reassurance Trust Custodial Accounts, which included Reifler and Flatley as authorized signers.

36.     A true and accurate copy of the List of Authorized Signers is attached hereto as **Exhibit D**.

37.     Reifler and Flatley were never authorized as signatories of the Trust Account.

38.     Port Royal and Stamford Brook entered into the Investment Advisory Agreement for the direct benefit of North Carolina Mutual, as evidenced by, *inter alia*, the fact that North Carolina Mutual was the sole beneficiary of the assets to be managed by Stamford Brook, of which both Port Royal and Stamford Brook were aware.

39.     The Investment Advisory Agreement was drafted, at least in part, by Stamford Brook.

9

40.     Upon information and belief, Stamford Brook is an affiliate and/or subsidiary of Forefront Capital Holdings.

41.     In an April 24, 2015 letter from Forefront Capital Holdings to North Carolina Mutual, Reifler represented that he is Stamford Brook's sole owner.  A true and accurate copy of the April 24, 2015 letter is attached hereto as **Exhibit E**.

42.     However, on or about July 13, 2016, in a letter to North Carolina Mutual that Reifler signed as "Founder & Trustee" of Forefront Capital, Reifler represented that Forefront Capital, and not Forefront Capital Holdings, was the "investment manager for the [Trust Account]."  A true and accurate copy of the July 13, 2016 letter is attached hereto as **Exhibit F**.

**B. The Forefront Entities, Reifler, and Flatley Invest North Carolina Mutual's Cash in Investments Designed to Benefit the Forefront Entities and Themselves Individually, Which Investments Fail to Satisfy the Requirements of North Carolina General Statute § 58-7-173.**

43.     Sometime after April 24, 2015, and unbeknownst to North Carolina Mutual, representatives of the Forefront Entities, presumably relying on the Fraudulent Investment Advisory Agreement, invested virtually all of North Carolina Mutual's cash in assets that were either directly or indirectly linked to the Forefront Entities.

44.     Sections 2 and 4 of the Trust Agreement required that the Trustee receive prior written approval from North Carolina Mutual before permitting the substitution of any Asset from the Trust Account.

45.     North Carolina Mutual never provided such consent to the Trustee. Nevertheless, the Forefront Entities purport to have invested North Carolina Mutual's assets as follows:

A. A portion of the assets as "seed funding" for the Forefront Income Trust, a "closed end investment company," which the Forefront Entities describe as "a speculative" and "illiquid" investment that "invest[s] substantially all of its assets in a portfolio of unrated or below-investment-grade-rated (commonly referred to as "junk" or high yield/high risk) loans and debt instruments;"

B. A portion of the assets in the form of a promissory note made by Forefront Partners, LLC, as borrower, which Reifler executed on behalf of Forefront Partners, LLC.  Thus, North Carolina Mutual's investment advisor made the decision to loan itself $10,000,000.00.  The promissory note was due and payable in full on January 25, 2016; however, it appears that Reifler attempted to unilaterally extended the maturity date of the note to January 25, 2017 in the agreement attached hereto as **Exhibit G**.

C. A portion of the assets in the form of a promissory made by Spring Bridge 182 LLC.  The address provided for Spring Bridge 182 LLC is c/o of Waterbridge Capital ("Waterbridge") and is *identical* to the Forefront Entities' address.  Joel Schreiber ("Schreiber") executed the note on Spring Bridge 182 LLC's behalf;

11

D. A portion of the assets in the form of a promissory note made by Waterbridge and Schreiber.  Again, the address provided for Waterbridge and Schreiber is identical to the Forefront Entities' address;

E. A portion of the assets in the form of a promissory note made by Forefront Talking Capital Investment, LLC.  Reifler executed the promissory note on behalf of the Forefront entity.  Thus, it appears that North Carolina Mutual's investment advisor once again chose to loan itself North Carolina Mutual's assets;

F. A portion of the assets in the form of a promissory note made by Syracuse Property Holdings, LLC, which once again lists its address as "c/o" the same office address as the Forefront Entities;

G.  A portion of the assets as another promissory note to Spring Bridge 182 LLC; and,

H. A portion of the assets in the form of yet another promissory note made by Forefront Partners, LLC.  Reifler again executed the note on Forefront Partners' behalf and the Forefront Entities appear to have once again made the decision to loan themselves money.

46.     The above investments in which the Forefront Entities invested North Carolina Mutual's cash do not comply with the requirements of North Carolina General Statute § 58-7-173.

**C. In Addition to Investing North Carolina Mutual's Money in Self-Serving Investments, Forefront Also Paid Itself a Higher Fee Than That to Which it was Entitled Under the Terms of the Forefront Income Trust.**

47.    Not only were the Trust Assets invested improperly, North Carolina Mutual recently received correspondence from Summit dated April 30, 2015, in which Forefront Income Trust improperly increased the amount that it was charging the Trust Account for its services.  A true and accurate copy of the correspondence is attached as **Exhibit H**. Notably, the April 30, 2015 correspondence was drafted on Forefront letterhead.

48.    In the April 30, 2015 correspondence, Meade Rudasill, who is employed by Summit, executed a document on behalf of the Port Royal North Carolina Mutual Reassurance Trust in which he agreed to waive the Trust Account's right to reduce the sales load for investments in the Forefront Income Trust in excess of $5 million from 3.0% to 1.5%.

49.    North Carolina Mutual did not authorize Mr. Rudasill to waive such a reduction, nor does such a reduction benefit the Trust Account in any way.

50.    Mr. Rudasill's decision to increase the amount that the Trust Account was paying its investment advisor constituted either negligence, willful misconduct or a lack of good faith.

**D. North Carolina Mutual Has Received Conflicting Information From Summit, Port Royal, and the Forefront Entities Regarding How its Assets are Invested.**

51.    In or about August 2016, North Carolina Mutual received certain information and documents from Summit regarding the Trust Assets, including the Fraudulent Investment Advisory Agreement.

13

52.     During that same time period, North Carolina Mutual also requested from and received documents from Port Royal regarding the Trust Assets.

53.     Subsequently, in September 2016, North Carolina Mutual received from counsel for the Forefront Entities certain information and documents regarding the Trust Assets.

54.     The information and documents regarding the Trust Assets that were received from Summit, Port Royal and the Forefront Entities are not the same, as evidenced by two different versions of the Investment Advisory Agreement.  This is further compounded by the fact that the Forefront Entities' and Port Royal's list of where North Carolina Mutual's assets are invested are different.

55.     For instance, the Port Royal documents purport to show that certain of the Trust Assets became past due and immediately payable to the Trust Account, including but not limited to the following (the "Past Due Trust Assets"):

A.     Promissory Note #002 dated July 31, 2015 between Forefront Talking Capital Investment, LLC/Rudare Communications, SL-Tata Communications and Port Royal North Carolina Mutual Reassurance Trust executed on behalf of the borrower by Reifler;

B.     Promissory Note #002A dated July 31, 2015 between Forefront Talking Capital Investment, LLC/Ikarim Business Services LTD-Verizon UK and Port Royal North Carolina Mutual Reassurance Trust executed on behalf of the borrower by Reifler; and,

14

C.     A promissory note dated August 18, 2015 between Coconut Beach, LLC and Port Royal North Carolina Mutual Reassurance Trust.

56.     To the extent that these assets are Trust Assets, they were not paid into the Trust Account.  Moreover, they do not match the list of investments that were provided by the Forefront Entities.

57.     Documents received from Summit show that one of the Trust Assets, the "Forefront Income Trust" paid a dividend to the Trust Account in the amount of $495,048.73 on December 31, 2015.

58.     Neither Summit, Port Royal, nor North Carolina Mutual ever received the dividend.

59.     Upon information and belief, the wire instructions for the dividend were provided by Reifler.

60.     The account into which dividend was paid was a J.P Morgan/Chase account in the name of "Port Royal - NCM, LLC," potentially related in some manner to a promissory note.

61.      Neither Port Royal nor North Carolina Mutual has any association with any entity named Port Royal - NCM, LLC nor do they have any accounts at J. P. Morgan/Chase.  However, upon information and belief, the Forefront Entities have a relationship with J.P. Morgan/Chase.

62.      The Delaware Secretary of State website indicates that Port Royal - NCM, LLC was established on February 25, 2015.

15

63.     Upon information and belief, Reifler and/or Flatley created Port Royal - NCM, LLC.

64.     Upon information and belief, the $495,048.73 dividend to which North Carolina Mutual was entitled was paid to an account controlled by the Forefront Entities, Reifler or Flatley.

65.     On or about August 26, 2016, North Carolina Mutual contacted Stamford Brook and Forefront Capital Holdings and requested, *inter alia*, confirmation that the Trust Assets were appropriately invested pursuant to the Trust Agreement and Investment Advisory Agreement.

66.     On or about September 1, 2016, counsel for Forefront Capital Holdings responded by letter to North Carolina Mutual's August 26, 2016 letter.

67.     A true and accurate copy of Forefront Capital Holdings' purported investments as of September 1, 2016 is attached hereto as **Exhibit I**.

68.     In its September 1, 2016 letter, Forefront Capital Holdings stated that although "Stamford Brook was formed in Delaware … no operating agreement was ever entered into and no tax ID was even applied for."  Forefront Capital Holdings further represented that Stamford Brook "is and always has been a dormant company that never operated in any capacity."

69.     Notably, however, Forefront Capital Holdings did not state that it had not invested, or was not investing, the Trust Assets on behalf of North Carolina Mutual.

16

70.     Upon information and belief, approximately 94% of the Forefront Income Trust consists of Trust Assets.

71.     On or about September 9, 2016, Summit sent a letter to the North Carolina Department of Insurance. The September 9, 2016 letter included, *inter alia*, a purported statement of the Trust Assets from August 16, 2016 to September 8, 2016.  A true and accurate copy of Summit's letter is attached hereto as **Exhibit J**.

72.     On or about September 12, 2016, North Carolina Mutual received from counsel for Forefront Capital Holdings, information regarding the Trust Assets as of June 28, 2016.

73.     The Trust Assets that Summit identified on September 9, 2016 through the purported Trust Account statements are not consistent with, and show different assets than, those assets identified as Trust Assets by Forefront Capital Holdings on September 12, 2016.

## COUNT I
### Accounting Pursuant to N.C. Gen. Stat. § 36C–8–813 and § 36C-2-201
### (Against Summit and Port Royal)

74.     Plaintiff incorporates by reference the allegations contained in paragraphs 1-73 of the Complaint, as if fully set forth herein.

75.     The Trust Agreement constitutes a valid, bargained-for contract between Port Royal, Summit, and North Carolina Mutual.

76.     Pursuant to N.C. Gen. Stat. § 36C-2-201, "[t]he court may intervene in the administration of a trust to the extent its jurisdiction is invoked by a party or as provided

17

by law," including "any matter involving the trust's administration, including a request for instructions and an action to declare rights."

77.     Pursuant to N.C. Gen. Stat. § 36C–1–105, the N.C. Trust Code recognizes that a trustee has a mandatory duty to act in good faith and that the terms of a trust cannot prevail over the power of the court to act in the interests of justice.

78.     The N.C. Trust Code also provides that a trustee generally has a duty to account for the trust property to the beneficiaries.  N.C. Gen. Stat. § 36C–8–813.

79.     Despite requests to do so, Summit has failed and refused to fully account for the Trust Assets to North Carolina Mutual, as beneficiary of the Trust Assets.

80.     North Carolina Mutual is entitled to such information pursuant to Sections 7(f) and 20 of the Trust Agreement.

81.     Section 4(a) of the Trust Agreement requires Summit to "surrender for payment all maturing [Trust] Assets and all [Trust] Assets called for redemption and deposit the principal amount of the proceeds of any such payment to the Trust Account."

82.     Summit has also failed to provide sufficient documents and/or information to North Carolina Mutual to confirm whether all applicable Trust Assets have been surrendered for payment and/or redeemed and deposited in the Trust Account, including but not limited to the Past Due Trust Assets.

83.     Pursuant to Section I(C) of the Trust Agreement, Port Royal represented, warranted, and covenanted that the Trust Assets would be negotiable and would consist only of Eligible Assets.

18

84.     Additionally, Section 4(f) of the Trust Agreement requires that "[a]ll investments and substitutions of securities [for the Trust Assets] … shall be in compliance with the applicable provisions of the North Carolina Insurance Code, as set forth in the definition of 'Eligible Assets' in Section 11 of the [Trust] Agreement."

85.     To date, Port Royal has failed to provide sufficient information to North Carolina Mutual to determine whether the Trust Assets are negotiable and consist only of Eligible Assets, pursuant to Section 4(f) and Section 11 of the Trust Agreement.

86.     Accordingly, North Carolina Mutual requests that the Court require an accounting of all Trust Assets from Summit and/or Port Royal sufficient to determine the current value of the Trust Assets; in which investments the Trust Assets are invested; whether such investments are both Eligible Assets and negotiable; and whether all applicable Trust Assets have been surrendered for payment and/or redeemed and deposited in the Trust Account, including but not limited to the Past Due Trust Assets.

87.     Pursuant to N.C. Gen. Stat. § 36C-10-1004, North Carolina Mutual requests its attorneys' fees, costs, and expenses incurred in bringing this action.

**COUNT II**
**Breach of Contract (Trust Agreement)**
**(Against Port Royal and Summit)**

88.     Plaintiff incorporates by reference the allegations contained in paragraphs 1-87 of the Complaint, as if fully set forth herein.

89.     The Trust Agreement constitutes a valid, bargained-for contract between Port Royal, Summit, and North Carolina Mutual.

19

90.     North Carolina Mutual fulfilled all of its obligations under the Trust Agreement.

91.     Pursuant to Section I(C) of the Trust Agreement, Port Royal represented, warranted, and covenanted that the Trust Assets would be negotiable and would consist only of Eligible Assets.

92.     Port Royal breached the Trust Agreement by permitting Trust Assets that are neither negotiable nor Eligible Assets.

93.     Section 4(f) of the Trust Agreement requires that "[a]ll investments and substitutions of securities [for the Trust Assets] … shall be in compliance with the applicable provisions of the North Carolina Insurance Code, as set forth in the definition of 'Eligible Assets' in Section 11 of the [Trust] Agreement."

94.     Port Royal breached the Trust Agreement by permitting the investment of the Trust Assets in securities that were in violation of Section 4(f) and Section 11 of the Trust Agreement.

95.     Section 2(d) of the Trust Agreement provides that "in the absence of the delivery of a Withdrawal Notice to the Trustee by the Beneficiary, the Trustee shall allow no substitution or withdrawal of any Asset from the Trust Account."

96.     Likewise, Section 4(c) of the Trust Agreement requires that Summit receive prior written approval of North Carolina Mutual prior to substituting Eligible Assets for other Eligible Assets held in the Trust Account.

Case 1:16-cv-01174-LCB-JEP   Document 1   Filed 09/23/16   Page 20 of 33

97.     Summit breached the Trust Agreement by failing to obtain North Carolina Mutual's written consent prior to permitting the substitution of North Carolina Mutual's cash for other assets.

98.     Section 4(a) of the Trust Agreement requires Summit to "surrender for payment all maturing [Trust] Assets and all [Trust] Assets called for redemption and deposit the principal amount of the proceeds of any such payment to the Trust Account."

99.     Summit Breached the Trust Agreement by failing to surrender for payment and/or redeem and deposit the Past Due Trust Assets.

100.    Section 4(b) of the Trust Agreement states that "the Trustee [Summit] shall invest [Trust] Assets in the Trust Account only in Eligible Assets."

101.    Summit breached the Trust Agreement by permitting the investment of the Trust Assets in non-Eligible Assets.

102.    Section 7(b) of the Trust Agreement states that "[b]efore accepting any Asset for deposit into the Trust Account, the Trustee shall determine that such Asset is in such form that the Beneficiary whenever necessary can … negotiate such Asset…"

103.    Summit breached the Trust Agreement by accepting for deposit into the Trust Account certain assets that are non-negotiable.

104.    Section 7(e) requires Summit to provide North Carolina Mutual with "a statement of all [Trust] Assets in the Trust Account … at the end of each calendar quarter."

21

105.    Summit breached the Trust Agreement by failing to provide North Carolina Mutual with a quarterly statement of Trust Assets.

106.    All of Summit's breaches of the Trust Agreement were the result, in whole or in part, of Summit's negligence, willful misconduct or lack of good faith.

107.    As a direct, proximate, and foreseeable result of Port Royal's and Summit's breaches of the Trust Agreement, North Carolina Mutual has been damaged.

**COUNT III**
**Breach of Contract (Investment Advisory Agreement)**
**(<u>Against Stamford Brook</u>)**

108.    Plaintiff incorporates by reference the allegations contained in paragraphs 1-107 of the Complaint, as if fully set forth herein.

109.    The Investment Advisory Agreement is a valid, bargained-for contract between Port Royal and Stamford Brook.

110.    The Investment Advisory Agreement was entered into for the direct benefit of North Carolina Mutual, as the sole beneficiary of the Trust Agreement and Trust Assets.

111.    By entering into the Investment Advisory Agreement, Port Royal and Stamford Brook intended to directly benefit North Carolina Mutual.

112.    Section 1 of the Investment Advisory Agreement requires Stamford Brook to invest the Trust Assets subject to the guidelines set forth in Schedule B of the Investment Advisory Agreement.

22

113.    Schedule B of the Investment Advisory Agreement contains the same definition of Eligible Assets as the Trust Agreement.

114.    Stamford Brook breached the Investment Advisory Agreement by investing the Trust Assets in non-Eligible Assets, as defined by the Investment Advisory Agreement and Trust Agreement.

115.    Section 12 of the Investment Advisory Agreement requires Stamford Brook to act as a fiduciary of the Trust Assets and assume the duties, responsibilities, and obligations of a fiduciary operating under the prudent-man rule.

116.    Stamford Brook breached the Investment Advisory Agreement as it failed to act as a fiduciary of the Trust Assets and failed to operate under the prudent-man rule in regard to the Trust Assets by, *inter alia*, investing the Trust Assets in non-Eligible Assets and/or assets that were otherwise inappropriate, speculative, and/or non-negotiable.

117.    Stamford Brook also failed to act as a fiduciary of the Trust Assets and failed to operate under the prudent-man rule in regard to the Trust Assets by investing the Trust Assets in loans made to affiliates of Forefront, or that were otherwise intended to benefit the Forefront Entities or Reifler and Flatley, individually.

118.    Stamford Brook acted in bad faith by knowingly investing the Trust Assets into investments that violated the Trust Agreement, the Investment Advisory Agreement, and/or North Carolina Mutual's investment guidelines.

119.    As a direct, proximate, and foreseeable result of Stamford Brook breach of the Investment Advisory Agreement, North Carolina Mutual has been damaged.

## COUNT IV
### Breach of Fiduciary Duty
### (Against the Forefront Entities, Reifler, and Flatley)

120.    Plaintiff incorporates by reference the allegations contained in paragraphs 1-119 of the Complaint, as if fully set forth herein.

121.    The Forefront Entities, Reifler, and Flatley served as investment advisors for North Carolina Mutual's Trust Assets.

122.    As the investment advisors for North Carolina Mutual's Trust Assets the Forefront Entities, Reifler, and Flatley had a duty to act in the best interests of North Carolina Mutual, while subordinating their own interests to North Carolina Mutual's interests.

123.    As investment advisors to North Carolina Mutual—which the Forefront Entities, Reifler, and Flatley knew to be a mutual insurance company under North Carolina law—the Forefront Entities, Reifler, and Flatley had an obligation to invest the Trust Assets in Eligible Assets as that term is defined in the Trust Agreement, and consistent with North Carolina Trust Law;

124.    The Forefront Entities, Reifler, and Flatley breached the duties that they owed to North Carolina Mutual by investing the Trust Assets in non-Eligible Assets (as defined by the Trust Agreement) and/or assets that were not consistent with North

24

Carolina Trust Law, and were otherwise inappropriate, speculative, and/or non-negotiable.

125.    The Forefront Entities, Reifler, and Flatley also failed to act as a fiduciary of the Trust Assets and failed to operate under the prudent-man rule in regard to the Trust Assets by investing the Trust Assets in loans made to affiliates of Forefront, or that were otherwise intended to benefit the Forefront Entities or Reifler and Flatley, individually.

126.    The Forefront Entities, Reifler, and Flatley acted in bad faith by knowingly investing the Trust Assets into investments that violated the Trust Agreement, the Investment Advisory Agreement, North Carolina Trust Law, and/or North Carolina Mutual's investment guidelines.

127.    As a direct and proximate result of the Forefront Entities', Reifler's, and Flatley's breaches of fiduciary duty, North Carolina Mutual has been damaged in amount to be proven at trial.

## COUNT V
### Constructive Fraud (Against the Forefront Entities, Reifler, and Flatley)

128.    Plaintiff incorporates by reference the allegations contained in paragraphs 1-127 of the Complaint, as it fully set forth herein.

129.    The Forefront Entities, Reifler, and Flatley were in a relationship of trust and confidence in relation to North Carolina Mutual.

130.    The Forefront Entities, Reifler, and Flatley took advantage of their relationship of trust and confidence with North Carolina Mutual to invest North Carolina

25

Mutual's assets in investments that were noncompliant with North Carolina law and investments in which the Forefront Entities, as well as Reifler and Flatley, would benefit.

131.    As a result of the Forefront Entities', Reifler's and Flatley's actions the North Carolina Mutual has suffered damages in an amount to be proven at trial.

## COUNT VI
## Fraud (Against the Forefront Entities, Reifler, and Flatley)

132.    Plaintiff incorporates by reference the allegations contained in paragraphs 1-131 of the Complaint, as if fully set forth herein.

133.    In addition to executing the Investment Advisory Agreement, on numerous occasions, Reifler and Flatley stated that they understood the requirement that they invest the Trust Assets in negotiable and Eligible Assets.

134.    Reifler and Flatley failed to advise North Carolina Mutual that they, in fact, never intended to invest the Trust Assets in negotiable and Eligible Assets.

135.    Reifler and Flatley further failed to advise North Carolina Mutual that they had always intended on investing the Trust Assets in investments that would benefit the Forefront Entities, as well as Reifler and Flatley individually.

136.    These statements and omissions were reasonably calculated to deceive North Carolina Mutual, so that the Forefront Entities, Reifler, and Flatley could gain access to the capital in the Trust Account for their personal benefit.

137.    In making these statements and omissions, Reifler and Flatley intended to deceive North Carolina Mutual so that they could gain access to the capital in the Trust Account for their personal benefit, as well as for the benefit of the Forefront Entities.

26

138.    North Carolina Mutual relied on these representations and concealments to its detriment.

139.    Such reliance was reasonable under the circumstances.

140.    As a direct and proximate result of such reliance, North Carolina Mutual has been damaged.

141.    North Carolina Mutual is entitled to punitive damages pursuant to N.C. Gen. Stat. Ann. § 1D-15.

## COUNT VII
### (Unfair and Deceptive Trade Practices under N.C. Gen. Stat. § 75-1.1)
### (Against the Forefront Entities, Reifler, and Flatley)

142.    Plaintiff incorporates by reference the allegations contained in paragraphs 1- 141 of the Complaint, as if fully set forth herein.

143.    At all relevant times, the Forefront Entities, Reifler, and Flatley were engaged in commerce as defined by Chapter 75 of the North Carolina General Statutes.

144.    The wrongful conduct of the Forefront Entities, Reifler, and Flatley, as alleged above, constitutes unfair or deceptive acts or practices, which has injured and will continue to injure North Carolina Mutual and which has resulted and will continue to result in damages to North Carolina Mutual.

145.    As a direct and proximate result of this unfair and deceptive conduct, North Carolina Mutual has been damaged and is entitled to a judgment against the Forefront Entities, Reifler, and Flatley for actual damages, and those damages are to be

27

automatically trebled pursuant to N.C. Gen. Stat. § 75-16. North Carolina Mutual is also entitled to an award attorney fees pursuant to N.C. Gen. Stat. § 75-16.1.

**COUNT VIII**
**Piercing the Corporate Veil (Against Reifler and Flatley)**

146. Plaintiff incorporates by reference the allegations contained in paragraphs 1-145 of the Complaint, as if fully set forth herein.

147. In regard to Forefront's dealings with Port Royal and North Carolina Mutual, Reifler and Flatley (the "Individual Defendants") controlled and completely dominated the policies and business practices of the Forefront Entities, so that the Forefront Entities had at the time no separate mind, will, or existence of their own.

148. The Individual Defendants' actions were indistinguishable from those of the Forefront Entities.

149. The Individual Defendants exclusively controlled and completely dominated the Forefront Entities for the purpose of committing fraud, perpetrating the violation of statutory or other positive legal duties, and/or perpetrating dishonest and unjust acts in contravention of Plaintiff's legal rights, including but not limited to, the following:

    A.    Providing the Fraudulent Investment Advisory Agreement and unauthorized List of Authorized Signers for the Trust Account to Summit to gain access to the Trust Assets;

    B.    Creating a fraudulent limited liability company and opening an account under that entity's name at JP Morgan/Chase;

28

C.   Transferring a dividend in the amount of $495,048.73 to that illegally opened, fraudulent account;

D.   Defrauding North Carolina Mutual, as alleged above;

E.   Ignoring the corporate form by, *inter alia*, signing the Investment Advisory Agreement stating that Stamford Brook is the manager of the Trust Assets, despite knowledge that Stamford Brook was a "dormant entity," and subsequently representing that both Forefront Capital and Forefront Capital Holdings are the manager;

F.   Authorizing loans using the Trust Assets to other Forefront Entities or affiliates thereof;

G.   Inadequately capitalizing Stamford Brook; and

H.   Excessively fragmenting the Forefront entities into as many as ten separate legal entities.

150.   The above referenced control and breaches of duty were the proximate cause of the injury and unjust losses complained of in Counts I through VII.

## COUNT IX
## Civil Conspiracy (Against Reifler and Flatley)

151.   Plaintiff in corporates by reference the allegations contained in paragraphs 1-150 of the Complaint, as if fully set forth herein.

152.   As set forth above, Reifler and Flatley engaged in a common scheme and understanding, either express or implied, in which they abused their position of trust as

29

investment advisors to North Carolina Mutual by investing the Trust Assets for their own personal gain and to the detriment of North Carolina Mutual. Among other things, they provided the Fraudulent Investment Advisory Agreement and unauthorized List of Authorized Signers for the Trust Account to Summit to gain access to the Trust Assets; created a fraudulent limited liability company and opened an account under that entity's name at JP Morgan/Chase; and, transferred a dividend in the amount of $495,048.73 to that illegally opened, fraudulent account. Moreover, Reifler and Flatley expressly told North Carolina Mutual that they would invest the Trust Assets in Eligible Assets when, in fact, they never intended to do so, and fully intended to invest the Trust Assets into investments through which Reifler and Flatley stood to benefit personally.

153.   Reifler and Flatley have an independent personal financial stake in the object of the conspiracy, in that—as alleged herein—Reifler and Flatley invested the Trust Assets into investments through which Reifler and Flatley stood to benefit personally.

154.   As a direct and proximate result of Reifler's and Flatley's civil conspiracy, North Carolina Mutual has been damaged, and is entitled to compensatory and punitive damages.

## COUNT X
## Injunctive Relief

155.   Plaintiff incorporates by reference the allegations contained in paragraphs 1-154 of the Complaint, as if fully set forth herein.

30

156.    By virtue of the foregoing, and as stated in North Carolina Mutual's Motion for Preliminary Injunction and Memorandum in Support thereof, filed simultaneously herewith, North Carolina Mutual has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against Defendants.

157.    Unless Defendants are preliminarily enjoined, North Carolina Mutual will be irreparably harmed.

158.    North Carolina Mutual has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, North Carolina Mutual Life Insurance Company prays that this Honorable Court:

A.  Enter judgment for North Carolina Mutual on its causes of action against Summit and Port Royal for an accounting pursuant to N.C. Gen. Stat §§ 36C-8-813 and 36C-2-201;

B.  Enter judgment for North Carolina Mutual on its cause of action against Port Royal and Summit for breach of contract and an award of actual damages in an amount to be proven at trial;

C.  Enter judgment for North Carolina Mutual on its cause of against for breach of contract against Stamford Brook and award the injunctive relief requested in Count X;

D.  Enter judgment for North Carolina Mutual on its cause of action for breach

31

of fiduciary duty against the Forefront Entities, Reifler, and Flatley and an award of actual damages in an amount to be proven at trial;

E. Enter judgment for North Carolina Mutual on its cause of action for constructive fraud against the Forefront Entities, Reifler, and Flatley in an amount to be proven at trial;

F. Enter judgment for North Carolina Mutual on its cause of action for fraud against the Forefront Entities, Reifler, and Flatley in an amount to be proven at trial, including punitive damages and attorney's fees;

G. Enter judgment for North Carolina Mutual on its cause of action for violations of N.C. Gen. Stat. 75-16 against the Forefront Entities, Reifler, and Flatley, and an award of actual, statutory, and treble damages in an amount to be proven at trial.

H. Enter judgment for North Carolina Mutual on its cause of action for piercing the corporate veil against Reifler and Flatley and an award of actual and punitive damages in an amount to be proven at trial;

I. Enter judgment for North Carolina Mutual on its cause of action for civil conspiracy against Reifler and Flatley and an award of actual and punitive damages in an amount to be proven at trial;

J. Grant injunctive relief in favor of North Carolina Mutual as set forth in Count X, above;

K. Award North Carolina Mutual its attorney's fees under N.C. Gen. Stat. §

75-16.1 and/or § 36C-10-1004;

L.  Award North Carolina Mutual pre- and post-judgment interest on each of its causes of action in which it recovers damages; and,

M. Award North Carolina Mutual the costs incurred in bringing this action.

N.  Grant such other and further relief as this Court deems just and proper.


This the 23rd day of September, 2016.


NORTH CAROLINA MUTUAL LIFE
INSURANCE COMPANY,

By: _____*/s/ M. Keith Kapp*_____
   M. Keith Kapp
   N.C. Bar No. 8850
   Aaron G. Spencer
   N.C. State Bar No. 26762
   Post Office Box 1000
   Raleigh, North Carolina 27602
   Telephone:  (919) 981-4000
   Facsimile:  (919) 981-4300
   kkapp@williamsmullen.com
   agspencer@williamsmullen.com
    *Attorneys for Plaintiff*