REINSURANCE TRUST AGREEMENT

THIS REINSURANCE TRUST AGREEMENT, dated as of April 23, 2015 (the "Agreement"), is entered into by and among PORT ROYAL REASSURANCE COMPANY SPC, LIMITED, a Cayman Island corporation (the "Grantor"), NORTH CAROLINA MUTUAL LIFE INSURANCE COMPANY, domiciled in North Carolina (together with any successor thereof by operation of law, including, without limitation, any liquidator, rehabilitator, receiver or conservator, the "Beneficiary"), and SUMMIT TRUST COMPANY, an Illinois trust company (the "Trustee") (the Grantor, the Beneficiary and the Trustee are hereinafter each sometimes referred to individually as a "Party" and collectively as the "Parties").

WITNESSETH:

WHEREAS, Port Royal Reassurance Company SPC, Limited is a Cayman Island reinsurer ("Reinsurer") and has entered into an indemnity reinsurance agreement with the Beneficiary, through a Novation Agreement effective April 24, 2015 (the "Reinsurance Arrangement"), pursuant to which Grantor accepted and reinsured on a one hundred percent (100%) coinsurance basis certain risks, liabilities and obligations of the Beneficiary under certain of its life insurance policies and annuity contracts;

WHEREAS, the Beneficiary desires the Grantor to secure payments of all amounts at any time and from time to time owing by the Grantor to the Beneficiary under or in connection with the Reinsurance Arrangement for the purpose of obtaining credit for reinsurance to the Beneficiary;

WHEREAS, the Grantor desires to transfer to the Trustee on the date hereof and from time to time for deposit into a trust account (the "Trust Account") maintained with the Trustee qualified assets in order to secure payment of amounts owed by the Grantor to the Beneficiary under or in connection with the Reinsurance Arrangement;

WHEREAS, the Trustee has agreed to act as Trustee hereunder, and to hold such assets in trust in the Trust Account in accordance with North Carolina statutes; and

WHEREAS, this Agreement is made for the sole use and benefit of the Beneficiary and for the purpose of setting forth the duties and powers of the Trustee with respect to the Trust Account.

NOW, THEREFORE, for and in consideration of the promises and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties hereby agree as follows:

SECTION 1.          Deposit of Assets to the Trust Account.

(a)     The Grantor shall, on the date of this Agreement, establish the Trust Account with the Trustee, and the Trustee shall administer the Trust Account in its name as Trustee solely for the benefit of the Beneficiary. Legal title to the Assets (as defined below) held in the Trust Account will be vested in the name of the Trustee for the benefit of the Beneficiary, its assigns and successors in interest. The Assets held in the Trust Account shall be subject to withdrawal by the

CH1 5297115v.12

EXHIBIT

tabbies

A

Beneficiary or by the Grantor upon Trustee's receipt of the prior written consent of the Beneficiary, in each case, solely as provided herein. All Assets at all times shall be held and maintained by the Trustee in the Trust Account at the Trustee's office in the United States of America, except when depositories or sub-custodians of the Trustee hold such assets in the United States of America, as agents of the Trustee. All Assets shall be held by the Trustee separate and distinct from all other assets of or held by the Trustee and shall be continuously kept in a safe place.

(b)     The Grantor shall transfer, or cause to be transferred, to the Trustee, on the date of this Agreement for deposit to the Trust Account, all the cash and invested assets listed in Exhibit A hereto, and shall transfer, or cause to be transferred, to the Trustee, for deposit to the Trust Account, such other assets as the Grantor is required from time to time under the Reinsurance Arrangement or this Agreement or as it may otherwise from time to time desire (each such asset actually received by the Trustee and deposited by the Trustee into the Trust Account is herein referred to individually as an "Asset" and collectively as the "Assets"). The Assets shall consist only of Eligible Assets (as hereinafter defined). If, on any Measurement Date, the fair market value of the Assets held in the Trust Account on such date shall be less than the Statutory Reserves and Liabilities (as defined in the Assignment Agreement) as set forth in the quarterly settlement report delivered by the Beneficiary to the Grantor on such date (such amount, a "Reinsurance Trust Deficiency Amount"), the Reinsurer shall promptly, but in no event later than five (5) Business Days after such date, deposit additional Assets having a fair market value of not less than such Reinsurance Trust Deficiency Amount.

(c)     The Grantor hereby represents, warrants and covenants to the Trustee and the Beneficiary: (i) that the Grantor shall, with five (5) Business Days after its receipt thereof, provide to the Trustee a copy of the Grantor's Foreign Insurance Company Election Under Section 953(d) of the Internal Revenue Code of 1986, as amended, stamped approved by the Internal Revenue Service; (ii) that all Assets transferred by the Grantor to the Trustee for deposit into the Trust Account will be in such form that the Beneficiary whenever necessary may, and the Trustee upon direction by the Beneficiary will, negotiate any such Assets without consent or signature from or any notice to the Grantor or any other person in accordance with the terms of this Agreement; and (iii) that all Assets transferred by the Grantor to the Trustee for deposit into the Trust Account consist only of Eligible Assets on the dates of their respective transfers into the Trust Account.

(d)     The Trustee shall have no responsibility to value or determine whether the Assets in the Trust Account are sufficient to secure the Grantor's liabilities to the Beneficiary under the Reinsurance Arrangement. Further, the Trustee shall have no responsibility whatsoever to determine whether the Assets in the Trust Account constitute Eligible Assets or entitle either of the Grantor or the Beneficiary to favorable or unfavorable tax, accounting or other treatment, consideration, evaluation or calculation under any law, rule or regulation.

2

SECTION 2.        Withdrawal of Assets from the Trust Account.

(a)     Without any notice by the Trustee or the Beneficiary to the Grantor, the Beneficiary shall have the right, at any time and from time to time, to withdraw from the Trust Account, upon written notice from an Authorized Person of the Beneficiary to the Trustee (the "Withdrawal Notice"), such Assets as are specified in such Withdrawal Notice. The Withdrawal Notice may designate a third party (the "Designee") to whom Assets specified therein shall be delivered by the Trustee and may condition delivery of such Assets to such Designee upon the receipt and deposit into the Trust Account of other Assets specified in such Withdrawal Notice. The Beneficiary need present no statement, instruction or document in addition to a Withdrawal Notice in order to withdraw any Assets from the Trust Account; nor is said right of withdrawal or any other provision of this Agreement subject to any conditions, limitations or qualifications not contained in this Agreement.

(b)     Upon its receipt of a Withdrawal Notice from the Beneficiary, the Trustee shall immediately take any and all steps necessary to transfer absolutely and unequivocally all rights, titles and interests in the Assets specified in such Withdrawal Notice and shall deliver such Assets to or for the account of the Beneficiary or such Designee as specified in such Withdrawal Notice.

(c)     The Grantor may seek approval of the Beneficiary (which approval shall not be unreasonably withheld, conditioned or delayed) to withdraw from the Trust Account all or any part of the Assets and transfer such Assets to the Grantor; provided, that, after such withdrawal and transfer, the fair market value of the Assets remaining in the Trust Account is no less than 100% of the Statutory Reserves and Liabilities. Upon the Beneficiary's approval of such withdrawal request, the Beneficiary shall deliver a Withdrawal Notice to the Trustee which directs the Trustee to withdraw the applicable Assets from the Trust Account and deliver such Assets to the Grantor. The Trustee shall have no responsibility whatsoever to determine whether the conditions described in this Section 2(c) have been satisfied.

(d)     Subject to Section 4 of this Agreement, in the absence of the delivery of a Withdrawal Notice to the Trustee by the Beneficiary, the Trustee shall allow no substitution or withdrawal of any Asset from the Trust Account.

(e)     The Trustee shall have no responsibility whatsoever to determine that any Assets withdrawn from the Trust Account pursuant to this Section 2 will be used and applied in the manner contemplated by Section 3 of this Agreement.

SECTION 3.        Application of Assets.

The Beneficiary hereby covenants to the Grantor that it shall use and apply any withdrawn Assets from the Trust Account, without diminution because of the insolvency of the Beneficiary or the Grantor, for the following purposes only:

3

(a)    to pay or reimburse the Beneficiary for any premiums which are returned, but not yet recovered by the Beneficiary from the Grantor, to the owners of the Assigned Policies (as defined in the Assignment Agreement) because of surrenders, cancellations or other terminations of Assigned Policies;

(b)    to pay or reimburse the Beneficiary for any Insurance Liabilities (as defined in the Reinsurance Arrangement) paid by the Beneficiary, but not yet recovered by the Beneficiary from the Grantor;

(c)    to make payment to the Grantor under Section 2(c) of any amounts held in the Trust Account that exceed the actual amount required to fund the Grantor's entire Obligations (as hereinafter defined); and

(d)    where the Beneficiary and the Grantor have delivered notice of termination of this Agreement pursuant to Section 10(a) and where the Grantor's obligations under the Reinsurance Arrangement remain unliquidated and undischarged ten (10) days prior to the termination date, to withdraw amounts equal to such obligations of the Grantor, to the extent that such obligations have not yet been paid by the Grantor to the Beneficiary, and deposit those amounts into a separate account, in the name of the Beneficiary, in any Qualified U.S. Financial Institution (as defined below) that becomes a successor Trustee pursuant to Section 9 apart from its general assets, in trust for the uses and purposes specified in (i), (ii) and (iii) above as may remain executory after such withdrawal and for any period after the termination date. "Qualified U.S. Financial Institution" shall mean an institution that is a member of the Federal Reserve System or is (1) organized or, in the case of a United States branch or agency office of a foreign banking organization, is licensed under the laws of the United States or any state thereof and has been granted authority to operate with fiduciary powers and (2) regulated, supervised, and examined by federal or state authorities having regulatory authority over banks and trust companies.

SECTION 4.    <u>Redemption, Investment and Substitution of Assets</u>.

(a)    The Trustee shall surrender for payment all maturing Assets and all Assets called for redemption and deposit the principal amount of the proceeds of any such payment to the Trust Account.

The Trustee shall provide notice to Beneficiary when an Asset held in the Trust Account matures, is surrendered by the Trustee for payment and/or called for redemption.

(b)    From time to time, at the written order and direction of the Investment Manager (as defined below) or any sub-investment manager acting for the Investment

4

Manager), the Trustee shall invest Assets in the Trust Account only in Eligible Assets.

(c)    From time to time, subject to the Trustee's receipt of the prior written approval of the Beneficiary (which approval shall not be unreasonably or arbitrarily withheld or delayed), the Grantor (or the Investment Manager or any sub-investment manager acting for the Investment Manager) may direct the Trustee to substitute Eligible Assets for other Eligible Assets held in the Trust Account at such time; provided that the Grantor shall, at the time of such withdrawal, replace the withdrawn Assets with other assets constituting Eligible Assets and having a fair market value at least equal to the fair market value of the withdrawn Assets (such withdrawal and replacement deposit, a "Substitution"). The instructions of the Grantor (or the Investment Manager or any sub-investment manager acting for the Investment Manager) regarding a Substitution shall constitute a representation and warranty by the Grantor to the Trustee and the Beneficiary that, on the date of deposit, any assets so deposited are Eligible Assets, and that the fair market value of the Assets so deposited is at least equal to the fair market value of the Assets so withdrawn. The Trustee shall have no responsibility whatsoever to determine the value of such substituted securities or that such substituted securities constitute Eligible Assets. For the avoidance of doubt, so long as any Substitution complies with the other provisions of this Section 4(c), the Beneficiary shall be deemed to have approved such Substitution.

(d)    The Grantor has appointed Stamford Brook Capital, LLC, a Delaware limited liability company (the "Investment Manager"), to manage the investment of the Assets in the Trust Account and any subaccounts thereof, which appointment will be effective as of the date hereof. The Investment Manager shall have full right to provide instructions to the Trustee hereunder with respect to such Trust Account and sub-accounts subject to the terms and conditions of this Agreement, and each such instruction shall be binding upon the Beneficiary and the Grantor, and the Trustee shall be fully protected in following any such instruction or action as if taken directly from the Beneficiary. The Grantor shall promptly notify the Trustee in writing of the termination of the appointment of the Investment Manager.

(e)    The Investment Manager may further designate one or more sub-investment managers to manage the investment of the Assets held in the Trust Account or sub-accounts thereof over which the Investment Manager has authority and the limitations, if any, of the sub-investment manager's authority and/or discretion. In such event, the Investment Manager shall notify the Trustee and the Beneficiary in writing of the appointment of each such sub-investment manager, and of the Trust Account or sub-accounts over which such sub-investment manager may exercise authority. Subject to the terms set forth in such written notice, any such sub-investment manager shall have full right to provide instructions to the Trustee hereunder with respect to such Trust Account or sub-accounts, and the Trustee shall be fully protected in following any such instruction or action as if taken directly from the Beneficiary. Each such

5

instruction shall be binding upon the Investment Manager, the Beneficiary and the Grantor; provided, however, that if conflicting instructions are given by the Investment Manager and a sub-investment manager, the instructions given by the Investment Manager shall govern; provided, further that nothing herein shall be construed to limit the ability of the Investment Manager to enforce its rights against any sub-investment manager pursuant to any other agreements entered into between them. The Investment Manager shall promptly, but in no event later than three (3) Business Days after termination, notify the Trustee and the Beneficiary in writing of the termination by the Investment Manager of its appointment of any such sub-investment manager.

(f)     All investments and substitutions of securities referred to in paragraphs (b) and (c) of this Section 4 shall be in compliance with the applicable provisions of the North Carolina Insurance Code, as set forth in the definition of "Eligible Assets" in Section 11 of this Agreement. The Trustee has no discretionary authority over investments or substitutions of securities. The Trustee shall have no responsibility whatsoever to determine that any Assets in the Trust Account are or continue to be Eligible Assets. Any instruction or order concerning such investments or substitutions of securities shall be referred to herein as an "Investment Order". The Trustee shall execute Investment Orders and settle securities transactions by itself or by means of an agent or broker. The Trustee shall not be responsible for any act or omission, or for the solvency, of any such agent or broker unless said act or omission is the result, in whole or in part, of the Trustee's negligence, willful misconduct or lack of good faith.

(g)     Any loss incurred from any investment pursuant to the terms of this Section 4 shall be borne exclusively by the Trust Account. The Trustee shall not be liable for any loss due to changes in market rates or penalties for early redemption.

SECTION 5.          The Income Account.

All payments of interest and dividends actually received in respect of Assets in the Trust Account shall be deposited by the Trustee, subject to deduction of the Trustee's compensation and expenses as provided in Section 8 of this Agreement, in a separate account (the "Income Account") established and maintained by the Grantor at an office of the Trustee. The Trustee shall treat the Grantor as tax owner of all Trust Account income. The Grantor shall have the right to withdraw funds from the Income Account at any time.

SECTION 6.          Right to Vote Assets.

The Trustee shall forward all annual and interim stockholder reports and all proxies and proxy materials relating to the Assets in the Trust Account to the Investment Manager or applicable sub-investment manager acting for the Investment Manager (or, if the appointment of the Investment Manager has been terminated, to the Grantor). The Grantor (and the Investment Manager or sub-investment manager acting for the Investment Manager), shall have the full and unqualified right to vote any Assets in the Trust Account.

6

SECTION 7.          Additional Rights and Duties of the Trustee.

(a)     The Trustee shall notify the Grantor, the Beneficiary and the Investment Manager in writing within five (5) days following each deposit to, or withdrawal from, the Trust Account.

(b)     Before accepting any Asset for deposit to the Trust Account, the Trustee shall determine that such Asset is in such form that the Beneficiary whenever necessary can, or the Trustee upon direction by the Beneficiary can, negotiate such Asset without consent or signature from or notice to the Grantor or any person or entity other than the Trustee in accordance with the terms of this Agreement.

(c)     The Trustee may deposit any Assets in the Trust Account in the centralized National Book-Entry System of the Federal Reserve or in depositories such as the Depository Trust Company. Assets may be held in the name of a nominee maintained by the Trustee or by any such depository.

(d)     The Trustee shall accept and promptly open all mail directed to the Grantor or the Beneficiary in care of the Trustee and deliver a copy of such mail to the Grantor and the Beneficiary promptly after the Trustee's receipt thereof.

(e)     The Trustee shall furnish to the Grantor and the Beneficiary a statement of all Assets in the Trust Account upon the inception of the Trust Account and at the end of each calendar quarter thereafter.

(f)     Upon the request of the Grantor or the Beneficiary, the Trustee shall promptly permit the Grantor or the Beneficiary, their respective agents, employees, counsel or independent auditors to examine, audit, excerpt, transcribe and copy, during the Trustee's normal business hours, any books, documents, papers and records relating to the Trust Account, the Assets or this Agreement.

(g)     The Trustee is authorized to follow and rely upon all instructions given by officers authorized in writing by the Grantor and the Beneficiary, respectively, and by the Investment Manager or authorized sub-investment managers and attorneys-in-fact acting under written authority furnished to the Trustee by the Grantor or the Beneficiary, including, without limitation, instructions given by letter, facsimile transmission, telegram, teletype, cablegram or electronic media other than e-mail, if the Trustee believes such instructions to be genuine and to have been signed, sent or presented by the proper party or parties. Such instructions may also be in a tested communication or in a communication utilizing access codes effected between electro-mechanical or electronic devices. The Trustee shall not incur any liability to anyone resulting from actions taken by the Trustee in reliance in good faith on such instructions. The Trustee shall not incur any liability in executing instructions (i) from such an attorney-in-fact prior to receipt by the Trustee of notice of the revocation of the written authority of the attorney-in-fact, (ii) from any officer of the Grantor or the Beneficiary authorized in a writing, which may be updated from time to time or (iii) from the Investment Manager or any authorized sub-investment managers.

7

(h)     The duties and obligations of the Trustee shall only be such as are specifically set forth in this Agreement, as it may from time to time be amended, and no implied duties or obligations shall be read into this Agreement against the Trustee. The Trustee shall only be liable for its own negligence, willful misconduct or lack of good faith.

(i)     No provision of this Agreement shall require the Trustee to take any action which, in the Trustee's reasonable judgment, would result in any violation of this Agreement or any provision of law.

(j)     The Trustee may confer with counsel of its own choice in relation to matters arising under this Agreement and shall have full and complete authorization from the other Parties hereunder for any action taken or suffered by it under this Agreement or under any transaction contemplated hereby in good faith and in accordance with the opinion of such counsel.

(k)     Except as may arise from the Trustee's own negligence, willful misconduct, or lack of good faith, the Trustee shall be without liability for any loss, liability, claim or expense resulting from or caused by events or circumstances beyond the reasonable control of the Trustee, including, without limitation, the interruption, suspension or restriction of trading on or the closure of any securities markets, power or other mechanical or technological failures or interruptions, or computer viruses or communications disruptions, work stoppages, natural disasters or other similar events or acts, delays or inability to perform its duties due to any disorder in market infrastructure with respect to any particular security or changes to any provision of any present or future law or regulation or order of the United States of America, or any state thereof, or any other country, or political subdivision thereof or any court of competent jurisdiction.

(l)     The Trustee, in incurring any debt, liability or obligation, or in taking or omitting to take any action, for or in connection with the Trust Account, is and shall be deemed to be acting solely as a trustee, and not in an individual capacity. The Trustee shall assume no responsibility and shall not be held to any personal liability whatsoever in tort, contract, or otherwise for any action taken or omitted pursuant to this Agreement. In the event that the Grantor or the Beneficiary enters into any agreement or arrangement of any kind with any third party with respect to all or any part of the Trust Account, the Grantor or the Beneficiary, as appropriate, shall ensure that the agreement or arrangement shall pose no risk of personal liability to the Trustee.

SECTION 8.          The Trustee's Compensation, Expenses and Indemnification.

(a)     The Grantor shall, upon its receipt of an invoice from the Trustee, (i) pay the Trustee, as compensation for its services under this Agreement, a fee as may be agreed upon in writing by the Trustee and the Grantor from time to time and (ii) pay or reimburse the Trustee for all of the Trustee's reasonable expenses, disbursements and advancements in connection with its duties under this

8

Agreement (including reasonable attorney's fees and expenses), except any such expenses, disbursements or advances as may arise from the Trustee's negligence, willful misconduct or lack of good faith. If the Grantor fails to pay such compensation and expenses within thirty (30) days following the Trustee's delivery of the invoice therefore, the Trustee shall be entitled to deduct such compensation and expenses from payments of dividends, interest and other income in respect of the Assets held in the Trust Account prior to the deposit thereof to the Income Account as provided in Section 5 of this Agreement. The Grantor also hereby indemnifies the Trustee for, and holds it harmless against, any loss, liability, costs or expenses (including reasonable attorney's fees and expenses) incurred or made without negligence, willful misconduct or lack of good faith on the part of the Trustee, arising out of or attributable to the Trustee's entrance into this Agreement or in connection with the performance of its obligations in accordance with the provisions of this Agreement, including any loss, liability, costs or expenses arising out of or in connection with the status of the Trustee and its nominee as the holder of record of the Assets. In no event shall the Trustee be liable for indirect, special or consequential damages. The Grantor hereby acknowledges that the foregoing indemnities shall survive the resignation of the Trustee or the termination of this Agreement and hereby grants the Trustee a lien, right of set-off and security interest in the funds in the Income Account for the payment of any claim for compensation, reimbursement or indemnity hereunder.

(b)     No Assets shall be withdrawn from the Trust Account or used in any manner for paying compensation to, or reimbursement or indemnification of, the Trustee. The Trustee shall have no security interest in, lien on or right of setoff against the Trust Account or any Assets therein.

SECTION 9.         Resignation or Removal of the Trustee.

(a)     The Trustee may resign at any time by giving not less than ninety (90) days' prior written notice thereof to the Beneficiary and to the Grantor, such resignation to become effective on the acceptance of appointment by a successor trustee and the transfer to such successor trustee of all Assets in the Trust Account in accordance with paragraph (c) of this Section 9.

(b)     The Trustee may be removed by the Grantor at any time by giving not less than ninety (90) days' written notice thereof to the Trustee and to the Beneficiary, such removal to become effective on the acceptance of appointment by a successor trustee and the transfer to such successor trustee of all Assets in the Trust Account in accordance with paragraph (c) of this Section 9.

(c)     Upon (i) their receipt of the Trustee's notice of resignation or (ii) their providing a notice of removal to the Trustee, the Grantor and the Beneficiary shall jointly appoint a successor trustee. Any successor trustee shall be a Qualified U.S. Financial Institution. The successor trustee shall not be an Affiliate of the Grantor or the Beneficiary. Upon the acceptance of the appointment as trustee hereunder

9

by a successor trustee and the transfer to such successor trustee of all Assets in the Trust Account, the resignation or removal, as applicable, of the Trustee shall become effective. Thereupon, such successor trustee shall succeed to and become vested with all the rights, powers, privileges and duties of the Trustee, and the Trustee shall be discharged from any future duties and obligations under this Agreement, but the Trustee shall continue after its resignation or removal to be entitled to the benefits of the indemnities provided herein for the Trustee.

SECTION 10.          Termination of the Trust Account.

(a)     The Trust Account and this Agreement will remain in effect as long as the Grantor has outstanding obligations under the Reinsurance Arrangement. The Trust Account and this Agreement, except for the indemnities provided herein, may be terminated only after (i) the Grantor or the Beneficiary has given the Trustee written notice of its intention to terminate the Trust Account and (ii) the Trustee has given the Beneficiary and the North Carolina Department of Insurance not less than thirty (30) days prior written notice of the intended termination date.

(b)     On the termination date, upon the Trustee's receipt of written approval of the Beneficiary, the Trustee shall transfer to the Grantor any Assets remaining in the Trust Account, at which time all liability of the Trustee with respect to such Assets shall cease.

SECTION 11.          Definitions.

Except as the context shall otherwise clearly require, the following terms shall have the following meanings for all purposes of this Agreement (the definitions to be applicable to both the singular and the plural forms of each term defined if both such forms of such term are used in this Agreement):

The term "Affiliate" with respect to any corporation shall mean a corporation which directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, such corporation. The term "control" (including the related terms "controlled by" and "under common control with") shall mean the ownership, directly or indirectly, of more than fifty percent (50%) of the voting stock of a corporation.

The term "Authorized Person" of the Beneficiary shall mean each person listed on Exhibit B attached hereto .

The term "Business Day" shall mean any day other than a Saturday, Sunday or any other day on which banking institutions in New York, New York are authorized or required by law or executive order to close.

The term "Eligible Assets" shall mean cash (United States legal tender) and those securities specified in the investment guidelines attached hereto as Exhibit C and to the Assignment Agreement as Exhibit D which are free and clear of all charges, encumbrances, liens, security interest and claims of any kind; provided, however, that no such securities shall

10

have been issued by an Affiliate of the Beneficiary or by the parent, subsidiary or an Affiliate of the Grantor.

The term "Measurement Date" shall mean each date on which a monthly settlement report is delivered by the Beneficiary to the Grantor pursuant to the Reinsurance Arrangement.

The term "Obligations" shall mean, with respect to the Reinsurance Arrangement, (a) losses and allocated loss expenses paid by the Beneficiary, but not recovered from the Grantor, (b) reserves for losses reported and outstanding, (c) reserves for losses incurred but not reported, (d) reserves for allocated loss expenses, (e) reserves for unearned premiums and (f) the Insurance Liabilities (as defined under the Reinsurance Arrangement).

The term "person" shall mean and include an individual, a corporation, a partnership, an association, a trust, an unincorporated organization or a government or political subdivision thereof.

SECTION 12.    Governing Law.

This Agreement shall be subject to and governed by the laws of the State of North Carolina.

SECTION 13.    Successors and Assigns.

No Party may assign this Agreement or any of its rights or obligations hereunder without the prior written consent of all the other Parties; provided, however, that this Agreement shall inure to the benefit of and bind those who, by operation of law, become successors to the Parties, including, without limitation, through merger, consolidation, sale of all or substantially all of its assets, liquidation, dissolution or otherwise; provided, further, that, in the case of the Trustee, the successor is eligible to be a trustee under the terms hereof.

SECTION 14.    Severability.

In the event that any provision of this Agreement shall be declared invalid or unenforceable by any regulatory body or court having jurisdiction, such invalidity or unenforceability shall not affect the validity or enforceability of the remaining portions of this Agreement.

SECTION 15.    Entire Agreement.

This Agreement, together with the Reinsurance Arrangement, constitutes the entire agreement among the Parties with respect to the subject matter hereof, and there are no understandings or agreements, conditions or qualifications relative to this Agreement which are not fully expressed in this Agreement.

SECTION 16.    Amendments.

This Agreement may be modified or otherwise amended, and the observance of any term of this Agreement may be waived, only if such modification, amendment or waiver is in writing

11

and signed by all of the Parties; provided, however, that any amendment to this Agreement shall be filed with the North Carolina Department of Insurance no later than thirty (30) days after approval of the amendment by the commissioner who has regulatory oversight of the Trust Account.

SECTION 17.    Notices.

Unless otherwise provided in this Agreement, all notices, directions, requests, demands, acknowledgments and other communications required or permitted to be given or made under the terms hereof shall be in writing and shall be deemed to have been duly given or made (a)(i) when delivered personally, (ii) when made or given by email or facsimile (provided that an original is delivered by national or international air courier service) , (iii) in the case of mail delivery, upon the expiration of three (3) days after any such notice, direction, request, demand, acknowledgment or other communication shall have been deposited in the United States mail for transmission by first class mail, postage prepaid, or upon receipt thereof, whichever shall first occur or (iv) two (2) days following the day on which the same has been delivered prepaid to a national or international air courier service and (b) when addressed as follows:

If to the Grantor:

Port Royal Reassurance Company SPC, Limited
113 South Church Street
Grand Cayman, Cayman Islands
Attention: Paul Macey
Telephone: 811-483-1850 extension 2281

If to the Trustee:

Summit Trust Company
190 Bethlehem Pike, Suite One
Colmar, PA 18915
Attention: Meade Rudasill
Telephone: 215-822-6601

If to the Beneficiary:

North Carolina Mutual Life Insurance Company
411 West Chapel Hill Street
Durham, NC 27701-3616
Attention: Richard Barnes
Telephone: 919-313-7800

If to the Investment Manager:

12

Stamford Brook Capital, LLC
Times Square Tower
7 Times Square, 37 floor
New York, New York 10022
Attention: David Wasitowski
Telephone: 646-597-6068

Each Party may from time to time designate a different address for notices, directions, requests, demands, acknowledgments and other communications by giving written notice of such change to the other Parties.

SECTION 18.        Headings.

The headings of the Sections have been inserted for convenience of reference only, and shall not be deemed to constitute a part of this Agreement.

SECTION 19.        Counterparts.

This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall constitute an original, but such counterparts together shall constitute one and the same Agreement.

SECTION 20.        Trust Account Records.

The Grantor, the Beneficiary and the North Carolina Department of Insurance may examine the Trustee's records relating to the Trust Account at any time during the Trustee's business hours, upon reasonable request.

SECTION 21.        Insolvency of Grantor.

(a)    Notwithstanding any other provisions in this Agreement, if the Grantor has been declared insolvent or placed into receivership, rehabilitation, liquidation, or similar proceedings under the laws of its state or country of domicile, the Trustee shall comply with an order of the commissioner with regulatory oversight over the Trust Account or court of competent jurisdiction directing the Trustee to transfer to the commissioner with regulatory oversight or other designated receiver all of the Assets.

(b)    The Assets shall be applied in accordance with the priority statutes and laws of the state in which the Trust Account is domiciled applicable to the assets of insurance companies in liquidation.

(c)    If the commissioner with regulatory oversight determines that the Assets of the Trust Account or any part thereof are not necessary to satisfy claims of the U.S. beneficiaries of the Trust Account, the Assets or any part of them shall be returned to the Trustee for distribution in accordance with this Trust Agreement.

13

SECTION 22.          Use of Information.

The Grantor and the Beneficiary agree to use reasonable care to avoid disclosure or unpermitted use of the Trustee's confidential or proprietary information, and the Trustee agrees to use reasonable care to avoid disclosure or unpermitted use of the Grantor's and the Beneficiary's confidential or proprietary information. Each Party agrees that it shall treat confidentially all information provided hereunder by any other Party regarding such other Party's business and operations. All confidential information provided hereunder by any Party shall be used by the other Parties solely for the purpose of rendering or receiving services pursuant to this Agreement and, except as may be required in carrying out this Agreement, shall not be disclosed to any third party. The foregoing shall not be applicable to any information (i) that is publicly available when provided or thereafter becomes publicly available, other than through a breach of this Agreement, or that is independently derived by any party hereto without the use of any information provided by the other party hereto in connection with this Agreement, (ii) that is required in any legal or regulatory proceeding, investigation, audit, examination, subpoena, civil investigative demand or other similar process, or by operation of law or regulation, or (iii) where the party seeking to disclose has received the prior written consent of the party providing the information, which consent shall not be unreasonably withheld. Notwithstanding anything herein to the contrary, the Trustee and its affiliates may report and use nonpublic account holdings information of its clients on an aggregated basis with all or substantially all other client information and without specific reference to any party or Account.

SECTION 23.          Regulation GG.

The Grantor and the Beneficiary each hereby represents and warrants that it does not engage in an "Internet Gambling Business", as such term is defined in Section 233.2(r) of the Federal Reserve Regulation GG (12 CFR 233.1-233.7) ("Regulation GG"). The Grantor and the Beneficiary each hereby covenants and agrees that it shall not engage in an Internet gambling business. In accordance with Regulation GG, the Grantor and the Beneficiary are hereby notified that "Restricted Transactions", as such term is defined in Section 233.2(y) of Regulation GG, are prohibited in any dealings with the Trustee pursuant to this Agreement or otherwise between or among any party hereto.

14

IN WITNESS WHEREOF, the parties hereto have executed or caused this Trust Agreement to be executed by duly authorized representatives as of the date first above written.

BENEFICIARY:

NORTH CAROLINA MUTUAL LIFE
INSURANCE COMPANY

By:_____
    Name:
    Title: Chief Executive Officer


GRANTOR:

PORT ROYAL REASSURANCE
COMPANY SPC, LIMITED

By:_____
    Name:
    Title:


TRUSTEE:

SUMMIT TRUST COMPANY, as Trustee

By:_____
    Name: MEADE H. RUDASILL, JR.
    Title: PRESIDENT & CEO


*[SIGNATURE PAGE TO TRUST AGREEMENT]*

IN WITNESS WHEREOF, the parties hereto have executed or caused this Trust Agreement to be executed by duly authorized representatives as of the date first above written.

BENEFICIARY:

NORTH CAROLINA MUTUAL LIFE
INSURANCE COMPANY

By: _____
Name: James H. Speed, Jr.
Title: Chief Executive Officer


GRANTOR:

PORT ROYAL REASSURANCE
COMPANY SPC, LIMITED

By: _____
Name: STEVEN W. FICKES
Title:


TRUSTEE:

SUMMIT TRUST COMPANY, as Trustee

By: _____
Name:
Title:

*[SIGNATURE PAGE TO TRUST AGREEMENT]*

**Exhibit A**

## List of Assets Deposited in the Trust Account

Cash in an amount equal to thirty four million one hundred and ninety four thousand six hundred and thirty four dollars ($34,194,634).

## Authorized Persons of the Beneficiary

1.    James H. Speed, Jr.

Exhibit C

## Investment Guidelines

All Eligible Investments must;

(1) meet all of the requirements of North Carolina's General Statute 58-7-173, and

(2) will be limited to income producing securities, with

(3) appropriate duration or maturity dates after consideration of the duration of the reinsured liabilities, and

(4) have an average rating of a 2 or better rating based upon the ratings of the NAIC's Security Valuation Office ("SVO"), or equivalent rating thereof, and

Ratings or equivalent ratings shall be determined as:

      (i) SVO if available,
      (ii) Moody's or S&P rating, for same creditor - adjusted for priority
      (iii) ratings of similar credits - adjusted for priority, or
      (iv) other methods acceptable under the North Carolina Insurance Code

(5) subject to certain concentration limitations prescribed by the North Carolina Insurance Code

(6) meeting the level of collateral and term limitations as provided by North Carolina's General Statute 58-7-173 section (15)