# Novation Agreement

**THIS NOVATION AGREEMENT** (hereinafter the "Novation Agreement") is made on this 24th day of April, 2015 (the "Novation Date"), by and between:

(1)      North Carolina Mutual Life Insurance Company (the "*Cedent*");

(2)      Markel Bermuda Limited (formerly known as Max Re Ltd. and Alterra Bermuda Limited) (the "*Reinsurer*"); and

(3)      Port Royal Reassurance Company SPC, Limited (the "*Assuming Reinsurer*")

(the Cedent, the Reinsurer and the Assuming Reinsurer together the "*Parties*" and individually a "*Party*").

**WHEREAS**, the Cedent and the Reinsurer entered into that certain Coinsurance Agreement made and entered into as of the 19th day of December 2003 by and between the Cedent and the Reinsurer (hereinafter referred to as the "*Reinsurance Contract*"); and

**WHEREAS**, the Cedent, the Reinsurer and Summit Trust Company (as successor to Mellon Bank, N.A.), as trustee, entered into a Reinsurance Trust Agreement dated as of December 19, 2003, as amended (the "*Trust Agreement*") pursuant to which the Reinsurer has deposited assets in the trust account thereunder in order to secure the obligations of the Reinsurer to the Cedent under the Reinsurance Contract; and

**WHEREAS**, the Reinsurer now wishes to assign to the Assuming Reinsurer, and the Assuming Reinsurer agrees to accept, all rights and all obligations of the Reinsurer under the Reinsurance Contract in order to effectuate a novation of the Reinsurance Contract from the Reinsurer to the Assuming Reinsurer; and

**WHEREAS**, the Cedent consents to the assignment, acceptance and novation and agrees to accept the Assuming Reinsurer as replacement for the Reinsurer under the Reinsurance Contract; and

**WHEREAS**, the Cedent, the Assuming Reinsurer and Summit Trust Company, as trustee, have entered into a trust agreement for the benefit of the Cedent and Assuming Reinsurer to replace the Trust Agreement.

**NOW THEREFORE**, in consideration of the mutual benefits to be received by the Parties and the mutual covenants herein contained, the Parties hereto agree as follows:


EXHIBIT B

**Article 1.   Novation and Substitution**

1.1. The Reinsurer hereby assigns and novates to the Assuming Reinsurer, who agrees to such assignment and novation, all of its rights and benefits without limitation, known and unknown, actual or otherwise, in connection with the Reinsurance Contract; and the Assuming Reinsurer hereby agrees that it shall:

   (a) Assume all obligations of the Reinsurer in connection with the Reinsurance Contract and shall be substituted in place of the Reinsurer as if the Assuming Reinsurer had originally entered into the Reinsurance Contract with the Cedent; and

   (b) Perform all of the Reinsurer's obligations in connection with the Reinsurance Contract in place of the Reinsurer.

1.2. The Cedent hereby consents to the foregoing assignment, novation and assumption. The Cedent hereby agrees and acknowledges that it shall no longer have any rights or claims against the Reinsurer in connection with or arising out of the Reinsurance Contract.

**Article 2.   Release, Discharge and Indemnification of the Reinsurer**

2.1. The Cedent hereby releases and discharges the Reinsurer from any and all liabilities and obligations in relation to the Cedent of any kind, known, unknown or otherwise, which have arisen or which may arise after the Novation Date under or by reason of the Reinsurance Contract.

2.2. The Cedent agrees that the Assuming Reinsurer shall instead be responsible for any claims, losses or other liabilities which have arisen or may arise after the Novation Date under or by reason of the Reinsurance Contract; it being understood that as of the Novation Date the Assuming Reinsurer shall be substituted in place of the Reinsurer, with effect retroactively back to the inception of the Reinsurance Contract, for all obligations there under.

2.3. In the event that any claims, lawsuits, arbitrations or other such disputes (each an "***Outstanding Dispute***") with respect to the Reinsurance Contract are pending between the Cedent and the Reinsurer at the Novation Date, it is hereby agreed that the Assuming Reinsurer shall be substituted in place of the Reinsurer in such Outstanding Disputes. The Assuming Reinsurer hereby agrees to indemnify and hold the Reinsurer harmless for any liabilities, obligations, losses, damages, costs, expenses or fees, including attorney fees, incurred as a result of such Outstanding Disputes.

**Article 3.    Trust Account and Payment**

On or before the Novation Date, the Cedent and the Reinsurer shall take all necessary actions to ensure that (a) the Trust Agreement is terminated and (b) the assets held in the trust account created under the Trust Agreement (the "*Trust Assets*") are, at the Reinsurer's sole discretion, either (i) liquidated and the proceeds there from distributed to the Reinsurer or its designee or (ii) released and returned to the Reinsurer or its designee.

3.1. On the Novation Date:

(a) the Reinsurer shall, at its sole discretion, either (i) cause the Trustee to transfer Trust Assets to the Assuming Reinsurer with an aggregate market value equal to the statutory benefit and claim reserves for the Covered Business (as defined in the Reinsurance Contract) reported by the Cedent as of December 31, 2014 ($34,194,634 the "*Novation Premium*") or (ii) pay the Assuming Reinsurer funds in an amount equal to the Novation Premium, in each case, to the account designated in Section 3.3 below; provided, however, that the Reinsurer may satisfy its obligation under this clause (a) by transferring or paying to the Assuming Reinsurer Trust Assets or funds in an amount equal to the Novation Premium less the Novation Ceding Commission.

(b) The Assuming Reinsurer shall pay to the Reinsurer a novation ceding commission in an amount equal to $5,000,000 (the "*Novation Ceding Commission*"). Unless otherwise deducted from the amounts transferred by the Reinsurer to the Cedent as provided above, the Novation Ceding Commission shall be paid by wire to an account designated in writing to the Assuming Reinsurer by the Reinsurer on the Novation Date.

(c) Within 2 business days following the Cedent's completion of the reinsurance accounting statement for the Reinsurance Contract for the quarter ended March 31, 2015, the Assuming Reinsurer shall pay to the Reinsurer any decrease in reserves, if any, which occurred between December 31, 2014 and March 31, 2015.

> If the reserves from December 31, 2014 through March 31, 2015 increased, the Reinsurer shall pay such increase to the Assuming Reinsurer.

(d) Within 2 business days following the Cedent's completion of the reinsurance accounting statement for the Reinsurance Contract for the quarter ended June 30, 2015, the Assuming Reinsurer shall pay to the Reinsurer any decrease in reserves, if any, which occurred between March 31, 2015 and the Novation date.

> If the reserves from March 31, 2015 through the Novation Date increased, the Reinsurer shall pay such increase to the Assuming Reinsurer.

3.2. The Parties agree that the Statement (as defined in the Reinsurance Contract) shall be prepared by the Cedent for the period running from March 31, 2015 through the Novation date at the time when the Cedent prepares the Statement for the quarter ending

June 30, 2015. If the Statement through the Novation date shows an amount due to the Cedent then the Reinsurer shall pay such amount to the Assuming Reinsurer. If the Statement through the Novation date shows an amount due to the Reinsurer then the Assuming Reinsurer shall pay such amount to the Reinsurer. Such settlement for the stub-period shall occur between the Reinsurer and the Assuming Reinsurer, within 3 business days following the Cedent's completion of the reinsurance accounting statement for the Reinsurance Contract for the quarter ended June 30, 2015.

The Parties agree that the Statement (as defined in the Reinsurance Contract) for the quarter ending June 30, 2015 shall be settled by and between the Cedent and the Assuming Reinsurer, within 5 business days following the Cedent's completion of the reinsurance accounting statement for the Reinsurance Contract for the quarter ended March 31, 2015.

3.3. Any amounts transferred or paid to the Assuming Reinsurer by the Reinsurer pursuant to this Novation Agreement shall be transferred or paid to the following account:

Summit Trust Company
Account Number: ▇▇▇▇▇

3.4. The Cedent and the Reinsurer agree that on the Novation Date, that certain Collateral Trust Agreement dated as of December 19, 2003, by and between the Reinsurer and the Cedent (the "*Collateral Trust Agreement*") shall be terminated and that the Collateral Trust Agreement shall have no further force or effect thereafter.

### Article 4. Novation Date

It is hereby agreed that, subject to the satisfaction and performance of the Parties' respective obligations under Article 3 above, the effective date of this assignment, novation and assumption shall be April 24, 2015 (the "Novation Date").

### Article 5. Exclusive Benefit and Binding Effect

This Novation Agreement shall be binding upon and shall inure solely to the benefit of the Parties hereto and their respective assigns. It is the intent of the Parties not to create any third party beneficiaries to this Novation Agreement.

### Article 6. Representations and Warranties

6.1. Each Party represents and warrants to the other Parties that:

    (i) Such Party is a corporation in good standing in its respective jurisdiction of domicile;

    (ii) The execution and performance of this Novation Agreement is fully authorized by such Party;

4

(iii) The persons executing this Novation Agreement have full authority to execute this agreement on behalf of such Party and its respective successors and assigns;

(iv) This Novation Agreement constitutes the valid and binding obligation of such Party and is enforceable according to its terms;

(v) There are no pending or existing agreements, transactions or negotiations to which such Party is a party that would render this Novation Agreement, or any part of it, void, voidable or unenforceable;

(vi) Such Party shall seek to obtain all authorizations, consents and approvals of any governmental or regulatory authority required to make this Novation Agreement valid and binding, and the performance of such Party's obligations under this Novation Agreement does not contravene or fail to comply with any directive given by any governmental authority with regulatory authority over the Party; and

(vii) No claim or loss being settled and discharged by this Novation Agreement has been assigned, transferred or sold to any other person or entity.

6.2. The Reinsurer hereby expressly represents and warrants that at the date of this Novation Agreement no order has been made or petition presented or step taken for it to be wound up or for the appointment of a liquidator, provisional liquidator, receiver, administrator or other like office holder in any jurisdiction.

## Article 7.  Independent Investigation and Analysis

Each Party acknowledges that it has entered into this Novation Agreement in reliance on its own independent investigation and analysis and not on the basis of any representation or warranty by any other Party other than those representations and warranties contained in this Novation Agreement.

## Article 8.  Confidentiality

Each of the Parties agrees that the terms and conditions of this Novation Agreement are confidential. Except as may be required by law, or authority of any court, administrative tribunal or arbitration panel, regulatory or supervisory body, the terms of this Novation Agreement shall not be divulged to any third party (where "third party" shall expressly include any associated or affiliated company of a Party not directly involved with the Reinsurance Contract) without the express written consent of the Parties, other than the respective Party's professional, legal or financial advisors, the Internal Revenue Service, the brokers of the Reinsurance Contract, the respective Parties' reinsurers or retrocessionaires (provided that such brokers, reinsurers or retrocessionaires confirm in writing before being informed of the terms and conditions of this Novation Agreement that they will not divulge its terms to any third party without the express written consent of the other Parties).

**Article 9.  Other Actions**

The Parties agree that this Novation Agreement and the negotiations and proceedings leading to this agreement shall not form the basis for any claim by any Party against another Party or against any officer, director, consultant, professional or shareholder of a Party, except with respect to an action for enforcement of this agreement.

The Parties further agree to cooperate with and provide reasonable assistance to one another in the event that any other person or entity asserts against a Party any right, demand, claim, or suit arising out of or relating to the Reinsurance Contract, such assistance to include but not to be limited to the full and prompt cooperation of personnel (whether in providing access to or copies of statements, documentation, files and records, electronic, paper based or otherwise or similar requests for assistance) in relation to requests that arise out of or relate to any such right, demand, claim or suit; provided, however, that any such request that is made of the Reinsurer shall be at the sole cost and expense of the requesting Party.

**Article 10.  Governing Law and Jurisdiction**

(a) This Novation Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina.

(b) The Parties hereby consent to the exclusive jurisdiction of any court of the State of North Carolina or the United States District Court for North Carolina in connection with any legal action related to this Novation Agreement and agree to comply with all requirements necessary to give that court jurisdiction.

**Article 11.  Miscellaneous**

(a) This Novation Agreement may be executed in one or more counterparts, each of which shall for all purposes be deemed to be an original, but all of which shall constitute one and the same agreement.

(b) The failure of any Party to enforce any provision of this Novation Agreement shall not be construed as a waiver of such provision or of any other provision of this agreement.  No waiver of any provision of this Novation Agreement shall be deemed a waiver of any other term of this agreement, nor shall such waiver constitute a continuing waiver unless expressly agreed by the waiving Party.

(c) For the avoidance of doubt, this Novation Agreement is not intended to and shall not be construed so as to deprive any Party of any rights it may have against any entity that is not a Party to this Novation Agreement, whether relating to the Reinsurance Contract or otherwise.

(d) The rights and obligations set forth in this Novation Agreement shall be binding upon and inure to the benefit of the Parties and shall be binding upon any and all predecessors, successors, liquidators, receivers and assigns of the Parties.

(e) Any notice or other communication under or in connection with this Novation Agreement shall be in writing and shall be delivered by recognized delivery service that allows for tracking and confirmation of delivery, or sent via air mail, by fax transmission or by email to the respective address set forth below or such other address as a Party shall specify by notice in writing to the other.

If to the "Cedent:"

North Carolina Mutual Life Insurance Company (the "Cedent');

Address:  411 West Chapel Hill Street
          Durham, NC 27701-3616
          Attn: James H. Speed, Jr.
Email: jspeed@ncmutuallife.com
Fax: 919-313-7800

If to the "Reinsurer:"

Markel Bermuda Limited (the "Reinsurer"); and

Address: c/o Markel Corporation
         Ten Parkway North
         Deerfield, IL 60015
Attn: Ron Herrig
Email: herrig@markelcorp.com
Fax: (847) 572-6377

If to the "Assuming Reinsurer:"

Port Royal Reassurance Company SPC, Limited (the Assuming Reinsurer)

Address:  113 South Church Street
          Grand Cayman, Cayman Islands

Attn: Paul Macey
Email: pmacey@usarisk.ky
Fax: 877-483-1864

In the absence of evidence of earlier receipt, any notice or other communication shall be deemed to have been duly served:

(i) if sent by fax, when delivered to the intended recipient's fax machine;

(ii) if sent by air mail overseas, six days after posting;

(iii) if delivered personally, when left at the address specified by the receiving Party pursuant to this Article 11; or

7

(iv) if sent via email, upon confirmation of delivery by the sender's email system.

**IN WITNESS WHEREOF**, the Parties caused this Novation Agreement to be executed by their respective authorized officers, as of the date aforementioned:

NORTH CAROLINA MUTUAL LIFE INSURANCE COMPANY (the "Cedent");

_____
Authorized Signatory
Name: James H. Speed, Jr.
Title: President & CEO


MARKEL BERMUDA LIMITED (the "Reinsurer"); and

_____
Authorized Signatory

Name: Richard R. Whitt, III
Title: President

PORT ROYAL REASSURANCE COMPANY SPC, LIMITED (the "Assuming Reinsurer")

_____
Authorized Signatory

Name: Steven W. Fiores
Title:

8