# INVESTMENT ADVISORY AGREEMENT

This Agreement, entered into with Stamford Brook Capital, LLC, a Delaware limited liability company ("Manager") effective the 24th day of April, 2015 by the undersigned, Port Royal Reassurance Company SPC, Limited ("Client"), being duly authorized, hereby appoints Manager, as investment manager for the assets of the Client in Summit Trust Company accounts ▮▮▮▮ and ▮▮▮▮ the details of which are set forth in the Schedule A attached hereto (the "Accounts"), on the following terms and conditions.

(1) Investments. Manager is authorized to manage and administer the Accounts without prior consultation or approval of Client; subject, however, to guidelines as provided by Client and set forth on Schedule B attached hereto. This authority includes the power to buy, sell, exchange, convert and otherwise trade in any and all bonds and other securities Manager may deem advisable in the best interest and for the account and risk of Client.

(2) Transaction Procedure. All transactions shall be consummated by payment or delivery by Client, or such person, firm or corporation as Client may designate in writing (the "Custodian") of all cash and/or securities due to or from the Accounts. Manager shall not act as custodian for the Accounts to take or have possession of any assets of the Accounts. Instructions of Manager to Client and/or the Custodian shall be made in writing or orally and confirmed in writing as soon as practicable thereafter, and Manager shall instruct all brokers executing orders on behalf of the Accounts to forward to the Client and the Custodian copies of all brokerage confirmations promptly after execution of transactions. All trading will reflect best execution and best price.

(3) Accounts. Manager will maintain complete records of Client and shall furnish monthly written statements of Accounts and valuation of the investment assets as of the last business day of each month during the term of this Agreement and such other reports as are agreed upon by the parties from time to time. Reports will be delivered to the Client no later than the sixth business day following the month end.

(4) Reports to Manager and Client. Client shall instruct the Custodian to provide Manager and Client with such periodic reports concerning the status of the Accounts as Manager may reasonably request from time to time.

(5) Voting. Unless otherwise directed by the Client, Manager shall not be obligated to take any action with respect to the voting of securities (or proxies with respect thereto) in which assets of the Accounts may be invested from time to time.

(6) Fees and Expenses. Upon presentation of an invoice by Manager after the close of each quarter, the Client shall pay to Manager a management fee which shall be calculated and paid in accordance with the Schedule C attached hereto. In valuing the Accounts, the value of the assets in the Accounts shall be determined as provided in Section (7) hereof and the value of the Accounts shall include all cash and cash equivalents. In the event that the management fee is payable with respect to less than three months the amount thereof shall be prorated proportionately. All expenses related to the Accounts, including, but not limited to, any costs of safekeeping, transport and acquisition and disposition, such as brokerage and other execution costs, custody fees and margin cost, shall be paid by the Client.

1 | Page


EXHIBIT F

(7) Valuation. In computing the market value of any investment of the Accounts, each security listed on any national securities exchange shall be valued at the last quoted sale price, on the consolidated tape on the valuation date or, if not traded on such date, on the most recent date on which any such security was traded. Unlisted stocks regularly traded in the over-the-counter market shall be valued at the latest available bid price quotation furnished to Manager by such sources as it may deem appropriate. Any other security shall be valued in good faith by Manager in reflecting its fair market value as of the date of valuation.

(8) Representation by Client. The execution and delivery of this Agreement by Client shall constitute the representation by Client that the terms hereof do not violate any obligation by which Client is bound, whether arising by contract, operation of law or otherwise, and that Client has the power, capacity, and authority to enter into this Agreement and to perform in accordance herewith.

(9) Manager's Liability. Manager shall manage the assets of the Accounts in accordance with its interpretation of the investment objectives, investment guidelines and restrictions as provided by Client, and in accordance with its duty as a fiduciary, as set forth in paragraph 12 herein.

(10) Limitation of Liability. Client agrees that all transactions in Client's Accounts are for Client's sole account and risk. The Company shall not be excluded from liability for losses occasioned by the Company's willful misfeasance, bad faith, or gross negligence in the performance of its duties hereunder. The federal securities laws impose liabilities under certain circumstances on persons who act in good faith, and nothing in this Agreement shall constitute a waiver of limitation of any rights which the Client may have under applicable federal or state law.

(11) Secretary's Certificate. The Client, if a corporation, shall provide Manager with a certificate of the Secretary or an Assistant Secretary to the Client setting forth the names and specimen signatures of the individuals who are authorized to act on behalf of the Client. Manager shall not be liable and shall be fully protected in relying upon any written notice, instruction, direction or other communication that Manager reasonably believes (based on the most recent certificate of the Secretary or an Assistant Secretary of the Client that has been received by Manager) to have been executed by an individual who is authorized to act on behalf of the Client.

(12) Fiduciary Duty. Manager acknowledges (a) that it is a fiduciary with respect to the Accounts and assumes the duties, responsibilities and obligations of a fiduciary operating under the prudent man rule.

(13) Termination. This Agreement may be terminated at any time by the Manager by giving to the Client written notice at least thirty (30) days prior to the date on which such termination is to become effective. The Client can terminate this agreement only by a majority vote of the Company's Board of Directors, provide that the Board finds that the Manager has acted in Bad Faith.

The Manager shall be determined to have acted in Bad Faith if in the course of undertaking the Managers respective responsibilities to the Company the Manager; (i) exhibited gross incompetence, or willful negligence with caused or could have caused the Company material financial harm; or (ii) knowingly made an investment which violated the Company's investment guidelines, or (iii) failed to disclose an investment to the Investment Committee of the Board of Directors, or (iv)

Case 1:16-cv-01174-LCB-JEP   Document 5-6   Filed 09/26/16   Page 2 of 7

Notwithstanding the above, the Client may at any time upon delivery of written notice to Manager terminating the discretionary authority of the Manager or make changes to the Client's investment guidelines and restrictions.

Upon termination fees will be prorated to the date of termination and Manager will return any unearned portion of prepaid fees.

(14) Assignment. No Assignment (as that term is defined in the Investment Advisers Act of 1940) of the Agreement shall be made by Manager without written consent of Client nor is this Agreement assignable by Client.

(15) Notices. All notices, instructions and advice with respect to security transactions, or any other matters contemplated by this Agreem
ent, shall be deemed duly given if transmitted by first-class mail or hand-delivered with acknowledgment to Client at the address appearing below, to Manager at the address appearing below, and to the Custodian at such address as it may specify, in each case, in a notice similarly given:

To Manager:

Stamford Brook Capital, LLC
Times Square Tower
7 Times Square, 37 floor
New York, New York 10022
Attention: David Wasitowski
Telephone: 646-597-6068

To Client:

Port Royal Reassurance Company SPC, Limited
113 South Church Street
Grand Cayman, Cayman Islands
Attention: Paul Macey
Telephone: 811-483-1850 extension 2281

Addresses for notices hereunder may be changed by giving notice thereof to the other party to the Agreement.

(16) Law Governing. To the extent not inconsistent with federal law, the law of the State of North
Carolina shall govern the interpretation of this Agreement.

(17) Amendments. Any amendment, change, or modification of this Agreement shall not be valid or binding on any party, unless such amendment, change, or modification is set forth in writing signed by each party hereto.

(18) Severability of Provisions. Each provision of this Agreement shall be considered severable, and if for any reason any provision that is not essential to the effectuation of the basic purposes of the Agreement is determined to be invalid and contrary to any existing or future law,

3 | Page

such invalidity shall not impair the operation of or affect those provisions of this Agreement that are valid.

(19) No Continuing Waiver. No party hereto shall be deemed to have waived any rights hereunder unless such waiver shall be in writing and signed by such party. The waiver by any party of any breach of this Agreement shall not operate or be construed to be a waiver of any subsequent breach.

(20) Disputes. All controversies, claims, disputes, and other matters in question between the parties to this Agreement, arising from or relating to this Agreement or the breach thereof, which cannot be resolved by the parties themselves shall be settled by arbitration in Durham, North Carolina in accordance with the Commercial Arbitration Rules of the American Arbitration Association then existing, unless the parties mutually agree otherwise. This Agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law.

Notice of the demand for arbitration shall be filed in writing with each other party to this Agreement and with the American Arbitration Association. The demand shall be made within a reasonable time after the controversy, claim, dispute or other matter in question has arisen; however, in no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on any such controversy, claim, dispute, or other matter in question would be barred by the applicable statute of limitation. The award rendered by the arbitrator(s) shall be final and binding upon the parties, and judgment may be entered upon it in accordance with the applicable law in any court having jurisdiction thereof. The costs of arbitration shall be assessed by the arbitrators.

Notwithstanding the foregoing, this Section shall not be deemed to limit the rights of a party to obtain from a court provisional or ancillary remedies, such as (but not limited to) injunctive relief or appointment of a receiver, before, during, or after the pendency of any arbitration proceeding brought pursuant to this Agreement. The institution or maintenance of an action for provisional or ancillary remedies shall not constitute a waiver of the right of any party, including the claimant in any such action, to arbitrate the merits of the controversy or claim occasioning the resort to such remedies.

(21) Receipt of Form ADV. The Client acknowledges receipt at least 48 hours prior to its execution of the Agreement of Part II of the Adviser's current Form ADV. The Adviser will offer in writing at least annually to provide the Client with a copy of its then current Form ADV.

(22) Term. This contract will terminate on December 31, 2024 unless otherwise terminated by the parties. It will be automatically renewed for five years from the date of expiration unless either party acts to terminate it or modify it within 30 days after date of expiration.

Agreed and accepted this [ ] day of April, 2015.

"Manager"
Stamford Brook Capital, LLC

By: *(signature)*
Name: BRADLE REIFLER
Title: MANAGING DIRECTOR

"Client"
Port Royal Reassurance Company SPC, Limited

By: *(signature)*
Name: MICHAEL FLATLEY
Title: MANAGING MEMBER

Case 1:16-cv-01174-LCB-JEP   Document 5-6   Filed 09/26/16   Page 4 of 7

Schedule A:

Trust Account

Summit Trust Company
Reinsurance Trust Account - Port Royal Prime
Account Number: ▮▮▮▮▮
190 Bethlehem Pike, Suite One
Colmar, PA 18915

## Schedule B:

### Investment Guidelines

All Eligible Investments must;

(1) meet all of the requirements of North Carolina's General Statute 58-7-173, and

(2) will be limited to income producing securities, with

(3) appropriate duration or maturity dates after consideration of the duration of the reinsured liabilities, and

(4) have an average rating of a 2 or better rating based upon the ratings of the NAIC's Security Valuation Office ("SVO"), or equivalent rating thereof, and

Ratings or equivalent ratings shall be determined as:

(i) SVO if available,
(ii) Moody's or S&P rating, for same creditor - adjusted for priority
(iii) ratings of similar credits - adjusted for priority, or
(iv) other methods acceptable under the North Carolina Insurance Code

(5) subject to certain concentration limitations prescribed by the North Carolina Insurance Code

(6) meeting the level of collateral and term limitations as provided by North Carolina's General Statute 58-7-173 section (15)

## Schedule C:

### Fee Schedule

| | Fee Per Annum |
|---|---|
| Traditional Fixed Income Portfolio | 12 Basis Points (.12%) |
| Structured Finance Fixed Income Portfolio | 40 Basis Points (.40%) |

*Fees are paid quarterly in arrears and are based on the ending market value of the portfolio.*