IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
Case No. 1:16-cv-1174

| | |
|---|---|
| NORTH CAROLINA MUTUAL LIFE INSURANCE COMPANY, a North Carolina corporation,<br><br>Plaintiff,<br><br>vs.<br><br>STAMFORD BROOK CAPITAL, LLC, a Delaware limited liability company, *et al.*<br><br>Defendants. | **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**<br>**Rule 9(b) and Rule 12(b)(6)** |

Defendants Forefront Capital Holdings, LLC ("Forefront Capital"); Stamford Brook Capital, LLC ("Stamford Brook"); Bradley Cole Reifler; and Michael Flatley (collectively, the "Forefront Defendants") file this memorandum in support of the their motion to dismiss pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## NATURE OF THE CASE

Plaintiff North Carolina Mutual Life Insurance Company ("North Carolina Mutual") filed this complaint based on allegation that certain funds held in trust by defendants Port Royal Reassurance Company SPC, LTD. and Summit Trust Company,

---

[1] "Forefront Capital, LLC" is also a named defendant in the Complaint. Such an entity apparently exists in Delaware, but it has no relation to Forefront Capital Holdings, LLC or any of the parties in this matter.

3520084

were allegedly invested in categories of investments not approved for investment under state insurance laws applicable to North Carolina Mutual, the trust beneficiary. It is undisputed that the trustee is Summit Trust Company ("Summit"); that the grantor is Port Royal Reassurance Company SPC, Ltd. ("Port Royal"), North Carolina Mutual's reinsurer; and that the Forefront Defendants were not a party under the trust agreement or any agreement with North Carolina Mutual.

The Complaint alleges that certain restrictions were placed on the manner in which the trust funds could be invested by Port Royal. Plaintiff then asserts that due to various acts of noncompliance under the trust agreement by Port Royal and Summit, North Carolina Mutual, a year and a half after the investments were made, now needs an accounting against Summit and Port Royal (Count I). North Carolina also filed several claims for relief in shotgun fashion -- before any accounting is provided or authentication of records is made -- to includea claim for breach of contract against Stamford Brook (Count III), claims for breach of fiduciary duty, constructive fraud, actual fraud, and unfair and deceptive trade practices against the Forefront Defendants collectively (Counts IV–VII), claims for piercing the corporate veil and civil conspiracy against Reifler and Flatley individually (Counts VIII and IX), and a claim for injunctive relief (Count X). The Forefront Defendants assert that several each of the claims filed against them collectively (Counts IV–VII) fail to state a claim upon which relief can be granted, and therefore should be dismissed pursuant to Fed R. Civ. P. 12(b)(6).

## QUESTIONS PRESENTED

(1) Does the Complaint allege valid claims for breach of fiduciary duty or constructive fraud where the Forefront Defendants' only direct relationship was with Port Royal?

(2) Does the Complaint plead an actual fraud claim with sufficient particularity by alleging solely that the Forefront Defendants made misrepresentations "on numerous occasions," without further allegations?

(3) Does the Complaint plead a valid claim under N.C. Gen. Stat. § 75-1.1 where the allegations of the Complaint concern securities transactions and do not constitute fraud or constructive fraud?

## RELEVANT FACTS ALLEGED IN THE COMPLAINT[2]

As alleged in the Complaint, North Carolina Mutual entered into an indemnity reinsurance agreement with Port Royal, pursuant to which Port Royal "accepted and reinsured on a one-hundred percent (100%) coinsurance basis certain risks, liabilities, and obligations of North Carolina Mutual under certain of its life-insurance policies and annuity contracts." Compl. ¶ 14, ECF No. 1. To ensure Port Royal's ability to meet its reinsurance obligations, North Carolina and Port Royal also entered into a Trust Agreement under which Port Royal was required to deposit substantial cash reserves (the

---

[2] Many of the facts stated in the complaint are false and based upon invalid documents. Indeed, Plaintiff acknowledges in its complaint that it needs an accounting to verify the facts. Thus, the facts recited in this memorandum are based on the complaint's allegations, and are deemed true solely for purposes of this motion to dismiss.

"Trust Funds") into a trust account (the "Trust"). North Carolina Mutual is the beneficiary of the Trust, and Summit is the trustee. Compl. ¶ 16–18. The Trust Agreement placed certain restrictions on the manner in which the Trust Funds could be invested. Compl. ¶ 25; Compl. Ex. A. § 4(b), ECF No. 1-1.

The Trust Agreement permits Port Royal to appoint an Investment Manager "to manage the investment of the Assets in the Trust Account and any subaccounts thereof." Compl. ¶ 23, Ex. A § 4(d). The Trust Agreement states that Port Royal has appointed Stamford Brook as the Investment Manager. Compl. Ex. A § 4(d). Stamford Brook is allegedly "an affiliate and/or subsidiary of Forefront Capital Holdings." Compl. ¶ 40. However, the Complaint admits that on September 1, 2016, Forefront Capital sent North Carolina Mutual a letter informing it that Stamford Brook "is and always has been a dormant company that never operated in any capacity." Compl. ¶ 68; *id.* Ex. I, ECF No. 1-9. There is no allegation that Stamford Brook undertook any action or took any steps as the so-called "investment advisor."

North Carolina Mutual was given two different Investment Advisory Agreements, purporting to be executed by Stamford Brook and Port Royal. The terms of the two Investment Advisory Agreements are identical, but the signature blocks are different. For one, an illegible signature and no printed name appears on behalf of Stamford Brook, and the signature of Stephen H. Fickes appears on behalf of Port Royal. Compl. Ex. B at 4, ECF No. 1-2. North Carolina Mutual alleges that this is the "true" Investment Advisory Agreement, and that the illegible signature is that of "David Wasitowski, as Forefront

4

3520084

Capital Holdings' CFO on behalf of Stamford Brook." Compl. ¶ 30. The other alleged investment advisory agreement, which North Carolina Mutual dubs the "fraudulent" Investment Advisory Agreement, purports to be signed by Bradley Reifler on behalf of Stamford Brook and by Michael Flatley on behalf of Port Royal. Compl. ¶ 32; Compl. Ex. C at 4, ECF No. 1-3. Flatley, however, "has never held any position with Port Royal, in any capacity." Compl. ¶ 32.

North Carolina Mutual cites several other documents in the Complaint, including (1) a purported "List of Authorized Signers" for the Trust that included Reifler and Flatley as authorized signers, despite the fact that Reifler and Flatley were not in fact authorized signers for the Trust, Compl. ¶¶ 35–37; Compl. Ex. D, ECF No. 1-4; (2) a letter purporting to be from Reifler to North Carolina Mutual on the putative letterhead of Forefront Capital Holdings, LLC, stating that Stamford Capital is wholly owned by Reifler, Compl. ¶ 41; Compl. Ex. E, ECF No. 1-5; and (3) a second letter from Reifler to North Carolina Mutual, on a different Forefront Capital letterhead, which Reifler allegedly signed as "Founder & Trustee" of Forefront Capital. Compl. ¶ 42, Compl. Ex. F, ECF No. 1-6.

Though there is clearly no privity between North Carolina Mutual and any Forefront Defendant, North Carolina alleges that the various documents and allegations in the Complaint somehow show that Port Royal allowed one or more of the Forefront Defendants to invest the Trust funds in a manner that allegedly did not comply with the Trust Agreement's restrictions on types of investments, or with the Trust Agreement's

5

3520084

Case 1:16-cv-01174-LCB-JEP   Document 26   Filed 10/26/16   Page 5 of 15

requirement that the Trustee receive prior written approval from North Carolina Mutual before permitting the substitution of any asset from the Trust Account. Compl. ¶¶ 43–46. North Carolina Mutual asserts in broad strokes, without any specificity or detail, that the assets in which the Trust Funds allegedly were invested "were either directly or indirectly linked to the Forefront Entities." Compl. ¶ 43. Specifically, the Complaint alleges that the Forefront Defendants invested a portion of the Trust Funds "as 'seed funding' for the Forefront Income Trust," and a portion of the Trust Funds in various promissory notes made by various Forefront-related entities. Compl. ¶ 45.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the Court must accept as true the factual allegations in the complaint, "[b]are legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

A plaintiff alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." The specific circumstances required to be pleaded with particularity are "the time, place, and contents of the false representations,

6

3520084

Case 1:16-cv-01174-LCB-JEP   Document 26   Filed 10/26/16   Page 6 of 15

as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Wright & Miller, *Federal Practice and Procedure: Civil* § 1297, at 590 (2d ed. 1990)). This heightened pleading standard for fraud claims "aims to provide defendants with fair notice of claims against them and the factual ground upon which they are based, forestall frivolous suits, prevent fraud actions in which all the facts are learned only following discovery, and protect defendants' goodwill and reputation." *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013).

## ARGUMENT

North Carolina Mutual's Complaint fails to state a claim upon which relief can be granted against the Forefront Defendants as to Count IV, breach of fiduciary duty; Count V, constructive fraud; Count VI, actual fraud; and Count VII, unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1.

The breach of fiduciary duty and constructive fraud claims fail because the Complaint does not plausibly allege that a fiduciary relationship exists between the Forefront Defendants and North Carolina Mutual. The actual fraud claim fails because the Complaint does not plead the circumstances of fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure, and because the Complaint does not plausibly allege that North Carolina Mutual has suffered damages. The section 75-1.1 claim fails because the Forefront Defendants have not engaged in any unfair or deceptive act or practice, and because section 75-1.1 does not apply to securities transactions.

7

3520084

Case 1:16-cv-01174-LCB-JEP Document 26 Filed 10/26/16 Page 7 of 15

**I.     The Complaint fails to state a claim for breach of fiduciary duty and constructive fraud because no fiduciary relationship exists between North Carolina Mutual and the Forefront Defendants.**

"To survive a motion to dismiss, a cause of action for constructive fraud must allege (1) a relationship of trust and confidence, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that plaintiff was, as a result, injured." *White v. Consol. Planning, Inc.*, 603 S.E.2d 147, 156 (N.C. Ct. App. 2004). And "[l]ike constructive fraud, '[a] claim for breach of fiduciary duty requires the existence of a fiduciary relationship.'" *Ward v. Fogel*, 768 S.E.2d 292, 300 (N.C. Ct. App. 2014) (quoting *White*, 603 S.E.2d at 155). Thus, both claims fail unless the requisite fiduciary relationship is plausibly alleged.

"A fiduciary relationship is generally described as arising when 'there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.'" *Dallaire v. Bank of Am.*, 760 S.E.2d 263, 266 (N.C. 2014) (quoting *Green v. Freeman*, 749 S.E.2d 262, 268 (N.C. 2013)). Several types of relationships involve fiduciary duties by their nature, such as the relationships between spouses, between an attorney and client, and between a trustee and beneficiary. *Id.* But normal business relationships do not create a fiduciary relationship. "North Carolina courts have generally refused to recognize a fiduciary relationship between . . . businesses with equal bargaining positions negotiating at arm's length." *McCants v. Nat'l Collegiate Athletic Ass'n*, __ F. Supp. 3d __, 2016

8

3520084

Case 1:16-cv-01174-LCB-JEP   Document 26   Filed 10/26/16   Page 8 of 15

WL 4272362, at *10 (M.D.N.C. Aug. 12, 2016) (citing *Strickland v. Lawrence*, 627 S.E.2d 301, 306 (N.C. Ct. App. 2006)).

Here, any fiduciary duty owed to North Carolina Mutual would be on the part of Summit, North Carolina Mutual's trustee, or Port Royal, North Carolina's reinsurer and the grantor of the Trust Funds. Unlike Summit and Port Royal, the Forefront Defendants never entered into any direct relationship at all with North Carolina Mutual, much less any relationship that could give rise to a fiduciary duty.

The Complaint alleges that the Forefront Defendants owed a fiduciary duty to North Carolina Mutual due to their status as investment advisors for the Trust Funds. Compl. ¶¶ 122. But the purported Investment Advisory Agreements attached to the Complaint make clear that the Forefront Defendants' only relationship was with Port Royal. The Investment Advisory Agreements list Port Royal as the client, not North Carolina Mutual. Indeed, North Carolina Mutual's name does not appear in the Investment Advisory Agreements. Because no fiduciary relationship exists between the Forefront Defendants and North Carolina Mutual, North Carolina Mutual has failed to state a claim upon which relief can be granted for either breach of fiduciary duty or constructive fraud. *McCants*, 2016 WL 4272362, at *10; *Angell v. Kelly*, 336 F. Supp. 2d 540, 551 (M.D.N.C. 2004). Thus, Counts IV and V of the Complaint must be dismissed.

Moreover, the claims for breach of fiduciary duty and constructive fraud should also be dismissed because North Carolina Mutual had failed to plead any valid damages flowing from any alleged breach of fiduciary duty. *See Nakell v. Liner Yankelevitz*

*Sunshine & Regenstreif, LLP*, 394 F. Supp. 2d 762, 771 (M.D.N.C. 2005) (noting that North Carolina law requires an allegation of damages is required to support both constructive fraud and breach of fiduciary duty claims). North Carolina Mutual does not allege that any investment has lost money, or that any investment has caused damage. As explained in the Forefront Defendant's response to North Carolina Mutual's motion for preliminary injunction, the only thing North Carolina Mutual complains of is speculation about how the North Carolina Department of Insurance may act. Without pleading actual damages, however, North Carolina Mutual has not sufficiently pled these counts to state a claim for relief. *Nakell*, 394 F. Supp. At 771.

II. **The Complaint fails to state a claim for actual fraud because the allegations of misrepresentation lack sufficient particularity and fail to plausibly allege damages.**

To state a claim for actual fraud, a plaintiff must plausibly allege the following elements: "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Forbis v. Neal*, 649 S.E.2d 382, 387 (N.C. 2007). The plaintiff must allege with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison*, 176 F.3d at 784; *see* Fed. R. Civ. P. 9(b). Here, North Carolina Mutual has failed to allege any misrepresentation on the part of the Forefront Defendants with sufficient particularity, and has also failed to plausibly allege that it was damaged by any such misrepresentation.

10

### A. The Complaint does not allege any misrepresentation on the part of the Forefront Defendants with sufficient particularity.

As to the time, place, and contents of the alleged false representations, the Complaint alleges solely that "on numerous occasions, Reifler and Flatley stated that they understood the requirement that they invest the Trust Assets" in compliance with the investment restrictions in the Trust Agreement, but that Reifler and Flatley in fact never intended to comply with those restrictions. Compl. ¶¶ 133–34. Those allegations, however, do not identify when or where Reifler or Flatley made such representations to North Carolina Mutual. Allegations of misrepresentations that fail to identify the individual recipients of the misrepresentation and that are "lacking even a year and season, [are] not particular enough" and should be dismissed. *Topshelf Management, Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 726 (M.D.N.C. 2015). The vagueness of North Carolina Mutual's fraud allegations suggest that North Carolina Mutual does not have the sort of "substantial prediscovery evidence" of fraud that Rule 9(b) requires. *Harrison*, 176 F.3d at 784.

In fact, the only purported representation in the Complaint made by the Forefront Defendants regarding compliance with the investment restrictions in the Trust Agreement is a letter from Reifler to North Carolina Mutual dated July 13, 2016, in which Reifler purportedly acknowledges that certain investments were not compliant with the Trust Agreement and explains his strategy for remedying that problem as soon as possible. Compl. Ex. F. That communication evinces not fraud or misrepresentation, but rather a good-faith effort to comply with the relevant restrictions that apply to North Carolina

11

Mutual. Because North Carolina Mutual has filed to identify any particular instance in which any Forefront Defendant misrepresented a material fact to it, it has failed to state a claim for actual fraud. *Topshelf Management*, 117 F. Supp. 3d at 726–27. Thus, Count VI should be dismissed.

### B. The Complaint does not plausibly allege damages associated with Forefront Capital's management of the Trust Funds.

The Complaint also fails to plausibly allege that any alleged misrepresentation on the part of the Forefront Defendants resulted in damage to North Carolina Mutual, which is a necessary element of a fraud claim. "Damage in a fraud case 'is the amount of loss caused by the difference between what was received and what was promised through a false representation.'" *Collier v. Bryant*, 719 S.E.2d 70, 80 (N.C. Ct. App. 2011) (quoting *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 507 S.E.2d 56, 65 (N.C. Ct. App. 1998)).

Here, the Complaint states only that "North Carolina Mutual has been damaged," but provides no detail as to the nature of those damages or how they may have been caused by the actions of the Forefront Defendants. Notably, the Complaint does not allege any diminution in value of the Trust Funds as a result of the Forefront Defendants' management of those funds. It does not allege that North Carolina Mutual has been subject to any enforcement action by the North Carolina Department of Insurance regarding the management of the Trust Funds. And it does not allege any other way in which North Carolina Mutual may have been damaged. Without a plausible allegation of damages, North Carolina Mutual's fraud claim cannot succeed. *See, e.g.*, *Comer v.*

12

3520084

Case 1:16-cv-01174-LCB-JEP   Document 26   Filed 10/26/16   Page 12 of 15

*Person Auto Sales, Inc.*, 368 F. Supp. 2d 478, 486 (M.D.N.C. 2005); *Wall v. Fry*, 590 S.E.2d 283, 287 (N.C. Ct. App. 2004).

"Bare legal conclusions ... are insufficient to state a claim." *King*, 825 F.3d at 214. As to damages, however, bare legal conclusions are all North Carolina Mutual has been able to muster. For this reason also, North Carolina Mutual has failed to state a claim for actual fraud, and Count VI should be dismissed.

### III. The Complaint fails to state a claim for unfair and deceptive trade practices because securities transactions are not subject to such claims.

A claim for unfair or deceptive trade practices under N.C. Gen. Stat. § 75-1.1 requires a party to plausibly allege "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." *Walker v. Fleetwood Homes of N.C., Inc.*, 653 S.E.2d 393, 399 (N.C. 2007). North Carolina Mutual's section 75-1.1 claim appears to be based entirely on the fraud claims discussed above. *See Compton v. Kirby*, 577 S.E.2d 905, 918 (N.C. Ct. App. 2003) ("Plaintiffs can assert both UDTP violations under N.C. Gen. Stat. § 75-1.1 and fraud based on the same conduct or transaction."). Because the Complaint does not allege valid fraud claims, the Chapter 75 claim must also fail.

Moreover, even if the Complaint had stated a valid claim for fraud, constructive fraud, or breach of fiduciary duty, its section 75-1.1 claim must fail because claims based on securities transactions are not subject to section 75-1.1. *Dalton v. Camp*, 353 N.C. 647, 657 (N.C. 2001); *HAJMM Co. v. House of Raeford Farms, Inc.*, 403 S.E.2d 483, 492 (N.C. 1991); *Skinner v. E.F. Hutton & Co.*, 333 S.E.2d 236, 241 (N.C. 1985). This is

13

3520084

Case 1:16-cv-01174-LCB-JEP   Document 26   Filed 10/26/16   Page 13 of 15

because "to extend the [North Carolina Unfair and Deceptive Trade Practices] Act to securities transactions would create overlapping supervision, enforcement, and liability in this area, which is already pervasively regulated by state and federal statutes and agencies." *HAJMM Co.*, 403 S.E.2d at 493. Forefront's alleged wrongdoing in this cases consists entirely of actions associated with securities transactions. For this reason as well, this Court should dismiss North Carolina Mutual's section 75-1.1 claim.

## CONCLUSION

For the reasons stated above, this court should dismiss Counts IV, V, VI, and VII of the Complaint pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted.

This the 26th day of October, 2016.

> SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, LLP
>
> /s/ J. Mitchell Armbruster
> James K. Dorsett, III
> N.C. State Bar Number 7695
> Email: jdorsett@smithlaw.com
> J. Mitchell Armbruster
> Email: marmbruster@smithlaw.com
> N.C. State Bar Number 26422
> P.O. Box 2611
> Raleigh, NC 27602-2611
> Telephone: (919) 821-1220
> Facsimile: (919) 821-6800
> *Attorneys for Defendants*
> *Forefront Capital Holdings, LLC*
> *Stamford Brook Capital, LLC*
> *Bradley Cole Reifler*
> *Michael Flatley*

14

3520084

# CERTIFICATE OF SERVICE

I hereby certify that on October 26th, 2016, I electronically filed the foregoing document with the Clerk using the CM/ECF system which will send notification to counsel of record as follows:

Michael Keith Kapp
Williams Mullen
301 Fayetteville Street, Suite 1700
Raleigh, NC 27601
(919) 981-4024
Fax: (919) 981-4300
Email: kkapp@williamsmullen.com

This the 26th day of October, 2016.

SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, LLP

/s/ J. Mitchell Armbruster
James K. Dorsett, III
N.C. State Bar Number 7695
Email: jdorsett@smithlaw.com
J. Mitchell Armbruster
Email: marmbruster@smithlaw.com
N.C. State Bar Number 26422
P.O. Box 2611
Raleigh, NC 27602-2611
Telephone: (919) 821-1220
Facsimile: (919) 821-6800
*Attorneys for Defendants*
*Forefront Capital Holdings, LLC*
*Stamford Brook Capital, LLC*
*Bradley Cole Reifler*
*Michael Flatley*

15