IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA, DURHAM DIVISION
Civil Action No.: 1:16-cv-1174

| | |
|---|---|
| **NORTH CAROLINA MUTUAL LIFE INSURANCE COMPANY**, a North Carolina corporation,<br><br>     Plaintiff,<br><br>v.<br><br>**STAMFORD BROOK CAPITAL, LLC**, a Delaware limited liability company, *et al*.<br><br>     Defendants. | **DEFENDANT BRADLEY REIFLER'S COUNTERCLAIM AND THIRD-PARTY COMPLIANT**<br><br>**(Negligence, Negligence *per se*, Fraud, Respondeat Superior)** |
| **BRADLEY REIFLER,**<br><br>     Counter-Plaintiff,<br><br>v.<br><br>**NORTH CAROLINA MUTUAL LIFE INSURANCE COMPANY**, a North Carolina corporation,<br><br>     Counter-Defendant. | |
| **BRADLEY REIFLER,**<br><br>     Third-Party Plaintiff,<br><br>v.<br><br>**MICHAEL L. LAWRENCE**, individually and in his capacity of an authorized employee of North Carolina Mutual Insurance Company and **JAMES H. SPEED, JR**. individually and in his capacity of an authorized employee of North Carolina Mutual Insurance Company<br><br>     Third-Party Defendants. | |

## COUNTERCLAIM and THIRD-PARTY COMPLAINT

Defendant/Counterclaimant, Bradley Reifler (hereinafter "Reifler"), *pro se* and, for his Counterclaim against Plaintiff/Counter-Defendants, North Carolina Mutual Life Insurance Company (hereinafter "NCM") and its CEOs, employees, directors, and/or agents James H. Speed, Jr. and Michael Lawrence, both individually and in their capacity as CEO an authorized employee of North Carolina Mutual, hereby alleges as stated below.

## BACKGROUND

North Carolina Mutual Life Insurance Company ("North Carolina Mutual"), offers insurance and financial services to individuals and groups, wherein it manages said policies ("portfolio"). North Carolina Mutual was facing losing $600,000 per year, as non-party Markel Bermuda, Limited ("Markel") wanted to cease investing the reserve that North Carolina Mutual serviced.

Steve Fickes ("Fickes"), Port Royal Reassurance Company SPC, Ltd. ("Port Royal"), had a long-standing business relationship with North Carolina Mutual. Based upon that relationship, he became aware of Markel wanting to sell the portfolio which put North Carolina Mutual at risk of losing its servicing contract.. Fickes began looking for investors to finance the purchase of the reserve portfolio, that is, to manage the reserves and select the servicer. Fickes met with Michael Flatley ("Flatley"), Managing Director of Forefront, and had discussions regarding North Carolina Mutual needing to find a new servicer to handle its' portfolio. After several discussions were held between Flatley and

Fickes they decided to move forward to learn more from North Carolina Mutual. A short time later, Port Royal, Summit Trust Company ("Summit Trust") and North Carolina Mutual entered into a Reinsurance Trust Agreement ("Trust Agreement"). Forefront and Reifler are *not* a part of the Trust Agreement, nor had any input and therefore, never knew its contents thereto or that it even existed until much later when events began to unfold.

Reifler and his team at Forefront have strength and expertise in providing sound investment advice and were asked to provide such services to Port Royal and nothing further.

North Carolina Mutual and its CEOs, James H. Speed, Jr. ("Speed") and Michael Lawrence ("Lawrence") (collectively "CEOs") failed to adhere to its own agreements, policies, procedures and more specifically, the regulations of North Carolina Department of Insurance ("NCDOI") and state laws of North Carolina by failing to review investment recommendations submitted to them by Port Royal. North Carolina Mutual was to perform a second thorough regulatory oversight for all investment recommendations made to Port Royal, verifying they each one met the strict guidelines for Eligible Assets, as defined in Section II of the Trust Agreement. An Eligible Asset under the Trust Agreement - meaning cash or those securities specified in the investment guidelines attached to the Trust Agreement. Rather than performing its legal and/or ethical responsibilities of a fiduciary, North Carolina Mutual simply did nothing until they were audited. In fact, they did not follow their review and control procedures to prevent ineligible investments from being made.

It was not until one plus year later, when North Carolina Mutual was undergoing an audit from the North Carolina Department of Insurance it became alarmed as it knew they had dropped the ball in failing to perform its fiduciary duties. North Carolina Mutual only seemed to be concerned in taking their $600K annual fees.

When the negligence of North Carolina Mutual began to unfold during the audit, it began scrambling to point fingers in an attempt to blame innocent entities and/or individuals, specifically, Forefront and Reifler in being negligent, even though North Carolina Mutual had a clear understanding and knowledge from the very beginning that Forefront and Reifler were not offering any services and/or performing any fiduciary duties on their behalf but strictly their expertise of sound investment advice.

North Carolina Mutual is attempting to not only blame Forefront and/or Reifler to take the fall for them but has caused Reifler irreparable harm to him including defaming his reputation, character and livelihood by a causing him severe financial harm. Reifler, respectfully requests this Court find North Carolina Mutual and its CEO Lawrence, liable and award him the relief requested in this Counterclaim.

## PARTIES

1.    Defendant/Counter-Claimant Bradley Reifler is an individual who is a resident of New York and conducts business in New York.

2.    Upon information and belief, Plaintiff/Counter-Defendant North Carolina Mutual Insurance Company, is a mutual insurance company organized and existing under

the law of North Carolina and has its principal office and place of business in Durham, North Carolina.

3.     Michael Lawrence, individually and in his capacity as an employee of North Carolina Mutual, resides and works in North Carolina for North Carolina Mutual.

4.     James H. Speed, Jr. individually and in his capacity as an employee of North Carolina Mutual, resides and works in North Carolina for North Carolina Mutual.

## JURISDICTIONAL STATEMENT AND VENUE

5.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332 as there is diversity of citizenship of the parties and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

6.     Venue is proper in the Middle District of North Carolina pursuant to 28. U.S.C. § 1391(b)(2) because it is a judicial district in which a substantial part of the events giving rise to the claims having occurred.

## FACTUAL ALLEGATIONS

**A.     Forefront and Bradley Reifler's Strengths and Expertise Made Known to North Carolina Mutual and its Former CEO, James H. Speed, Jr. and its New and Current CEO Michael L. Lawrence.**

7.     Steve Fickes ("Fickes"), Port Royal Reassurance Company SPC, Ltd. ("Port Royal"), a long-time friend and business associate met with Michael Flatley, a senior director of Forefront to discuss North Carolina Mutual needing a friendly buyer of the portfolio that was being sold by Markel. If unsuccessful, then the $600,000 that North Carolina was being paid annually to service the portfolio would be at risk. Fickes knew

Case 1:16-cv-01174-LCB-JEP   Document 118   Filed 10/01/18   Page 5 of 43

that Forefront and Reifler offered great knowledge with sound investment advice. Flatley, Reifler, and Fickes flew to North Carolina Mutual to meet with their senior executive management team in late 2014 to discuss their strengths and expertise and the loan to Port Royal.

8. During this meeting the senior executive team for North Carolina Mutual were informed that Forefront and Reifler had a strong history of providing sound investment advice.

9. North Carolina Mutual and its CEO, James H. Speed, Jr. ("Speed") and/or Michael Lawrence ("Lawrence") (collectively "CEO") was fully aware that Forefront and Reifler are not experienced and/or experts in the insurance industry and are not familiar with any regulations and/or laws for State of North Carolina.

10. North Carolina Mutual was informed of the investment history of Reifler and that he and his team at Forefront could recommend solid investments to Port Royal, a reinsurance company owned and operated by their friend and business associate, Fickes.

11. North Carolina Mutual has never discussed or entered into any agreement with Forefront and/or Reifler to perform any duties or tasks, especially those of a fiduciary.

12. North Carolina Mutual is and continues to be fully aware that Forefront and Reifler are not experts in the insurance industry.

13. North Carolina Mutual had no contact whatsoever with Reifler or Forefront, as there was no reason and/or obligation to after Port Royal acquired the reserve portfolio

from Markel as Forefront and/or Reifler did not deal and/or report to North Carolina Mutual.

14.     It was only after North Carolina Mutual was audited by the North Carolina Insurance Department that they reached out Forefront and/or Reifler because it failed to do its own required due diligence on the recommended investments making sure they were "Eligible Assets" under North Carolina insurance statues.

15.     North Carolina Mutual had the duty to insure that it had the proper control and procedures in place with Port Royal and Summit Trust Company ("Summit Trust") to insure that all investments were proper under the North Carolina Insurance Statutes.

16.     North Carolina Mutual did not make Reifler or Forefront party to **any** agreement as they understood exactly what Reifler and Forefront would be providing.

**B.      Bradley Reifler, Forefront and/or Stamford Brook Will Not be Investment Advisor Per Verbal Agreement With Port Royal and Not As North Carolina Mutual has Claimed.**

17.     Reifler and Fickes agreed that Forefront would strictly provide investment recommendations to Port Royal and it (Port Royal) would do all the regulatory duties and reporting work that was required to North Carolina Mutual. *See* Exhibits 1 and 2. Exhibit 1, Email exchange between Fickes and Reifler confirming Fickes is the liability expert and not Reifler, dated December 3, 2014 at 1:47 p.m. Exhibit 2, Email from Fickes to Reifler and cc'ing Flatley, stating he (Fickes) the lawyer he spoke to yesterday, sent him copies of all the investment statues for North Carolina and he knew enough to get started reviewing the investment recommendations (***emphasis added***) dated April 12, 2014 at 5:18.

18.     There is no possible way that North Carolina Mutual or its CEO's false accusations claiming that Reifler, Forefront or Stamford Brook would have agreed to taking any responsibility or roles as the investment advisor as Reifler makes it very clear when he says in his email I ". . . just do not want to have weeks of analysis to approve investments . . . I think to address the asset management side like you originally proposed . . . and we convince each other whether to move forward or not. . . our respective skills are tied together." (*emphasis added*). *See* Exhibit 1, dated December 3, 2014.

19.     Reifler made it very clear on December 3, 2014 that at no time would Forefront take on the responsibility as the investment advisor, well over four (4) months before the Trust Agreement was executed.

20.     Fickes clearly admits that Forefront Partners *never* served in the capacity of the advisor. *See* Exhibit 3, Email from Fickes to Flatley regarding drafting of agreement between Port Royal and Forefront (*that was never finalized*) wherein Forefront *never* served at any time in a capacity as an investment advisor, dated March 3, 2017 at 4:40 p.m.[1]

21.     Stamford Brook was immediately pulled from the equation upon Reifler learning the truth as to what an investment advisor would entail.

22.     Reifler and/or any other person ever filed for an EIN for Stamford Brook, which is required for any company in order to receive any income.

---

[1] The document this was found in Dropbox that was attached to the described email but cannot confirm the date of origination of the document nor the remaining parts of the document.

23.     At no time did Reifler and/or any other person open a bank account for Stamford Brook.

24.     At no time was an operating agreement created for Stamford Brook.

25.     When North Carolina Mutual received the investment recommendations from Port Royal, North Carolina Mutual was then responsible to perform its own inspection (a second inspection) to verify that the investment recommendations met their required Eligible Asset criteria.  When North Carolina received a funding request, they were then supposed to review the investment and sign the authorization for Summit Trust to fund the requested amount.  At any time, they could have not funded the investment if it did not meet the eligibility requirements of the North Carolina Insurance Commission and/or State law for North Carolina.

26.     The only authorized entity to sign the funding request was North Carolina Mutual.  No other entity or person had such authorization at any time.

27.     Forefront and Reifler *never* held any authorization to sign off on any funding or investment approval.

28.     Once Reifler and/or his team at Forefront made investment recommendations to Port Royal, their job was complete.

29.     At no time did Forefront and/or Reifler have any authority to authorize any type of funding for any investment recommendations, as this was *never* their responsibility and/or duty.

Case 1:16-cv-01174-LCB-JEP   Document 118   Filed 10/01/18   Page 9 of 43

30.     Port Royal borrowed $5 million dollars from Forefront to acquire the reserve portfolio from Markel ***and*** agreed that North Carolina Mutual would remain servicer and receive its $600K a year in servicing fees.

31.     North Carolina Mutual and its CEO was in full agreement with Reifler and/or Forefront loaning the $5 million dollars to Port Royal to purchase the portfolio as it stood losing its annual revenue of $600K.

**C.     Responsibilities of North Carolina Mutual, its CEO and Not Those of Stamford Brook Capital, Bradley Reifler or Forefront.**

32.     Michael Lawrence ("Lawrence") is the current CEO of North Carolina Mutual and at all times was acting in his capacity as an employee, agent and/or director of his employer North Carolina Mutual Insurance Company.

33.     James H. Speed, Jr. is the former CEO of North Carolina Mutual and at all times was acting in his capacity as an employee, agent and/or director of his employer North Carolina Mutual Insurance Company.

34.     Lawrence and Speed were at all times authorized in their capacity with North Carolina Mutual to make decisions, including authorizing and signing off on investment recommendations on behalf of their employer, North Carolina Mutual at any given time.

35.     Lawrence had the responsibility of insuring that the duties and responsibilities for any and all agreements entered into, specifically the Trust Agreement between North Carolina Mutual and Port Royal were followed at all times regardless of the fact that it was signed by Speed.

36.     Lawrence was fully aware that Stamford Brook Capital, LLC ("Stamford Brook"), at all times was *not* the advisor.  See Exhibit 4, Email from M. Lawrence to R. Barnes and C. Hobgood dated August 18, 2016 at 7:46 p.m., attached hereto.

37.     Lawrence was fully aware that Stamford Brook did not hold the position of advisor. *See* Exhibits B and C to Plaintiff's Complaint, Exhibit B, 1st Investment Advisory Agreement with *forged* signature claimed to be Bradley Reifler's, and Exhibit C, 2nd Investment Advisory Agreement with *forged* signature and printed name reflecting Bradley Reifler's name and Exhibit 5, a 3rd Investment Advisory Agreement with forged printed name and signature reflecting Bradley Reifler's name, attached hereto.  Further, Lawrence even admitted in an email ". . . the provision on Stamford Brook Capital (i.e. Forefront) being advisor is also not acceptable.  We can put Port Royal in that place or remove from agreement." *See* Exhibit 4, Email of Lawrence to R. Barnes and C. Hobgood dated August 18, 2016 at 7:46 p.m., attached hereto.

**D.     North Carolina Mutual and its CEOs James H. Speed, Jr. and Michael L. Lawrence are Experienced in Servicing Loans Not Forefront and/or Bradley Reifler:**

38.     North Carolina Mutual was founded in 1898 and serves the insurance needs of groups and individuals alike.

39.     North Carolina Mutual, its former CEO Speed, current CEO Lawrence and/or its employees, agents, contractors, attorneys, are very experienced in life insurance and financial services.

40. North Carolina Mutual, Speed and Lawrence are familiar with its very own policies, regulatory obligations, State laws of North Carolina, North Carolina Insurance Department regulations and their fiduciary duties.

41. North Carolina Mutual, Speed and Lawrence are the best and most experienced and knowledgeable entity and/or induvial to inspect and determined if any investment recommendations would meet their Eligibility Asset criteria.

42. North Carolina and/or Lawrence has wrongfully accused Bradley Reifler in being the advisor for the portfolio which is completely fabricated. Bradley Reifler is not and has never been or claimed to be an expert in servicing loans and/or an expert in the insurance industry. *See* Exhibits 1, 2, 3 and 4.

43. Reifler has always clearly informed North Carolina Mutual and both of its CEOs James J. Speed, Jr and Michael Lawrence his strengths and expertise are strictly in providing solid and sound investment advice, wherein each acknowledged his area of expertise.

**E.** **North Carolina Mutual and its CEO, Michael Lawrence had a Check System in Place with Port Royal Being the First to Verify Investment Recommendations, North Carolina Mutual as the Second to Verify and Summit Trust Requiring a Signature From North Carolina Mutual Before it Released Funds for an Approved Investment.**

44. North Carolina Mutual instituted a strict process and procedure to ensure that any investment recommendations made by Reifler and/or Forefront would be checked by other entities.

45.     Reifler and/or Forefront was to focus on their expertise by recommending sound solid investment recommendations to Port Royal.

46.     Once Port Royal reviewed and determined if the investment recommendations met the Eligible Asset criteria they would then forward to North Carolina Mutual for its review and/or approval.

47.     After North Carolina Mutual reviewed the investment recommendations forwarded to it by Port Royal it was then their responsibility to determine if said investment recommendations met the Eligible Asset criteria and if they did, they were then forward to Summit Trust for their review and/or their approval.

48.     Summit Trust was responsible to wire the funds which were approved and signed off by North Carolina Mutual as proof as authorization for the investment.

49.     North Carolina Mutual is fully aware that per its Trust Agreement at no time was Reifler and/or Forefront responsible for making investments recommendations that met any criteria within the Eligible Asset requirements and especially for it to rely on a forged agreement is absurd due to its failure to perform its own responsibilities and/or duties to verify its contents are accurate.

50.     North Carolina Mutual and Lawrence is yet further

**F.      North Carolina Mutual Needed to Find a New Managing Entity to Purchase its Reserved Portfolio Markel In Order to Continue to Receive its $600K in Annual Income.**

51.     North Carolina Mutual has and continues to be in the insurance industry and has been since 1898.

52.     North Carolina Mutual had to find a party that would buy the reserve portfolio from Markel *and* continue to use North Carolina Mutual's services allowing North Carolina Mutual to maintain and receive its approximately $600,000 per year profits.

53.     North Carolina Mutual faced losing approximately $600,000 per year in revenue if they did not find a friendly buyer to manage its portfolio and who would allow it to maintain servicing it.

### G.     Steve Fickes was Asked to Find Financing so his Company, Port Royal, Would Maintain North Carolina Mutual's Services.

54.     Because Steve Fickes held a long-standing relationship with North Carolina Mutual, he was asked to find financing so North Carolina Mutual would not lose its $600K per year in revenue.

55.     Fickes was able to obtain funding from Reifler and his team at Forefront so he could pick up the servicing of the portfolio and North Carolina Mutual would continue to receive its $600K per year in revenue.

56.     Fickes knew from early conversations that Forefront and Reifler wanted to seed Forefront Income Trust and invest in Forefront Partners. Apparently, Steve Fickes spoke to North Carolina Mutual and relayed this desire. Port Royal came back and said that those investments could be made and sent Reifler General Statute § 58-7-173.

57.     Lawrence colluded with Fickes to insure that Forefront and Reifler would loan 5M to Port Royal which would secure that North Carolina would continue to make $600,000 a year. More specifically, they underlined the portion that states "An insurer may

invest in stocks, common or preferred, of any corporation created or existing under the laws of any foreign country other than Canada subject to the provisions of N.C. Gen. § 58-7-173." *See* Exhibit 6, N.C. Gen. Stat. § 58-7-173, attached hereto. This further, convinced Reifler that this would be authorized when Port Royal acquired the portfolio with the $5 million-dollar loan from Forefront.

58.     By Lawrence, North Carolina Mutual and Fickes sending the above-mentioned G. S. 58-7-173 to Reifler, allowed Lawrence, North Carolina Mutual and Fickes to benefit.

59.     Upon giving Reifler the N.C. Gen. Statute § 58-7-173, this along with Lawrence, North Carolina Mutual and Fickes, was successful in convincing Reifler to loan Port Royal the $5 million dollars it needed to purchase the portfolio by showing Reifler he could loan money to Forefront Partners.

**H.     No Business Relationship Between Forefront, Reifler and North Carolina Mutual and its CEOs, James H. Speed, Jr. and Michael Lawrence.**

60.     During the meeting between Forefront, Reifler and North Carolina Mutual's senior executive management team it was made very clear that Forefront and Reifler's strengths were finding investment opportunities and that Forefront's new focus was on seeding its fund, Forefront Income Trust. This non-traded interval public fund focused on providing low risk investments. The fund's client base was focused on allowing middle America to participate in investments typically reserved for the wealthy.

61.     North Carolina Mutual, its senior executive team consisting of its CEOs James H. Speed, Jr. and Michael L. Lawrence were made fully aware that Forefront and Reifler *was* not experienced in the insurance industry and therefore, would not be responsible for any scope of responsibilities outside of investment recommendations in which North Carolina Mutual, Speed, Lawrence and its senior executive team acknowledged and agreed to this. Forefront Income Trust was discussed at length and an investment that North Carolina Mutual had made in the funeral financing business was discussed as a potential Forefront Income Trust Investment.

**I.     There Was Never Any Agreement Entered into Between Forefront, Reifler and Port Royal, North Carolina Mutual Insurance Company or Summit Trust.**

62.     Forefront Defendants, Reifler and North Carolina Mutual never discussed duties and/or performances wherein Forefront and/or Reifler would be expected to carry out on behalf of North Carolina Mutual.

63.     Forefront Defendants, Reifler and North Carolina Mutual never discussed and/or entered into any agreements specifying duties, performances and/or responsibilities that Forefront, Reifler and North Carolina Mutual would each be responsible for.

64.     North Carolina Mutual had little contact to no with Forefront and/or Reifler from the inception of Forefront and Reifler making investments recommendations only to Port Royal.

65.     Forefront, Reifler and North Carolina Mutual never entered into any agreement for any types of services including those of investment recommendation.

66.     Forefront and/or Reifler and Port Royal never entered into any written agreement for any type of service.  There were emails that discussed that Fickes would follow the North Carolina Insurance Statues and that Reifler and his team at Forefront could offer Port Royal sound solid investment advice.  Specifically, Fickes was very clear when informing Reifler that "additionally, the lawyer I spoke to yesterday sent me copies of all the investment statutes for NC. I know enough to start reviewing . . . tonight." *See* Exhibits 1 and 2.

67.     Forefront and Reifler never entered into any agreement with Summit Trust at any time.

**J.    Forefront and/or Reifler Never had any Discussion at any Time with Summit Trust Regarding any Responsibilities and/or Duties in Which Forefront and/or Reifler Would be Expected to Perform Reifler was Never Responsible for Guaranteeing That Any Investments Would Meet "Eligible Assets," Criteria, Regulations and/or North Carolina Laws.**

68.     At no time did Reifler enter into any contract with North Carolina Mutual agreeing that investment recommendations would meet their Eligibility Asset criteria and/or requirements.

69.     North Carolina Mutual, Speed and Lawrence knew or presumed to know that Port Royal had expertise in understanding the investment criteria of the North Carolina Department of Insurance regulations and State laws of North Carolina.

70.     North Carolina Mutual and/or Lawrence relied on Port Royal for their investment decisions and did not at any time presume that Reifler or Forefront had expertise in the insurance statutes governing investment choices.

Bradley Reifler's. Counter-Complaint and
Third-Party Complaint

17

71.     North Carolina and/or Lawrence never relied on Forefront and/or Reifler to presume and/or guarantee that any investment recommendations made by Forefront and/or Reifler would meet its Eligible Asset criteria. *See* Exhibit 4, email from M. Lawrence to R. Barnes and C. Hobgood, regarding ". . . unacceptable to not name North Carolina Mutual. . . and secondly . . . Stamford Brook Capital (i.e. Forefront) being Advisor is also not acceptable. . ."

72.     At no time did North Carolina Mutual and/or Lawrence write and/or voiced any concern to Reifler or his team at Forefront regarding the possible risk for investment recommendations made by him or his team as it knew Reifler and his team were not in the least bit responsible for this and did not have and/or owe a fiduciary duty to it.

73.     North Carolina Mutual and/or Lawrence knew they were responsible for approving and authorizing investments before sending their approval to Summit Trust and not Reifler and/or his team at Forefront.

74.     If North Carolina Mutual and Lawrence were performing their fiduciary duties they are required and liable to perform, they would have pulled the investment recommendations that inadvertently slipped through Port Royal's analysis, when the investment selections were sent to them.

75.     North Carolina Mutual and/or Lawrence were not focused on whether any investment recommendations made by Reifler and his team, or Port Royal for the matter, met their own guidelines for Eligible Asset requirements, as they only wanted to collect their $600K annually in revenue.

76.     In fact, North Carolina Mutual and/or Lawrence did not make any effort to make sure that the investment recommendations met their Eligible Asset criteria until they underwent an audit by North Carolina Department of Insurance.

77.     When North Carolina Mutual underwent an audit by North Carolina Insurance Department, it was at this time it started scrambling and pointing fingers at others in an attempt to cover up very their own negligence.

78.     North Carolina Mutual and/or Lawrence never at any time was under the impression nor believed that Reifler and/or his team at Forefront were even in the least bit responsible for verifying that the investment recommendations met the Eligible Asset criteria, a clear understanding and acknowledgement of North Carolina and/or Lawrence held this responsibility. *See* Exhibit 4.

**K.    North Carolina Mutual, CEO Michael Lawrence, Port Royal and Summit Trust Held Exclusive Fiduciary Duties in Verifying all Recommended Investments Met the "Eligible Assets" Parameters.**

79.     North Carolina Mutual and/or Lawrence entered into a tri party agreement without the knowledge of Reifler or Forefront. *See* Exhibit A to Plaintiff's Complaint.

80.     North Carolina Mutual and/or Lawrence knew Reifler never wanted to be responsible to make sure investment recommendations fell into the guidelines of North Carolina Department of Insurance and/or State laws for North Carolina as this was outside his expertise.

81.     North Carolina Mutual and Lawrence knew that Stamford Brook, at one time early on, considered being the entity to be the advisor and pulled that idea quickly.

82. North Carolina Mutual and Lawrence knew Stamford Brook was not completed - no operating agreement was drafted, specifically for the reason stated above.

83. North Carolina Mutual and/or Lawrence knew that Stamford Brook never obtained a bank account to conduct business or to be the advisor.

84. North Carolina Mutual and Lawrence knew that Stamford Brook never obtained an EIN number and therefore, was and continues to not able to conduct business without one.

85. North Carolina Mutual and Lawrence knows that the *only* contractual document between Port Royal and Forefront are three identical fraudulently signed investment advisory agreements. *See* Exhibits B and C to Plaintiff's Complaint and Exhibit 5.

86. North Carolina Mutual and Lawrence knew it was not enough to try to make Reifler responsible with only one investment advisory agreement but *three investment advisory agreements that were fraudulently* created and signed without Reifler's knowledge. *See* Exhibits B and C to Plaintiff's Complaint and Exhibit 5.

87. North Carolina Mutual and Lawrence are aware that all of the investment advisory agreements have been concluded as forgeries and one even misspells Reifler's name. Reifler filed a complaint with the FBI outlining the events to the best of his knowledge that had transpired. *See* Exhibits 7, 8 and 9. Exhibit 7, Expert Report by Roger Rubin, attached hereto Exhibit 8, CV of Roger Rubin, and Exhibit 9, Complaint Referral from Internet Crime Complaint Center, attached hereto.

88. North Carolina Mutual, Speed and Lawrence know there are two other documents that refer to Reifler as the advisor, and these are both on a letterhead that does not belong to and has never used by Forefront at any time. *See* Exhibit 10, Letter to James H. Speed, Jr., President and CEO, dated April 24, 2015, attached hereto.

89. North Carolina Mutual and Lawrence are fully aware that the letters have the same message, and one is more forceful in falsely claiming that Reifler was the sole owner of Stamford Brook. *See* Exhibit 11, Letter to Michael L. Lawrence, President and CEO dated July 13, 2016, attached hereto.

90. North Carolina Mutual, Speed and Lawrence are all aware that one of the most highly and respectable forgery experts, Roger Rubin has concluded the following documents contained forged signatures:

a. Letter to Michael Lawrence dated July 13, 2016. *See* Exhibits 7, 8 and 10. Exhibit 7, Roger Rubin's Report. Exhibit 8, Roger Rubin's CV. Exhibit 10, Forgery – Complaint Referral from İnternet Crime Complaint Center, filed by Reifler;

b. investment advisory agreement – April 2015, containing a signature only. *See* Exhibit B to Plaintiff's Complaint and Exhibit 5; and

c. second investment advisory agreement – containing a signature and printed name. *See* Exhibit C to Plaintiff's Complaint

91. North Carolina Mutual and Lawrence want to throw weight on documents that are clearly forged in an attempt to save itself from its very own negligence and intentional acts to benefit themselves.

**L. Michael Lawrence and North Carolina Mutual Authorized Excessive Attorney's Fees and/or Costs to File a Wrongful Lawsuit Against Defendants, Especially Bradly Reifler to Coverup Their Negligence.**

92. North Carolina Mutual and its CEO Michael L. Lawrence, has authorized the spending of attorney fees[3] in the amount of $4 million dollars bringing a lawsuit against multiple defendants including Reifler and/or Forefront only to deflect responsibility for their recklessness. There are certainly are no funds to get from the defendants due to their financial condition yet the spending continues.

93. North Carolina Mutual, Speed and Lawrence have acted carelessly in spending money in an attempt to cover up their own wrong actions and in order attempt to protect themselves knowing full well they cannot recoup said funds from any of the defendants named in Plaintiff's Amended Complaint.

94. North Carolina Mutual. Speed and Lawrence have always had full knowledge and understanding that Reifler has never held the position of investment advisor at any time as they have falsely claimed in this its lawsuit.

95. The false statements made by both North Carolina Mutual, Speed and Lawrence against Reifler and/or Forefront are solely an attempt to cover up their own refusal and/or failure to perform the very responsibilities they are required to as outline in the Trust Agreement entered into with Port Royal.

96. Lawrence has admitted specifically in writing that Stamford Brook Capital cannot be the advisor. *See* Exhibit 4.

Case 1:16-cv-01174-LCB-JEP   Document 118   Filed 10/01/18   Page 22 of 43

97.     North Carolina Mutual, Speed and Lawrence have failed to meet their due diligence and/or fiduciary duties.

**M.     North Carolina Mutual and its CEOs James H. Speed, Jr. and Lawrence Were Always Kept Apprised as to Where Money Was Loaned.**

98.     North Carolina Mutual and/or its CEOs Speed and Lawrence have falsely claimed that they were not aware of the investments even after having received Port Royal's Summary of the disbursements made within the first few weeks of the acquisition of the portfolio. These included:

      a.  $10 million dollars that went to Forefront Income Trust;

      b.  $10 million went to Forefront Partners; $6 million went to Waterbridge; and

      c.  $1.7 million went to Symmetry Property Development.

*See* Exhibit 12, Port Royal Summary of All Disbursements Made, attached hereto.

99.     North Carolina and Lawrence have outright clearly lied knowing by stating they were not informed as to where money was disbursed, as Fickes prepared the above-mentioned investment detail summary for Lawrence and North Carolina Mutual which clearly shows all of the disbursements that were made and no wrong doing took place.

100.    Lawrence and North Carolina Mutual both are fully aware that 82% of the portfolio was complete within the first few weeks.

**N.     North Carolina Mutual Has Suffered No Financial Harm, Only Bradley Reifler and/or Forefront Entities have Suffered Financial Harm at the Wrongful Actions Solely of North Carolina Mutual and its CEOs James H. Speed and Michael L. Lawrence.**

101. North Carolina has wrongfully alleged it has suffered financial harm in its Amended Complaint, which is far from the truth.

102. North Carolina Mutual is owed $31.5 million dollars to be made whole, yet it clearly knows there is $40 million in collateralized assets it holds. More specifically, the breakdown is as follows:

- Total returned to date: $6,658,446.95;

- Waterbridge/Joel Schreiber owes total $14,161,828.98;

- Forefront Income Trust $4,441,533.05 to make total 10M;

- Forefront partners 10M; and

- Talking Capital 2M - currently in litigation to recoup this money.

The portfolio itself could sell for at least $3.5M. Port Royal had paid 5M. *See* Exhibits 15 and 16. Exhibit 15, Detail of Waterbridge and Springbridge as of 9/15/2018 Totaling $14,161,83. Exhibit 16, Verified Amended Complaint regarding Talking Capital, attached hereto. In addition, *See* Exhibits 17 -22 reflecting secured investments. Exhibit 17, Wabash Deed. Exhibit 18, Wabash & Superior, Symmetry Property Development, dated July 1, 2016. Exhibit 19, 740 N. Rush Street, Symmetry Property Development, Mixed-Use Development Site, dated May 18, 2016. Exhibit 20, Coconut Beach Resort, Symmetry Property Development. Exhibit 21, Property Valuation Advisors, Inc., 0.2865 Acre Development Site – NEC E. Superior Street & N. Wabash Ave, dated July 30, 2015. Exhibit 22, Symmetry Property Development, Hyatt Kauai Executive Summary – Coconut

Beach Resort, Kapa'a – Wailum, Kauai, Hawaii. *See* Exhibit 23, Promissory - Spring Bridge, 182, LLC by its Joel Schreiber.

103. North Carolina Mutual and its CEOs Speed and Lawrence have claimed that money has been stolen. However, the above breakdown is clear evidence their entire story is nothing more than lies. North Carolina Mutual holds more collateralized assets than what it claims to have. In fact, it currently holds $40,761,808.98.

104. The only harm North Carolina, Speed and Lawrence can claim is their own failure to make sure funds of the portfolio have been put in the right bucket. Simply put, they failed to verify the investment recommendations made by Reifler and/or Forefront met the Eligible Asset criteria.

105. North Carolina, Speed and Lawrence in failing to perform their required fiduciary duties has caused Reifler to be harmed financially.

106. North Carolina, Speed and Lawrence in failing to perform their required fiduciary duties and blaming Reifler has caused him to suffer irreparable harm as follows:

    a. Defamation;

        i. slander – knowingly telling others false information that Reifler has committed fraudulent acts, failed to carry out his duties of a fiduciary, breach of contract, breach of implied contract and more as specifically outlined in Plaintiff's Amended Complaint; and

ii. <u>libel</u> – knowingly making false public statements in accusing him of failing to carry out duties of a fiduciary, breach of contract, fraud, theft, and many others as specifically described in Plaintiff's Amended Complaint;

b. <u>integrity</u> – It has taken Reifler his entire life to build his integrity by always living to be honest, have great principles, outstanding ethics, upright morals, virtue, decency, fairness, moral principles and moral uprightness, truthfulness, trustworthiness, Reifler has never lived by any other standards. Reifler has served on many boards and was selected and given Easter Seals corporate leadership award and North Carolina Mutual and its CEOs Speed and Lawrence has singly attacked everything that defines Reifler's integrity.

c. <u>character</u> – Reifler has always displayed a personality of being thoughtful to others in showing the highest standards of mental and moral qualities, always having the utmost disposition and temperament. Yet, North Carolina Mutual and its CEOs Speed and Lawrence have done nothing but to destroy him in his reputation personally and in his livelihood by making false accusations as outlined in the Amended Complaint. A lifetime of dedication to always live by his word. Now Reifler's lifetime of building his character has flashed by in a flood of false accusations of wrong doing. Which he may never recover from.

d. <u>future financial gain</u> – Reifler has been damaged financially due to the false accusations outlined in Plaintiff's Amended Complaint knowing they have made these false accusations wherein the public believes the very lies.

107.     North Carolina Mutual, Speed and Lawrence have caused Reifler to suffer the above irreparable harm by wrongfully accusing him in public, to others and by published documents of failing to perform fiduciary duties he was never obligated to perform or required to carry out.

108.     North Carolina Mutual has always been fully informed it has always consistently been well over collateralized in assets yet claims it has been financially harmed by the listed defendants in its Amended Complaint when in fact the only individuals and/or entities to be harmed are the very defendants they named, especially Reifler and/or Forefront.

109.     The only harm that North Carolina Mutual and its CEOs Speed and Lawrence can claim are a direct result of their own doing and not that of Reifler and/or Forefront.

## COUNT 1
### Negligence

110.     At all times hereinafter mentioned, Reifler repeats, reiterates, and realleges each and every allegation contained in the paragraphs above of this Counterclaim herein, as though more fully set forth herein at length.

111.    Negligence is established where: i) there is a duty owed; ii) by one party to another party; iii) breach of that duty; and iv) the breach of that duty proximately caused an injury.

112.    When Reifler and the senior executive management team of North Carolina Mutual met in person and discussed the limited scope of services that Reifler and his qualified team could provide to Port Royal, North Carolina Mutual and its CEOs Speed and Lawrence agreed that Reifler's duties would not involve anything more than merely making investment recommendations to Port Royal.

113.    Port Royal then had the initial responsibility to review each investment recommendation made by Reifler to review and determine whether or not they met the Eligible Asset requirement set by North Carolina Mutual.

114.    Once Port Royal performed its due diligence in determining that any investment recommendations made by Reifler, met the Eligible Criteria were to then be forward to North Carolina Mutual.

115.    Upon North Carolina Mutual receiving the investment recommendations made by Reifler and/or Forefront and approved by Port Royal, a second review was then to be performed by North Carolina Mutual to verify said investment recommendations met its Eligible Asset criteria.

116.    Upon North Carolina verifying said investment recommendations made by Reifler and/or Forefront and approved by Port Royal and North Carolina Mutual itself, in verifying the investment recommendations met the Eligible Asset criteria were then

forwarded by North Carolina Mutual to Summit Trust only if that investment was to be funded.

117.    Further, prior to authorizing any recommendation of investments by Reifler, North Carolina Mutual, Speed and Lawrence had adequate and fair time to visually assess each and every recommended investment to determine if they met the "Eligible Asset" requirements.

118.    North Carolina Mutual, Speed and/or Lawrence entered into a contract with Port Royal who was to be the advisor and not Stamford Brook, Reifler or Forefront. Yet, North Carolina Mutual and its CEOs want to rely on forged investment agreements poorly attempting to reflect Bradley Reifler's name. *See* Exhibits B and C of Plaintiff's Complaint and Exhibit 5.

119.    At no time was any type of contract and/or agreement discussed or entered into between North Carolina Mutual and Forefront and Reifler.

120.    North Carolina Mutual, Speed and Lawrence are very experienced in what they have called "Eligible Assets." North Carolina Mutual, Speed and Lawrence all failed to perform their review and further failed to follow their own policies they agreed to do and were responsible to perform.

121.    North Carolina Mutual, Speed and/or Lawrence never discussed any responsibilities that Forefront or Reifler would follow as an advisor or anything for that matter nor has contract never discussed and/or entered into as there was never no intent formed.

Case 1:16-cv-01174-LCB-JEP   Document 118   Filed 10/01/18   Page 29 of 43

122. North Carolina Mutual, Speed and/or Lawrence are negligent in failing to adhere to their own Trust Agreement entered into with Port Royal. *See* Exhibit A to Plaintiff's Complaint.

123. North Carolina Mutual and or its CEOs Speed and Lawrence failed to verify all recommended investments provided to them by Port Royal who claimed each said investment recommendation met the "Eligible Assets" criteria.

124. North Carolina Mutual, Speed and/or Lawrence failed to even sign off on various loans and/or recommended loans, simply because they did not care if any investment recommendations met the required Eligible Asset criteria.

125. North Carolina Mutual, Speed and/or Lawrence simply wanted to continue to receive $600K a year in revenue at anyone's expense.

126. North Carolina Mutual, Speed and/or Lawrence did not focus on the type of investments that were made as long as it continued to be paid $600K a year in revenue for managing the policies it was servicing.

127. North Carolina Mutual, Speed and Lawrence all failed to perform their duties as required by their own Trust Agreement with Port Royal, policies and regulations including the laws of the State of North Carolina and only seek to blame Forefront and Reifler for their own negligence.

128. In order for any type of agreement to be entered into and/or agreed to, North Carolina Mutual its CEOs Speed and Lawrence and Reifler would have needed to have

discussions regarding the performance and/or duties of each other. Only, no discussions were ever held as there was never any intentions of entering into any type of agreement.

129.   North Carolina Mutual and its CEOs Speed and Lawrence have always had full knowledge that at no time was Reifler going to enter into any type of agreement with them or Port Royal yet alone the forged Investment Advisory Agreement North Carolina Mutual, Speed and Lawrence are relying on are just to falsely attempt to wave in the air claiming its legality.

130.   In order for an agreement to be entered into North Carolina Mutual and its CEOs Speed and/or Lawrence would have had to meet and/or have discussions with Forefront and/or Reifler, yet no discussions were ever held regarding such an agreement and therefore, a meeting of the minds could have never taken place.

131.   North Carolina Mutual and its CEOs Speed and/or Lawrence in relying on three forged Invest Advisory Agreements and having full knowledge they have been forged is therefore, negligence on all accounts, including their actions.

132.   North Carolina Mutual and its CEOs Speed and Lawrence are negligent by never having any discussion with Forefront and Reifler EVEN if they believed that the Advisory Agreement (one of the three) was authentic. North Carolina Mutual and its CEOs Speed and Lawrence to rely on a forged agreement is absurd and failed in performing its due diligence in verify its contents are accurate.

133.   Lawrence and North Carolina have falsely claimed that they were not aware of the loans and would have done something had they been aware. However, 82% of the

loans were executed and reported in the first few weeks and NOTHING was done. These loans included:

    a.  $10 million dollars that went to Forefront Income Trust;

    b.  $10 million went to Forefront Partners; $6 million went to Waterbridge; and

    c.  $1.7 million went to Symmetry Property Development.

*See* Exhibit 12, attached hereto.

    134.   North Carolina Mutual and its CEOs Speed and Lawrence have outright clearly lied by stating they were not informed as to where money was disbursed, as Fickes prepared an investment detail summary for North Carolina Mutual and its CEOs Speed and Lawrence which clearly shows all of the disbursements that were made.

    135.   North Carolina Mutual and its CEOs Speed and Lawrence are all fully aware that 82% of the portfolio was complete within the first few weeks.

    136.   North Carolina Mutual and its CEOs Speed and Lawrence have fraudulently claimed that there was no protection and/or real collateral on assets. Yet they were fully aware of the UCC Financing Statements as they were provided the following;

    a.  700 Atlantic Equities, LLC;

    b.  JS Berry Street, LLC;

    c.  WB Berry Street, LLC;

    d.  WB 41 Mercer, LLC; and

    e.  Springbridge 182, LLC.

*See* Exhibits 13 and 14. Exhibit 13, UCC Financing Statements for 700 Atlantic Equities, LLC, JS Berry Street, LLC, WB Berry Street, LLC, WB 41 Mercer, LLC and Springbridge 182, LLC, attached hereto. Exhibit 14, email B. Reifler to S. Fickes regarding the revised summary of Waterbridge assets, etc., dated April 29, 2015 at 4:43 p.m. Also *See* Exhibit 24, Letter from David P. Stich to New York State Urban Development Corporation, dated February 10, 2017, attached hereto.

137. Lawrence and North Carolina Mutual knew that the 700 Atlantic Equities, LLC alone secured 90% of all the real estate investments made.

138. As a direct and proximate result of North Carolina Mutual and its CEOs Speed and Lawrence's conduct, was clear willful and wanton conduct and, Reifler has suffered damages in an amount in excess of $5 million dollars to be proven at trial, including attorney fees and costs.

## COUNT II
### Negligence *Per Se*

139. At all times hereinafter mentioned, Reifler repeats, reiterates, and realleges each and every allegation contained in the paragraphs above of this Counterclaim herein, as though more fully set forth herein at length.

140. North Carolina Mutual and its CEOs Speed and Lawrence negligently and intentionally failed to adhere to the Trust Agreement in which they voluntarily entered into with Port Royal and not Reifler and/or Forefront, causing irreparable harm to Reifler as follows:

Case 1:16-cv-01174-LCB-JEP   Document 118   Filed 10/01/18   Page 33 of 43

a. <u>Defamation</u>;

    i. <u>slander</u> – knowingly telling others false information that Reifler has committed fraudulent acts, failed to carry out his duties of a fiduciary, breach of contract, breach of implied contract and more as specifically outlined in Plaintiff's Amended Complaint; and

    ii. <u>libel</u> – knowingly making false public statements in accusing him of failing to carry out duties of a fiduciary, breach of contract, fraud, theft, and many others as specifically described in Plaintiff's Amended Complaint;

b. <u>integrity</u> – It has taken Reifler his entire life to build his integrity by always living to be honest, have great principles, outstanding ethics, upright morals, virtue, decency, fairness, moral principles and moral uprightness, truthfulness, trustworthiness, Reifler has never lived by any other standards. Reifler has served on many boards and was selected and given Easter Seals corporate leadership award and North Carolina Mutual and its CEOs Speed and Lawrence has singly attacked everything that defines Reifler's integrity.

c. <u>character</u> – Reifler has always displayed a personality of being thoughtful to others in showing the highest standards of mental and moral qualities, always having the utmost disposition and temperament. Yet, North Carolina Mutual and its CEOs Speed and Lawrence have done nothing but to destroy him in his reputation personally and in his livelihood by making false accusations

as outlined in the Amended Complaint. A lifetime of dedication to always live by his word. Now Reifler lifetime of building his character has flashed by in a flood of false accusations of wrong doing; which he may never recover from.

    d. <u>future financial gain</u> – Reifler has been damaged financially due to the false accusations outlined in Plaintiff's Amended Complaint knowing they have made these false accusations wherein the public believes the very lies.

141. North Carolina Mutual and Lawrence are very familiar and experienced in knowing what type of investments met the "Eligible Assets" criteria, yet intentionally made a conscious decision to not verify any of the recommended investments by Reifler and/or Forefront and then purposely and without merit and have blamed Reifler and/or Forefront.

142. As a direct and proximate result of North Carolina Mutual and/or Lawrence, Reifler has suffered damages in an amount in excess of $5 million dollars to be proven at trial.

## COUNT III
### Fraud

143. At all times hereinafter mentioned, Reifler repeats, reiterates, and realleges each and every allegation contained in the paragraphs above of this Counterclaim herein, as though more fully set forth herein at length.

144. North Carolina Mutual and its CEOs Speed and/or Lawrence have intentionally committed fraud by failing to verify each investment recommendation met

the required Eligible Asset criteria to financially gain themselves and then pointing their finger at Reifler.

145. North Carolina Mutual and its CEOs Speed and/or Lawrence have been dishonest in their actions by wrongfully pointing fingers at Reifler and/or Forefront knowing full well that neither had any agreement, obligations, responsibility and/or fiduciary duties to North Carolina Mutual.

146. North Carolina Mutual and its CEOs Speed and/or Lawrence have committed fraud by wrongfully alleging that Port Royal entered into an investment advisory agreement with Reifler and/or Forefront knowing all three investment advisory agreements are forged. *See* Exhibits B and C to Plaintiff's Amended Complaint and Exhibit 5.

147. North Carolina Mutual and its CEOs Speed and Lawrence have committed fraud by wrongfully made false statements that Reifler and/or Forefront had fiduciary duties to them.

148. North Carolina Mutual and its CEOs Speed and/or Lawrence have committed fraud by their intentional deceitful conduct in lying in that Reifler and/or Forefront entered into an investment advisory agreement.

149. North Carolina Mutual and its CEOs Speed and/or Lawrence have committed fraud by their intentional deceitful conduct by lying in that Reifler and/or Forefront had a fiduciary duty to North Carolina Mutual.

150. North Carolina Mutual and its CEOs Speed and/or Lawrence colluded with Fickes to insure that Forefront and Reifler would loan 5M to Port Royal which would

secure $600,000 in annual income to North Carolina Mutual. North Carolina Mutual and its CEOs Speed and/or Lawrence and Fickes sent Reifler the North Carolina General Statute § 58-7-173. More specifically, they underlined the portion that states "An insurer may invest in stocks, common or preferred, of any corporation created or existing under the laws of any foreign country other than Canada subject to the provisions of G.S. 58-7-173." See Exhibit 6, N.C. Gen. Statute § 58-7-173, attached hereto.

151. By North Carolina Mutual and its CEOs Speed and/or Lawrence and Fickes sending the above-mentioned G. S. 58-7-173 to Reifler, allowed North Carolina Mutual, its CEOs Speed and Lawrence as well as Fickes to benefit.

152. Upon giving Reifler the N.C. Gen. Statute § 58-7-173, claiming it was very liberal along with North Carolina Mutual its CEOs Speed and/or Lawrence and Fickes, they were successful in convincing Reifler to loan Port Royal the $5 million dollars it needed to purchase the portfolio by showing Reifler he could loan money to Forefront Partners.

153. North Carolina Mutual and its CEOs Speed and/or Lawrence have falsely claimed that they were not aware of the loans and would have done something had they been aware. However, 82% of the loans were done **and** reported in the first few weeks and **nothing** was done. These included:

    a. $10 million dollars that went to Forefront Income Trust;

    b. $10 million went to Forefront Partners; $6 million went to Waterbridge; and

Case 1:16-cv-01174-LCB-JEP   Document 118   Filed 10/01/18   Page 37 of 43

c. $1.7 million went to Symmetry Property Development. *See* Exhibit 12, Port Royal Summary of All Disbursements Made, attached hereto.

154.    North Carolina Mutual and its CEOs Speed and/or Lawrence have outright clearly lied knowing by stating they were not informed as to where money was disbursed, as Fickes prepared an investment detail summary for Lawrence and North Carolina Mutual which clearly shows all of the disbursements that were made.

155.    North Carolina Mutual and its CEOs Speed and/or Lawrence were fully aware that 82% of the portfolio was complete within the first few weeks.

156.    North Carolina Mutual and its CEOs Speed and/or Lawrence have fraudulently claimed that there was no protection and/or real collateral on assets. Yet they were fully aware of the UCC Financing Statements as they were provided the following;

    a.  700 Atlantic Equities, LLC;

    b.  JS Berry Street, LLC;

    c.  WB Berry Street, LLC;

    d.  WB 41 Mercer, LLC; and

    e.  Springbridge 182, LLC.

*See* Exhibits 13 and 14. Exhibit 13, UCC Financing Statements and Exhibit 14, email from B. Reifler to S. Fickes regarding the revised summary of Waterbridge assets, etc., dated April 29, 2015 at 4:43 p.m.

157.    North Carolina Mutual and its CEOs Speed and/or Lawrence knew that the 700 Atlantic Equities, LLC alone secured 90% of all the real estate investments made.

158.    As a direct and proximate result of North Carolina Mutual and/or Lawrence,

Reifler has suffered damages in an amount of to be proven at trial

## COUNT IV
## Respondeat Superior

159.    At all times hereinafter mentioned, Reifler repeats, reiterates, and realleges

each and every allegation contained in the paragraphs above of this Counterclaim herein,

as though more fully set forth herein at length.

160.    James H. Speed, Jr. is the former CEO of North Carolina Mutual, was employed at

all relevant times in which said events have taken place.

161.    Michael L. Lawrence was and is currently employed by North Carolina Mutual and

was all relevant times in which said events have taken place.

162.    Lawrence during all relevant times herein was and is the CEO of North Carolina

Mutual.

163.    North Carolina Mutual is thus liable for the acts of its employees including but not

limited to Speed and Lawrence's negligence in performing their responsibilities as the CEO.

164.    Speed and/or Lawrence intentionally and negligently failed to perform their duties

of a fiduciary causing great harm to Reifler and/or Forefront.

165.    North Carolina Mutual in its capacity as supervisor over Speed and/or Lawrence

acted in furtherance of its duties by not overseeing and/or monitoring the duties of its employees

thereof, allowing negligence to take place and causing great harm to Reifler.

Case 1:16-cv-01174-LCB-JEP   Document 118   Filed 10/01/18   Page 39 of 43

166.    Speed and/or Lawrence individually and in their capacity as CEO of North Carolina Mutual negligently failed to adhere to the very policies put in place by North Carolina Mutual causing harm to Reifler and/or Forefront.

167.    Speed and/or Lawrence thus owed a duty individually and in their managerial capacity at North Carolina Mutual in exercising control, either directly or indirectly, over their activities on during all relevant time periods as described herein.

168.    Therefore, North Carolina Mutual is liable for Speed and Lawrence's negligent performance and supervision over them in performing the duties of its CEO and those of a fiduciary.

169.    As a direct and proximate result of North Carolina Mutual, Speed and/or Lawrence has caused Reifler to suffer damages in an amount to be proven at trial. Further, North Carolina Mutual is liable for the acts of its employees including but not limited to Speed and Lawrence's negligence in performing their responsibilities as the CEO.

### PRAYER FOR RELIEF

**WHEREFORE,** Defendant/Counterclaimant Reifler prays that this Court will enter a judgment in favor of Defendant/Counterclaimant, Reifler and against North Carolina Mutual Insurance Company and its CEOs James H. Speed, Jr. and Michael L. Lawrence as follows:

    a.  Enter a judgment for an award on Reifler's causes of action against North Carolina Mutual, James H. Speed, Jr. and Michael L. Lawrence of actual

damages including punitive damages, treble damages in an amount to be proven at trial;

b. Enter a judgment for an award of actual damages in the amount of no less than $5 million-dollars;

c. Enter a judgment for irreparable harmed caused to Reifler by North Carolina Mutual, James H. Speed, Jr. and Michael Lawrence;

d. Enter a judgment for attorney's fees and costs incurred herein;

e. Enter a judgment for pre and post judgment interest at the legal rate on each of Reifler's causes and

f. For such other relief as this Court deems just and proper.

**RESPECTFULLY SUBMITTED** this ___27th___ day of September 2018.

By: _____

Bradley C. Reifler, *pro se*
123 Fraleigh Hill Road
Millbrook, NY 12545
*Pro Se Defendant*

## CERTIFICATE OF SERVICE

I, Bradly Reifler, hereby certifies a copy of the foregoing was mailed in accordance with the local Federal Rules of Civil Procedure to the follows:

Andrew O. Mathews, Esq.
M. Keith Kapp, Esq.
Turner A. Broughton, Esq.
**WILLIAMS MULLEN**
P.O. Box 1000
Raleigh, North Carolina 27602
*Attorneys for Plaintiff*

Tracy L. Eggleston, Esq.
301 S. College Street, Suite 2100
Charlette, NC 28202
*Attorneys for Defendant Port Royal*

Stamford Brook Capital, LLC
2711 Centerville Rd., Suite 400
Wilmington, DE 19808
*Defendant, Pro Sē*

Forefront Capital Holdings, LLC
The Company Services Corporation
2711 Centerville Rd., Suite 400
Wilmington, DE 19808

Forefront Capital Services, LLC
The Company Services Corporation
2711 Centerville Rd., Suite 00
Wilmington, DE 19808
Defendant *Pro Se*

Steven W. Fickes, President Port Royal
Reassurance Company, SPC, Ltd.
8600 Country Club Drive
Bethesda, Maryland 20816
*Defendant Pro Se*

Kevin C. Brown
Summit Trust Company
8861 W. Sahara Ave., Suite 215
Las Vegas, NV 89117
*Defendant Pro Se*

Michael Flatley
50 Sherman Street
Lynbrook, NY 11563
*Pro Se, Defendant*

Forefront Partners Short Term
    Notes, LLC
Bradley Reifler
123 Fraleigh Hill Road
Millbrook, NY 12545-4951
*Defendant Pro Se*
FF Sully Partners, LP
The Company Corporation
251 Little Falls Drive
Wilmington, DE 19808
*Defendant Pro Se*

David Wasitowski
39 Fairmount Road West
Califon, NY 07830
*Defendant Pro Se*

Dated this 27 day of September 2018.

By: _____

Bradley C. Reifler
123 Fraleigh Hill Road
Millbrook, NY 12545
*Defendant Pro Se*