# Exhibit 7

29 West 65th Street  
New York, New York 10023  
Fax (917)4411474  
Office(212)580-9808  
email  rogwrite@aol.com



**ROGER RUBIN**

. Questioned Document Examiner
. Qualified Witness

October 13, 2016

Forefront Partners  
7 Times Square  
37th Floor  
New York, NY 10036

Dear Ms. Leszczyrska,

As per your request, I have examined the photocopied documents, submitted to me on 10/10/16 regarding a number of questioned (Q) signatures, and known (K) signatures for comparison The following is a report of my findings and opinion.

## Documents in Question

Q-1  Letter from Forefront Capital Holdings sent to James H. Speed, dated 4/24/15, allegedly signed by Bradley Reifler.

Q-2  Signature page beginning "List of authorized signatures..." Allegedly signed by Bradley Reifler. Undated..

Q-3  Signature page beginning (19) No Continuing Waiver, allegedly signed by Bradley Reifler. Dated April, 2015.

Q-4  Another signature page beginning (19) No Continuing Waiver, allegedly signed by Bradley Reifler. Dated April, 2015.

Q-5  Another signature page beginning (19) No Continuing Waiver, allegedly signed by David Wasitowski. Dated April, 2015

## Documents Used As Standards For Comparison

K-1  Signature page beginning "though purchaser became owner..." signed by Bradley Reifler. Undated

K-2  Signature page beginning "and payment of the firm's statements..." Dated 9/30/16. Signed by Bradley Reifler.

K-3  Smith, Anderson et al imprint on page with signature of Bradley Reifler. Dated 9/30/16.

K-4  Letterhead of Forefront Partners signed by Bradley Reifler. Dated 5/27/16.

K-5  Signature page beginning with "Pronouns and Headings" signed by Bradley Reifler. Undated.

K-6  Page beginning with "distribution by any trust..." signed by Bradley Reifler. Undated

K-7  Page beginning with "In Witness Whereof..." signed by Bradley Reifler. Undated.

K-8  Page beginning with "Reformation and Severabiliity" signed by Bradley Reifler. Undated.

- K-9 Forefront Partners letterhead beginning "two year subscription agreement...". Signed by Bradley Reifler. Dated 7/23/16.
- K-10 Forefront Partners Letterhead beginning "the two year subscription agreement..." . Signed By Bradley Reifler. Dated 12/5/15.
- K-11 Wins Finance Holdings signed by Bradley Reifler as Grantee. Undated.
- K-12 Income Offset Agreement signed by David Wasitowski. Dated 7/1/12.
- K-13 Another Offset Agreement signed by David Wasitowski. Dated 7/1/12
- K-14 ITA Compliance, and Forefront Capital Markets. Signed by David Wasitowski. Dated 5/15/15.
- K-15 Forefront Capital letterhead dated 2/0/15. Signed by David Wasitawsski
- K-16 Forefront Capital letterhead list of enclosures signed by David Wasstiowski. Undated.
- K-17 USSEC Focus Report signed by David Wasitowski. Dated 7/24/15.
- K-18 Signature page Tanzanian Royalty Exploration Corp. Signed by David Wasitowski. Undated.
- K-19 Signature page with Forefront Capital Markets and S & W Seed Co. Signed by David Wasitowski
- K-20 Signature page with Forefront Capital and AFH Aquisition X. Signed by David Wasitowski
- K-21 Signature page with Forefront Capital and Banjo & Matilda. Signed by David Wasitowski

## Questions

1 - Did the writer of the signatures in documents K-1 through K-11, Bradley Reifler, also produce the questioned writing in documents Q-1 through Q-4?
2 - Did the writer of the signatures in documents K-12 through K-21, David Wasitowski, also produce the questioned writing in document Q-5?

## Explanation and Opinion

Using standard procedures in the field of Questioned Document examination and signature analysis, the following factors were examined: letter forms, size, proportion, movement, slant and regularity. In answer to question 1, the questioned signatures differ from the known signatures in awkwardness of movement, and naturalness of execution. The letter forms show hesitation in the flow of the ductus. The questioned signatures all lack the dot or period at the end of the signature which is present in every one of the known signatures. A significant oversight indicating that another writer other than Bradley Reifler is not familiar with that idiosyncratic graphic gesture.

In answer to question 2, there is no similarity or an attempt at similarity in the questioned signature when compared to the known signatures. It is the same identical false signature that was produced in Q-4.

After a careful and thorough examination, it is my considered professional opinion that neither of the persons who produced the known signatures in K-1 through K-10, and the signatures in K-11 through K-21 produced or authored the questioned signatures in Q-1 through Q-5

Roger Rubin _____
Questioned Document Examiner

Questioned Document Examiner

*Forefront Capital Holdings, LLC*
*Times Square Tower*
*New York, New York*

Mr. James H. Speed, Jr.
President and CEO
North Carolina Mutual Life Insurance Company
411 West Chapel Hill Street
Durham, North Carolina 27701

April 24, 2015

Dear Mr. Speed:

This letter is intended to clarify certain aspects of the Investment Advisory Agreement dated April 24, 2015 between Stamford Brook Capital, LLC ("Stamford") and Port Royal Reassurance Company SPC, Limited ("Port Royal").

(1) Stamford is a wholly owned by me. To date Stamford has no business and is being used as the investment advisor to Port Royal in order to facilitate the anticipated potential future partnership arrangement between Port Royal, Forefront Capital Holdings, LLC ("Forefront Capital") and NCM.

(2) Forefront Capital also owns Forefront Capital Markets, LLC ("FFCM"). FFCM is a Registered Investment Advisor with the Securities Exchange Commission, ("SEC"). The same individuals who manage FFCM will manage the investments for Stamford.

(3) Because, for now, Stamford's sole client will be Port Royal, Stamford is not required to be register as an Investment Advisor. If at any point in the future, Stamford does become required to register as an Investment Advisor, Forefront Capital will cause Stamford to become so registered.

Sincerely,

Forefront Capital      ①

Bradley Reifler
Title: Chief Executive Officer

List of authorized signers for Port Royal North Carolina Mutual
Reassurance Trust Custodial Accounts:

*(signature)* ②

Bradley Reifler, CEO
Forefront Partners

*(signature)*

Michael Flatley, Managing Director
Forefront Partners

such invalidity shall not impair the operation of or affect those provisions of this Agreement that are valid.

(19) **No Continuing Waiver.** No party hereto shall be deemed to have waived any rights hereunder unless such waiver shall be in writing and signed by such party. The waiver by any party of any breach of this Agreement shall not operate or be construed to be a waiver of any subsequent breach.

(20) **Disputes.** All controversies, claims, disputes, and other matters in question between the parties to this Agreement, arising from or relating to this Agreement or the breach thereof, which cannot be resolved by the parties themselves shall be settled by arbitration in Durham, North Carolina in accordance with the Commercial Arbitration Rules of the American Arbitration Association then existing, unless the parties mutually agree otherwise. This Agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law.

Notice of the demand for arbitration shall be filed in writing with each other party to this Agreement and with the American Arbitration Association. The demand shall be made within a reasonable time after the controversy, claim, dispute or other matter in question has arisen; however, in no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on any such controversy, claim, dispute, or other matter in question would be barred by the applicable statute of limitation. The award rendered by the arbitrator(s) shall be final and binding upon the parties, and judgment may be entered upon it in accordance with the applicable law in any court having jurisdiction thereof. The costs of arbitration shall be assessed by the arbitrators.

Notwithstanding the foregoing, this Section shall not be deemed to limit the rights of a party to obtain from a court provisional or ancillary remedies, such as (but not limited to) injunctive relief or appointment of a receiver, before, during, or after the pendency of any arbitration proceeding brought pursuant to this Agreement. The institution or maintenance of an action for provisional or ancillary remedies shall not constitute a waiver of the right of any party, including the claimant in any such action, to arbitrate the merits of the controversy or claim occasioning the resort to such remedies.

(21) **Receipt of Form ADV.** The Client acknowledges receipt at least 48 hours prior to its execution of the Agreement of Part II of the Adviser's current Form ADV. The Adviser will offer in writing at least annually to provide the Client with a copy of its then current Form ADV.

(22) **Term.** This contract will terminate on December 31, 2024 unless otherwise terminated by the parties. It will be automatically renewed for five years from the date of expiration unless either party acts to terminate it or modify it within 30 days after date of expiration.

Agreed and accepted this [ ] day of April, 2015.

"Manager"
Stamford Brook Capital, LLC

By: [signature]
Name: BRADLE REIFLER
Title: MANAGING DIRECTOR

"Client"
Port Royal Reassurance Company SPC, Limited

By: [signature]
Name: MICHAEL FLATLEY
Title: MANAGING MEMBER

4 | Page

such invalidity shall not impair the operation of or affect those provisions of this Agreement that are valid.

(19) No Continuing Waiver. No party hereto shall be deemed to have waived any rights hereunder unless such waiver shall be in writing and signed by such party. The waiver by any party of any breach of this Agreement shall not operate or be construed to be a waiver of any subsequent breach.

(20) Disputes. All controversies, claims, disputes, and other matters in question between the parties to this Agreement, arising from or relating to this Agreement or the breach thereof, which cannot be resolved by the parties themselves shall be settled by arbitration in Durham, North Carolina in accordance with the Commercial Arbitration Rules of the American Arbitration Association then existing, unless the parties mutually agree otherwise. This Agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law.

Notice of the demand for arbitration shall be filed in writing with each other party to this Agreement and with the American Arbitration Association. The demand shall be made within a reasonable time after the controversy, claim, dispute or other matter in question has arisen; however, in no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on any such controversy, claim, dispute, or other matter in question would be barred by the applicable statute of limitation. The award rendered by the arbitrator(s) shall be final and binding upon the parties, and judgment may be entered upon it in accordance with the applicable law in any court having jurisdiction thereof. The costs of arbitration shall be assessed by the arbitrators.

Notwithstanding the foregoing, this Section shall not be deemed to limit the rights of a party to obtain from a court provisional or ancillary remedies, such as (but not limited to) injunctive relief or appointment of a receiver, before, during, or after the pendency of any arbitration proceeding brought pursuant to this Agreement. The institution or maintenance of an action for provisional or ancillary remedies shall not constitute a waiver or the right of any party, including the claimant in any such action, to arbitrate the merits of the controversy or claim occasioning the resort to such remedies.

(21) Receipt of Form ADV. The Client acknowledges receipt at least 48 hours prior to its execution of the Agreement of Part II of the Adviser's current Form ADV. The Adviser will offer in writing at least annually to provide the Client with a copy of its then current Form ADV.

(22) Term. This contract will terminate on December 31, 2024 unless otherwise terminated by the parties. It will be automatically renewed for five years from the date of expiration unless either party acts to terminate it or modify it within 30 days after date of expiration.

Agreed and accepted this [ ] day of April, 2015.

"Manager"
Stamford Brook Capital, LLC

By: _____
Name:
Title:

"Client"
Port Royal Reassurance Company SPC, Limited

By: _____
Name: STEVEN N. FAKES ?
Title:

Q-5

such invalidity shall not impair the operation of or affect those provisions of this Agreement that are valid.

(19) No Continuing Waiver. No party hereto shall be deemed to have waived any rights hereunder unless such waiver shall be in writing and signed by such party. The waiver by any party of any breach of this Agreement shall not operate or be construed to be a waiver of any subsequent breach.

(20) Disputes. All controversies, claims, disputes, and other matters in question between the parties to this Agreement, arising from or relating to this Agreement or the breach thereof, which cannot be resolved by the parties themselves shall be settled by arbitration in Durham, North Carolina in accordance with the Commercial Arbitration Rules of the American Arbitration Association then existing, unless the parties mutually agree otherwise. This Agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law.

Notice of the demand for arbitration shall be filed in writing with each other party to this Agreement and with the American Arbitration Association. The demand shall be made within a reasonable time after the controversy, claim, dispute or other matter in question has arisen; however, in no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on any such controversy, claim, dispute, or other matter in question would be barred by the applicable statute of limitation. The award rendered by the arbitrator(s) shall be final and binding upon the parties, and judgment may be entered upon it in accordance with the applicable law in any court having jurisdiction thereof. The costs of arbitration shall be assessed by the arbitrators.

Notwithstanding the foregoing, this Section shall not be deemed to limit the rights of a party to obtain from a court provisional or ancillary remedies, such as (but not limited to) injunctive relief or appointment of a receiver, before, during, or after the pendency of any arbitration proceeding brought pursuant to this Agreement. The institution or maintenance of an action for provisional or ancillary remedies shall not constitute a waiver or the right of any party, including the claimant in any such action, to arbitrate the merits of the controversy or claim occasioning the resort to such remedies.

(21) Receipt of Form ADV. The Client acknowledges receipt at least 48 hours prior to its execution of the Agreement of Part II of the Adviser's current Form ADV. The Adviser will offer in writing at least annually to provide the Client with a copy of its then current Form ADV.

(22) Term. This contract will terminate on December 31, 2024 unless otherwise terminated by the parties. It will be automatically renewed for five years from the date of expiration unless either party acts to terminate it or modify it within 30 days after date of expiration.

Agreed and accepted this [ ] day of April, 2015.

"Manager"  
Stamford Brook Capital, LLC

By: _____  
Name:  
Title:

"Client"  
Port Royal Reassurance Company SPC, Limited

By: _____  
Name: Steven N. Frankel  
Title:

4 | Page