# Exhibit

# 20

# Symmetry

# Property.

# Development

# LLC

## COCONUT BEACH RESORT

Kapa'a - Wailua, Kauai

Hawaii

1. Investment Overview

2. Development Team

3. Location & Product Overview

4. Current Property Drawings

5. Development Costs & Operating Projections

6. Appendix

# INVESTMENT OVERVIEW

# COCONUT BEACH REfORT

## Kapa'a - Wailua, Kauai

### Hawaii



*Land*

The development site is the Wailua-Waipouli area just south of Kapa'a, on the eastern "Royal Coconut Coast" of the Garden Island of Kauai, approximately 8 miles north of Lihue, Kauai's business center and the location of Kauai's airport. Nearby are the Wailua River, Fern Grotto and Lydgate Park with the Wailua Golf Course, Nounou mountain (the Sleeping Giant), Mount Waialeale (one of the rainiest spots on earth averaging over 450 inches of rain annually) and a handful of shopping centers. The location of Kapa'a easily affords guests with accessibility to both the North and South coasts as well as the interior Waimea Canyon area, all three of which are major attractions for visitors to Kauai. Kauai is considered one of the most beautiful Hawaiian Islands and is Hawaii's oldest and most verdant island.

**Island of Kauai and site location**



The site, which was acquired in December 2004, comprises approximately 20 acres of previously undeveloped land. The project is owned by Coconut Beach Development LLC ("CBD"): the majority investors of which are pension funds of the Detroit, Michigan based Carpenters and Operating Engineers unions with a minority investment by S-H Maui Development LLC ("SHMD"). SHMD has been the project's developer.

The eastern boundary of the site is the Pacific Ocean with more than 1,450 feet of beach frontage. A Marriott resort hotel is located on the north side of the land, the Kauai Coast Resort (a fully sold out Wyndham timeshare condo project) is to the south and Aleka Loop, a private street, is on the west side of the land. The site is located within walking distance of numerous amenities, restaurants and services at three shopping centers.

The majority of the subject site (approximately 17.3 acres) has been zoned by the County of Kauai as a Resort District (RR-20), allowing the construction of a maximum of 346 condominium units. The project was fully entitled as of October 2012 following a nearly 7 ½ year permitting process. Ownership submitted applications for a site-wide grading permit and a building permit for the first of its condo buildings on October 17, 2014 in accordance with its entitlements and the County's Planning Commission has approved of the resort's design.

### Development plan & estimated costs

The proposed Resort has been planned to incorporate the latest high standards of architecture, amenities, and internal design and fitting-out appropriate for a purpose-built hospitality-branded timeshare development. Interval Leisure Group ("ILG") purchased the Hyatt Residential Group ("Hyatt") from Hyatt Hotels Corp. on October 1 and ILG became the long-term, exclusive world-wide licensee of the Hyatt. Hyatt's entire management team joined ILG. ILG will invest $6 million in non-equity "key money" in the latter stages of the development process, will handle timeshare sales, marketing and operations and assist in the resort's development. The quality of the Resort's interior finish levels will exceed that of a Marriott, Hilton or Westin timeshare resort.



The development plan provides for the construction of 6 hotel rooms plus a total of 326, one two and three bedroom condominium units in a single phase. Note that buildings will be separately permitted allowing for opening the property before all construction activities cease. The resort includes a 3 story, approximately 47,650 SF main building that has space for office, support and other back-of-house functions, guest reception and lobby areas, an exercise room, owner's lounge and indoor-outdoor restaurant and lounge. The Resort will feature three, free form, themed pools. The main pool will have a sand feature that extends toward the ocean, a lazy river and water slide, and a building housing a bar-grill and restrooms. A modest activity center for children will be included in a condo building adjoining the resort's children's pool in the southern courtyard while an adult pool will be built in the northern courtyard.

The project will have 67 one bedroom, 12 three bedroom and 247 two bedroom condominiums, and all will include an outdoor terrace. Living area floors will be hard surfaced (tile or wood depending on area) with area rugs, and carpet in the sleeping areas, granite counter and vanity tops and stone-like porcelain tile clad bathrooms. All units will be completely furnished and equipped including dishes, cookware, silver and glassware, plus the amenities of a luxurious resort hotel.

The unit layout has been determined in order to maximize the availability of living space, creating an open-plan "great room", incorporating living, dining, and kitchen facilities, with a flow through to the large lanai (terrace) area.



The site plan has been designed in order to maximize the number of condominium units having at least a partial ocean view. Based upon an updated site plan, the proportion of condominiums having each of four view categories is approximately as follows:

| Garden and mountain views | 24% |
|---|---|
| Partial ocean views | 38% |
| Full ocean views | 24% |
| Oceanfront views | 14% |

## COCONUT BEACH RESORT - Overall development cost summary

### HARD COSTS:

| | |
|---|---:|
| General conditions | 7,310,380 |
| Sitework | 14,464,841 |
| Foundation/Sub/Superstructure | 20,726,448 |
| Reinforcing | 6,973,596 |
| Structural steel | 2,429,474 |
| Exterior closure | 21,061,879 |
| Roofing and waterproofing | 8,921,817 |
| Interior construction | 52,576,323 |
| Equipment | 330,000 |
| Special construction | 2,520,920 |
| Conveying systems | 2,757,500 |
| Mechanical | 23,838,650 |
| Electrical | 15,226,199 |
| Reconfiguration of sales center units to inventory @ end of sales period | 1,270,808 |
| Credit for reduction in scope-value engineering items | -13,651,622 |
| | 166,757,213 |
| | |
| Bond @ 1% | 1,667,572 |
| General Contractors' fee @ 5% | 8,337,861 |
| Hawaii GET @ 4.712% | 7,857,600 |
| | 17,863,033 |
| | |
| F, F & E with installation, freight and GET | 13,244,687 |
| Operating Supplies & Equipment with freight, tax and installation | 3,337,909 |
| Equipment with freight and tax | 1,407,363 |
| Systems | 1,803,800 |
| Operating equipment with freight and tax | 618,138 |
| Inventories with freight and tax | 169,633 |
| | 20,581,530 |
| | |
| Kauai County permits, fees, assessments & connection fees | 10,288,479 |
| | |
| **TOTAL HARD COSTS** | 215,490,255 |

### SOFT COSTS

| | |
|---|---:|
| Architects, engineers and consultants | 4,293,622 |
| Construction management | 3,129,547 |
| Special inspections | 314,000 |
| Pre-opening | 2,740,000 |
| Development fee @ 4% of Hard Costs | 8,208,071 |
| Expense reimbursements | 651,000 |
| Taxes, insurance, legal and accounting | 2,148,000 |
| Condo and timeshare related legal | 200,000 |
| Contingency & cost escalation reserve - 10% of Hard Costs + 5% of Soft Costs | 22,600,687 |
| Rounding & miscellaneous | 94,818 |
| | 44,379,745 |
| | |
| **TOTAL HARD AND SOFT COSTS** | **$259,870,000** |

## Current Status & Project timing

SPD II Makaiwa Resort Development LLC (the "JV"), a joint venture of Symmetry Property Development II and Makaiwa Resort Company (owned by SHMD's principals), has purchased the land and entitlements from CBD. The JV has retained a team of architects and engineers that completed a revised Schematic Design of the resort in August 2014.

On October 17, 2014 the JV's design team delivered an application for a property-wide grading and drainage permit, and a building permit for the first of the resort's condo buildings, thus perfecting the project's entitlements. Kauai County's Planning Commission unanimously voted to approve the resort's design during its December 9, 2014 meeting. Current estimates of the timing for commencement and completion of the various key project stages are as follows:

| Key project stage | Date of commencement | Date of completion |
|---|---|---|
| Pre-construction design & engineering, permitting & construction mobilization | March 2012 | April 2016 |
| Timeshare & condo plan registration | March 2016 | March 2017 |
| Construction including all site work | May 2016 | December 2018 |
| Opening of partially completed resort | | April 2018 |

7

# LOCATION & PRODUCT OVERVIEW





*Hawaii's Timeshare Market*

The market for the resort's weekly intervals is strong today and could very well be stronger a couple of years hence when we would begin timeshare sales. Inventory at competitive timeshare projects on Kauai at Princeville and Kauai Lagoons near Lihue is dwindling and our resort will go into sales at an almost perfect time. Timeshare is being developed at as fast a rate as it has ever been in Hawaii:

**ON KAUAI:**

• Starwood's Westin Princeville Ocean Resort consists of 173, 2 bedroom-2 bath, lock-off condos. The resort opened in 2008 and is effectively sold out. Current pricing for a 2 bedroom unit is $57,500 per week for an annual stay during any week except Christmas and New Years (price is $65,5000 if the buyer wants access to the Christmas & New Years weeks). The project is located atop a bluff and has no beach access. Princeville is a well established, golf centered resort on Kauai's north shore nearly an hour's drive from the Lihue airport and over 90 minutes drive time from Poipu on Kauai's south shore. Princeville's weather is often rainy, as is the norm on the northern parts of all of Hawaii's islands.

• Marriott's Kauai Lagoons Vacation Club consists of 75, 2 bedroom-2 bath condos, 25 of which are in a completed "shell building" and are thus considered the project's second phase; Marriott will finish and furnish these units when needed. The property opened in mid 2010 and is priced at $59,000 per week for an annual stay. Sales have slowed to about 700 weeks per year due to the adoption of Marriott's system-wide pure points based program in middle 2011. Under its points system, Marriott no longer offers a home resort preference to buyers, meaning Marriott will not guarantee that a buyer can book a stay at a Hawaiian resort. The majority of Hawaii interval buyers are paying up to ensure that they can vacation in Hawaii each year if they elect to and this program has dampened Marriott's sales. The project is located on a cliff overlooking the ocean and has no beach access. The Kauai Lagoons Resort includes 27 holes of golf and lies under the glide path leading to the Lihue Airport.

• Welk Resorts of Escondido, California purchased a development parcel on the inland side of Poipu Road across Kiahuna Plantation Drive from the Poipu Shopping Village. Welk will

8

develop 164 condos, most of which will be 2 bedroom 2 bath units. The development will take place in several phases on the 21.5 acre parcel, which is nearly ½ mile from the nearest beach. Construction on the first phase is expected to begin in mid 2016. Annual weekly intervals in a 2bedroom-2 bath condos are expected to be in the $50,000 range.

**ON OAHU:**

• In early 2015 Hilton Grand Vacations will begin construction of another approximately 300 condo, timeshare tower at Waikiki's Hilton Hawaiian Village. This tower is expected to come on stream in late 2016, shortly after Hilton's 331 unit Grand Waikikian Tower is sold out – the Grand Waikikian opened in 2008. Hilton's selling 2 bedroom-2 bath Hawaiian Village intervals for prices that average in the middle $60,000s, with sales in excess of 2,200 weeks annually. Buyers have access to the many recreational, shopping and dining amenities of the 22 acre Hawaiian Village.

In late 2013 Hilton opened the 143 unit Hokulani at Lewers Street and Kalakaua Ave. in Waikiki, a conversion of the 290 room Islander Waikiki Hotel. All units in this project are 575 SF studio condos with mini kitchens. While a few of the units have ocean views, Hilton is marketing this as an urban timeshare in Waikiki and weekly intervals are priced in the middle-upper $30,000s with a projected 3 year sell-out period.

• Disney opened the first 200 condos at its Aulani timeshare resort at Ko Olina on Oahu's west coast in August 2011 and planned to complete its second phase in 2015. (The second phase is a 225 unit, high rise "shell building" that was constructed during the initial development period.) However, sales were so strong Disney began finishing and furnishing the units within the shell in mid 2012 and opened the new tower and some added recreational amenities in fall 2013. Pricing for a 2 bedroom-2 bath condo averages in the lower to middle $50,000s and sales have exceeded 3,300 intervals per year. Aulani's Ko Olina location is some 45 to 60 minutes driving time from the Ala Moana-Waikiki tourist area of Honolulu, which is considered a disadvantage. However Disney's name and the resort's extensive amenity package have resulted in an exceptionally brisk sales pace.

• The owners of the Turtle Bay Resort on the North Shore of Oahu are planning to develop up to 375 timeshare condos in a JV with Replay Resorts, which was founded by four former senior executives of Intrawest. Several local groups and the hotel-restaurant workers union have filed suits seeking to block the development; the local groups want no added development at the Turtle Bay Resort while the union wants the owners to build transient hotels rather than timeshare condos. There's no timetable for resolution of the legal challenges. Turtle Bay is an hour or more driving time from Ala Moana and Waikiki detracting from its popularity. And being on a north shore Turtle Bay's weather is often windy and rainy.

**ON MAUI:**

• A joint venture of Host Hotels & Resorts and Hyatt Residential Group has begun development of a 131 unit timeshare resort adjoining the Hyatt Regency at Kaanapali Beach on Maui. Construction of the single loaded, 12 story tower began in Spring 2013 with an expected 2 year build-out. The resort opened on December 15, 2014 with 2 bedroom-2 bath annual intervals priced in the middle $70,000s. Hyatt's anticipates that the project will experience a sell-out in by early to mid 2018. Hyatt's Maui units have direct access to Kaanapali Beach and owners can access the recreational, shopping and food/beverage outlets of the adjacent 821 room resort hotel.

9

• The mainland investment group that owned the Maui Lu Hotel in Kihei sold the 27 acre site with its entitlements to develop up to 388 timeshare condos. A joint venture of Capbridge Group, a Tokyo investment firm, and Hilton Grand Vacations has purchased the property for in excess of $60 million with development expected to begin in late 2015. Kihei is a down-market location on Maui and 2 bedroom-2 bath units would likely sell in the lower to middle $50,000s. The site is on the inland side of South Kihei Road and includes beach access via a sliver of land on the ocean side of the street. The development site is 10 to 12 minutes driving time from the very upscale Wailea Resort.

**ON HAWAII'S BIG ISLAND:**

• Hilton opened another 98 units at its Waikoloa resort on the Big Island in December 2012. These units are 10% smaller than the 1,000 SF 2 bedroom-2 bath units in the first phases of the Kings Land vacation club and are priced in the middle $40,000s with sales of more than 1,300 intervals per year. Hilton's timeshare resort parcels are inland at the Waikoloa Resort, meaning guests are more than ¼ mile from the ocean though many units have golf course views. Guests have access to Waikoloa's golf courses and can use the facilities of the Hilton Waikoloa Village Hotel. Hilton has land for additional expansion of its Waikoloa timeshare resort.



10

CURRENT PROPERTY DRAWINGS

ARCHITECTS

SPD II Makaiwa
Forest
Development LLC

Waipouli, Kauai
COCONUT BEACH RESORT



Street-Side Perspective

**DEVELOPMENT COSTS & OPERATING PROJECTIONS**

## Hyatt Coconut Beach Resort - Kauai
### Summarized Capitalization

**Capital Sources**

| | |
|---|---:|
| EB-5 based mezzanine loan | 109,500,000 |
| Construction loan | 192,000,000 |
| Key money from Hyatt-Interval Leisure Group | 6,000,000 |
| Equity from Symmetry Property Development II | 31,000,000 |
| **TOTAL SOURCES OF CAPITAL** | $338,500,000 |

**Capital Uses**

| | |
|---|---:|
| Land purchase including expense and other reimbursements | 15,050,400 |
| Payment for entitlements | 10,000,000 |
| Development costs - hard and soft | 259,870,000 |
| Capitalized interest reserve | 12,000,000 |
| EB-5 related costs and interest reserve | 16,972,500 |
| Construction loan fees and discount | 3,840,000 |
| Cash reserve for construction loan credit enhancement | 10,000,000 |
| Reserve for wrap insurance, placement fees, closing costs & rounding | 10,767,100 |
| **TOTAL USES OF CAPITAL** | $338,500,000 |

**Summarized Cash Flow**

| | |
|---|---:|
| Total net revenues from sale of interval inventory & whole owner condos | $1,393,774,022 |
| | |
| Sales and marketing, administration, royalty fees, closing & misc. costs | -561,919,182 |
| Developer's subsidies to condo owners association net of operating income | -45,717,368 |
| Repurchase of whole owner condos | -215,404,272 |
| Construction loan principal and interest | -193,174,088 |
| | -1,016,214,910 |
| | |
| Real estate based cash flow after all expenses including construction loan | 377,559,112 |
| Cash flow from consumer loan portfolio - net | 245,107,625 |
| | |
| | 622,666,737 |
| | |
| Repayment of EB-5 based mezzanine loan with interest - net of reserves returned | -120,257,586 |
| | |
| **Cash flow available for distribution to members** | $502,409,151 |

Case 1:16-cv-01174-LCB-JEP   Document 118-20   Filed 10/01/18   Page 20 of 65

# RA RAGATZ ASSOCIATES

December 18, 2014

Mr. Mitch Heller
Manager, SPDII
Makaiwa Resort Development LLC
4539 N. 22nd Street, Suite 101
Phoenix, Arizona 85016

Dear Mr. Heller,

This letter concerns the proposed Coconut Beach development near Kapaa, Kauai, Hawaii. It is in response to your request that I again opine on tow items, including: (1) the current viability of a feasibility analysis we conducted in 2010 for the subject property on behalf of Arsenal Real Estate Funds ("A Feasibility Analysis for the Resort Real Estate Components of Coconut Beach Resort"); and (2) the estimated land value of the subject property, if developed as planned with 326 timeshare units.

In regard to the first request, I note that during the past four years, we have conducted three other studies on Kauai. We also have worked on several assignments for, or involving, the Hyatt Residential Group. I understand they remain the intended operator of the development, including marketing, sales and management.

I congratulate you on the choice of Hyatt, as they continue to be one of the most successful and respected developers and operators in the timeshare industry, on a global basis. Their position is even more solidified due to the recent sale to a large public company. This will mean even greater financial backing and security than in the past.

The timeshare market en Kauai, elsewhere in Hawaii and throughout the U.S. is more positive than four years ago. Our 2010 study was conducted at the depth of the recession. Since then, the national economy has nicely recovered, tourism to Hawaii has rebounded to a record-setting pace, and the timeshare industry has realized almost a 25 percent gain in sales volume in the U.S.

It appears the timeshare industry in Hawaii has also improved significantly. Prices continue to increase along with absorption rates. Very little new competition has occurred.

In summary, I remain very positive about a large resort timeshare offering at Coconut Beach, especially with Hyatt as the operator. If conducted in 2014, my report from 2010 would be significantly more positive. You appear to be in the right place at the right time.

In regard to your second request to estimate land value of the subject property, I have reviewed your recently prepared pro forma cash flow. In turn I submitted a series of questions to you, all of which were answered in a thorough and satisfactory manner.

As previously noted, there is a longstanding rule-of-thumb in the timeshare industry that says the value of the land should represent between four and six percent of the anticipated sales volume. The six percent only is attained for extremely prime parcels in iconic locations and settings. The Coconut Beach property is special, but perhaps not at the six percent level.

Case 1:16-cv-01174-LCB-JEP   Document 118-20   Filed 10/01/18   Page 21 of 65

Since sales volume is a function of interval prices, I paid special attention to the pricing schedule in your pro forma cash flow. Some refinement still is needed between unit sizes and views, as we mutually discussed. More importantly, however, I find the overall average starting price of about $55,400 to be appropriate. I also find the anticipated three percent annual increase in prices appropriate. This is the same increase we use when conducting a feasibility analysis.

The rationality of the current pricing schedule, and especially the $55,400 average, is even more rational when realizing it has been reviewed and endorsed by Hyatt. They are one of the most experienced companies in the timeshare industry in Hawaii.

Your pricing schedule, annual increase and sales pace assumptions result in a total sales volume of about $1.1 billion. When applying the four to six percent rule-of-thumb to this figure, the value of the subject property would be between $44 million and $66 million, or between about $135,000 and $202,500 per unit. If we arbitrarily select a mid-point of five percent, the land value would be $55 million, or $169,000 per unit. These prices may appear high to readers unacquainted with the timeshare industry, but are based on longstanding standards.

I wish you the best on what should be a very successful venture. Please advise if you want to discuss the preceding comments.

Sincerely,

Richard Ragatz
President
Ragatz Associates

# TITLE



# First American Title Company, Inc.
**1177 Kapiolani Boulevard**
**Honolulu, HI 96814**

July 30, 2014

Order Number:                    1-4643582

Escrow Officer:                  Jill Kauka
Phone:                           (808)457-3784
Fax No.:                         (866)713-7850
E-Mail:                          jkauka@firstam.com

Property:                        Lots 5, 6 and 8, Kuhio Highway
                                 Kapaa, Hawaii 96746

Attached please find the following item(s):

Commitment

Thank You for your confidence and support.  We at First American Title Company, Inc. maintain the
fundamental principle:

## *Customer First!*


# Commitment

First American Title Insurance Company, a Nebraska corporation ("Company"), for a valuable consideration, commits to issue its policy or policies of title insurance, as identified in Schedule A, in favor of the Proposed Insured named in Schedule A, as owner or mortgagee of the estate or interest in the land described or referred to in Schedule A, upon payment of the premiums and charges and compliance with the Requirements; all subject to the provisions of Schedules A and B and to the Conditions of this Commitment.

This Commitment shall be effective only when the identity of the Proposed Insured and the amount of the policy or policies committed for have been inserted in Schedule A by the Company.

All liability and obligation under this Commitment shall cease and terminate 180 days after the Effective Date or when the policy or policies committed for shall issue, whichever first occurs, provided that the failure to issue the policy or policies is not the fault of the Company.

The Company will provide a sample of the policy form upon request.

In Witness Whereof, First American Title Insurance Company has caused its corporate name and seal to be affixed by its duly authorized officers on the date shown in Schedule A.

**First American Title Insurance Company**

Dennis J. Gilmore
President

Jeffrey S. Robinson
Secretary

(This Commitment is valid only when Schedules A and B are attached)

**Copyright 2006-2009 American Land Title Association. All rights reserved.** The use of this form is restricted to ALTA licensees and ALTA members in good standing as of the date of use.
All other uses are prohibited. Reprinted under license from the American Land Title Association.

# CONDITIONS

1. The term mortgage, when used herein, shall include deed of trust, trust deed, or other security instrument.

2. If the proposed Insured has or acquired actual knowledge of any defect, lien, encumbrance, adverse claim or other matter affecting the estate or interest or mortgage thereon covered by this Commitment other than those shown in Schedule B hereof, and shall fail to disclose such knowledge to the Company in writing, the Company shall be relieved from liability for any loss or damage resulting from any act of reliance hereon to the extent the Company is prejudiced by failure to so disclose such knowledge. If the proposed Insured shall disclose such knowledge to the Company, or if the Company otherwise acquires actual knowledge of any such defect, lien, encumbrance, adverse claim or other matter, the Company at its option may amend Schedule B of this Commitment accordingly, but such amendment shall not relieve the Company from liability previously incurred pursuant to paragraph 3 of these Conditions.

3. Liability of the Company under this Commitment shall be only to the named proposed Insured and such parties included under the definition of Insured in the form of policy or policies committed for and only for actual loss incurred in reliance hereon in undertaking in good faith (a) to comply with the requirements hereof, or (b) to eliminate exceptions shown in Schedule B, or (c) to acquire or create the estate or interest or mortgage thereon covered by this Commitment. In no event shall such liability exceed the amount stated in Schedule A for the policy or policies committed for and such liability is subject to the insuring provisions and Conditions and the Exclusions from Coverage of the form of policy or policies committed for in favor of the proposed Insured which are hereby incorporated by reference and are made a part of this Commitment except as expressly modified herein.

4. This Commitment is a contract to issue one or more title insurance policies and is not an abstract of title or a report of the condition of title. Any action or actions or rights of action that the proposed Insured may have or may bring against the Company arising out of the status of the title to the estate or interest or the status of the mortgage thereon covered by this Commitment must be based on and are subject to the provisions of this Commitment.

5. *The policy to be issued contains an arbitration clause. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured and, subject to Hawaii's Uniform Arbitration Act, Hawaii Revised Statutes, Chapter 658A, shall be binding. You may review a copy of the arbitration rules at <http://www.alta.org/>.*

Case 1:16-cv-01174-LCB-JEP   Document 118-20   Filed 10/01/18   Page 26 of 65

*First American Title*

FIRST AMERICAN
TITLE INSURANCE
COMPANY

Corporate Office
1 First American Way
Santa Ana, CA 92707
(800) 854-3643

ISSUED THROUGH THE OFFICE OF:

Case 1:16-cv-01174-LCB-JEP   Document 118-20   Filed 10/01/18   Page 27 of 65



Commitment for Title Insurance

ISSUED BY

**First American Title Insurance Company**

# Schedule A

File No.: 1-4643582

1.  Effective Date: July 23, 2014

2.  Policy (or Policies) to be issued:                                          <u>AMOUNT</u>
    a.  ☐   ALTA Owner's Policy of Title Insurance (6-17-06)
        ☐   ALTA Homeowner's Policy of Title Insurance (Rev. 1-1-08)    $12,000,000.00

    Proposed Insured:    Symmerty Property Development II, LLC and Makaiwa Development, LLC

    b.  ☐   ALTA Loan Policy of Title Insurance (6-17-06)
        ☐   ALTA Expanded Coverage Residential Loan Policy (Rev. 1-1-08)    $

    Proposed Insured:


    c.  ☐                                                                     $
            (Identify form used)

    Proposed Insured:

3.  The estate or interest in the land described or referred to in this Commitment is

    As to Parcel First Items I, II and III:
    A Fee

    As to Parcel Second Items I, II and III:
    An Easement

4.  Title to the Fee Simple estate or interest in the land is at the Effective Date vested in:

    Coconut Beach Development LLC, a Delaware Limited Liability Company

5.  The land referred to in this Commitment is described as follows:

    ITEM I:

    PARCEL FIRST:

    ALL OF THAT CERTAIN PARCEL OF LAND SITUATE AT WAIPOULI, DISTRICT OF PUNA, ISLAND AND COUNTY OF KAUAI, STATE OF HAWAII, DESCRIBED AS FOLLOWS:

    LOT 5, AREA 10.004 ACRES, MORE OR LESS, AS SHOWN ON MAP 6, FILED WITH LAND COURT APPLICATION NO. 1166 OF EDWARD HENRY WALTON BROADBENT.

    PARCEL SECOND:

    ACCESS OVER LOT 9, WHICH PROVIDES ACCESS TO KUHIO HIGHWAY, AS SET FORTH BY LAND

Case 1:16-cv-01174-LCB-JEP   Document 118-20   Filed 10/01/18   Page 28 of 65

COURT ORDER NO. 29243, RECORDED NOVEMBER 22, 1968.

EXCEPTING ANY PORTION OF THE LAND CREATED BY ACCRETION AND ALSO ANY PORTION LYING BELOW THE SHORELINE AS DEFINED BY HAWAII LAW AND/OR CERTIFIED BY THE STATE OF HAWAII DEPARTMENT OF LAND AND NATURAL RESOURCES.

BEING ALL OF THE PREMISES DESCRIBED IN AND COVERED BY TRANSFER CERTIFICATE OF TITLE NO. 727,827
ISSUED TO: COCONUT BEACH DEVELOPMENT LLC, A DELAWARE LIMITED LIABILITY COMPANY

(WARRANTY DEED AND COVENANTS RECORDED DECEMBER 15, 2004, AS LAND COURT DOCUMENT NO. 3206669 OF OFFICIAL RECORDS)

ITEM II:

PARCEL FIRST:

ALL OF THAT CERTAIN PARCEL OF LAND SITUATE AT WAIPOULI, DISTRICT OF PUNA, ISLAND AND COUNTY OF KAUAI, STATE OF HAWAII, DESCRIBED AS FOLLOWS:

LOT 6, AREA 10.806 ACRES, MORE OR LESS, AS SHOWN ON MAP 6, FILED WITH LAND COURT APPLICATION NO. 1166 OF EDWARD HENRY WALTON BROADBENT.

PARCEL SECOND:

ACCESS OVER LOT 9, WHICH PROVIDES ACCESS TO KUHIO HIGHWAY, AS SET FORTH BY LAND COURT ORDER NO. 29243, RECORDED NOVEMBER 22, 1968.

EXCEPTING ANY PORTION OF THE LAND CREATED BY ACCRETION AND ALSO ANY PORTION LYING BELOW THE SHORELINE AS DEFINED BY HAWAII LAW AND/OR CERTIFIED BY THE STATE OF HAWAII DEPARTMENT OF LAND AND NATURAL RESOURCES.

ITEM III:

PARCEL FIRST:

ALL OF THAT CERTAIN PARCEL OF LAND SITUATE AT WAIPOULI, DISTRICT OF PUNA, ISLAND AND COUNTY OF KAUAI, STATE OF HAWAII, DESCRIBED AS FOLLOWS:

LOT 8, AREA 0.161 ACRE, MORE OR LESS, AS SHOWN ON MAP 6, FILED WITH LAND COURT APPLICATION NO. 1166 OF EDWARD HENRY WALTON BROADBENT.

PARCEL SECOND:

ACCESS OVER LOT 9, WHICH PROVIDES ACCESS TO KUHIO HIGHWAY, AS SET FORTH BY LAND COURT ORDER NO. 29243, RECORDED NOVEMBER 22, 1968.

EXCEPTING ANY PORTION OF THE LAND CREATED BY ACCRETION AND ALSO ANY PORTION LYING BELOW THE SHORELINE AS DEFINED BY HAWAII LAW AND/OR CERTIFIED BY THE STATE OF HAWAII DEPARTMENT OF LAND AND NATURAL RESOURCES.

AS TO ITEM II AND ITEM III:

BEING ALL OF THE PREMISES DESCRIBED IN AND COVERED BY TRANSFER CERTIFICATE OF TITLE NO. 727,828
ISSUED TO: COCONUT BEACH DEVELOPMENT LLC, A DELAWARE LIMITED LIABILITY COMPANY

(WARRANTY DEED AND COVENANTS RECORDED DECEMBER 15, 2004 AS LAND COURT DOCUMENT NO. 3206670 OF OFFICIAL RECORDS)



By:

Authorized Countersignature

(This Schedule A valid only when Schedule B is attached.)

Case 1:16-cv-01174-LCB-JEP   Document 118-20   Filed 10/01/18   Page 30 of 65



| Commitment for Title Insurance |
| ISSUED BY |
| **First American Title Insurance Company** |

## Schedule BI

File No.: 1-4643582

**REQUIREMENTS**

The following requirements must be satisfied:

1.    Payment of the necessary consideration for the estate or interest to be insured.

2.    Pay all premiums, fees and charges for the policy.

3.    Documents creating the estate or interest to be insured, must be properly executed, delivered and recorded, as follows: None

4.    Payment of all taxes and/or assessments levied against the subject premises which are due and payable.

5.    With respect to Coconut Beach Development LLC, a Delaware limited liability company:
    1.    A copy of its operating agreement and any amendments thereto;
    2.    A certified copy of its articles of organization and any certificate of correction, certificate of amendment, or restatement of articles of organization;
    3.    If it is a foreign limited liability company, evidence that the limited liability company is properly formed and is in good standing in the State or Country of its incorporation;
    4.    With respect to any deed, mortgage, lease, subordination agreement or other document or instrument executed by such limited liability company and presented for recordation by the Company or upon which the Company is asked to rely, that such document or instrument be executed in accordance with one of the following, as appropriate:
        i)    If the limited liability company properly operates through officers appointed or elected pursuant to the terms of a written operating agreement, such document must be executed by at least two duly elected or appointed officers, as follows:  the chairman of the board, the president or any vice president, and any secretary, assistant secretary, the chief financial officer or any assistant treasurer;
        ii)    If the limited liability company properly operates through a manager or managers identified in the articles of organization and/or duly elected pursuant to the terms of a written operating agreement, such document must be executed by at least two such managers or by one manager if the limited liability company properly operates with the existence of only one manager.
    5.    Other requirements which the Company may impose following its review of the material required herein and other information which the Company may require.

6.    Confirmation there is no open Mortgage(s). Escrow please confirm before closing.

Case 1:16-cv-01174-LCB-JEP   Document 118-20   Filed 10/01/18   Page 31 of 65

# Schedule BII

File No.: 1-4643582

## EXCEPTIONS

The policy or policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the Company:

1.  Real property tax assessments for the fiscal year 2014-2015:

    | | |
    |---|---|
    | Tax Map Key No.: | (4) 4-3-002-015-0000 (AS TO ITEM I) |
    | Class No.: | 7 |

    | | |
    |---|---|
    | First Installment: | $43,026.22, PAYABLE, (8/20) |
    | Second Installment: | $43,026.22, PAYABLE, (2/20) |

    | | |
    |---|---|
    | Tax Map Key No.: | (4)  4-3-002-016-0000 (AS TO ITEM II) |
    | Class No.: | 7 |

    | | |
    |---|---|
    | First Installment: | $46,730.95, PAYABLE, (8/20) |
    | Second Installment: | $46,730.95, PAYABLE, (2/20) |

    TMK No. (4)  4-3-002-020-0000 (AS TO ITEM III): Exempt - Roadway Lot.

2.  Shoreline setback lines as they may be established by the State Land Use Commission or by the various Counties pursuant to the Hawaii Revised Statutes.

3.  Any portion of the land below the line of shoreline vegetation where it was located prior to any avulsive changes.

4.  Terms, provisions, reservations, covenants, conditions and restrictions, but deleting any of the aforementioned indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status, national origin, sexual orientation, marital status, ancestry, source of income or disability, to the extent such covenants, conditions or restrictions violate Title 42, Section 3604(c), of the United States Codes or Chapter 515 of the Hawaii Revised Statutes, as contained in the Amendment and Restatement of Declaration of Easements and Covenants recorded March 19, 1993 as Land Court Document No. 2007394 of Official Records.

    Said instrument amends and restates in full, that certain Declaration of Easements and Covenants recorded February 6, 1986 as Land Court Document No. 1351484, as assigned, of Official Records.

    Amended by instrument recorded June 21, 2004 as Land Court Document No. 3124940 of Official Records.

Case 1:16-cv-01174-LCB-JEP   Document 118-20   Filed 10/01/18   Page 32 of 65

Assignment and Assumption of Rights and Obligations of Declaration of Easements and Covenants recorded July 13, 2005 as Land Court Document No. 3296679.

5.   AS TO ITEM I AND II (LOT 5 AND 6):

   a.   Setback line (75 feet wide) for building purposes as shown on Map 6, filed with Land Court Application No. 1166, and set forth by Land Court Order No. 29243, recorded November 22, 1968.

6.   AS TO ITEM II (LOT 6):

   a.   Reservation in favor of the State of Hawaii of Government Survey Triangulation Station "POLO", Reference Mark 2, together with reasonable access thereto, as disclosed in instrument recorded December 15, 2004 as Land Court Document No. 3206670 of Official Records.

7.   AS TO ITEM III (LOT 8):

   a.   Footpath for ingress and egress purposes as shown on Map 6, as set forth by Land Court Order No. 29470, recorded January 17, 1969, subject to the right of the owner of Lot 8 to relocate the footpath.

   b.   This item has been intentionally deleted.

   c.   Rights of the Coconut Plantation Association for a non-exclusive easement for pedestrian access to the beach over and across Lot 8 appurtenant to and benefitting each Site, as defined in that certain Declaration of Easements and Covenants as of January 13, 1986 recorded as Land Court Document No. 1351484, as amended and restated by Amendment and Restatement of Declaration of Easements and Covenants dated February 25, 1993, recorded as Land Court Document No. 2007394 and further amended by First Amendment to Declaration to the Amended and Restated Declaration of Easements and Covenants and Consent dated December 9, 2003, recorded as Land Court Document No. 3124940, subject to the right of the owner of Lot 8 to relocate the easement, subject to the satisfaction of the relocation conditions as set forth therein.

   d.   This item has been intentionally deleted.

   e.   Rights of the Association of Apartment Owners of the Plantation Hale condominium project for a non-exclusive easement for pedestrian access to the beach over and across Lot 8, subject to the right of the owner of Lot 8 to relocate the easement, as disclosed in instrument recorded December 15, 2004 as Land Court Document No. 3206670 of Official Records.

8.   The following as shown on survey map prepared by Dennis M. Esaki, Land Surveyor, with Esaki Surveying & Mapping, Inc., dated September 16, 2004 and October 15, 2004, revised December 1, 2004, as disclosed in instruments recorded December 15, 2004 as Land Court Document Nos. 3206669 and 3206670 of Official Records.

   a. Sidewalk encroaches on the Northwest side of Lots 5, 6 and 8.

Case 1:16-cv-01174-LCB-JEP   Document 118-20   Filed 10/01/18   Page 33 of 65

9.   Terms, provisions, reservations, covenants, conditions and restrictions, but deleting any of the aforementioned indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status, national origin, sexual orientation, marital status, ancestry, source of income or disability, to the extent such covenants, conditions or restrictions violate Title 42, Section 3604(c), of the United States Codes or Chapter 515 of the Hawaii Revised Statutes, as contained in the Declaration of Covenants and Restrictions (Site 3, Site 4 and Lot 8 - Beach Access Lot) recorded December 15, 2004 as Land Court Document No. 3206664 of Official Records.

10.   Terms, provisions, reservations, covenants, conditions and restrictions, but deleting any of the aforementioned indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status, national origin, sexual orientation, marital status, ancestry, source of income or disability, to the extent such covenants, conditions or restrictions violate Title 42, Section 3604(c), of the United States Codes or Chapter 515 of the Hawaii Revised Statutes, as contained in the Warranty Deed and Covenants recorded December 15, 2004 as Land Court Document No. 3206669 of Official Records (Affects Parcel First).

11.   Terms, provisions, reservations, covenants, conditions and restrictions, but deleting any of the aforementioned indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status, national origin, sexual orientation, marital status, ancestry, source of income or disability, to the extent such covenants, conditions or restrictions violate Title 42, Section 3604(c), of the United States Codes or Chapter 515 of the Hawaii Revised Statutes, as contained in the Warranty Deed and Covenants recorded December 15, 2004 as Land Court Document No. 3206670 of Official Records (Affects Parcels Second and Third)

12.   This item has been intentionally deleted.

13.   This item has been intentionally deleted.

14.   Any and all leases, subleases and/or tenancy agreements, the rights thereunder and encumbrances thereto.

15.   Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by public records.

16.   Any lien, or right to a lien, for services, labor or material theretofore or hereafter furnished, imposed by law and not shown by the public records.

# SURVEY



SHORELINE SURVEY
LOT 5, LOT 6 AND LOT 8
OF LAND COURT APPLICATION 1166 (MAP 6)

AT WAIPOULI, NORTH AND SOUTH OLOHENA,
PUNA, KAUAI, HAWAII
TAX MAP KEYS: (4) 4 - 3 - 002 :015, 016 & 020

# APPRAISAL

# RA RAGATZ ASSOCIATES

December 18, 2014

Mr. Mitch Heller
Manager, SPDII
Makaiwa Resort Development LLC
4539 N. 22nd Street, Suite 101
Phoenix, Arizona 85016

Dear Mr. Heller,

This letter concerns the proposed Coconut Beach development near Kapaa, Kauai, Hawaii. It is in response to your request that I again opine on tow items, including: (1) the current viability of a feasibility analysis we conducted in 2010 for the subject property on behalf of Arsenal Real Estate Funds ("A Feasibility Analysis for the Resort Real Estate Components of Coconut Beach Resort"); and (2) the estimated land value of the subject property, if developed as planned with 326 timeshare units.

In regard to the first request, I note that during the past four years, we have conducted three other studies on Kauai. We also have worked on several assignments for, or involving, the Hyatt Residential Group. I understand they remain the intended operator of the development, including marketing, sales and management.

I congratulate you on the choice of Hyatt, as they continue to be one of the most successful and respected developers and operators in the timeshare industry, on a global basis. Their position is even more solidified due to the recent sale to a large public company. This will mean even greater financial backing and security than in the past.

The timeshare market on Kauai, elsewhere in Hawaii and throughout the U.S. is more positive than four years ago. Our 2010 study was conducted at the depth of the recession. Since then, the national economy has nicely recovered, tourism to Hawaii has rebounded to a record-setting pace, and the timeshare industry has realized almost a 25 percent gain in sales volume in the U.S.

It appears the timeshare industry in Hawaii has also improved significantly. Prices continue to increase along with absorption rates. Very little new competition has occurred.

In summary, I remain very positive about a large resort timeshare offering at Coconut Beach, especially with Hyatt as the operator. If conducted in 2014, my report from 2010 would be significantly more positive. You appear to be in the right place at the right time.

In regard to your second request to estimate land value of the subject property, I have reviewed your recently prepared pro forma cash flow. In turn I submitted a series of questions to you, all of which were answered in a thorough and satisfactory manner.

As previously noted, there is a longstanding rule-of-thumb in the timeshare industry that says the value of the land should represent between four and six percent of the anticipated sales volume. The six percent only is attained for extremely prime parcels in iconic locations and settings. The Coconut Beach property is special, but perhaps not at the six percent level.

767 Willamette Street • Suite 307 • Eugene, OR 97401 • Tel: (541) 686-9335 • Fax: (541) 686-8142

Since sales volume is a function of interval prices, I paid special attention to the pricing schedule in your pro forma cash flow. Some refinement still is needed between unit sizes and views, as we mutually discussed. More importantly, however, I find the overall average starting price of about $55,400 to be appropriate. I also find the anticipated three percent annual increase in prices appropriate. This is the same increase we use when conducting a feasibility analysis.

The rationality of the current pricing schedule, and especially the $55,400 average, is even more rational when realizing it has been reviewed and endorsed by Hyatt. They are one of the most experienced companies in the timeshare industry in Hawaii.

Your pricing schedule, annual increase and sales pace assumptions result in a total sales volume of about $1.1 billion. When applying the four to six percent rule-of-thumb to this figure, the value of the subject property would be between $44 million and $66 million, or between about $135,000 and $202,500 per unit. If we arbitrarily select a mid-point of five percent, the land value would be $55 million, or $169,000 per unit. These prices may appear high to readers unacquainted with the timeshare industry, but are based on longstanding standards.

I wish you the best on what should be a very successful venture. Please advise if you want to discuss the preceding comments.

Sincerely,

Richard Ragatz
President
Ragatz Associates

## Lesher Chee Stadlbauer
Real Estate Valuation & Consulting

Pioneer Plaza, 900 Fort Street, Suite 1500, Honolulu, Hawaii 96813
ph(808)524-1511 fax(808)524-1606 info@lcs-consulting.com

January 16, 2015

Mr. Mitch Heller
**SPD II MAKAIWA RESORT DEVELOPMENT LLC**
4539 N. 22nd Street
Suite 101
Phoenix, AZ 85016

**Re:  RESTRICTED USE APPRAISAL CONCERNING:**
      **Fee Simple Market Valuation of the**
      **Coconut Beach Development Site**
      **Located at Aleka Loop, Waipouli,**
      **Island and County of Kauai, State of Hawaii**

Dear Mr. Heller

At your request, we have prepared and present herewith our opinions, via a Restricted Use Appraisal report, concerning the market valuation of the fee simple real property interest in the above-cited subject property. The subject property is further identified as County of Kauai Tax Map Keys: Division 4, Zone 4, Section 3, Plat 02, Parcels 15, 16, and 20. The effective date of value is January 15, 2015. The intended use of this Restricted Use Appraisal report is for asset monitoring. The intended user of this report is the Addressee (Client).

The property interest appraised involves the as is fee simple interest in the site as of a current date of value. The date of this report is January 16, 2015.

PROPERTY DESCRIPTION

The subject property consists of three parcels with an aggregate land area of 20.971 acres (Parcel 15 – 10.004 acres, Parcel 16 – 10.806 acres, and Parcel 20 – 0.161 acres). The oceanfront *masterparcel* features a regular shape and generally level topography. The vacant property features low-lying vegetation and mature trees, primarily along the site's ocean frontage. The subject site is located between Aleka Loop and Waipouli Beach. The subject features excellent

Real Estate Valuation

Arbitration

Consulting

Going Concern Valuation

Market Research

view planes towards the ocean to the east, coastline to the south, and good view planes of the mountains to the west.

The subject property is split-zoned RR-20 (Resort District) and O (Open District) by the County of Kauai and is also located within a Visitor Destination Area. The site has been entitled for 343 timeshare or multi-family condominium units (and six additional hotel rooms, as required under the subject zoning). However, current ownership has been actively marketing the property.

The County of Kauai Planning Commission approved the following permits on January 23, 2007 for the Developer's proposed project on the subject property: Special Management Use Permit, Project Development Use Permit, and Class IV Zoning Permit. The approval of the cited permits was subject to 19 various conditions. On January 27, 2009, the Planning Commission amended and approved three of the conditions, as mandated by a December 17, 2008 oral order by the Circuit Court of the Fifth Circuit. The entitlements were again revised by the Planning Commission subject to a court order issued in US District Court (Civil No. 12-00065 SOM-KSC) as memorialized in an October 23, 2012 letter to the Developer. We note that as a result of the court orders, prior disputes between the County and the Developer regarding the vast majority of the off-site utility and roadway costs, which had previously been assumed to have been required in order to develop the subject property, were resolved.

According to a letter of memorandum provided by ownership, the subject site "will not be subject to the imposition of any laws or ordinances enacted after January 2007 to the end of the total development period provided CBD does not seek to extend or modify the entitlements. This means CBD is not required to develop workforce housing, will not be subject to Kauai's more stringent shoreline setback requirement and our units are not covered by the island's limit on the growth of visitor accommodations."

SCOPE OF THIS REPORT

The results of the appraisal process are communicated herein as a Restricted Appraisal report, which is intended to comply with the reporting criteria set forth by Standard Rule 2-2(b) of USPAP. It does not include discussions of the data, reasoning and analyses that were used in the appraisal process to develop our opinion of value. Supporting documentation concerning the data, reasoning and analyses is retained in our file. The information contained in this report is specific to the needs of the client and for the intended use stated in this report. We are not responsible for unauthorized use of this report.

LESHER CHEE STADLBAUER

The scope of this restricted use appraisal report is to estimate the market value of the fee simple real property interest in the subject property. The appraisal process typically entails the following: definition of the appraisal problem; site and improvement analyses; highest and best use analyses; market data selection, verification and analysis; application of the selected approaches to value; and the reconciliation of value indications and final value estimates, if required.

In the course of completing this appraisal, a site visit was conducted on January 15, 2015. Various photos of the subject property are retained in our workfile. Various property information items were provided by the Client.

In conducting earlier appraisals of the subject property, we were provided with various third party reports including environmental surveys, archeological studies, plans, renderings, budgets, and land use permits. Such information was cited in our earlier reports, which we hereby cite by specific reference.

Our assignment includes the collection, analyses, and evaluation of specific data pertaining to the subject property and competitive market. We have researched sources including, but not limited to, County of Kauai's Real Property Assessment and Tax Billing Divisions, various government agencies, developers, real estate agents, and property owners in the collection of data. Market data activity from the Island of Kauai, which transacted within seven years preceding the date of this report, was researched.

General market data was extracted from various publications including the *Honolulu Advertiser*, *Honolulu Star Bulletin*, *Pacific Business News*, and *The Garden Island*. Specific market data was also extracted from various Internet sites including but not limited to *hawaiiinformation.com*, *loopnet.com*, *costar.com*, *kauaipropertytax.com*, and *kauaigov.org*. In our valuation of the subject property, the Sales Comparison approach was considered the only applicable approach.

LESHER CHEE STADLBAUER

# EXECUTIVE SUMMARY

| | |
|---|---|
| **LOCATION:** | Aleka Loop, Waipouli, District of Kawaihau, Island and County of Kauai, State of Hawaii |
| **TAX MAP KEYS:** | Division 4, Zone 4, Section 3, Plat 02, Parcels 15, 16, and 20 |
| **PRESENT USE:** | Vacant development site consisting of 20.971 acres of RR-20, Resort District zoned land. The site is permitted for a shared ownership resort consisting of not more than 343 condominium units and 6 hotel units. |
| **SITE DESCRIPTION:** | The subject property consists of three parcels with an aggregate land area of 20.971 acres (Parcel 15 – 10.004 acres, Parcel 16 – 10.806 acres, and Parcel 20 – 0.161 acres). The *master parcel* features a regular shape and generally level topography. The vacant property features low-lying vegetation and mature trees, primarily along the site's ocean frontage. The subject site is located between Aleka Loop and Waipouli Beach. The subject features excellent view planes towards the ocean to the east, coastline to the south, and mountains to the west. |
| **UTILITIES:** | Power, telephone, water, and sewer utility services are available to the subject property. |
| **FLOOD ZONING:** | The majority of the subject property appears to be located in an area designated as Flood Zone "X" (unshaded), as shown on Flood Map Panel Nos. 1500020212F (dated November 26, 2010) Flood Zone "X" (unshaded) describes areas determined to be outside the 500-year flood plain. A narrow strip of the site along the shoreline appears to be located in Flood Zone "VE" (Elevation 11). Flood Zone "VE" is identified as being a Special Flood Hazard Area (SFHA), which refers to areas having special flood or flood-related erosion hazards. |
| **EASEMENTS &RESTRICTIONS:** | A discussion of recorded easements, restrictions, and reservations is provided herein. |

LESHER CHEE STADLBAUER

| | |
|---|---|
| **CENSUS TRACT:** | 402.02 |
| **STATE LAND USE COMMISSION CLASSIFICATION:** | Urban |
| **COUNTY ZONING:** | RR-20, Resort District |
| **RECORDED OWNERSHIP** | |
| **FEE SIMPLE OWNER:** | Coconut Beach Development LLC[1] |
| **RIGHTS APPRAISED:** | Fee simple land value |
| **PROBLEM TO BE SOLVED:** | Develop an opinion of the as-is market value of the fee simple real property interest in the subject property. |
| **INTENDED USER AND USE OF REPORT:** | For use solely by the Addressee (Client), to provide economic, property and market data and value findings for asset monitoring purposes. |
| **REPORT FORMAT:** | **Restricted Use Appraisal Report** format consistent with the Uniform Standards of Professional Appraisal Practice (USPAP) Standards Rule 2-2(b). |
| **PERTINENT DATES:** | **January 15, 2015** (effective date of valuation) |
| | January 216, 2013 (date of report) |

---

[1] It is our understanding that the subject property interest is presently under a sales contract at an undisclosed sales price. The subject has been actively marketed prior to our date of value.

LESHER CHEE STADLBAUER



LESHER CHEE STADLBAUER

AREA DESCRIPTION

The subject is located within the Coconut Coast resort area. This resort area, master-developed by Blackfied Hawaii on Niu Pia Farm lands, was originally developed in the 1970s with a collection of hotels, condominiums and a retail center. Existing hotels include the Aston Kauai Makaiwa Beach, Kauai Beach Boy, Islander on the Beach and Plantation Hale as well as the Coconut Marketplace retail center. This overall development is loosely marketed as the Coconut Coast resort area but does not have the market presence of other Kauai resort area such as Princeville or Poipu. Hence, the immediate subject neighborhood is more resort themed as compared to much of the remainder of Kapaa and Waipouli. The Courtyard Kauai Coconut Beach Resort, built in 1977, is located adjacent to the northeast of the subject property on a 10.38-acre site. This project features 307 guestrooms and is well-known for its award-winning nightly luau show. An 11.8-acre vacant development site which features a landmark coconut grove is located northeast of the hotel. Located across Aleka Loop to the northwest of the subject is the Best Western Plantation Hale Suites. This 145-unit resort condominium project features one-bed/one-bath guestrooms in 10 two-story buildings.

The Kauai Coast Resort at the Beachboy condominium/timeshare project, which was built from 1970 to 1975, is located adjacent to the southwest of the subject site. This 108-unit project features one- and two-bedroom rooms in three low-rise buildings. The resort includes a swimming pool with waterfall and an oceanside spa tub. To the west of the resort across Aleka Loop is the Coconut Marketplace which derives its name from its surrounding landmark coconut grove. We also note that Waipouli Beach Park extends along the shoreline up to the subject from the southwest. Additional development in the immediate neighborhood includes the 197-room Islander on the Beach Resort.

An aerial map of the immediate neighborhood is provided following with the subject's boundaries outlined in red.

LESHER CHEE STADLBAUER



FINDINGS AND CONCLUSIONS

The highest and best use of the subject site as of the effective date of value was concluded to entail development in conjunction with the subject's existing land use entitlements.

Of the available methods of land valuation, the Sales Comparison Approach was considered to be most applicable to the valuation of the subject site. A survey of land transactions was carried out for the purpose of gathering and analyzing market transactions, which could serve as indicators of fee simple land value for the subject site. We researched sales of numerous vacant or marginally improved oceanfront development sites on the Island of Kauai. Due to the lack of actual sales involving such sites, we also considered ground rent re-openings involving determinations of fee simple land value. Ultimately, four land transactions were selected to comprise our primary data set are presented in **Table 1**. Table 1 is provided in the Addenda.

The comparables were adjusted against the subject based on a valuation unit of comparison reflecting sales price per square foot of site area. Elements of comparison included time/market conditions, location, utilities, zoning and physical characteristics. Various impact fees which are payable to the County and stipulated in the subject's

L{\scriptsize ESHER} C{\scriptsize HEE} S{\scriptsize TADLBAUER}

Mr. Mitch Heller
**SPD II MAKAIWA RESORT DEVELOPMENT LLC**
Page 9
January 16, 2015

land use entitlements were also recognized as "below the line" deductions as exhibited in Table 1.

Based on our research and analyses, the fee simple as is market value of the real property interest in the subject property as of January 15, 2015, was concluded to be:

**SEVENTEEN MILLION ONE HUNDRED TEN THOUSAND DOLLARS**

**($17,110,000)**

**Primary Assumptions**
**and Limiting Conditions of This Report**

- It was presumed that all information provided to the appraisers in conjunction with this assignment and past assignments involving the subject property interest are true and correct.

- Consistent with the requirements of USPAP, we requested information concerning the pending sale of the subject property. Such information could not be provided. Our value opinions were thus expressed without benefit of this information.

**The reported valuation conclusions are subject to the *Definitions and Terminology,* and *General Assumptions and Limiting Conditions* presented in the** *ADDENDA*. In addition the following outstanding assumptions were incorporated into this analysis:

**CERTIFICATION**

It is hereby certified that, to the best of the appraiser's knowledge and belief:

1) The statements of fact contained in this report are true and correct.

2) The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are the personal, impartial, and unbiased professional analyses, opinions, and conclusions of the appraiser.

3) The appraiser has no present or prospective interest in the property that is the subject of this report, and has no personal interest with respect to the parties involved.

4) The appraiser has performed services, as an appraiser, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

LESHER CHEE STADLBAUER

5) The appraiser has no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

6) The appraiser's engagement in this assignment was not contingent upon developing or reporting predetermined results.

7) The appraiser's compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

8) The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice (USPAP).

9) The reported analyses, opinions and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

10) Steven D. Chee, MAI has conducted a recent personal inspection of the property (as described) that is the subject of this report.

11) No one, who was not already recognized elsewhere in this report, provided significant real property appraisal assistance to the person signing this certification.

12) The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

13) Steven D. Chee, MAI is currently certified under the required continuing education program of the Department of Commerce and Consumer Affairs (*DCCA*) as it pertains to licensing and certification of real estate appraisers in the State of Hawaii.

14) As of the date of this report, Steven D. Chee, MAI has completed the continuing education program for Designated Members of the Appraisal Institute.


Steven D. Chee, MAI
Hawaii State Certified General Appraiser, CGA-381
Expiration Date 12/31/2015

LESHER CHEE STADLBAUER

**ADDENDA**

## EXHIBIT A

**Definitions and Terms**

# DEFINITIONS AND TERMS[1]

Throughout this report, the reader will encounter various technical words or phrases necessary for the proper presentation of material and conclusions. In addition, certain Hawaiian words, by common usage, which are a part of the everyday local and business language, will be utilized. We present at this point those most commonly used together with a brief explanation.

## MARKET VALUE

**Comment:** Forming an opinion of market value is the purpose of many real property appraisal assignments, particularly when the client's intended use includes more than one intended user. The conditions included in market value definitions establish market perspectives for development of the opinion. These conditions may vary from definition to definition but generally fall into three categories:

1. the relationship, knowledge, and motivation of the parties (i.e., seller and buyer);
2. the terms of sale (e.g., cash, cash equivalent, or other terms); and
3. the conditions of sale (e.g., exposure in a competitive market for a reasonable time prior to sale).

*Appraisers are cautioned to identify the exact definition of market value, and its authority, applicable in each appraisal completed for the purpose of market value.*

**Market Value[2]** means the most probable price, which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

1. Buyer and seller are typically motivated;
2. Both parties are well informed or well advised, and acting in what they consider their own best interests;
3. A reasonable time is allowed for exposure in the open market;
4. Payment is made in terms of cash in U.S. dollars or terms of financial arrangements comparable thereto; and
5. The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

---

[1] Unless otherwise noted, the source for definitions set forth herein is: Appraisal Institute, *The Dictionary of Real Estate Appraisal,* 5th Ed. (*2010*).
[2] Source: 12 CFR, Part 34.42(g); 55 Federal Register 34696, August 24,1 990, as amended at 57 Federal Register 12202, April 9, 1992, and at 59 Federal Register 29499, June 7, 1994; and The Dictionary of Real Estate Appraisal, 5th Edition.

For the purposes of this report, **Market Value "As Is"[3]** is an estimate of the market value of real property in its current physical condition, use, and zoning as of the appraisal's effective date.

**The following definition of Market Value has been set forth under the Uniform Standards of Professional Appraisal Practice (USPAP 2012/2013 Edition) as promulgated by the Appraisal Standards Board (ASB) of the Appraisal Foundation:**

"a type of value, stated as an opinion, that presumes the transfer of a property (i.e., a right of ownership or a bundle of such rights), as of a certain date, under specific conditions set forth in the definition of the term identified by the appraiser as applicable in an appraisal."

## PROSPECTIVE VALUE OPINION

A forecast of the value expected at a specified future date. A prospective value opinion is most frequently sought in connection with real estate projects that are proposed, under construction, or under conversion to a new use, or those that have not achieved sellout or a stabilized level of long-term occupancy at the time the appraisal report is written.

## PROSPECTIVE MARKET VALUE [4]

**Prospective Market Value Upon Completion of Construction** means the prospective future value of a property on the date that construction is completed, based upon market conditions to exist as of the completion date.

**Prospective Market Value Upon Achieving Stabilized Occupancy** means the prospective future value of a property upon the date that stabilized occupancy is achieved and all costs associated with stabilizing occupancy, i.e., discounted rents or other concessions associated with stimulating initial absorption have been recognized.

## HIGHEST AND BEST USE

The reasonably probable and legal use of vacant land or an improved property, which is physically possible, appropriately supported, financially feasible, and that results in the highest value. The four criteria the highest and best use must meet are legal permissibility, physical possibility, financial feasibility, and maximum profitability.

---

[3]FDIC Law, Regulations, Related Acts; 5000 – Statements of Policy, Interagency Appraisal and Evaluation Guidelines, Appendix D – Glossary of Terms (www.fdic.gov/regulations/laws/rules/5000-4800).

[4] *Appraisal Policies and Practices of Insured Institutions and Services Corporation*, Federal Home Loan Bank Board, "Final Rule" 12 CFR Parts 563 and 571, December 21, 1987.

**Highest and best use of land or a site as though vacant.** Among all reasonable, alternative uses, the use that yields the highest present land value, after payments are made for labor, capital, and coordination. The use of a property based on the assumption that the parcel of land is vacant or can be made vacant by demolishing any improvements.

**Highest and best use of property as improved.** The use that should be made of a property as it exists. An existing improvement should be renovated or retained as is so long as it continues to contribute to the total market value of the property, or until the return from a new improvement would more than offset the cost of demolishing the existing building and constructing a new one.

## OWNERSHIP TENURE

**Fee Simple Estate:** Absolute ownership unencumbered by any other interest or estate subject only to the four powers of government (*i.e., eminent domain, escheat, police power, and taxation*).

**Leased Fee Interest:** An ownership interest held by a landlord with the right of use and occupancy conveyed by lease to others. The rights of the lessor (the leased fee owner) and the lessee are specified by contract terms contained within the lease.

**Leasehold Interest:** The interest held by the lessee (the tenant or renter) through a lease transferring the rights of use and occupancy for a stated term and under certain conditions.

## FLOOR AREA [5]

This concept to measure allowed building density is utilized by the City and County of Honolulu's Land Use Ordinance. It is defined as the area of all floors of a structure excluding unroofed areas, measured from the exterior faces of the exterior walls from the centerline of party walls dividing a structure. The floor area of a structure, or portion thereof, which is not enclosed by exterior walls, shall be the area under the covering, roof or floor above which is supported by posts, columns, partial walls, or similar structural members which define the wall line.

## BUILDING AREA TERMS [6]

**Gross Building Area:** This area is defined as "the total constructed area of a building" which is computed by measuring the outside finished surface of the permanent outer walls. It is generally not used for leasing purposes.

---

[5] City and County of Honolulu, *Land Use Ordinance*, (*May 1999*).

[6] *Standard Method for Measuring Floor Area in Office Buildings*, An American National Standard, published by Building Owners and Managers Association (BOMA), 1996.

**Building Common Area**:  Areas of a building that provide services to building tenants but which are not included in the office or store area of any specific tenant.  These areas may include, but not be limited to, main and auxiliary lobbies, atrium spaces at the level of the finished floor, concierge areas or security desks, conference rooms, lounges or vending areas, food service facilities, locker or shower facilities, mail rooms, fire control rooms, fully enclosed courtyards outside the exterior walls, and building core and service areas such as fully enclosed mechanical or equipment rooms.  Specifically *excluded* from Building Common Areas are Floor Common Areas, parking space, portions of loading docks outside the building line, and major vertical penetrations.

**Floor Common Area**:  Areas on a floor such as washrooms, janitorial closets, electrical rooms, telephone rooms, mechanical rooms, elevator lobbies, and public corridors which are available primarily for the use of tenants on that floor.

**Rentable (or Leasable) Area**:  Rentable area means the "usable area" of an office or store area *plus* its share of floor common areas and building common areas.  Rentable area is determined by multiplying "usable area" of an office or store area by the "R/U Ratio".  The total of all rentable areas equals the Building Rentable Area for the building.

**R/U Ratio**:  The conversion factor that, when applied to "usable area," gives the "rentable area" of the "office or store area."  Essentially, the R/U Ratio distributes the "building common area" among the various office and/or store areas.

**Usable Area**:  The actual occupiable area of an office or store space and is of prime interest to a tenant in evaluating the space offered by a landlord and in allocating the space required to house personnel and furniture.


## EFFECTIVE RENT

The rental rate net of financial concessions such as periods of no rent during the lease term; may be calculated on a discounted basis, reflecting the time value of money, or on a simple, straight line-basis.  Consistent with the foregoing, effective rent is often used by brokers and other market analysts to describe the rental rate to ownership net of amortized improvement costs (either paid directly or via improvement allowances provided by ownership).


## EASEMENT

Easements represent another division of property ownership.  An easement is *an interest in real property that conveys use, but not ownership, of a portion of an owner's property*.  Access or right-of-way easements may be acquired by private parties or public utilities.  Governments dedicate conservation, open space, and preservation easements.

Easements usually permit a specific portion of a property to be used for identified purposes, such as access to an adjoining property or as the location of a certain underground utility.  Although surface easements are the most common, subterranean and overhead easements are used for public utilities, subways, and bridges.  Other easements may prohibit the owner of the underlying fee simple interest from certain

uses of the property without giving the owner of the easement any possessory interest in the real estate, e.g., scenic easement and facade easements.[7]

## CASH EQUIVALENCY ANALYSIS [8]

As the typical definition of *market value* recognizes cash equivalent terms, sales prices of comparable properties that appear to have been sold with non-market financing are investigated to determine whether adjustments are warranted to reflect typical market terms at the time of sale. Cash equivalency analysis is the procedure by which appropriate adjustments for non-market financing are determined. Greatest emphasis should be placed upon market-derived adjustments (inclusive of interviews with the parties involved in the transaction to determine if the negotiated price was affected by the financing terms) as opposed to those derived via calculations alone.

## DIRECTIONAL TERMS [9]

The individual islands do not generally lie on a clear north/south axis. Directional terminology therefore, frequently makes reference to location, such as: mauka - (*uka*) inland, upland, towards the mountain; makai - (*kai*) toward the sea; and townside - toward the town.

3-29-12

---

[7] Appraisal Institute, *The Appraisal of Real Estate*, 12th Ed. *(2001)*.
[8] Ibid.
[9] *Hawaiian Dictionary*, Mary Kawena Pukui and Samuel H. Elbert, University of Hawaii Press (*1986*).

| **EXHIBIT B** |

**General Assumptions and Limiting Conditions**

# GENERAL ASSUMPTIONS AND LIMITING CONDITIONS

## General Assumptions

1) While the appraisal may contain information about the physical items being appraised (including their adequacy, age and/or condition), it should be clearly understood that this information is only to be used as a general guide for property valuation and not as a complete or detailed physical report; particularly if this appraisal is made without benefit of any due diligence studies prepared by an architect, civil, or mechanical engineer. *As the appraiser is not a construction, engineering, environmental, or legal expert, and any statement given on these matters in the report should be considered preliminary in nature. Should information be provided following the delivery of this report that would indicate an adverse condition that could impact the value conclusions as presented herein, the appraisers specifically reserve the right to reanalyze the findings of the appraisal.*

2) No responsibility is assumed for the legal description or for matters including legal or title consideration. Title to the property is assumed to be good and marketable unless otherwise stated.

3) The property is appraised free and clear of any or all liens or encumbrances unless otherwise stated.

4) Responsible ownership and competent property management are assumed.

5) Information furnished by others is believed to be reliable. However, no warranty is given for its accuracy.

6) Certain analyses within this assignment were prepared from information provided by project/property ownership. Our preparation does not include an independent verification of information used.

7) All engineering is assumed to be correct. The plot plans and illustrative material in this appraisal report are included only to assist the reader in visualizing the property.

8) It is assumed that there are no hidden or unapparent conditions of the property, subsoil, or structures that render it more or less valuable. No responsibility is assumed for such conditions or for arranging for engineering studies that may be required to discover them.

9) It is assumed that there is full compliance with all applicable federal, state and local environmental regulations and laws unless noncompliance is stated, defined, and considered in this appraisal report.

10) It is assumed that all applicable zoning and use regulations and restrictions have been complied with, unless a nonconformity has been stated, defined, and considered in this appraisal report.

11) It is assumed that all required licenses, certificates of occupancy, consents, or other legislative or administrative authority from any local, state, or national government or private entity or organization have been, or can be obtained or renewed for any use on which the value estimate contained within this report is based.

12) It is assumed that the utilization of the land and improvements is within the boundaries or property lines of the property described and that there is no encroachment or trespass unless noted, defined, and considered in the appraisal report.

13) Any sketch in this report may show approximate dimensions and is included to assist the reader in visualizing the property. Maps and exhibits found in this report are provided for reader reference purposes only. No guarantee as to accuracy is expressed or implied unless otherwise stated in this report. No survey has been made for the purpose of this report.

In addition to the preceding *General Assumptions*, the appraisal report is subject to the following *Limiting Conditions*.

1) Possession of this report, or a copy thereof, does not carry with it the right of publication. It may not be used for any purpose by any person other than the party to whom it is addressed without written consent of the appraiser, and in any event, only with proper written qualification and only in its entirety.

2) The appraiser, by reason of this appraisal, is not required to give further consultation, testimony, or be in attendance in court with reference to the property in question unless such arrangements have been previously made.

3) Neither all nor any part of the contents of this appraisal report (especially any conclusions as to value, the identity of the appraiser, or the firm with which the appraiser is connected) shall be disseminated to the public through advertising, public relations, news, sales, or other media without the prior written consent and approval of the appraiser.

4) The appraiser's liability regarding the services provided within this assignment is limited solely to the amount of the professional fee and does not extend to third parties.

5) In the appraisal assignment, the existence of potentially hazardous material used in the construction or maintenance of the building, such as the presence of urea-formaldehyde foam insulation, asbestos, and/or the existence of toxic waste, which may or may not be present on the property, was not observed by the appraiser; nor does the appraiser have any knowledge of the existence of such materials on or in the property. The appraiser, however, is not qualified to detect such substances. The existence of urea-formaldehyde insulation or other potentially hazardous waste material may have an effect on the value of the property. We urge the client to retain an expert in this field, if desired. *Should information be provided following the delivery of this report that would indicate an adverse condition that could impact the value conclusions as presented herein, the appraisers specifically reserve the right to reanalyze the findings of the appraisal.*

6) Unless otherwise stated in this report, the subject property is appraised without a specific compliance survey having been conducted to determine if the property is or is not in conformance with the requirements of the Americans with Disabilities Act. The presence of architectural and communications barriers that are structural in nature that would restrict access by disabled individuals may adversely affect the property's value, marketability, or utility. *Should information be provided following the delivery of this report that would indicate an adverse condition that could impact the value conclusions as presented herein, the appraisers specifically reserve the right to reanalyze the findings of the appraisal.*

7) All appraisal reports must state that it is the intention of the appraiser that the report complies with all statute, rules, and regulations prohibiting discrimination on the basis of race, color, religion, sex, or national origin, and marital status.

## EXHIBIT C

**Supporting Valuation Schedules**

TABLE 1

**SUBJECT FEE SIMPLE LAND VALUATION**
**COCONUT BEACH RESORT DEVELOPMENT SITE**
**Aleka Loop, Waipouli, District of Kawaihau, Island & County of Kauai, State of Hawaii**
**As of the Date of Value January 1, 2015**

| FACTUAL DATA SUMMARY | SUBJECT PROPERTY | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|
| Tax Map Key (Division 4) | 4-3-02: 15, 16, 20 | 5-4-05: 39 | 4-5-07: 02 | 2-8-17, 08 Mult Parcels | 4-3-07: 27 |
| Project | Coconut Beach | Cliffs at Princeville | Pono Kai | Kahuna Plantation I, II, IIIB | Coconut Plantation |
| Location | Aleka Loop | 3811 Edward Road | Kuhio Highway | Poipu Road | Kuhio Highway |
| Ocean Front | Beach | Sea Cliff | Beach | Beach | Beach |
| Area | Kapaa | Princeville | Kapaa | Poipu | Kapaa |
| District | Kawaihau | Hanalei | Kawaihau | Koloa | Kawaihau |
| Current Use/Use at Time of Sale | Condominium | Condominium | Condominium | Condominium | Vacant |
| Proposed Use | Condominium | | | | Condominium |
| County Zoning/Land Use | RR-20 Open | R-10 | RR-20 | R-20 | RR-20 |
| Date of Transaction | | Jan-11 | Jan-10 | Jan-12 | Expired Listing |
| Transaction Type | | Ground Rent Reopening (Mutual Agreement) | Ground Rent Reopening (Mutual Agreement) | Ground Rent Reopening (Arbitration Award) | |
| Fee Simple Equivalent Sales Price - Land | | $18,870,000 | $11,733,955 | $33,275,000 | $10,100,000 |
| Total Site Area (Square Feet) | 913,497 | 921,817 | 523,853 | 950,697 | 513,267 |
| Total Site Area (Acres) | 20.971 | 21.162 | 12.026 | 21.825 | 11.783 |
| Usable Site Area (Square Feet) | 913,497 | 921,817 | 523,853 | 950,697 | 513,267 |
| Usable Site Area (Acres) | 20.971 | 21.162 | 12.026 | 21.825 | 11.783 |
| No. of Apartment Units (Proposed/Existing) | 349 | 204 | 244 | 237 | 192 |
| Density per Acre | 16.6 | 9.6 | 20.3 | 10.9 | 16.3 |
| Sales Price per Apartment Unit | | $92,500 | $48,090 | $140,401 | $52,604 |
| Sales Price per Square Foot of Site Area | | **$20.47** | **$22.40** | **$35.00** | **$19.68** |
| **ADJUSTMENTS** | | | | | |
| Conditions of Sale | | 0% | 0% | 0% | 0% |
| Adjusted Sales Price per Square Foot | | $20.47 | $22.40 | $35.00 | $19.68 |
| Market Conditions | | -10% | -15% | 0% | 0% |
| Adjusted Sales Price per Square Foot of Site Area | | $18.42 | $19.04 | $35.00 | $19.68 |
| Location / Access / View Planes / Quality of Beachfront | | -10% | 0% | -50% | 0% |
| Zoning / Land Use Controls | | 20% | 0% | 0% | 10% |
| Access to Utilities | | 0% | 0% | 0% | 0% |
| Physical Characteristics: | | | | | |
| Shape, Topography, Etc. | | 10% | 0% | 10% | 0% |
| Net Adjustment before Size | | 20% | 0% | -40% | 10% |
| Adjusted Sales Price per Square Foot before Size Adjustment | | $22.11 | $19.04 | $21.00 | $21.65 |
| Size | | 0% | 0% | 0% | 0% |
| **Total Adjusted Sales Price per Square Foot of Site Area** | | **$22.11** | **$19.04** | **$21.00** | **$21.65** |
| Weighting | | 35% | 40% | 25% | |
| Product | | $7.74 | $7.62 | $5.25 | |
| **SUMMARY OF ADJUSTED VALUE INDICATORS** | | | | | |
| Average Value per Square Foot of Site Area | | | | | $20.95 |
| Weighted Value per Square Foot of Site Area | | | | | $20.60 |
| **CONCLUDED VALUE PER SQUARE FOOT OF SITE AREA PRIOR TO DEDUCTION FOR UTILITY CONNECTION FEES** | | | | | **$20.60** |
| **CONCLUDED FEE SIMPLE LAND VALUE PRIOR TO REQUIRED DEDUCTIONS** | | | | | **$18,820,000** |
| LESS: KAUAI COUNTY SEWER CONNECTION FEE (ROUNDED) | | | | | ($1,360,000) |
| LESS: OFF-SITE TRAFFIC IMPROVEMENTS | | | | | ($350,000) |
| **FINAL CONCLUDED FEE SIMPLE LAND VALUE (ROUNDED)** | | | | | **$17,110,000** |
| **FINAL CONCLUDED VALUE PER SQUARE FOOT OF SITE AREA** | | | | | **$18.73** |

SOURCE: LESHER CHEE STADLBAUER

## EXHIBIT D

**Company Profile and Professional Qualifications**

PROFESSIONAL QUALIFICATIONS
OF
STEVEN D. CHEE, MAI

## PROFESSIONAL EXPERIENCE

➢ Principal, **LESHER CHEE STADLBAUER, Inc.,** Real Estate Appraisal, Arbitration & Consulting, Honolulu, Hawaii, 1998 to Present

➢ Principal, STEVEN CHEE & COMPANY, Real Estate & Hospitality/Valuation & Consulting, Honolulu, Hawaii, 1997 & 1998

➢ Senior Associate, COOPERS & LYBRAND LLP - Hospitality Consulting Practice, Honolulu, Hawaii, 1996.

➢ Senior Real Estate Appraiser and Consultant, SYLVA, HOWELL & ASSOCIATES, Appraisers/Consultants, Honolulu, Hawaii, 1988 to 1995.

➢ Real Estate Manager, CHANEY, BROOKS & COMPANY, Diversified Real Estate Services Company, Honolulu, Hawaii, 1987 & 1988.

➢ Real Estate Analyst, PHILLIP WON & COMPANY, Real Estate Appraisers, Honolulu, Hawaii, 1986.

## PROFESSIONAL ORGANIZATIONS AND LICENSES

➢ Appraisal Institute
  Designated Member (MAI); Director and former Chair of Admissions – Hawaii Chapter

➢ Royal Institution of Chartered Surveyors (MRICS Professional Member designation)

➢ Commercial Investment Real Estate Institute; Former Board Member – Hawaii Chapter

➢ Hawaii Community Reinvestment Corporation

➢ Kalani Iki Estates Association of Dwelling Owners – Board Member

➢ State of Hawaii Certified General Appraiser, License No. CGA-381, Expiration Date: December 31, 2015.

## EDUCATION

➢ Bachelor of Business Administration, Finance, University of Hawaii - Manoa, Honolulu, Hawaii.

➢ St. Louis School, Honolulu, Hawaii.

➢ Various General Real Estate and Real Estate Appraisal Courses and Seminars.

## QUALIFIED EXPERT WITNESS

Mr. Chee has been accepted as an expert witness in real estate valuation in various court and arbitration proceeedings. In addition, Mr. Chee has also functioned as an arbitrator and mediator.

As organized by property type, following is a sampling of the properties that Mr. Chee has had the privilege of performing valuation and consulting services on:

**Hotel and Leisure:** Kahala Mandarin Oriental Hotel, Renaissance Wailea Beach Resort, W Honolulu at Diamond Head, Grand Wailea Resort; Kea Lani Hotel; Maui Prince Hotel; Waikiki Beachcomber Hotel; Waikiki Gateway Hotel; Waikiki Sand Villa Hotel; Hawaiian Waikiki Beach Hotel; Kona Surf Hotel; Holiday Inn Waikiki, Coral Reef Hotel; Waikiki Beachside Hotel; Ocean Resort Hotel; Kamaole Land Venture Development/Maui Sun Hotel; Waikiki Hobron Hotel; Ilima Hotel; Kuhio Village Resort; Continental Surf Hotel; Hotel King Kamehameha; Pagoda Hotel & Terrace; Maui Oceanfront Inn, Waikiki Hana Hotel; Waikiki Malia Hotel; Makena Resort and Golf Courses; Hilton Hawaiian Village Lagoon Apartments; Ko Olina Resort Marina and Harbor Facilities; Royal Kunia Golf Course; Koolau Golf Course; Kiahuna Golf Course; Pukalani Golf Club; Hawaii Country Club; Maui Golf & Waterpark; Elleair Golf Course; Pioneer Inn; New Ewa Beach Golf Course; Kapalua Plantation Course; Kapalua Bay Course, Maile Sky Court Hotel; Dunes at Maui Lani Golf Course; Kauai Beach Resort; Ilikai Hotel; Waikoloa Resort and Golf Courses; Naniloa Volcanoes Resort; Makaha Valley Country Club; Hotel Renew; Best Western Coconut Inn; Ramada Waikiki; Lotus Honolulu; Andaz Wailea Resort; Hyatt Maui Residence Club

**Subdivisions** Maniniowali (Por); Kapalua Mauka Masterplanned Community; Gentry Waiawa Masterplanned Community; Royal Kunia Phase II Masterplanned Community; Maile Kai Masterplanned Community; Honua'ula Masterplanned Community; Makena Resort; Highlands at Waialae Iki Subdivision; Kahala Kua Subdivision; Makakilo Ridge/Kumulani Subdivision; Hale Lumi Subdivision; Pacific Plantation Subdivision; Kupulau Meadows Subdivision; Kawailani Estates Subdivision; Piihonua Estates Subdivision; Keekee Estates Subdivision; Ahuimanu Hills Subdivision; Kakela Makai Subdivision; Holoholo Ku at Parker Ranch Subdivision; Hualalai Vista Subdivision; Paiko Ridge Subdivision; Sandalwood Golf Course Subdivision; Ko Olina Resort Developer Parcels; Makakilo Developer Parcels; Henry Street Commercial Subdivision; Lokahi Makai Subdivision; Kaonoulu Industrial Subdivision; Waikalua Bay Estates; Ke Kailani; Ke Ola Pokai Bay; 49 Black Sand Beach; Maniniowali Lots; Kihei 88 Commercial Subdivision; Hokulani Golf Villas; Kula 1800; Koloa Creekside; Bay View Estates; Kakaako Makai Development Lands

**Condominiums:** Waihonua; Pacifica at Honolulu, Pensacola Chelsea, Koloa Landing at Poipu; Bacarrat Wailea Resort & Residencees; Honua Kai; Kai Maluna; Beach Villas at Ko Olina; Allure Waikiki; Maluaka at Makena; Moana Vista; Vanguard Lofts; Cove at Waikiki; Royal Palms at Poipu, Pili Mai Condominium; Capitol Place Condominium; Watermark Condominium; Koolani Condominium, Moaꞌna Pacific Condominium; 909Kapiolani Condominium; Hoolei Condominium; Waipouli Beach Resort; Kaiulani at Princeville; Kulalani at Mauna Lani; Ka Milo; Palms at Waikiki Condo-tel; Papali O Wailea Condominium; Waimea Plantation Cottages; The Windsor Condominium; Na Hale O Keauhou Condominium; Nihilani Village Condominium; Regency at Huleia Condominium, Seascape Condominium; Kailua Bay Resort; Moanakea Villas, California Hale Condominium; Parkside at Kilani Condominium; Wailua Villas Condominium; Kai Maluna Condominium; Kona Whitesands Makai Condominium; Holomua Condominium; Keola Lai Development Site; Greens at Princeville Development Site; Moanalua Village Condominium; 2040 Nuuanu Condominium; Piikoi Hale Condominium; Aonani Condominium, Makiki Cliffside Condominium; Hale Makalei Condominium; Spectrum Industrial Condominium; Iolani Regent;; Piers 5 and 6 Honolulu Harbor/Pacific Quay Development Site;

| | |
|---|---|
| **Apartments:** | Courts At Lanai Affordable Housing Apartment, Courtyards at Millani Mauka Affordable Housing Apartment, Aeloa Terrace Affordable Housing Apartment, Kukui Gardens; Hale Mohalu Affordable Senior Housing Project; Tropicana Village Affordable Housing Project; Halekua Gardens and Royal Kunia Gardens Affordable Housing Projects; Palehua Terrace Ph. I and II Affordable Housing Projects; Cambridge Park Affordable Housing Project; Kihei Regency Apartments; Queen Emma Gardens; Iolani Regent Apartments; Hawaiian Horizon Hotel; Coconut Inn; Paradise Gardens Apartments, Kailua Bay Resort; Maui Park Apartments; Piilani Gardens; Weinberg Hale; Jack Hall Memorial Kona Affordable Housing Project; Kalealoa Rental Homes; Hilo Palms Dormitory; Kahului Student Dormitory; Kahului Town Terrace; US China Center Dormitory; Kalani Gardens Affordable Rental; Hale Mohalu Affordable Rental; Kulana Hale Affordable Rental; Queen Emma Dormitory |
| **Leased Fee Land Interests:** | Various residential condominium and townhome projects throughout the State of Hawaii; Hawaiian Regent Hotel; Waikiki Parkside Hotel; Queen Kapiolani Hotel; Royal Hawaiian Hotel; Y Hata Sand Island Distribution Facility; Kahala Mall; Waialae Country Club; Kukui Grove Commercial Village; Kamehameha Schools East Honolulu Portfolio; Sheraton Kauai. |
| **Retail:** | Royal Hawaiian Shopping Center; Market City Shopping Center, Kapaa Shopping Center, King Kalakaua Plaza; Pearl Highlands Center; Waikoloa Kings' Shops; Kukui Mall; Hanalei Center; Dillingham Shopping Plaza; Waimalu Plaza Shopping Center; Waipahu Shopping Plaza; Kilohana Square; Temple Valley Shopping Center; Chinese Cultural Plaza; Windward City Shopping Center; Liliha Square; Coral Commercial Center; McCully Shopping Center; Kapiolani Shopping Plaza; Marketplace at Kapolei; Halekuai Center; Waikiki Galleria |
| **Office:** | 1357 Kapiolani; Pacific Guardian Tower; No. 1 Capitol District; City Center; Capitol Center; Queen Emma Building; Honolulu Club Building; International Savings and Loan Building; ANA Kalakaua Center; AAFES Building; Pali Palms Plaza; Liliha Medical Building; Waiakamilo Square; Kodak Building; Honolulu Board of Realtors Building; Pacific Daily News Building *(Guam)*; Courtyards at Crossroads; Pioneer Plaza Kalihi; Hilo Medical Group Building; Kailua Professional Center; 1500 Kapiolani/Heald College Plaza. |
| **Industrial:** | Selected industrial properties located in Campbell Industrial Park, Airport Industrial Park, Gentry Business Park, Mililani Tech Park, Kailua Industrial Subdivision, Waipahu Industrial Subdivision, Lihue Industrial Park, Kona Industrial Subdivision, Kalihi Kai, Kakaako, Harmon Industrial Park (Guam), Kapaa Valley Industrial Lands. |
| **Specialty:** | Pacific Tropical Products Papaya Orchards and Packaging Facility; Kahuku Sugar Mill, Aiea Sugar Mill; Hakalau Nui Forest Preserve; John Bull Macadamia Nut Orchards; Anna's Ranch; Pu'u O Mahuka Heiau; Hawaii Meat Company Cattle Feed Lot; Marks Center Parking Garage; Barbers Point Naval Airstation; Aiea Heights Rest Home; Senator Fong's Plantation and Gardens; Nawiliwili Cemetery; Knudsen Poipu Lands; Paumalu Earthstation; Hamakua Heritage Mushroom Growing and Processing Facility; Ballard Mortuary, Norman Mortuary, Borthwick Hawaii Funeral Home, Valley Isle Memorial Park; Helumoa Road (Right of Way); BMW Honolulu Auto Dealership; Big Island Toyota Auto Dealership; Tony Hyundai Auto Dealership; Windward Chrysler-Jeep Auto Dealership; Windward Nissan Auto Dealership; Kona Mazda Auto Dealership; Cutter Maui Auto Dealership; New City Nissan Auto Dealership; Pflueger Honda Dealership and Parking Garage; Servco Auto Dealership Portfolio; Cyanotech Facility; Pier 4 Honolulu Harbor; Hanalei Buffalo Ranch; USCG Wailupe Station; Kamilonui Valley; Flying R Ranch; |

*October 2012*