# Exhibit 23

PROMISSORY NOTE

$1,022,500.00                                                                 Sept 30th, 2015

New York, New York

Spring Bridge 182 LLC, a Delaware limited liability company and having an address at c/o Waterbridge Capital LLC, 7 Times Square, 37th Floor, New York, New York 10036 ("Borrower"), hereby promises to pay to the order of PORT ROYAL NORTH CAROLINA MUTUAL REASSURANCE TRUST, ("Lender"), the principal sum of One MILLION and 00/100 DOLLARS ($1,022,500.00), with interest thereon in the amounts set forth in this Promissory Note (this "Note"), pursuant to the terms and conditions of this Note.

1. Maturity Date. Borrower shall repay the Loan and accrued interest in full on March 31, 2016 (the "Maturity Date").

2. Payments. Interest shall accrue and be payable, together with the principal amount of this Note,($1,073,625.00) on the Maturity Date. Notwithstanding the foregoing, if Borrower fails to repay the principal amount of this Note and accrued interest thereon on the Maturity Date, then a penalty of $4,000 per day will be charged. If the borrower fails to pay the $1,073,625.00 plus the penalty in full by May 1,2015 then the remedies listed in the "Events of Default" will be triggered. Interest shall accrue on the principal amount of this Note at a rate per annum equal to the lesser of the (i) the maximum amount permitted by law and (ii) the Default Rate. For purposes of this Agreement, the term "Default Rate" means 24% per annum. Nothing in this Section 2 shall derogate from Lender's rights to pursue the rights and remedies accorded to it by Section 3 hereof upon the occurrence of an Event of Default (as hereinafter defined).

3. Events of Default. If one or more of the following events shall occur and be continuing (each an "Event of Default"): (a) Borrower defaults in the payment of principal or interest hereunder on the Maturity Date; (b) Borrower, pursuant to or within the meaning of any Bankruptcy Law (as hereinafter defined): (i) commences a voluntary case or proceeding, (ii) consents to the entry of an order for relief against it in an involuntary case or proceeding, (iii) consents to the appointment of a custodian of it or all or substantially all of its properties, (iv) makes a general assignment for the benefit of creditors, or (v) generally is unable to pay its debts as the same become due; (c) a court of competent jurisdiction enters

an order or decree under any Bankruptcy Law that: (i) is for relief against Borrower in an involuntary case or proceeding, (ii) appoints a custodian of Borrower for all or substantially all of its properties, or (iii) orders the liquidation of Borrower, and in each case the order or decree remains unstayed and in effect for sixty (60) days; or (d) an involuntary case or proceeding pursuant to or within the meaning of any Bankruptcy Law is commenced against Borrower and remains unstayed for sixty (60) days following Borrower obtaining knowledge thereof;

then, and in every event and at any time thereafter during the continuance of such Event of Default, the Lender may exercise all of its rights and remedies at law or in equity, including, without limitation, realizing upon the security granted by the other Loan Documents. For purposes of this Note, the term "Bankruptcy Law" means Title 11 of the U.S. Code or any similar Federal or state law for the relief of debtors, and the term "Custodian" means any receiver, trustee, assignee, liquidator, sequestrator or similar official under any Bankruptcy Law.

4. Waivers; Rights Cumulative. Borrower and all endorsers, sureties, and guarantors hereby jointly and severally waive presentment for payment, demand, notice of demand, notice of nonpayment or dishonor, protest, notice of protest of this note, and all other notices in connection with the delivery, acceptance, performance, default, or enforcement of the payment of this Note. They agree that each shall have unconditional liability without regard to the liability of any other party, and that they shall not be affected in any manner by any indulgence, extension of time, renewal, waiver, or modification granted or consented to by Lender. Borrower and all endorsers, sureties, and guarantors consent to any and all extensions of time, renewals, waivers, or modifications that may be granted by Lender with respect to the payment or other provisions of this note, and to the release of any collateral or any part thereof, with or without substitution, and they agree that additional borrowers, endorsers, guarantors, or sureties may become parties hereto without notice to them or affecting their liability hereunder. Each and every right, power and remedy hereby specifically given to the Lender shall be in addition to every other right, power and remedy specifically given under this Note or under any other document now or hereafter existing at law or in equity, or statute, and each and every right, power and remedy whether specifically herein given or otherwise existing may be exercised from time to time or simultaneously and as often and in such order as may be deemed expedient by the Lender. All such rights, power and remedies shall be cumulative and the exercise or the beginning of exercise of one shall not be deemed a waiver of the right to exercise any other or others. No delay or omission by the Lender in the exercise of any such right, power or remedy and no renewal or extension of any of the obligations of Borrower under this Note, shall impair any such right, power or remedy or shall be construed to be a waiver thereof.

5. Successors and Assigns. All of the Lender's rights hereunder shall inure to the benefit of its successors, assigns and designees and all duties and obligations of Borrower shall be binding upon its successors and assigns.

6. Further Assurances. Borrower agrees that it will execute any customary further documents, instruments, agreements and other writings as shall be reasonably requested by the Lender to effectuate the provisions hereof, provided that such documents do not unreasonably impose additional obligations or liabilities on Borrower in excess of the amounts due under this Note.

7. Severability. Any provision of this Note which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

8. Governing Law; Waiver of Jury Trial Right. This Note shall be governed by the laws of the State of New York without regard to its conflicts of laws principles. BORROWER AND, BY ITS ACCEPTANCE HEREOF, LENDER, HEREBY KNOWINGLY, VOLUNTARILY AND EXPRESSLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ENFORCING OR DEFENDING ANY RIGHTS ARISING OUT OF OR RELATING TO THIS NOTE.

9. Amendments; Entire Agreement. None of the terms or provisions hereof may be waived, altered, modified, limited or amended except by an agreement expressly referring hereto and to which the Borrower and Lender each consents in a writing duly signed by it. This Note embodies the entire agreement among the parties and supersedes any and all prior agreements, whether written or oral, relating to the subject matter hereof.

10. Loan Documents Defined. For purposes of this Note, the term "Loan Documents" shall mean, collectively, this Note, and that certain Mortgage, dated the date hereof (the "Mortgage"), executed and delivered by 2307 Holdings LLC, a Delaware limited liability company, which is the owner of fee title to the premises located at 2307 Broadway, New York, New York (the "Property"), as security for this Note and encumbering the Property. All of the terms, covenants and conditions contained in the Mortgage are hereby made part of this Note to the same extent and with the same force as if they were fully set forth herein.

PLEDGE AGREEMENT

THIS PLEDGE AGREEMENT is made as of this 30th day of Sept, 2015 (this "Agreement") by JOEL SCHREIBER, an individual, having an office at c/o Waterbridge Capital, LLC, 7 Times Square, 37th Floor, New York, New York 10036 (the "Pledger") in favor of Port Royal North Carolina Mutual Reassurance Trust, a [ • ] having an address at 7 Times Square, 37th Floor, New York, New York 10036 (the "Lender").

WITNESSETH:

WHEREAS, Lender is the holder of that certain Note, dated as of the date hereof, in the original principal amount of [ONE MILLION TWENTY TWO THOUSAND FIVE HUNDRED DOLLARS AND 00/100 DOLLARS ($1,022,500.00)], by Spring Bridge 182 LLC, a Delaware limited liability company (the "Borrower"), in favor of Lender (the "Note");

WHEREAS, Pledger joined in the making of the Note to guaranty the payment in full of the Borrower's obligation under the Note, as and when payable (the "Guarantied Obligations");

WHEREAS, Pledger owns of the issued and outstanding membership interests of
~~JS Berry Street LLC~~ Spring Bridge LLC, a Delaware limited liability company (the "Company"), pursuant to that certain Operating Agreement of the Company, dated as of the date hereof, by Pledger (the "Company Operating Agreement");

WHEREAS, to induce Lender to make the loan evidenced by the Note (the "Loan") and as security for the Guarantied Obligations, Pledger is now executing and delivering this Agreement to pledge and grant a first priority security interest to Lender of pledger's right, title and interest in and to 100% of Pledger's membership interest in the Company (the "Interests"); and

WHEREAS, Pledger will benefit either directly or indirectly from Lender's making the Loan to the Borrower.

NOW, THEREFORE, in consideration of the foregoing and in consideration of the mutual covenants hereinafter set forth it is agreed by the parties hereto as follows:

1. The Pledger hereby pledges and grants to the Lender, as collateral security for the due and punctual payment of the amounts payable under the Guarantied Obligations, when due and for the due and punctual performance and observance of the terms, covenants and agreements on its part to be performed and observed under the Guarantied Obligations, (collectively, the "Collateral"): (a) a continuing first priority lien on and security interest in pledger's right, title and interest in and to the Interests and in connection therewith; (b) all ownership interests, membership interests, limited liability company interests, shares, securities, moneys, instruments or property representing a dividend, a distribution or return of capital upon or in respect of the Interests, or otherwise received in exchange therefor, and any membership interest certificates, limited liability company interest certificates, warrants, rights or options issued to the holders of, or otherwise in respect of, the Interests; (c) all rights, privileges, authority and power arising from pledger's interest the Interest or which Pledger otherwise has or may have with respect to the Interest, and all rights, privileges, authority and power of Pledger under the Company Operating Agreement or any other agreement or instrument relating to the Interests, in each case including, without limitation, (i) all rights of Pledger to receive moneys or distributions with respect to the Interests due and to become due under or pursuant to the Company Operating Agreement, (ii) all rights of Pledger to receive proceeds of any insurance, indemnity, warranty or guaranty with respect to the Interests, (iii) all claims of Pledger for damages arising out of, or for breach of or default under, the Company Operating Agreement, to the extent the same pertain to the Interest, (iv) any right of Pledger to perform under the Company Operating Agreement and to compel performance and otherwise exercise all rights and remedies thereunder, to the extent the same pertain to the Interests, (v) all rights of Pledger to receive the profits and the losses allocable to the Interests, (vi) all rights of Pledger to receive distributions of the Company's assets, to the extent allocable to the Interest and (vii) all of pledger's economic rights, voting rights, consent rights, management rights, control rights, rights to status as a member, and rights to receive information under the Company Operating Agreement or otherwise, in each case to the extent arising by virtue of the Interests; (d) all "documents", "accounts", "chattel paper," "general intangibles", "instruments," "securities," "financial assets" and "investment property" constituting the Collateral; and (e) all proceeds of the property of Pledger described in clauses (a) through (d) above.

2. Until a default has occurred with respect to the Guarantied Obligations, the Pledgor shall be entitled to all distributions and other rights as well as tax attributes of a holder in respect to the Interests and shall have the right to exercise any and all voting rights as well as the management and all other powers and rights of the holder of the Interests. Upon and during the continuance of a default in the payment of any amounts payable under the Guarantied Obligations, when the same shall become due and payable, the Lender shall be entitled to all voting, distribution, and other rights of a holder of the Interests.

3.      Pledger represents and warrants that on the date hereof (which representations and warranties shall be given as of the date hereof and shall survive the execution and delivery of this Agreement until this Agreement shall expire by its terms):

a.      Pledger is the direct owner of 100% of the issued and outstanding membership interests in the Company.

b.      None of the Interests or other Collateral are subject to any pledge, lien, mortgage, security interest, charge, option or other encumbrance whatsoever, except the liens and security interests created by this Agreement.

c.      Pledger has good title to the Interests and other Collateral and has full right, power and authority to pledge the Interests and other Collateral pursuant to this Agreement and to execute, deliver and perform its obligations in accordance with the terms of this Agreement, without the consent or approval of any other person.

d.      As of the date hereof, there are no membership certificates and/or limited liability interest certificates, stock certificates, partnership certificates or other certificates of ownership or beneficial interest, notes, or any other documents which are instruments evidencing all or any portion of the Interests and other Collateral. However, to the extent that in the future there exist any such certificates, instruments or writings, Pledger shall deliver all such certificates, instruments or writings to Lender.

e.      This Agreement has been duly executed and delivered by Pledger.

f.      This Agreement constitutes a legal, valid and binding obligation of Pledger, enforceable against Pledger in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, moratorium or similar laws affecting the enforcement of creditors' rights generally.

g.      The Company Operating Agreement has not been amended or modified, and the copy of the Company Operating Agreement delivered to Lender is true, correct and complete in all respects.

h.      The Interests have been duly authorized and validly issued and are fully paid and non-assessable and are not subject to any options to purchase or similar rights of any Person.

i.      This Agreement create a valid security interest in the Collateral, securing the payment of the Guarantied Obligations. Upon the exercise of its rights and remedies under this Agreement, Lender will succeed to all of the rights, title and interest of Pledger in respect of the Interests and will be admitted as a member of the Company and will be the owner and holder of 100% of the limited liability interests in the Company.

4.      Pledger covenants and agrees that it will at all times hereafter during the term of this Agreement continue to hold the percentage interests described in the recitals hereof. Pledger covenants and agrees that it will defend the Interests and other Collateral against all claims and demands of all persons at any time claiming any interest therein. Pledger covenants and agrees that it will not assent to or enter into any amendment or modification, directly or indirectly, of the Company Operating Agreement or otherwise materially adversely affect the right of Pledger or Lender to the Interests or other Collateral without Lender's prior written consent, in its sole discretion.

5.      When all obligations and liabilities under the Note have been paid and performed in full, this Agreement shall automatically terminate and the Lender shall forthwith assign, transfer and deliver to the Pledger, against appropriate receipts, all of the Interests, if any, then in the possession of Lender pursuant to the terms hereof.

6.      This Agreement shall in all respect be construed and interpreted in accordance with, and the rights of the parties shall be governed by, the laws of the State of New York.

7.      This Agreement shall bind, and inure to the benefit of, the respective heirs, executors and assigns of the Lender and the Pledger. Without limiting the foregoing, Lender may at any time and from time to time without the consent of Pledger, assign or otherwise transfer all or any portion of its rights and remedies under this Agreement to any other person or entity, either separately or together with other property of Pledger for such purposes in connection with a transfer of Lender's interest in the Loan and on such terms as Lender shall elect, and such other person or entity shall thereupon become vested with all of the rights and obligations in respect thereof granted to Lender herein or otherwise.

8.      No failure on the part of Lender or any of its agents to exercise, and no course of dealing with respect to, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof; nor shall any single or partial exercise by Lender or any of its agents of any right, power or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right, power or remedy. The remedies provided herein are cumulative and are not exclusive of any remedies provided by law.

9.      Neither this Agreement nor any term or provision hereof may be changed, waived, discharged or terminated, except with the written consent of all the parties hereto.

10.     Pledger hereby agrees to indemnify Lender and its directors, officers, employees and agents from, and hold each of them harmless against, any and all losses, liabilities, claims, damages or reasonable expenses incurred by any of them arising out of or by reason of any claim of any person (1) relating to or arising out of the acts or omissions of Pledger under this Agreement or the Company Operating Agreement (but excluding any such losses, liabilities, claims, damages or expenses incurred by reason of the gross negligence, illegal acts, fraud or willful misconduct of the Person to be indemnified), or (2) resulting from the ownership of or lien on any Collateral, including, without limitation, the reasonable fees and disbursements of counsel incurred solely in connection with any such investigation or litigation or other proceedings (but excluding any such losses, liabilities, claims, damages or expenses incurred by reason of the gross negligence, illegal acts, fraud or willful misconduct of the person to be indemnified).

11.     Without limitation as to any other right or remedy provided to Lender in this Agreement, in the case of an default under the Guarantied Obligations which has occurred and is continuing (i) Lender shall have the right to pursue all of its rights and remedies under this Agreement and the other Loan documents, at law and/or in equity, in one proceeding, or separately and independently in separate proceedings from time to time, as Lender, in its sole and absolute discretion, shall determine from time to time, (ii) Lender shall not be required to either marshal assets, sell any of the Collateral in any particular order of alienation (and may sell the same simultaneously and together or separately), or be subject to any "one action" or "election of remedies" law or rule with respect to any of the Collateral, (iii) the exercise by Lender of any remedies against any one item of Collateral will not impede Lender from subsequently or simultaneously exercising remedies against any other item of Collateral, (iv) all liens and other rights, remedies or privileges provided to Lender herein shall remain in full force and effect until Lender has exhausted all of its remedies against the Collateral and all Collateral has been sold and/or otherwise realized upon in satisfaction of the Guarantied Obligations, and (v) Lender may resort for the payment of the Guarantied Obligations to any security held by Lender in such order and manner as Lender, in its discretion, may elect and Lender may take action to recover the Guarantied

Obligations, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Lender thereafter to foreclose this Agreement.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Pledger has caused this Agreement to be executed as of the date first above written.

PLEDGER:

*/s/ Joel S.*

JOEL SCHREIBER