IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NORTH CAROLINA MUTUAL )
LIFE INSURANCE COMPANY, )
a North Carolina Corporation, )
  )
            Plaintiff, )
  )
    v. ) 1:16CV1174
  )
STAMFORD BROOK CAPITAL, LLC )
a Delaware limited liability company, *et al.* )
  )
            Defendants. )

**MEMORANDUM OPINION AND ORDER**

Loretta C. Biggs, District Judge.

Plaintiff North Carolina Mutual Life Insurance Company ("NCM") brings this action against several corporate and individual defendants for claims related to alleged mismanagement and misappropriation of trust assets. (ECF No. 97.) Eleven of NCM's claims are directed at Defendant David Wasitowski ("Wasitowski").[1] (*Id.*) Wasitowski moves to dismiss the claims against him for insufficient service of process and improper venue.[2] (ECF

---

[1] As set forth in NCM's First Amended Complaint, the claims against Wasitowski are: breach of fiduciary duty; aiding and abetting breach of fiduciary duty; constructive fraud; fraud; federal and state RICO Act violations; unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1; "piercing the corporate veil"; civil conspiracy; conversion; and unjust enrichment. (ECF No. 97 ¶¶ 267–344, 381–396.)

[2] Wasitowski cites Federal Rule of Civil Procedure 4(m) as the basis for his motion to dismiss for insufficient process. (ECF No. 150 at 1.) While Rule 4 governs service of process, motions to dismiss for insufficient process are properly brought pursuant to Rule 12(b)(5). *See* Fed. R. Civ. P. 12(b)(5). The Court will construe Wasitwoski's motion as such.

No. 150 at 1.) In the alternative, Wasitowski asks this Court to transfer this action to the Southern District of New York, pursuant to 28 U.S.C. § 1404(a). (*Id.*)

For the reasons that follow, Wasitowski's motion and request to transfer will be denied.

I. **BACKGROUND**

NCM's claims against Wasitowski constitute only a portion of a large and protracted case. To address the issues at hand, a full rendition of the case's allegations and procedural history is unnecessary; instead, the Court relays only those details important to its consideration of Wasitowski's motion and request to transfer.

NCM filed its original complaint on September 23, 2016. (ECF No. 1.) On August 2, 2018, NCM filed an amended complaint naming, for the first time, Wasitowski as an additional defendant. (ECF No. 97.) To briefly summarize the allegations in the amended complaint, NCM "entrusted Defendants," including Wasitowski, "with safekeeping and properly investing approximately $34,000,000 of its assets" (the "Trust Assets") in April of 2015. (*Id.* at 3; 6–8.) Under the relevant management agreements, (ECF Nos. 1-1 at 2; 1-2 at 3), investment of the Trust Assets was supposed to be limited to certain "Eligible Assets"—cash or securities which complied with the insurer investment requirements outlined in N.C. Gen. Stat. § 58-7-173. (ECF No. 97 ¶ 27.) However, rather than properly invest the Trust Assets, NCM alleges that Defendants "engaged in a concerted fraudulent scheme to transfer [NCM]'s assets into improper investments"—ineligible financial vehicles which they owned or controlled—"and to convert such assets for their own benefit." (*See id.* at 3.)

The amended complaint characterizes Wasitowski, along with Defendants Michael Flatley, Bradley Reifler, and Steven D. Fickes, as the perpetrators of this alleged scheme. (*See,*

2

*e.g., id.* ¶¶ 34, 37, 40.) Of special relevance to the motion currently before the Court, NCM alleges that "[o]n or about December 17, 2014, Wasitowski, Flatley, and Fickes traveled to Durham, North Carolina in order to meet with senior executives of [NCM]" and "persuade" them to make reinsurance changes that would allow Defendants to "gain access to, and control over, the Trust Assets." (*Id.* ¶ 37.)

The record shows the following related to service of the amended complaint on Wasitowski: On August 13, 2018, a summons was issued for Wasitowski at his last known address, 39 Fairmont Road West, Califon, New Jersey (the "Califon residence"). (ECF No. 99-1.) Two days later, on August 15, NCM had copies of the summons and amended complaint delivered to the Califon residence via Federal Express (the "First Service"). (ECF No. 104 ¶ 3(ii).) Although the delivery was addressed to David Wasitowski, an individual named "E. Witkinski" appears to have signed for the documents. (ECF No. 104-2 at 1.) Wasitowski claims not to know anyone by the name of "E. Witkinski." (ECF No. 168-1 ¶ 5.)

The Califon residence is owned by Wasitowski's wife, Olha Wasitowski. (ECF Nos. 160-1 ¶ 5; 168-1 ¶ 3.) Although he lived at the Califon residence until July 31, 2018, Wasitowski avers that he has lived at a different location—5 Laga Court, Ringoes, New Jersey (the "Ringoes residence")—since August 1, 2018. (ECF 152 ¶ 2.) Wasitowski neither confirms nor denies actually receiving the summons and complaint that were sent to the Califon residence. (*See* ECF Nos. 152, 168-1.)

In late August 2018, Wasitowski—who reports to have been "shocked to learn that [he] had been named a defendant"—reached out to attorney Greg Smith ("Smith") to discuss how to respond to the amended complaint. (ECF Nos. 152 ¶ 12; 153 ¶ 4.) Smith agreed to

3

represent Wasitowski for the "limited purpose of exploring" a potential out-of-court resolution to NCM's claims against him. (ECF No. 153 ¶ 5.) To that end, Smith contacted NCM's counsel on August 27 to initiate negotiations. (*Id.* ¶ 7.)

The issues of effective service and time to respond to the amended complaint were discussed throughout the parties' dialogue. While NCM claims that it "never agreed that it had not obtained proper service" via the First Service to the Califon residence, it "did agree to hold off on moving forward with the lawsuit" against Wasitowski while negotiations were ongoing. (ECF No. 160-2 ¶ 6.) Wasitowski, calling the First Service "purported," (ECF No. 153 ¶ 7), insisted that he needed "at least 60 days, and preferably 90 days, to respond to the amended complaint." (ECF No. 168-2 ¶ 5.) Thus, the parties conducted themselves as follows: NCM never conceded that the First Service was ineffective, but expressed a willingness to delay the effective date of service during negotiations; Wasitowski never acknowledged that the First Service was sufficient, but displayed a full awareness of the claims against him and hoped to extend his time to respond.

Negotiations between the parties ultimately proved unsuccessful. (ECF No. 160-2 ¶ 8.) On October 12, Smith contacted NCM to ask "what [NCM was] thinking concerning service of the complaint." (ECF No. 153 ¶ 13.) NCM did not respond until November 28. (*Id.* ¶ 14; ECF No. 160-2 ¶ 9.) At that point, however, Wasitowski "was in no mood to do NCM any favors" and, believing that "NCM had failed to serve him in a timely manner," refused to agree on a date by which he would be required to respond to the amended complaint. (ECF Nos. 153 ¶ 15; 160-2 ¶ 10.) "Out of an abundance of caution, and to avoid any argument regarding improper service," (ECF No. 160-2 ¶ 11), NCM caused Wasitowski

4

to be personally served at his place of work on December 7 (the "Second Service")[3]—127 days after the filing of the amended complaint. (ECF Nos. 144 ¶ 4; 144-1.)

Wasitowski now moves to dismiss NCM's claims on the bases of insufficient service of process and improper venue. (ECF No. 150.) If this Court declines to dismiss NCM's claims, Wasitowski requests that this action be transferred to the Southern District of New York. (*Id.*)

## II. SERVICE OF PROCESS

For motions to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(5), the plaintiff bears the burden of establishing that service of process has been performed in a manner that satisfies the requirements of Rule 4 of the Federal Rules. *See Elkins v. Broome*, 213 F.R.D. 273, 275 (M.D.N.C. 2003). The Court may construe the elements of Rule 4 liberally if it is clear that a defendant had actual notice of the pending suit. *Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir. 1983). Still, while purely "technical" violations may not invalidate service of process, "the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984).

To recap the service-related events outlined above: NCM first attempted to serve Wasitowski by Federal Express on August 15, 2018. (ECF No. 104 ¶ 3(ii).) Thereafter, the parties entered into negotiations for several months, wherein both the effective date of service and the time allotted to respond were recurring points of discussion. (*See* ECF Nos. 153, 160-

---

[3] Wasitowski does not dispute that this Second Service—in form if not in time—met the personal service requirements of Federal Rule of Civil Procedure 4(e)(2)(A).

2, 168-2). Then, on December 7, 2018, Wasitowski was indisputably served in person. (ECF Nos. 144 ¶ 4, 144-1.) Wasitowski contends that process was insufficient because the First Service was invalid and the Second Service, though otherwise proper, was untimely. (ECF No. 151 at 8–11).

As explained below, this Court retains some doubt as to the effectiveness of the First Service. However, in keeping with the Fourth Circuit's "strong preference that [claims] be decided on their merits," *Aikens v. Ingram*, 652 F.3d 496, 523 (4th Cir. 2011), this Court will exercise its discretionary authority under Rule 4(m) and extend the time to serve the amended complaint up to and including December 7, 2018, the date when Wasitowski was definitively served.

### A. Sufficiency of the First Service

Federal Rule of Civil Procedure 4(e)(1) permits a plaintiff to serve a defendant by "following state law for serving a summons . . . in the state where the district court is located." Fed. R. Civ. P. 4(e)(1). Under North Carolina law, service may be executed "[b]y depositing with a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) a copy of the summons and complaint, addressed to the party to be served, delivering to the addressee, and obtaining a delivery receipt." N.C. R. Civ. P. 4(j)(1)(d). The parties do not dispute that Federal Express is a "designated delivery service." Nor is there any contention that the First Service delivery was addressed to the wrong party. The parties do disagree, however, about whether the First Service was "deliver[ed] to the addressee," as required by North Carolina Rule of Civil Procedure 4(j)(1)(d). (ECF No. 168 at 2–3.)

6

North Carolina courts have long recognized "liberality as the canon of construction when interpreting the North Carolina Rules of Civil Procedure." *Washington v. Cline*, 761 S.E.2d 650, 655–56 (N.C. App. 2014). Adhering to that principle, "[t]echnicalities and form are to be disregarded in favor of the merits of the case." *See Lemons v. Old Hickory Council, Boy Scouts of Am., Inc.*, 367 S.E.2d 655, 657 (N.C. 1988). However, the rules governing service of process are to be "strictly enforced to insure that a defendant will receive actual notice of a claim against him." *Grimsley v. Nelson,* 467 S.E.2d 92, 94 (N.C. 1996). In that sense, North Carolina courts and the Fourth Circuit echo one another: at the end of the day, the rules are there to be followed. *See id.*; *Armco*, 733 F.2d at 1089.

The North Carolina Court of Appeals considered the meaning of the phrase "delivering to the addressee" in two relatively recent cases. *See Washington*, 761 S.E.2d at 655; *Hamilton v. Johnson*, 747 S.E.2d 158, 160–61 (N.C. App. 2013). In *Hamilton v. Johnson*, the plaintiff attempted service on the defendant at his last known address in Texas via Federal Express. 747 S.E.2d at 160. The delivery was received and signed for—not by the defendant, but by the concierge at the defendant's building. *Id.* at 162. Without offering proof that the concierge was the defendant's designated agent for service of process, the plaintiff argued that Rule 4(j) created a statutory presumption of effective service when the summons and complaint were signed for by someone of suitable age and discretion on the addressee's behalf. *See id.* The Court of Appeals disagreed, noting that, in redrafting Rule 4(j) in 2001, the state legislature "elected not to include any statutory presumption of valid service under Rule 4(j)(1)'s methods of service of process." *Id.* at 162–63. Accordingly, absent "any findings as to whether [the

7

concierge] was an agent authorized to accept service of process on defendant's behalf," the court could not conclude that process had been "deliver[ed] to the addressee." *Id* at 163.

Less than a year after *Hamilton* was decided, the Court of Appeals again considered the phrase "delivering to the addressee" in *Washington v. Cline*. 761 S.E.2d at 655. As in *Hamilton*, the defendants in *Washington* argued that process had been insufficient under 4(j)(1)(d); the plaintiffs had attempted service by Federal Express, but the deliveries were either signed for by non-agents or left on the addressee's doorstep. *See id.* at 653, 661. However, unlike in *Hamilton*, each of the defendants in *Washington* filed affidavits "in which they admitted to receiving the summonses and copies of the complaint against them as evidence of effective service of process." *Id* at 653. The Court of Appeals took this evidence of actual notice to be dispositive, declaring that the "crucial issue" was whether the summons and complaint "*were in fact received* by the defendants challenging service." *Id.* at 657 (emphasis added).

Read together, the import of *Hamilton* and *Washington* appears to be that, in order to properly effectuate service by "delivering to the addressee," a plaintiff must demonstrate that the summons and complaint were either (1) signed for by the addressee or her designated agent or (2) actually received by the addressee. *See* 761 S.E.2d at 657; 747 S.E.2d at 162–63. This interpretation of Rule 4(j)(1)(d) helps to ensure that defendants "will receive actual notice of [the] claim[s] against [them]," *Grimsley,* 467 S.E.2d at 94, without permitting "[t]echnicalities" to inhibit courts from reaching the merits when there is evidence that the summons and complaint were actually received, *Lemons*, 367 S.E.2d at 657.

Wasitowski insists that the person who signed for the First Service—"E. Witkinski"—was not "appoint[ed] . . .as [his] agent for any purpose," (ECF No. 168-1 ¶ 5), and NCM offers

8

no evidence to the contrary. Similarly, although Wasitowski was "shocked to learn" that he had been named in this case, (ECF No. 152 ¶ 12), he neither confirms nor denies *actually receiving* the summons and complaint from the First Service. (*See* ECF Nos. 152, 168-1.) As discussed above, it is the plaintiff's burden to prove either receipt by an agent, or actual, eventual receipt by the defendant.[4] *See Washington*, 761 S.E.2d at 660; *Hamilton*, 747 S.E.2d at 163. Thus, despite the fact that Wasitowski seems to have had full knowledge of the claims against him, NCM's First Service appears to have fallen short of the requirements of North Carolina Rule of Civil Procedure 4(j)(1)(d).

### B. The Second Service and Rule 4(m)

The First Service, however, was not the only service here. As detailed above, Wasitowski does not contest the validity of the Second Service itself. The issue, instead, is whether the Second Service can properly cure the defects of the First, given that it did not occur until 127 days after the filing of the amended complaint.

Federal Rule of Civil Procedure 4(m) states, in relevant part, that:

> If a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against the defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

---

[4] Relatedly, NCM argues that Wasitowski's "actual notice" is evidenced by the fact that he "obtained counsel to negotiate . . . a resolution of the claims and his deadline to respond." (ECF No. 160 at 11.) This Court agrees with the North Carolina Business Court that the involvement of defense counsel, without more, is not enough to satisfy a plaintiff's burden of proving "deliver[y] to the addressee." *See Bizrobe Tr. by Doublebent, LLC v. InoLife Techs., Inc.*, No. 17 CVS 306, 2019 WL 166124, 2019 NCBC 3, at * 6 (Forsyth Co. Super. Ct. Jan. 9, 2019). Were that the case, courts would be required to deny nearly all motions to dismiss brought under Rule 12(b)(5). *See id.*

9

Fed. R. Civ. P. 4(m). Although the plain language of the Rule states that the Court "must" grant an extension upon a showing of "good cause," the Advisory Committee Notes accompanying Rule 4 explain that district courts are "accorded discretion to enlarge the [90]–day period 'even if there is no good cause shown.'" *Henderson v. United States*, 517 U.S. 654, 662–63 (1996) (quoting Fed. R. Civ. P. 4 advisory committee's notes to 1993 amendment); *DiPaulo v. Potter*, 570 F. Supp. 2d 802, 807 (M.D.N.C. 2008).

A discretionary extension is appropriate in this case. Typically, in cases where service is earnestly attempted, but "the first service of process is ineffective, a motion to dismiss should not be granted." *See Vorhees v. Fischer & Krecke*, 697 F.2d 574, 576 (4th Cir. 1983) (quoting *Bailey v. Boilermakers Local 667*, 480 F. Supp. 274, 278 (N.D.W. Va. 1979)). Rather, the Court should "quash [ ] service of process and . . . retain [the case] . . . pending effective service." *Id.* Here, however, a second, "effective" service has already been performed.[5] Because Wasitowski was personally served through the Second Service, it is unnecessary to require NCM to refile or attempt another service.

Three primary considerations underlie this Court's decision to extend the timeframe for service. First, an extension will not prejudice Wasitowski. By negotiating the issue of an effective date of service with NCM, Wasitowski sought "at least 60 days, and preferably 90 days, to respond to the amended complaint." (ECF No. 168-2 ¶ 5.) As noted above, 127 days

---

[5] Wasitowski points out that NCM has not filed a formal motion to extend the time for service, pursuant to Federal Rule of Civil Procedure 6(b)(1)(B), which provides that "[w]hen an act may or must be done within a specified time, the court may . . . extend the time . . . *on motion* made after the time has expired." Fed. R. Civ. P. 6(b)(1)(B) (emphasis added). This Court is uncertain whether, given the breadth of its discretionary authority under Rule 4(m), such a motion is actually necessary. Regardless, the Court will treat NCM's briefing and affidavits as an application for an extension of time. *See DiPaulo*, 570 F. Supp. 2d at 807.

elapsed between the filing of the amended complaint and the Second Service. (*See* ECF Nos. 97, 144-1.) Also, as a practical matter, Wasitowski has had more than a year to consider a response to the allegations in the amended complaint. Second, this Court recognizes that the parties attempted to negotiate a resolution to the pending claims outside of court. NCM could have attempted to serve Wasitowski again sooner, but chose, instead, to honor his request that "no one . . . attempt to serve [him]" during negotiations in order to facilitate dialogue. (ECF 160-2 ¶¶ 6–7.) In this case, adopting a rigid stance toward service would have discouraged the parties from attempting to settle this matter. Finally, this Court recognizes and shares the preference of both the Fourth Circuit and the North Carolina Supreme Court in deciding cases, when possible, on their merits. Accordingly, this Court will extend the time to serve the amended complaint up to and including December 7, 2018 and deny Wasitowski's motion to dismiss for insufficient service.

## III. VENUE

Next, the Court will address Wasitowski's objection to venue and transfer request. "When an objection to venue has been raised under Rule 12(b)(3), the burden lies with the plaintiff to establish that venue is proper in the judicial district in which the plaintiff has brought the action." *Plant Genetic Sys. v. Ciba Seeds*, 933 F. Supp. 519, 526 (M.D.N.C. 1996) (citing *Bartholomew v. Va. Chiropractors Ass'n*, 612 F.2d 812, 817 (4th Cir. 1979)). A plaintiff is only obliged to make a prima facie showing of proper venue in order to survive a motion to dismiss under Rule 12(b)(3). *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 366 (4th Cir. 2012) (citing *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004)). However, even when venue is proper, "a district court may transfer any civil action to any other district or division where

it might have been brought" if such transfer is for the convenience of the parties and witnesses and serves the interests of justice. *See* 28 U.S.C. § 1404(a); *Dillon v. BMO Harris Bank, N.A.*, 16 F. Supp. 3d 605, 616 (M.D.N.C. 2014).

### A. Appropriateness of Venue

The general venue statute, 28 U.S.C. § 1391, governs most civil actions founded on diversity of citizenship. Venue is proper in any judicial district in which a "*substantial part* of the events or omissions *giving rise to the claim* occurred." 28 U.S.C. § 1391(b)(2) (emphasis added). Because "substantial" events related to a claim may occur in different places, venue is sometimes proper in more than one district. *See Mitrano*, 377 F.3d at 405.

"[I]n determining whether events or omissions are sufficiently substantial to support venue," a court should consider "the entire sequence of events underlying the claim." *Id.* (quotations omitted). Moreover, for the purposes of making a venue determination, what is "sufficiently substantial" is a question of quality, not quantity; what matters most is whether the material acts or omissions within the forum "bear a close nexus to the claims." *See Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 433 (2d Cir. 2005); 17 Moore's Federal Practice § 110.04 (2019).

As Wasitowski correctly notes, the amended complaint alleges that he performed multiple acts related to NCM's claims in New York. (*See, e.g.*, ECF No. 97 ¶¶ 34 (drafting the Investment Advisory Agreement), 51 (opening custodial accounts), 76 (waiving fees without authorization).) In contrast, the amended complaint alleges only one act directly tying Wasitowski to the Middle District of North Carolina—his participation in the December 2014 meeting in Durham to pitch NCM executives on transferring their reinsurance business and

12

assets. (*Id.* ¶ 37.) The question, then, is whether this single meeting constitutes a "substantial part" of the events giving rise to NCM's claims against Wasitowski. This Court concludes that it does.

At the center of all of NCM's claims is the allegation that Wasitowski and others worked to defraud NCM and harness its assets for their own benefit. (ECF Nos. 97 at 3; 160 at 7.) Viewing the facts, as this Court must, in the light most favorable to NCM, *see Aggarao*, 675 F.3d at 366, it is clear that this meeting was integral to the success of the alleged scheme. Had Defendants failed to convince NCM to change its reinsurer, they would never have gained access to the Trust Assets at the heart of this case. Thus, when analyzed as a step in "the entire sequence of events," *Mitrano*, 377 F.3d at 405, the meeting was a "substantial," if not crucial part of the behavior giving rise to NCM's claims. Accordingly, venue in this district is proper.[6]

Wasitowski argues that, even if venue in this district is appropriate for *some* of NCM's claims, it is not appropriate for NCM's federal RICO claim. (*See* ECF No. 151 at 6, 8.) In addition to the general venue provisions of § 1391, the RICO statutes contain a special venue provision, 18 U.S.C. § 1965. Pursuant to that provision, venue is proper for federal civil RICO claims in the district where a defendant "resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). Further, in any RICO action "in which it is shown that the ends of justice

---

[6] In a similar case, the Sixth Circuit held that a single meeting between parties, in conjunction with a series of telephone calls and the opening of an IRA, satisfied 1391(b)(2)'s substantiality requirement despite the fact that "the majority of incidents giving rise to [the] claim" took place outside of the chosen venue. *See First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 262, 264 (6th Cir. 1998). Other courts have found "substantiality" with much less. *See, e.g.*, *Bates v. C & S Adjusters, Inc.*, 980 F.2d. 865, 868 (2d Cir. 1992) (concluding that single collection notice forwarded into presiding district was sufficient to make venue proper).

require that other parties residing in any other district be brought before the court," the statute permits a court to summon those parties. *Id.* § 1965(b).

Because § 1391 governs all civil actions "except as otherwise provided by law," 28 U.S.C. §1391(a), the Court must consider whether § 1965 operates as the *exclusive* venue provision for RICO claims or whether, instead, it supplements the general venue provisions. *See Cortez Byrd Chips v. Bill Harbert Constr. Co.*, 529 U.S. 193, 198 (2000) (explaining that "if [a special venue statute] [is] permissive and thus supplement[s], but do[es] not supplant, the general provision," then proper venue may be found under § 1391). If § 1965 is exclusive, then NCM would have to demonstrate either that Wasitowski "resides, is found, has an agent, or transacts his affairs" in this district, or that "justice require[s]" bringing him before this Court. However, if § 1965 is *not* exclusive, then venue over NCM's federal RICO claim will be proper, as explained above, under § 1391.

Neither party has called this Court's attention to any Fourth Circuit case which states, one way or the other, whether § 1965 is exclusive. However, as several out-of-circuit courts have noted, the language and legislative history of § 1965 suggest that the provision is "not a venue *requirement*; rather, it is a substitute venue provision that a plaintiff may utilize if venue is not otherwise available." *Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 54 (D.D.C. 2006); *see also City of New York v. Cyco.net, Inc.*, 383 F. Supp. 2d 526, 544 (S.D.N.Y 2005) ("Congress intended the civil RICO venue provisions to be a liberalization to the federal venue statute."). Under this view, a plaintiff can maintain an action under the general provisions of § 1391 even if venue is improper under the RICO-specific provisions of § 1965. *See Van Schaick v. Church of Scientology of Cal., Inc.*, 535 F. Supp. 1125, 1133 n.6 (D. Mass. 1982).

14

This Court is inclined to agree that § 1965 was intended to supplement, rather than supplant, § 1391. The language of § 1965(a) is permissive—a civil action "*may* be instituted" in certain venues—and, as other courts have noted, Congress seems to have modeled the RICO venue statute on the venue provisions of our antitrust laws, which are generally considered non-exclusive. *See Riley v. Donatelli*, No. 3:16-cv-898-J-34JBT, 2017 WL 3316479, at *8 n.11 (M.D. Fla. Aug. 3, 2017); 17 Moore's Federal Practice § 110.01 (2019) ("Generally, special venue statutes have been considered to be non-exclusive if the statute is read as originally intended to expand rather than contract venue."). Absent contrary precedent, this Court finds that venue is proper under the general provisions of § 1391 for all of NCM's claims against Wasitowski, including the federal RICO claim.[7]

## B. Request for Transfer

Having determined that venue is proper in this district, the Court now turns to Wasitowski's request to transfer NCM's action to the Southern District of New York. The decision whether to transfer venue is committed to the sound discretion of this Court. *See Brock v. Entre Computer Centers, Inc.*, 933 F.2d 1253, 1257 (4th Cir. 1991). In considering a

---

[7] This Court also recognizes, but does not employ, an alternative method for finding proper venue for the RICO claim: the doctrine of "pendent venue." "The pendent venue doctrine is an exception to the general rule that a plaintiff must demonstrate proper venue with respect to each cause of action and each defendant." *Nabong v. Paddayuman*, 289 F. Supp. 3d 131, 136 (D.D.C. 2018) (internal quotation and citation omitted). As the United States District Court for the District of Columbia has explained, when venue lies for some of a plaintiff's claims, but not all, a court may, in its discretion, use pendent venue to entertain the improperly venued claims. *Id.* As with pendent jurisdiction, pendent venue may be asserted when "all the claims arise," as they do here, "from the same nucleus of operative fact." *Miller v. Asensio*, 101 F. Supp. 2d 395, 409 (D.S.C. 2000) (citing *Sadighi v. Daghighfekr*, 36 F. Supp. 2d 267, 277–78 (D.S.C. 1999)).

motion for change of venue, the Court weighs a number of factors,[8] bearing in mind that such a motion should not be granted if it simply shifts the inconvenience from the defendant to the plaintiff. *See Tools USA and Equip. Co. v. Champ Frame Straightening Equip., Inc.*, 841 F. Supp. 719, 721 (M.D.N.C. 1993). Furthermore, "[u]nless the balance [of factors] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984) (quoting *Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1946)).

On balance, the factors weigh against transfer in this case. NCM is at home in this district and has chosen to litigate here. In addition to its federal claims, NCM asserts several claims under North Carolina statutes and common law, which are likely more familiar to this Court than to a foreign district. North Carolina, for its part, also maintains an interest in resolving this dispute; as acknowledged in the briefing, NCM has become "statutorily insolvent" and has been under active supervision by the North Carolina Department of Insurance for some time. (ECF No. 160 at 14); *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) ("A State generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.") (quotation omitted). Moreover, this Court cannot ignore the fact that this case, which has been pending in this district since September 2016, has attained a certain momentum; transferring a portion of

---

[8] There are at least eleven factors relevant to this determination, depending on the case. Those factors are: "(1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws." *See Dillon*, 16 F. Supp. 3d at 616–17 (citing *Plant Genetic Sys.*, 933 F. Supp. at 527).

NCM's action at this point would be disruptive. *See Dillon*, 16 F. Supp. 3d at 617 (reasoning that, if like claims against only one of several defendants were transferred to another venue, "two courts would be required to decide the same questions").

Wasitowski argues that venue should be transferred because material witnesses are likely to be located in New York, where the availability of compulsory process may be limited. (ECF No. 152 ¶ 21); *see* Fed. R. Civ. P. 45(c)(1)(A) (permitting a district court to subpoena any witness within 100 miles of a trial, hearing, or deposition). However, "[m]erely stating that potential witnesses reside beyond a forum's subpoena power does little to assist the court in weighing the convenience of the witness and the necessity of compulsory process." *IHFC Props., LLC v. APA Mktg., Inc.*, 850 F. Supp. 2d 604, 623 (M.D.N.C. 2012) (quoting *Samsung Elecs. Co., Ltd., v. Rambus, Inc.*, 386 F. Supp. 2d 708, 719 (E.D. Va. 2005)). Wasitowski has made no showing that any of the New York witnesses would be unwilling to appear if called. *See Hunter v. Mountain Commerce Bank*, No. 1:15cv1050, 2016 WL 5415761, at *10 (M.D.N.C. Sept. 28, 2016) (noting that, to carry its burden on a motion to transfer, a moving party "must demonstrate whether its witnesses are willing to travel"). Further, as it pertains to discovery, any inconvenience in accessing New York witnesses or documents will likely be borne primarily by NCM, rather than Wasitowski. Thus, without a greater showing by Wasitowski, the location of potential witnesses weighs only somewhat in favor of transfer.

Finally, while this Court acknowledges that litigating in North Carolina may pose a personal financial hardship to Wasitowski, transferring venue to the Southern District of New York would only shift that hardship onto NCM. *See Tools USA*, 841 F. Supp. at 721.

For these reasons, the balance of interests is not "strongly in favor" of transfer to the Southern District of New York. *Collins*, 748 F.2d at 921. Therefore, this Court declines to exercise its discretion to transfer NCM's action.

**IV.  CONCLUSION**

In sum, this Court concludes as follows: (1) an exercise of this Court's discretionary authority under Federal Rule of Civil Procedure 4(m) to enlarge the timeframe for effective service is appropriate in this instance; (2) venue is proper in this district for all of NCM's claims against Wasitowski, as a "substantial part of the events or omissions giving rise to the claim occurred" here; and (3) transfer to the Southern District of New York is unwarranted, as the balance of interests is not "strongly in favor" of transfer.

For the reasons stated herein, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that Wasitowski's motion to dismiss or, in the alternative, transfer venue, (ECF No. 150), is DENIED.

This, the 27th day of September 2019.

/s/ Loretta C. Biggs
United States District Judge