IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| NORTH CAROLINA MUTUAL LIFE INSURANCE COMPANY, a North Carolina Corporation, Plaintiff, v. STAMFORD BROOK CAPITAL, LLC a Delaware limited liability company, *et al.* Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | 1:16CV1174 |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiff North Carolina Mutual Life Insurance Company ("NCM") brings this action against several corporate and individual defendants for claims related to alleged mismanagement and misappropriation of trust assets. (ECF No. 97.) Defendant Bradley Reifler ("Reifler") has filed a Counterclaim and Third-Party Complaint, in which he asserts claims against NCM and impleads its current and former CEOs, Michael L. Lawrence ("Lawrence") and James H. Speed Jr. ("Speed"). (ECF No. 118.)

Four interrelated motions are now before the Court: (1) NCM's motion to dismiss Reifler's counterclaim, (ECF No. 120); (2) Lawrence's motion to dismiss Reifler's third-party claims, (ECF No. 142); (3) Speed's motion to vacate an entry of default and dismiss Reifler's third-party claims, (ECF No. 163); and (4) Reifler's motion for leave to file an amended

counterclaim and third-party complaint, (ECF No. 176). For the reasons that follow, NCM, Lawrence, and Speed's motions will be granted. Reifler's motion will be denied.

## I.    BACKGROUND

NCM initiated this lawsuit on September 23, 2016. (ECF No. 1.) On January 20, 2017, Reifler filed for Chapter 7 bankruptcy relief in the Bankruptcy Court for the Southern District of New York, causing this Court to administratively terminate NCM's action as to Reifler until his bankruptcy proceedings concluded. (ECF Nos. 46, 47.) Settlement negotiations between NCM and certain other Defendants began shortly thereafter and resulted in a settlement agreement on March 3, 2017. (ECF No. 51 ¶ 6.) At the joint request of those parties, this Court issued an order staying litigation "through September 30, 2018 . . . or until such sooner time as [NCM] request[ed] the Court lift the stay." (ECF No. 52 at 2.) However, the settlement agreement was short lived; on June 1, 2017, NCM moved to lift the stay, (ECF No. 53), and this Court issued an order to that effect on April 24, 2018, (ECF No. 79 at 8).

On May 1, 2017, around the time the settlement agreement was faltering, NCM filed an adversary proceeding in Reifler's bankruptcy case, requesting that the Bankruptcy Court classify his alleged liability to NCM as nondischargeable. (ECF No. 97 ¶¶ 248–249.) Without fully recounting those proceedings, it is sufficient to note that, on May 4, 2018, the Bankruptcy Court granted a default judgment in favor of NCM on all of its claims asserted in the adversary proceeding. (ECF No. 90-1 at 11–12.) In justifying its decision to grant a default judgment, the Bankruptcy Court explicitly found that Reifler had "engaged in an intentional and directed campaign" to spoliate electronic evidence relevant to NCM's claims and "willfully failed to comply" with the court's discovery and sanctions orders. (*Id.* at 6, 10.) At the end of the

bankruptcy proceedings, NCM moved to reopen its case as to Reifler. (ECF No. 89.) This Court granted that motion on February 25, 2019. (ECF No. 171.)

After the collapse of the settlement agreement and the conclusion of Reifler's bankruptcy case, NCM filed an amended complaint on August 2, 2018. (ECF No. 97.) To briefly summarize the allegations in the amended complaint: NCM alleges that it "entrusted Defendants," including Reifler and the "Forefront Entities," "with safekeeping and properly investing approximately $34,000,000 of its assets" (the "Trust Assets") in April of 2015. (*Id.* at 3, 6–8.) Under the relevant management agreements, (ECF Nos. 1-1 at 2; 1-2 at 3), investment of the Trust Assets was supposed to be limited to certain "Eligible Assets"—cash and securities which complied with the insurer investment requirements outlined in N.C. Gen. Stat. § 58-7-173. (ECF No. 97 ¶ 27.) However, NCM alleges that, rather than properly invest the Trust Assets, Defendants "engaged in a concerted fraudulent scheme to transfer [NCM]'s assets into improper investments"—ineligible financial vehicles which they owned or controlled—"and to convert such assets for their own benefit." (*See id.* at 3.)

In response to the amended complaint, Reifler filed an answer, a counterclaim against NCM, and third-party claims against Lawrence and Speed. (ECF Nos. 117, 118.) NCM and Lawrence have timely moved to dismiss the respective counterclaim and third-party claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF Nos. 120, 142.) When it appeared[1] that Speed had failed to plead or otherwise defend within his allotted time, Reifler requested an entry of default, which the Clerk of Court granted. (ECF

---

[1] As discussed more thoroughly in Section IV below, the Clerk of Court relied on an inaccurate affidavit in entering default against Speed.

Nos. 158, 159.) Pursuant to Rules 55(c) and 12(b)(5)[2] of the Federal Rules of Civil Procedure, Speed now moves to vacate that entry of default and dismiss the third-party claims against him. (ECF No. 163.) Reifler, for his part, seeks leave from this Court to amend his counterclaim and third-party complaint so as to incorporate "additional facts and details that recently came to light [and] new information supporting new claims." (ECF No. 176 at 1.) This Court will address each motion in turn.

## II.     NCM'S MOTION TO DISMISS COUNTERCLAIM

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2). *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), thereby "giv[ing] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A complaint may fail to state a claim upon which relief can be granted in two ways: first, by failing to state a valid legal cause of action, i.e., a cognizable claim, *see Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012); or second, by failing to

---

[2] Speed cites Federal Rule of Civil Procedure 4(m) as the basis for his motion to dismiss for insufficient process. (ECF No. 163 at 2.) While Rule 4 governs service of process, motions to dismiss for insufficient process are properly brought pursuant to Rule 12(b)(5). *See* Fed. R. Civ. P. 12(b)(5). The Court will construe Speed's motion as such.

allege sufficient facts to support a legal cause of action, *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

The true substance of Reifler's counterclaim and third-party complaint takes some effort to discern. Reifler groups his allegations under four counts, titled "Negligence," "Negligence *Per Se*," "Fraud," and "Respondeat Superior." (ECF No. 118 at 27–40.) However, looking beyond those headings, Reifler's claims are essentially threefold: (1) that NCM either failed to verify that Defendants' investments met the criteria for "Eligible Assets" or implicitly consented to improper investments, thereby relieving Reifler of liability (the "negligence-related claims"); (2) that by "attempt[ing] to blame" Reifler publicly for its own mismanagement, NCM has caused Reifler to suffer "irreparable" reputational harm (the "defamation claims")[3]; and (3) that by providing Reifler with an underlined copy of North Carolina General Statute § 58-7-173, NCM fraudulently enticed him into making improper investments (the "fraud claim"). (*See id.* at 3–4, ¶¶ 104–09, 150–152.)

Although he was represented by counsel at the outset of this lawsuit, Reifler now appears *pro se*. This Court has an obligation to construe *pro se* filings, "however inartfully pleaded," less rigidly than "formal pleadings drafted by lawyers."[4] *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the "[p]rinciples requiring generous construction of *pro se*

---

[3] Reifler does not title any of the counts in his counterclaim as "Defamation." However, he includes subheadings for "defamation," "slander," "libel," "integrity," "character," and "future financial gain" beneath his count for "Negligence *Per Se*" and discusses "claims for defamation" in his responsive briefing. (ECF Nos. 118 ¶ 140; 136 at 7–9.)

[4] NCM notes that Reifler's response brief was filed twenty-seven days after NCM filed its motion to dismiss. (ECF No. 137 ¶ 2.) Local Rule 7.3 requires the filing of a response brief "within 21 days after service of the motion." L.R. 7.3(f). However, given Reifler's status as a *pro se* litigant and the fact that NCM has not been prejudiced by this brief delay, this Court will accept his late submission.

complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). This Court need not act as Reifler's advocate, nor help him develop otherwise meritless claims. *See Adler v. Anchor Funding Servs., LLC*, No. 3:10cv515, 2011 WL 1843226, at *2 (W.D.N.C. May 16, 2011) (citing *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978)).

### A. Reifler's Negligence-Related Claims

Even if construed liberally, Reifler's negligence-related claims cannot survive NCM's motion to dismiss. The counts titled "Negligence" and "Negligence *Per Se*" fail to allege an essential element of those torts: a legal duty owed to Reifler by NCM. *See Fussell v. N.C. Farm Bureau Mut. Ins. Co.*, 695 S.E.2d 437, 440 (N.C. 2010) ("To state a claim for common law negligence, a plaintiff must allege: (1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach."); *Stein v. Asheville City Bd. of Educ.*, 626 S.E.2d 263, 266 (2006) (explaining that a violation of a public safety statute imposing a "specific duty" for the protection of individuals in the plaintiff's class is negligence *per se*). Nowhere does Reifler allege that NCM owed *him* any special, general, or fiduciary duty based on any business relationship, contract, statute, or common law. (*See* ECF No. 118.) Rather, throughout his counterclaim and third-party complaint, Reifler insists that there was "no business relationship" between him and NCM and that the parties never entered into "any agreement" of any kind. (*See, e.g., id.* at 15–16.) The closest Reifler comes to alleging facts which would support the existence of a legal duty is his statement that "[NCM], Speed and Lawrence in failing to perform their required fiduciary duties [have] caused Reifler to be harmed financially." (*Id.* ¶ 105.) However, the alleged duties referenced in that statement would be

owed to NCM and its shareholders—not Reifler.  Because Reifler has not sufficiently alleged

that any duty was owed to him by NCM, his negligence-related claims must fail.

However, there is another—and, in this Court's view, better—way to view Reifler's

negligence-related claims: as defenses sounding in implied consent, contributory negligence,

or a related doctrine.  *See generally* 1 North Carolina Law of Torts §§ 15.20, 19.20 (2019)

(discussing defenses tied to plaintiff's conduct).  For example, when Reifler alleges that NCM

failed to "make any effort to make sure that [Defendants'] investment recommendations met

their Eligible Asset criteria" or "pull[ ] the [improper] . . . investment selections [when they]

were sent to them," he is arguing that NCM's alleged harm is the result of "[its] own doing

and not that of Reifler."  (ECF No. 118 ¶¶ 74–76, 109); *see* North Carolina Law of Torts §

19.20 n.3 ("Contributory negligence is the breach of the duty of the plaintiff to exercise due

care for his own safety in respect of the occurrence about which he complains.").  Likewise,

when Reifler alleges that "[a]t no time did [NCM] . . . write and/or voice[ ] any concern to

Reifler or his team" that certain investments were improper, he appears to be stating a defense

akin to implied authorization or consent.  (ECF No. 118 ¶ 72.)

When a party "mistakenly designates a defense as a counterclaim . . . the court must, if

justice requires, treat the pleading as though it were correctly designated."  Fed. R. Civ. P.

8(c)(2).  Put another way: "What is really [a] . . . defense to a suit does not become an

independent piece of litigation because of its label."  *Tenneco Inc. v. Saxony Bar & Tube, Inc.,* 776

F.2d 1375, 1379 (7th Cir. 1985).  Reifler's negligence-related claims are more aptly described

as defenses; this Court will consider them as such, and, accordingly, finds no place for them

in a separate counterclaim against NCM. Thus, Reifler's negligence-related claims will be dismissed.

## B. Reifler's Defamation Claims

Reifler further claims that NCM has caused him "irreparable harm" by "defaming his reputation, character and livelihood" through allegedly "false accusations as outlined in [NCM]'s Amended Complaint." (ECF No. 118 at 4, 34–35.) However, as NCM correctly points out, (*see* ECF No. 121 at 7), Reifler's reputational claims all stem from allegations first published in the course of this litigation. Under North Carolina law, statements alleged to be "false, fraudulent, or misleading" are privileged if they are made in connection with a judicial proceeding. *See Edwards v. Parrish Tire Co.*, No. 1:18CV811, 2019 WL 4246671, at *3 (M.D.N.C. Sept. 6, 2019) (discussing the contours of North Carolina's litigation privilege). This litigation privilege applies when three conditions are met: (1) the statements at issue are made in the course of a judicial proceeding; (2) the statements are sufficiently relevant to said proceeding; and (3) the plaintiff's claim is based on the allegation that the statements are false, fraudulent, or misleading. *See id.*; *Harris v. NCNB Nat. Bank of N.C.*, 355 S.E.2d 838, 841–42 (N.C. Ct. App. 1987). All three conditions are met here.

First, the statements complained of were made in the course of a judicial proceeding. (*See* ECF No. 118 at 34–35 ("telling others false information . . . as specifically outlined in Plaintiff's Amended Complaint"; "knowingly making false public statements . . . as specifically described in Plaintiff's Amended Complaint"; "making false accusations as outlined in the amended complaint").) In his responsive briefing, Reifler adds, for the first time, that NCM "knowingly made false damaging statements about [him] immediately after it underwent an

audit" at a time before this litigation arose. (ECF No. 136 at 8.) These alleged pre-litigation statements appear nowhere in the counterclaim itself. In addition, Reifler has failed to identify any *specific* defamatory statements from this time period. (*See id.*) While alleged defamatory statements "need not be repeated verbatim . . . they must be alleged substantially in *haec verba*, or with sufficient particularity to enable the court to determine whether the statement was defamatory." *See Izydore v. Tokuta*, 775 S.E.2d 341, 349 (N.C. Ct. App. 2015) (internal quotations omitted) (quoting *Stutts v. Duke Power Co.*, 266 S.E.2d 861, 866 (N.C. Ct. App. 1980)). Second, the statements at issue are highly relevant to this litigation. NCM's statements regarding Reifler's alleged tortious conduct—in Reifler's summation, that he has "committed fraudulent acts, failed to carry out his duties of a fiduciary, [and committed] breach of contract"—go to the heart of the claims set out in NCM's amended complaint. (ECF No. 118 at 34.) As it pertains to the litigation privilege, a statement is considered sufficiently relevant to a judicial proceeding unless it is "so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy or impropriety." *Jones v. Coward*, 666 S.E.2d 877, 879 (N.C. Ct. App. 2008) (citation and internal quotation omitted). NCM's statements easily satisfy this test. Finally, Reifler's defamation claims are based on the allegation that NCM's statements are false, fraudulent, or misleading. (*See* ECF No. 118 at 33–35.)

Thus, all of the alleged false statements on which Reifler's defamation claims are based are privileged under North Carolina law. Accordingly, Reifler has failed to state a legally cognizable claim for defamation.

### C. Reifler's Fraud Claim

Reifler also asserts a counterclaim for fraud. Most of the "Fraud" allegations are substantively duplicative of the negligence-related and defamation claims discussed above. (*See* ECF No. 118 ¶¶ 143–158.) However, Reifler appears to separately allege that NCM engaged in fraud by sending him an underlined copy of North Carolina General Statutes § 58-7-173 and intimating that its requirements were "very liberal," thus "showing Reifler he could loan money" in ways now alleged to have been improper. (*Id.* ¶¶ 150–152.)

Under North Carolina law, the necessary elements of actionable fraud are: "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Jones v. Harrelson & Smith Contractors, LLC*, 670 S.E.2d 242, 250 (N.C. Ct. App. 2008) (citation omitted). When a party alleges fraud in federal court, the complaint must satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783–84 (4th Cir. 1999). Failure to satisfy the heightened pleading requirements of Rule 9(b) subjects a fraud claim to dismissal under Rule 12(b)(6). *Harrison*, 176 F.3d at 783 n.5.

This Court finds Reifler's fraud claim to be deficient, as it does not appear from the facts alleged that NCM made any false representation of material fact. Reifler alleges that NCM sent him a copy of North Carolina General Statute § 58-7-173—the statute outlining the kinds of financial instruments a regulated insurer may invest in—and "underlined the portion that states '[a]n insurer may invest in stocks, common or preferred, of any corporation

created or existing under the laws of any foreign country other than Canada subject to the provisions of G.S. 58-7-173.'" (ECF No. 118 ¶ 150 (quoting N.C. Gen. Stat. § 58-7-173).) Reifler does not suggest that, merely by sending him a copy of a controlling statute, NCM falsely represented that he was free to disregard other laws or agreements limiting investment of the Trust Assets to "Eligible Assets." Instead, Reifler contends that by "claiming [the statute] was very liberal," NCM "convinc[ed]" him to direct the Trust Assets in a certain manner. (*Id.* ¶ 152.)

It may be true that NCM intended to convey an opinion about the breadth of investment options available under § 58-7-173. However, a representation which is nothing more than the statement of an opinion cannot constitute a false representation for purposes of a fraud claim. *See Johnson v. Phx. Mut. Life Ins. Co.*, 266 S.E.2d 610, 616 (N.C. 1980) (citing *Myrtle Apartments, Inc. v. Lumbermen's Mut. Cas. Co.*, 127 S.E.2d 759 (N.C. 1962)). There is no allegation that NCM altered the text of § 58-7-173, nor that it did anything more than express an opinion that the statute permitted a wide variety of investments. Absent any allegations that NCM has made a false representation of material fact, Reifler has failed to state a cognizable claim for fraud. Accordingly, his fraud claim must be dismissed.

## III. LAWRENCE'S MOTION TO DISMISS THIRD-PARTY CLAIMS

Next, the Court will address the appropriateness of Reifler's third-party claims, beginning with Lawrence's motion to dismiss. Pursuant to Federal Rule of Civil Procedure 14, a defendant "may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). Derivative liability is the key to proper impleader; third-party claims are only permissible if

they attempt to "pass on to the third party all or part of the liability asserted against the defendant." *See GE Healthcare Fin. Servs. v. EBW Laser, Inc.*, 225 F.R.D. 176, 180 (M.D.N.C. 2004) (citing 3 Moore's Federal Practice § 14.04(3)(a)). "[A] third-party defendant may not be impleaded merely because he may be liable to the *plaintiff*." *Scott v. PPG Indus., Inc.*, 920 F.2d 927, at *3 (4th Cir. 1990) (per curium) (citation omitted). Rather, it is "manifest from the language of the rule that the third-party claim must be dependent on or related to the initial plaintiff's claim *against the defendant*." *Id.* (emphasis added.) In other words, impleader is usually inappropriate where the defendant "says, in effect, 'It was him, not me.'" *Watergate Landmark Condo. Unit Owners' Asso. v. Wiss, Janey, Elstner Assocs., Inc.*, 117 F.R.D. 576, 578 (E.D. Va. 1987).

Reifler has not expressly alleged that Lawrence (or, for that matter, Speed) is derivatively or secondarily liable to him for any losses he may incur as a result of NCM's claims against him. North Carolina does recognize a substantive right to contribution among joint tortfeasors, which can, in some instances, provide a valid basis for impleader. *See* N.C. Gen. Stat. § 1B-1; *Superior Performers, Inc. v. Ewing*, No. 1:14cv232, 2015 WL 790371, at *2 (M.D.N.C. Feb. 25, 2015). However, while purportedly bringing his third-party claims against them as individuals, Reifler has portrayed Lawrence and Speed not as joint tortfeasors—outside actors who, along with Reifler, may have contributed to NCM's alleged injuries—but as authorized agents and employees of NCM. Reifler alleges that Lawrence and Speed were "at all times acting in [their] capacity[ies] as an employee, agent and/or director" of NCM and were "authorized . . . to make decisions, including authorizing and signing off on investment recommendations on behalf of [NCM]." (ECF No. 118 ¶¶ 32–34.) The deficient claims for negligence, defamation, and fraud discussed above are directed equally, without

differentiation, at NCM, Lawrence, and Speed. (*See id.* ¶¶ 110–158.) Further, Reifler includes a separate count entitled "Respondeat Superior" which raises no new claims but, instead, emphasizes that "[NCM] is liable for the acts of its employees including but not limited to Speed and Lawrence," as if to dispel any doubt that Lawrence and Speed's actions should be attributed to NCM. (*Id.* ¶ 169.)

In short, Reifler has failed to show that Lawrence would be liable to him for any losses he may sustain as a result of NCM's claims. Accordingly, this Court will grant Lawrence's motion to dismiss the third-party claims against him.

## IV. SPEED'S MOTION TO VACATE AND DISMISS THIRD-PARTY CLAIMS

The third-party claims against Speed are identical to those brought against Lawrence and likewise improper. However, there is an additional issue: the Clerk of Court, relying on an affidavit which declared that Speed had been "served the within Counter Complaint/Third-Party Complaint and Summons," (ECF No. 146), entered default against Speed on January 28, 2019, (ECF No. 159).

Contrary to the affiant's declarations, Speed has stated that no summons was ever issued for him in this case. (ECF No. 164 at 3–4.) The Court confirms—and Reifler does not dispute—that there is no summons for Speed on the electronic docket, nor any record of such a summons on file with the Clerk of Court. Accordingly, Speed could not have been properly served under the Federal Rules, which require service of a summons "signed by the clerk" and "bear[ing] the court's seal." Fed. R. Civ. P. 4(a)(1). Because "the procedural requirement of service of summons must be satisfied" before this Court can obtain jurisdiction over a third-party defendant, this Court will exercise its authority pursuant to Rule 55(c) and

vacate the entry of default against Speed.[5]  *See Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).

Having established that no summons exists, Speed further moves this Court to dismiss Reifler's third-party claims for insufficient service of process.  The Court acknowledges that more than ninety days have passed since the filing of Reifler's third-party complaint.  (ECF No. 118.)  When "a defendant is not served within 90 days after the complaint is filed," Rule 4(m) requires the Court to "dismiss the action without prejudice . . . or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).  However, the Court must grant a plaintiff an extension upon a showing of "good cause" and may, in its discretion, grant an extension "even if there is no good cause shown."  *See id.*; *DiPaulo v. Potter*, 570 F. Supp. 2d 802, 805, 807 (M.D.N.C. 2008).

Reifler is operating *pro se* and appears to have relied on the expertise of a certified process server to effectuate service on Speed.  (*See* ECF No. 169 ¶¶ 6–12.)  Ordinarily, this Court would be inclined to provide him with another opportunity to complete service.  *See Vorhees v. Fischer & Krecke*, 697 F.2d 574, 576 (4th Cir. 1983) (citing *Bailey v. Boilermakers Local 667*, 480 F. Supp. 274, 278 (N.D.W. Va. 1979)).  However, as explained above, Reifler's third-party complaint is invalid under Federal Rule of Civil Procedure 14 as to both Lawrence and Speed.  In this instance, there is no reason to reattempt service; the claims against Speed are

---

[5] Federal Rule of Civil Procedure 55(c) permits a court to "set aside an entry of default for good cause."  Fed. R. Civ. P. 55(c).  Insufficient service of summons, which implicates due process rights, is "good cause."  *See O.J. Distrib., Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345, 353 (6th Cir. 2003) ("[I]f service of process was not proper, the court must set aside an entry of default."); *Lostutter v. Cook*, No. 1:17-cv-801, 2018 WL 6002472, at *3 (M.D.N.C. Nov. 15, 2018) (explaining that an entry of default may be vacated for insufficient process).

themselves improper.  Accordingly, in addition to vacating the entry of default against Speed, this Court will dismiss Reifler's third-party claims against him.

## V.  REIFLER'S MOTION TO AMEND

Finally, this Court considers Reifler's motion to amend his counterclaim and third-party complaint.  The determination of whether to grant or deny a motion to amend a pleading lies within this Court's sound discretion.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Federal Rule of Civil Procedure 15(a) advises courts to freely grant leave to amend a pleading "when justice so requires."  Fed. R. Civ. P. 15(a).  However, it is appropriate to deny leave to amend a pleading when doing so would be "prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."[6] *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman*, 371 U.S. at 182).  "There is no error," therefore, in denying a request to amend "when the claim sought to be pleaded by amendment plainly would be subject to a motion to dismiss."  *Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 420–21 (4th Cir. 1990).

Reifler proposes amending his counterclaim and third-party complaint with "new information supporting new claims."  (ECF No. 176 at 1.)  The "new claims" are presented as four additional counts: "Unjust Enrichment," "Economic Loss," "Deception," and "Common Tortious Interference."  (ECF No. 176-2 at 56–59.)  The "new information" Reifler

---

[6] Although this Court will ultimately deny Reifler's motion to amend on the basis of futility, indications of bad faith and dilatory motive also appear to be present in this case.  (*See* ECF No. 90-1 at 4–5, 10 (finding that, while "acting in bad faith," Reifler "engaged in an intentional and directed campaign to permanently delete, erase and spoliate" relevant evidence, such that "severe sanctions" were warranted).)

wishes to add in support of these proposed counts concerns an alleged settlement agreement between NCM and one Joel Schreiber ("Schreiber"). (*See* ECF No. 176-2 at 5–10.) As part of this settlement, Reifler alleges that NCM "intentionally wiped out a debt for millions of dollars that Schreiber owed," in turn "causing . . . Reifler to lose millions of dollars." (*Id.* at 8, ¶ 116.) Candidly, this Court strains to understand from the pleadings just how, exactly, the Schreiber settlement may have indirectly resulted in a substantial, personal loss for Reifler. The proposed amendments, for example, do not allege any direct contractual or business relationship between Reifler and Schreiber which may have been impacted by NCM's settlement. Nevertheless, this Court must determine whether the newly alleged facts and claims warrant granting Reifler leave to amend his counterclaim and third-party complaint.

### A. "Unjust Enrichment"

Reifler claims that, through the Schreiber settlement, NCM "elimat[ed] millions of dollars owed to Forefront and Reifler [in order] to unjustly enrich themselves." (*Id.* ¶ 206.) However, as with the negligence and fraud claims discussed above, Reifler fails to allege essential elements of an unjust enrichment claim. Underlying the doctrine of unjust enrichment is the equitable notion that "one person should not be permitted unjustly to enrich himself [or herself] at the expense of another." *Butler v. Butler*, 768 S.E.2d 332, 336 (N.C. Ct. App. 2015) (quoting *Watson Elec. Constr. Co. v. Summit Cos., LLC*, 587 S.E.2d 87, 92 (N.C. Ct. App. 2003)). However, "the mere fact that one party was enriched, even at the expense of the other," does not, on its own, "bring the doctrine of unjust enrichment into play." *Id.* According to the North Carolina Court of Appeals, a successful claim for unjust enrichment requires "some added ingredients" which demonstrate that a benefit was "conferred . . . under

circumstances which give rise to a legal or equitable obligation . . . to account for the benefits received." *See id.*; *JPmorgan Chase Bank, Nat'l Ass'n v. Browning*, 750 S.E.2d 555, 560 (N.C. Ct. App. 2013) (internal citation omitted). Thus, to make out a prima facie claim for unjust enrichment under North Carolina law, a claimant must show: (1) that he conferred a benefit upon the other party, (2) that the benefit was not conferred officiously or (3) gratuitously, (4) that the benefit is measurable, and (5) that the other party consciously accepted the benefit. *See Butler*, 768 S.E.2d at 336.

As NCM notes in its briefing, (ECF No. 181 at 7), Reifler fails to allege that he personally conferred any benefit on NCM. Instead, the thrust of Reifler's unjust enrichment claim is that, by settling its claims with Schreiber, NCM "enriched" itself in a way that ultimately caused Reifler financial harm; that it prioritized "[its] own personal benefit" over alleged "protect[ion]" for itself and Reifler. (ECF No. 176-2 at 8, ¶ 207.) Reifler alleges that the Schreiber settlement "result[ed] in the [Trust Asset] portfolio taking an enormous loss," which "greatly affected" Reifler "as he put his last funds he had" into acquiring the chance to manage the Trust Assets. (*Id.* at 8.) Even accepting these allegations as true, Reifler has described nothing more than the realization of a downside risk. There is no allegation that NCM retains a benefit conferred by Reifler under circumstances giving rise to a "legal or equitable obligation to account therefor." *See Butler*, 768 S.E.2d at 336. Thus, Reifler's invocation of the doctrine of unjust enrichment is misplaced. Because the proposed count for unjust enrichment would be subject to dismissal, this Court concludes that amendment would be futile.

## B. "Economic Loss" and "Deception"

Next, Reifler proposes adding counts for "Economic Loss" and "Deception," neither of which are recognized causes of action under North Carolina law. (ECF No. 176-2 ¶¶ 209–218.) Reifler's alleged economic loss—"millions of dollars that [he] would have rightfully and legally collected had NCM . . . not entered into the settlement agreement with Schreiber"—is simply a measure of damages affiliated with his other claims. (*See id.* ¶ 210.) Likewise, in claiming that NCM "acted with a deceitful intent" in negotiating a settlement with Schreiber, Reifler appears to be stating a facet of his tortious interference or fraud claims and not, as styled in his proposed amendments, an independent claim for "Deception." (*See id.* ¶¶ 216–217.) Because neither "Economic Loss" nor "Deception" are recognized as causes of action under North Carolina law, this Court concludes that allowing amendment to include these counts would be futile.

## C. "Common Tortious Interference"

Last, Reifler proposes a new count called "Common Tortious Interference." Despite the title, Reifler appears to agree that this claim is best characterized as one for tortious interference with contract. (*See* ECF No. 183 at 5.) Under North Carolina law, a claim for tortious interference with contract has five elements: (1) a contract exists between the plaintiff and a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) without justification; (5) and the failure to perform results in actual damage to plaintiff. *See Harty v. Underhill*, 710 S.E.2d 327, 333 (N.C. Ct. App. 2011). NCM argues that Reifler has failed to allege the existence of any contract between himself personally, or on behalf of any entity, and Schreiber which would

have been impacted by NCM's settlement. (*See* ECF No. 181 at 6.) This Court agrees. Only a single, unsupported allegation in Reifler's proposed counterclaim—that NCM "intentionally interfered with Forefront and Reifler being paid what is rightfully owed by Schreiber"—comes close to describing such a contract. (ECF No. 176-2 ¶ 223.) Further, Reifler's own briefing undercuts any semblance of a personal contract between him and Schreiber. (*See* ECF No. 183 at 5 ("Reifler had a binding agreement *with Port Royal [Reassurance Company] through Forefront* [and] a verbal contract *with Forefront* to be paid back which consisted of his personal money and that of outsiders.") (emphasis added).) What appears to be alleged, instead, is a sort of trickle-down detriment: that NCM's settlement with Schreiber impacted an agreement between Schreiber and Port Royal, which impacted an agreement between Port Royal and Forefront, which impacted an alleged "verbal contract" between Forefront and Reifler.[7] At three degrees removed, however, Reifler has failed to allege the first element of a tortious interference with contract claim: a valid contract "between [himself] and [Schreiber] which confers upon [him] a contractual right against [Schreiber]." *See Harty*, 710 S.E.2d at 333.

Moreover, Reifler has not alleged in his proposed amendments that NCM *knew* of any contract between himself and Schreiber. *See id.* Reifler contends that NCM "[was] not taking into consideration monies owed to Forefront and especially Reifler" when it settled with Schreiber. (ECF No. 176-2 ¶ 222.) However, without alleging facts to support the proposition that (a) a valid contract existed between Reifler and Schreiber and (b) that NCM knew of (and

---

[7] To the extent Reifler is arguing that contracts entered into by a Forefront entity should be attributed to him personally, the Court notes that, in his answer to NCM's amended complaint, Reifler denies having the kind of control that would support attribution. (*Compare* ECF No. 97 ¶ 338 (alleging that "[Reifler and other Defendants'] actions were indistinguishable from those of the Forefront Entities") *with* ECF No. 117 ¶ 338 (denying that allegation).)

disregarded) said contract, Reifler cannot claim any "intentional interfer[ence]" by NCM. (*See id.* ¶¶ 219–224.) For these reasons, granting leave to include Reifler's proposed tortious interference with contract claim would be futile as well.

## VI.    CONCLUSION

In sum, Reifler's original counterclaim fails to state a viable claim for relief, and, therefore, NCM's motion to dismiss will be granted. Next, because Reifler's third-party claims fail to allege any derivative or secondary liability for all or part of NCM's claims against him, Lawrence and Speed's motions to dismiss will be granted as well. Finally, given that Reifler's proposed amendments to his counterclaim and third-party complaint would all be subject to dismissal, his motion to amend will be denied as futile.

For the reasons stated herein, the Court enters the following:

**[ORDER TO FOLLOW ON NEXT PAGE]**

# ORDER

IT IS THEREFORE ORDERED that NCM's motion to dismiss Reifler's counterclaim, (ECF No. 120), is GRANTED.

IT IS FURTHER ORDERED that Lawrence's motion to dismiss Reifler's third-party claims, (ECF No. 142), is GRANTED.

IT IS FURTHER ORDERED that the entry of default against Speed, (ECF No. 159), is VACATED, and his motion to dismiss Reifler's third-party claims, (ECF No. 163), is GRANTED.

IT IS FURTHER ORDERED that Reifler's motion for leave to file an amended counterclaim and third-party complaint, (ECF No. 176), is DENIED.

This, the 27th day of September 2019.

/s/ Loretta C. Biggs
United States District Judge