IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| NORTH CAROLINA MUTUAL <br> LIFE INSURANCE COMPANY, <br> a North Carolina Corporation, <br><br> Plaintiff, <br><br> v. <br><br> STAMFORD BROOK CAPITAL, LLC <br> a Delaware limited liability company, *et al.,* <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | 1:16CV1174 |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff North Carolina Mutual Life Insurance Company ("NCM") brings this action against several corporate and individual defendants for claims related to alleged mismanagement and misappropriation of trust assets. (ECF No. 97.) Eight of NCM's claims are directed at Defendant Port Royal Reassurance Company SPC, Ltd. ("Port Royal").[1] Now before the Court is Port Royal's motion to compel arbitration. (ECF No. 191.) For the reasons that follow, the motion will be granted.

**I.    BACKGROUND**

NCM's claims against Port Royal constitute only a portion of a large and protracted case; accordingly, the Court relays only those details relevant to its consideration of Port Royal's motion to compel arbitration.

---

[1] As set forth in NCM's first amended complaint, the claims against Port Royal are: fraud; federal and state RICO Act violations; unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1; civil conspiracy; breach of contract; unjust enrichment; and "accounting" under N.C. Gen. Stat. § 26C-8-813 and § 36-C-2-201. (ECF No. 97 ¶¶ 285–335, 341–64, 389–410.)

In late 2003, NCM entered into a coinsurance agreement (the "Coinsurance Agreement") with non-party Max Re Ltd. (*See* ECF No. 192-1 at 2.) Max Re was later succeeded by Markel Bermuda, Limited ("Markel"). (ECF No. 97 ¶ 17.) Pursuant to the Coinsurance Agreement, Markel agreed to cover—or "reinsure"—certain liabilities and obligations related to NCM's insurance policies. (*See id.*; ECF No. 192-1 at 2.)

In April of 2015, NCM, Markel, and Port Royal entered into a novation agreement (the "Novation Agreement"), pursuant to which Port Royal replaced Markel as reinsurer under the Coinsurance Agreement. (ECF No. 97 ¶ 18.) As part of this "novation," NCM and Port Royal also executed a "First Amendment to [the] Coinsurance Agreement" (the "Amendment"). (ECF No. 192-2.) Three features of the Amendment are particularly relevant to the instant motion: First, the Amendment includes an arbitration clause which mandates arbitration of "any dispute or claim arising out of or relating to" the parties' agreement. (*Id.* at 4.) Second, the Amendment incorporates, as an attachment, a trust agreement (the "Trust Agreement") between NCM, Port Royal, and Summit Trust Company ("Summit"). (*Id.* at 12; ECF No. 196-1.) Broadly speaking, the Trust Agreement provides for the creation of a trust account—into which NCM deposited reserve assets—with NCM named as the sole beneficiary, Port Royal designated as the grantor, and Summit acting as trustee. (*See* ECF No. 196-1 at 1.) Third, the Amendment contains a merger clause, which expressly provides that, together with "the Attachments thereto and . . . the Coinsurance Agreement, [the Amendment] constitutes the sole and entire agreement between the parties hereto with respect to the subject matter hereof." (ECF No. 192-2 at 10.)

NCM initiated this lawsuit on September 23, 2016, alleging, among other things, mismanagement and misappropriation of trust assets under the Trust Agreement. (ECF Nos.

1; 97.) Settlement negotiations between NCM and certain Defendants, including Port Royal, began shortly thereafter and resulted in a settlement agreement on March 3, 2017. (ECF No. 51 ¶ 6.) At the joint request of those parties, this Court issued an order staying litigation "through September 30, 2018 . . . or until such sooner time as [NCM] request[ed] the Court lift the stay." (ECF No. 52 at 2.) However, the settlement agreement was short lived; on June 1, 2017, NCM moved to lift the stay, (ECF No. 53), and this Court issued an order to that effect on April 24, 2018, (ECF No. 79 at 8).

After the stay was lifted, NCM filed an amended complaint on August 2, 2018. (ECF No. 97.) Port Royal answered on October 12. (ECF No. 119.) On November 2, Port Royal filed an amended answer which included, for the first time, NCM's failure to arbitrate as an affirmative defense. (ECF No. 135 at 2–3, 48.)

More than a year later, on November 21, 2019, the parties filed their joint Rule 26(f) report. (ECF No. 189.) Therein, the parties agreed that "[t]he deadline for any party to file a motion to compel arbitration shall be December 2, 2019." (*Id.* ¶ 4(c).) This Court approved that deadline, (*see* ECF No. 190), and Port Royal met it by filing its motion to compel on December 2 (*see* ECF No. 191).

## II. DISCUSSION

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, governs the rights and responsibilities of parties to an arbitration agreement. *See Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 204 (4th Cir. 2004). "The primary substantive provision of the FAA, § 2," expresses a strong policy in favor of arbitration: a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* (quoting 9 U.S.C. § 2). Accordingly, a

3

party may obtain a stay of federal court proceedings and compel arbitration by demonstrating "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [the opposing party] to arbitrate the dispute."[2] *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (quoting *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002)); *see also* 9 U.S.C. §§ 3–4.

The "presumption in favor of arbitrability" is a "heavy" one. *See Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989). As the Supreme Court and the Fourth Circuit have routinely held, "contractual provisions capable of being reasonably read to call for arbitration should be construed in favor of arbitration." *Ashford v. PricewaterhouseCoopers LLP*, ____ F.3d ____, 2020 WL 1647185, at *1 (4th Cir. Apr. 3, 2020). Nevertheless, a party may lose its right to arbitrate if it is found to be "in default in proceeding with such arbitration." *See* 9 U.S.C. § 3. Statutory default under the FAA is "akin to waiver, but not identical." *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 702 (4th Cir. 2012). That is because, "[u]nlike some waiver doctrines, 'the circumstances giving rise to a statutory default are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred.'" *See id.* (quoting *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985)). As explained further below, a party seeking to compel arbitration will not be found "in default" unless the opposing party has suffered "*actual prejudice.*" *See MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001). Two factors specifically inform this

---

[2] The parties do not dispute that elements one, three, and four are satisfied here. The only dispute is whether there is an arbitration clause reasonably applicable to NCM's claims and, if so, whether Port Royal has defaulted on its right to invoke such a clause.

4

determination: "(1) the amount of the delay; and (2) the extent of the moving party's trial-oriented activity." *See Rota-McLarty*, 700 F.3d at 702. However, neither factor alone "will suffice, without more, to establish [statutory default]." *See Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 252 (4th Cir. 1987).

Against this backdrop, NCM makes two arguments in opposition to Port Royal's motion: (1) that its specific claims against Port Royal, all of which stem from the Trust Agreement, fall outside the scope of the Amendment's arbitration clause; and (2) that, regardless, Port Royal is "in default" of any right to arbitrate.[3] (*See* ECF No. 196 at 5–16.) The Court will address each argument in turn.

## A. The Scope of the Arbitration Clause

The Fourth Circuit has "consistently held that an arbitration clause encompassing all disputes 'arising out of or relating to' a contract"—as the Amendment's does here—"embraces 'every dispute between the parties having a significant relationship to the contract regardless of the label attached to a dispute.'" *Wachovia Bank, Nat'l Ass'n v. Schmidt*, 445 F.3d 762, 767 (4th Cir. 2006) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d

---

[3] There appears to be some confusion in the briefs over the difference between "waiver" and "statutory default," as those terms are used in the arbitration context. Citing this Court's opinion in *Flores v. Gmri, Inc.*, Port Royal suggests that "[t]he 'procedural matter' of waiver by 'delay'" in this case is actually for the *arbitrators* to decide. (*See* ECF No. 198 at 2 (quoting No. 1:15-cv-1073, 2016 WL 7264845, at *4 (M.D.N.C. Dec. 15, 2016)).) By longstanding rule, "courts presume that the parties intend arbitrators, not courts, to decide disputes about . . . procedural preconditions for the use of arbitration," including "claims of 'waiver, delay, or a like defense to arbitrability.'" *BG Grp., PLC v. Republic of Arg.*, 527 U.S. 25, 34–35 (2014) (citations omitted). The variety of waiver at issue in *Flores*—pleading a "general denial" in an arbitration proceeding—fell "squarely within" that presumption. *See* 2016 WL 7264845, at *4. However, the distinct concept of statutory default is clearly within this Court's purview. *See id.* at *4 n.3; *Rota-McLarty*, 700 F.3d at 702. In the past, the Fourth Circuit has used the terms "waiver" and "default" interchangeably when discussing § 3 of the FAA. *See, e.g.*, *MicroStrategy, Inc.*, 268 F.3d at 249–50. In recent cases, however, the court has taken pains to use the term "[statutory] default" only, so as to "achieve uniformity and prevent confusion." *See Rota-McLarty*, 700 F.3d at 702 n.11 (quoting *Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc.*, 683 F.3d 577, 586 n.3 (4th Cir. 2012)).

88, 93 (4th Cir. 1996)). While acknowledging the broad sweep typically afforded to "arising out of or relating to" language, NCM nevertheless contends that its claims against Port Royal are not subject to arbitration because they "relate only to the grantor–beneficiary relationship created by the Trust Agreement—not the reinsurer–cedent[4] relationship created under the Coinsurance Agreement and Amendment." (*See* ECF No. 196 at 5–8.) The Court disagrees.

The Amendment's merger clause makes clear that, when the parties executed the Amendment, their intent was to "roll up" several separate agreements—namely, the Coinsurance Agreement, the Trust Agreement, and the Novation Agreement—into one integrated contract. (*See* ECF No. 192-2 at 10 (declaring that the Amendment and its attachments would henceforth comprise "the sole and entire agreement between the parties").) Under North Carolina law,[5] "[t]o incorporate a separate document by reference is to declare that the former document shall be taken as part of the document in which the declaration is made, as much as if it were set out at length therein." *Booker v. Everhart*, 240 S.E.2d 360, 363 (N.C. 1978). The merger clause here does just that—it declares that all prior agreements between the parties, including the Trust Agreement, shall henceforth be considered components of a single, overarching contract. Accordingly, when NCM alleges that "the powers in the Trust Agreement allowed Port Royal to carry out [a] fraudulent scheme," (*see* ECF 196 at 9), it is really alleging that Port Royal abused its powers under the parties' broader Coinsurance Agreement (as amended), of which the Trust Agreement is a part.

---

[4] A cedent is "[a]n insurer that transfers all or part of a risk it underwrites to a reinsurer, usu[ally] along with a percentage of the original premium." *Reinsured*, Black's Law Dictionary (11th ed. 2019).

[5] The Amendment provides that the parties' agreement "shall be governed by and construed in accordance with the laws of the state of North Carolina." (ECF No. 192-2 at 4.)

This Court concludes, therefore, that NCM's claims against Port Royal "aris[e] out of or relat[e] to" the amended Coinsurance Agreement. (ECF No. 192-2 at 4.) By way of the merger clause, they bear "a significant relationship" to that agreement, irrespective of the "label attached" to them. *See Wachovia*, 445 F.3d at 767; *Hunt v. Debt Assistance Network, LLC*, 1:18CV644, 2019 WL 4647008, at *4–5 (M.D.N.C. Sept. 24, 2019) (applying arbitration clause in merged agreement to claims stemming from component contract incorporated by reference). Were there any doubt, the federal presumption in favor of arbitrability would resolve it. *See Peabody Holding Co. v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 104 (4th Cir. 2012) ("[A]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). In short, the parties' agreement gives Port Royal the right to arbitrate the present dispute.

### B. Statutory Default

NCM argues that, even if its claims are covered by the parties' arbitration clause, Port Royal has nonetheless defaulted on its right to arbitrate. (ECF No. 196 at 12–16.) A party may be in statutory default of its right to arbitrate if it has "so substantially utilize[d] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing [arbitration]." *MicroStrategy, Inc.*, 268 F.3d at 249 (quoting *Maxum*, 779 F.2d at 981). However, "even in cases where the party seeking arbitration has invoked the 'litigation machinery' to some degree, 'the dispositive question is whether the party objecting to arbitration has suffered *actual prejudice*.'" *Id.* (quoting *Fraser*, 817 F.2d at 252).

As mentioned above, two primary factors guide the Court's determination as to whether a party has suffered actual prejudice in this context. *Rota-McLarty*, 700 F.3d at 702. First, the Court must consider the degree of Port Royal's delay in pursuing arbitration. *See id.* at 702–03. This case is now more than three years old. However, it would be error to "start the clock" in September of 2016 when NCM filed its initial complaint. The parties reached an (ultimately unenduring) settlement in March of 2017. This Court then stayed the litigation until April of 2018. It was later that year that NCM amended its complaint, and Port Royal notified NCM of its intent to pursue arbitration by raising it as an affirmative defense in its amended answer. In light of this procedural history, the Court agrees with Port Royal that, despite its technical age, this case has been "effectively dormant" for much of its life. (*See* ECF 198 at 8.) Any delay, therefore, should be measured in months, rather than years. No matter how the time is counted, however, NCM cannot escape the fact that, late last year, *all parties agreed* to a December 2, 2019 deadline to file motions to compel arbitration in their joint Rule 26(f) report. In this Court's view, NCM's consent to that deadline greatly undermines its claim of prejudicial delay.[6]

The second factor in the prejudice inquiry is "the nature and extent of [Port Royal's] litigation activities." *See Rota-McLarty*, 700 F.3d at 704. It is true that "[w]here a party fails to demand arbitration during the pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised." *Fraser*, 817 F.2d at 252 (quoting *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1161 (5th Cir. 1986)).

---

[6] NCM's unsupported assertion that it has "incur[red] considerable economic damages" as a result of delay is similarly unavailing. (*See* ECF No. 196 at 16.) In fact, because NCM "has provided no evidentiary support for [its] claimed 'significant expense,' this argument fails entirely" under Fourth Circuit precedent. *See Rota-McLarty*, 700 F.3d at 703 (citing *Patten*, 380 F.3d at 208).

8

However, a review of the docket reveals that Port Royal has hardly "utilized the litigation machinery" to NCM's detriment. Aside from attempting to settle the case early on, Port Royal has: (1) filed answers to NCM's initial and amended complaints (the last of which raised the issue of arbitration); (2) participated in a pretrial conference (the result of which was a Rule 26(f) report setting a deadline for pursuing arbitration); and (3) filed the instant motion to compel. Whatever inconvenience it may have suffered, NCM has simply failed to demonstrate that it has been prejudiced by Port Royal's limited litigation activity. *See Patten*, 380 F.3d at 206 ("[A] party's filing of minimal responsive pleadings, such as an answer or compulsory counter-claim, [is] not necessarily inconsistent with an intent to pursue arbitration.").

As a final, additional factor, NCM asks the Court to consider that, should it agree to stay this action as to Port Royal pending arbitration, NCM "will be required to litigate its claims against Port Royal and the other defendants, all of which stem from common facts, in separate fora simultaneously." (ECF No. 196 at 16.) Be that as it may, NCM took on that risk when it brought its claims in federal court while being party to a contractual agreement with a mandatory arbitration provision. *Cf. Patten*, 380 F.3d at 208 ("This wound was self-inflicted." (citation omitted)). Perhaps unsurprisingly, NCM cites no case in which a plaintiff was deemed to have been actually prejudiced by having to arbitrate against one defendant while proceeding in federal court against others.

In sum, NCM has failed to demonstrate actual prejudice and thereby meet its "heavy burden to prove default." *See Rota-McLarty*, 700 F.3d at 702. Because Port Royal has a right under the parties' contractual agreement to arbitrate this dispute, and NCM has not shown that Port Royal is "in default" of that right, the instant motion must be granted.

For the reasons stated herein, the Court enters the following:

# ORDER

IT IS THEREFORE ORDERED that Port Royal's Motion to Compel Arbitration, (ECF No. 191), is GRANTED. Arbitration is compelled pursuant to 9 U.S.C § 4, and this action is hereby stayed as to Port Royal only, pending the resolution of arbitration in accordance with the parties' arbitration agreement.

IT IS FURTHER ORDERED that the parties shall file a joint report of arbitration every ninety (90) days and notify the Court of any arbitration award within seven (7) days after arbitration has concluded. Failure to file such reports may result in dismissal.

This, the 10th day of April 2020.

/s/Loretta C. Biggs
United States District Judge