UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

1

2  ------------------------------------
   *In re:*                              Case No. 17-35075-cgm
3                                        Poughkeepsie, New York
        BRADLEY C. REIFLER,              December 19, 2017
4                       *Debtor.*        12:18:06 p.m. - 12:46:15 p.m.
   ------------------------------------

5

6                    - TRANSCRIPT -

7       CHAPTER 7, BRADLEY C. REIFLER, 17-35075-CGM

8     ANDREA B. MALIN AND MICHELLE L. TRIER REPRESENTING
                BRADLEY C. REIFLER (DEBTOR)
9    ANDREW D. O'TOOLE AND MARIANNE T. O'TOOLE REPRESENTING
                MARIANNE T. O'TOOLE (TRUSTEE)
10      (NO ATTORNEY) REPRESENTING UNITED STATES TRUSTEE
                     (U.S. TRUSTEE)

11

12    DOC #4 MOTION TO EXTEND AUTOMATIC STAY PURSUANT TO 11
      U.S.C. (C)(3) FILED BY MICHELLE L. TRIER ON BEHALF
13     OF LEVI WALLACE. (ATTACHMENTS: #1 PROPOSED ORDER,
           #2 AFFIDAVIT OF SERVICE & SERVICE LIST)

14  DOC #52 QCC MOTION FOR RELIEF FROM STAY MOTION FOR RELIEF
15   FROM THE AUTOMATIC STAY BY NORTH CAROLINA MUTUAL LIFE
     INSURANCE COMPANY FILED BY NORMAN N. KINEL ON BEHALF
16      OF NORTH CAROLINA MUTUAL LIFE INSURANCE COMPANY

17  DOC #113 NOTICE OF ADJOURNMENT OF HEARING RE OBJECTION BY
     STATE FARM BANK, FSB TO THE MOTION TO EXTEND AUTOMATIC
18         STAY FILED BY MICHELLE L. TRIER ON BEHALF OF
            LEVI WALLACE; HEARING HELD AND ADJOURNED TO
19           12/19/17 AT 12:00 PM; STAY FURTHER EXTENDED
             UP TO AND INCLUDING 12/20/17, SUBMIT ORDER.

20

21  DOC #114 NOTICE OF ADJOURNMENT OF HEARING RE OBJECTION BY
     FIRST AMERICAN TITLE INSURANCE COMPANY TO THE MOTION TO
22      EXTEND AUTOMATIC STAY FILED BY MICHELLE L. TRIER ON
        BEHALF OF LEVI WALLACE; HEARING HELD AND ADJOURNED TO
23     12/19/17 AT 12:00 PM; STAY FURTHER EXTENDED UP TO AND
                INCLUDING 12/20/17, SUBMIT ORDER.

24       DOC# 115 NOTICE OF ADJOURNMENT OF HEARING
                  RE CASE CONFERENCE.
25

**EXHIBIT 3**

1

CHAPTER 7, BRADLEY C. REIFLER, 17-35075-CGM

2

DOC #138 NOTICE OF ADJOURNMENT OF HEARING
RE STATUS CONFERENCE; HEARING HELD AND ADJOURNED
3
TO 12/19/17 AT 12:00 PM

4

DOC #140 NOTICE OF ADJOURNMENT OF HEARING RE OBJECTION TO
MOTION SEEKING RELIEF FROM THE AUTOMATIC STAY BY NORTH
5
CAROLINA MUTUAL LIFE INSURANCE COMPANY; HEARING HELD AND
ADJOURNED TO 12/19/2017 AT 12:00 PM

6

7

DOC #141 NOTICE OF ADJOURNMENT OF HEARING RE: AMENDED
RESPONSE TO MOTION (RE-FILING DOC #74) (RELATED DOC #52)
8
FILED BY NORMAN N. KINEL ON BEHALF OF NORTH CAROLINA
MUTUAL LIFE INSURANCE COMPANY; HEARING HELD AND
9
ADJOURNED TO 12/19/2017 AT 12:00 PM

10

DOC #142 NOTICE OF ADJOURNMENT OF HEARING RE: RESPONSE TO
OBJECTION TO MOTION SEEKING RELIEF FROM THE AUTOMATIC STAY
11
BY NORTH CAROLINA MUTUAL LIFE INSURANCE COMPANY
(RELATED DOC #67) FILED BY ANDREA B. MALIN ON BEHALF OF
12
BRADLEY C. REIFLER; HEARING HELD AND
ADJOURNED TO 12/19/17 AT 12:00 PM

13

AP: 17-09012-CGM, JPMORGAN CHASE BANK, NA VS. REIFLER

14

15

ANDREA LIKWORNIK WEISS AND WALTER E. SWEARINGEN
REPRESENTING JPMORGAN CHASE BANK, NA (PLAINTIFF);
16
ANDREA B. MALIN AND MICHELLE L. TRIER REPRESENTING
BRADLEY C. REIFLER (DEFENDANT);

17

18

DOC #17 NOTICE OF ADJOURNMENT OF HEARING
RE PRETRIAL CONFERENCE; HEARING HELD AND
ADJOURNED TO 12/19/17 AT 12:00 PM

19

20

DOC #18 NOTICE OF ADJOURNMENT OF HEARING RE LETTER
REQUESTING INFORMAL DISCOVERY CONFERENCE PURSUANT TO LOCAL
RULE 7007-1 (B) TO BE HELD OCTOBER 3, 2017 FILED BY
21
MICHELLE L. TRIER ON BEHALF OF BRADLEY C. REIFLER;
HEARING HELD AND ADJOURNED TO 12/19/17 AT 12:00 PM.

22

23

DOC #19 NOTICE OF ADJOURNMENT OF HEARING
RE STATUS CONFERENCE; HEARING HELD AND ADJOURNED
TO 12/19/17 AT 12:00 PM;
24
FINANCIAL MANAGEMENT CERTIFICATE NOT FILED.

25

1    AP: 17-09012-CGM, JPMORGAN CHASE BANK, NA VS. REIFLER

2    DOC #21 LETTER REQUESTING INFORMAL DISCOVERY CONFERENCE BE
      CONDUCTED AT THE PRETRIAL CONFERENCE PURSUANT TO LOCAL
3      RULE 7007-1(B) FILED BY ANDREA B. MALIN ON BEHALF
        OF BRADLEY C. REIFLER. (ATTACHMENTS: #1 EXHIBITS)
4
          AP: 17-09016-CGM
5    NORTH CAROLINA MUTUAL LIFE INSURANCE COMPANY VS. REIFLER

6      DOC #75 NOTICE OF ADJOURNMENT OF HEARING RE LETTER
          REQUESTING AN INFORMAL CONFERENCE PURSUANT TO
7        LOCAL RULE 7007-1(B) FILED BY MICHELLE L. TRIER
        ON BEHALF OF BRADLEY C. REIFLER; HEARING HELD
8            AND ADJOURNED TO 12/19/17 AT 12:00 PM
9
      DOC #76 NOTICE OF ADJOURNMENT OF HEARING RE LETTER TO THE
10    HONORABLE CECELIA G. MORRIS FILED BY NORMAN N. KINEL ON
      BEHALF OF NORTH CAROLINA MUTUAL LIFE INSURANCE COMPANY;
11      HEARING HELD AND ADJOURNED TO 12/19/17 AT 12:00 PM

12          DOC #77 NOTICE OF ADJOURNMENT OF HEARING
              RE STATUS CONFERENCE; HEARING HELD AND
13                ADJOURNED TO 12/19/17 AT 12:00 PM

14    DOC #80 LETTER TO THE HONORABLE CECELIA G. MORRIS FILED BY
      NORMAN N. KINEL ON BEHALF OF NORTH CAROLINA MUTUAL LIFE
15                INSURANCE COMPANY. (KINEL, NORMAN)
            FINANCIAL MANAGEMENT CERTIFICATE NOT FILED.
16
      DOC #81 NOTICE OF HEARING TO CONSIDER THE LETTER TO THE
17      HONORABLE CECELIA G. MORRIS FILED BY NORMAN N. KINEL
18    ON BEHALF OF NORTH CAROLINA MUTUAL LIFE INSURANCE COMPANY
      (RELATED DOC #80) FILED BY CLERK OF COURT, UNITED STATES
19        BANKRUPTCY COURT, SDNY WITH HEARING TO BE HELD
                    ON 12/19/17 AT 12:00 PM
20
        DOC #83 LETTER IN RESPONSE TO LETTER TO THE HONORABLE
21    CECELIA G. MORRIS FILED BY NORMAN N. KINEL ON BEHALF OF
              NORTH CAROLINA MUTUAL LIFE INSURANCE COMPANY
22          (RELATED DOC #80) FILED BY ANDREA B. MALIN ON
            BEHALF OF BRADLEY C. REIFLER. WITH HEARING
23              TO BE HELD ON 12/19/17 AT 12:00 PM

24

25

1           AP: 17-09017-CGM CYJF LLC VS. REIFLER

2
         JASON LEIBOWITZ AND JONATHAN B. NELSON REPRESENTING
3                      CYJF LLC (PLAINTIFF)
                 MICHELLE L. TRIER REPRESENTING
4                 BRADLEY C. REIFLER (DEFENDANT)
           (NO ATTORNEY) REPRESENTING BRADLEY C. REIFLER
5                        (COUNTER-CLAIMANT)
      (NO ATTORNEY) REPRESENTING CYJF LLC (COUNTER-DEFENDANT)
6
            DOC #19 NOTICE OF ADJOURNMENT OF HEARING
7            RE PRETRIAL CONFERENCE; HEARING HELD AND
                 ADJOURNED TO 12/19/17 AT 12:00 PM
8           FINANCIAL MANAGEMENT CERTIFICATE NOT FILED.
9
            DOC #20 NOTICE OF ADJOURNMENT OF HEARING
10           RE STATUS CONFERENCE; HEARING HELD AND
                 ADJOURNED TO 12/19/17 AT 12:00 PM
11
            BEFORE THE HONORABLE CECELIA G. MORRIS
12              UNITED STATES BANKRUPTCY JUDGE
13

14

15

16

17

18

19

20

21

22

23

24

25

A P P E A R A N C E S :

| | |
|---|---|
| 1 | *For Bradley C. Reifler:*      ANDREA B. MALIN, ESQ. |
| 2 |      MICHELLE L. TRIER, ESQ. |
|   |      Genova & Malin |
| 3 |      1136 Route 9, Suite 1 |
|   |      Wappingers Falls, New York 12590 |
| 4 |      (845) 298-1600; (845) 298-1265 fax |

1    *For Bradley C. Reifler:*        ANDREA B. MALIN, ESQ.
2                                     MICHELLE L. TRIER, ESQ.
                                      Genova & Malin
3                                     1136 Route 9, Suite 1
                                      Wappingers Falls, New York 12590
4                                     (845) 298-1600; (845) 298-1265 fax

5
     *Chapter 7 Trustee:*            MARIANNE T. O'TOOLE, ESQ.
6                                     O'Toole & O'Toole, PLLC
                                      22 Valley Road
7                                     Katonah, New York 10536-2106
                                      (860) 519-5805
8

9
     *For Chapter 7 Trustee:*        ANDREW DAMIAN O'TOOLE, ESQ.
10                                    O'Toole & O'Toole, PLLC
                                      22 Valley Road
11                                    Katonah, New York 10536-2106
                                      (860) 519-5805
12

13   *For JPMorgan Chase:*           GREGORY P. FEIT, ESQ.
                                      Levi Lubarsky Feigenbaum & Weiss LLP
14                                    655 Third Avenue, 27th Floor
                                      New York, New York 10017
15                                    (212) 308-6100

16
     *For the US Trustee:*           ALICIA M. LEONHARD, ESQ.
17                                    Office of The U.S. Trustee
                                      74 Chapel Street, Suite 200
18                                    Albany, New York 12207
                                      (845) 452-1696
19

20
     *For Lisette Ackerberg:*        CRAIG MATTHEW CEPLER
21                                    Yankwitt LLP
                                      140 Grand Street, Suite 501
22                                    White Plains, New York 10601-4838
                                      (914) 686-1500
23

24

25

A P P E A R A N C E S :

1  *For CYJF LLC:*              DANIEL ZINMAN, ESQ.
                               Kriss & Feuerstein LLP
2                              360 Lexington Avenue, Suite 1200
                               New York, New York 10017-6502
3                              (212) 661-2900

4

5  *For CYJF LLC:*              LISA GILLESPIE, ESQ.
                               Dorf & Nelson LLP
6                              555 Theodore Fremd Avenue, Suite A-300
                               Rye, New York 10580-1437
7                              (914) 381-7600; (914) 381-7608 fax

8

   *For North Carolina*         NORMAN N. KINEL, ESQ.
9  *Mutual Life Insurance:*     Squire Patton Boggs (US) LLP
                               30 Rockefeller Plaza
10                             New York, New York 10112-0015
                               (212) 407-0130; (212) 872-9815 fax
11

12
   *Transcriber:*               AA EXPRESS TRANSCRIPTS
13                             195 Willoughby Avenue, Suite 1514
                               Brooklyn, New York 11205
14                             (888) 456-9716; (888) 677-6131 fax
                               aaexpress@court-transcripts.net
15

16        *(Proceedings recorded by electronic sound recording)*

17

18

19

20

21

22

23

24

25

In re Bradley C. Reifler - 12/19/17                    7

1        THE COURT:  17-35075, Bradley Reifler.  17-09014,

2    JPMorgan v. Reifler.  I think we're just carrying those,

3    correct?  17-09012, JPMorgan v. Reifler.  17-09016, North

4    Carolina Mutual Life Insurance v. Reifler.  17-09017, CYJF LLC

5    v. Reifler.  I have a memo.  This I just the agenda.  And I

6    believe that's it.  Very good.  State your name and affiliation.

7        MS. O'TOOLE:  Good morning, Your Honor, Marianne

8    O'Toole, the Chapter 7 Trustee.

9        MR. O'TOOLE:  Andrew O'Toole, with the Law Firm of

10   O'Toole & O'Toole, representing the Chapter 7 Trustee.

11       MS. TRIER:  Michelle Trier from the firm of Genova &

12   Malin, on behalf of Mr. Reifler.

13       MS. MALIN:  Andrea Malin, from the firm of Genova &

14   Malin, on behalf of Mr. Reifler.

15       MR. KINEL:  Good afternoon, Your Honor, Norman Kinel,

16   of Squire Patton Boggs, on behalf of North Carolina Mutual Life

17   Insurance Company.

18       MS. GILLESPIE:  Good afternoon, Your Honor, Lisa

19   Gillespie, from Dorf & Nelson, on behalf of CYJF.

20       MR. ZINMAN:  Daniel Zinman, from Kriss & Feuerstein,

21   for CYJF LLC.

22       MR. FEIT:  Good afternoon, Your Honor, Greg Feit, from

23   Levy Levi Lubarsky Feigenbaum & Weiss, for JPMorgan Chase Bank.

24       MR. CEPLER:  Good afternoon, Your Honor, Craig Cepler,

25   from Yankwitt LLP, on behalf of Lisette Ackerberg.

In re Bradley C. Reifler - 12/19/17                          8

1      MS. LEONHARD:  Good afternoon, Your Honor, Alicia

2  Leonhard for the United States Trustee.

3      THE COURT:  Thank you.  First, I've got an agenda in

4  front of me, and we'll get to -- y'all may be seated -- the

5  motion to intervene and dismiss after we take a look at what

6  else is going on.  We've got the --

7      MS. O'TOOLE:  Your Honor, on the motion to intervene

8  or dismiss, the hearing on that was adjourned until January 19?

9      THE COURT:  I don't have a January 19 day; I've only

10  got a January 9 day.

11      MS. O'TOOLE:  January 9.

12      THE COURT:  Okay.  So, that one has been -- the motion

13  to intervene by CYJF and the motion to dismiss by CYJF has been

14  adjourned to 1/9.

15      MS. TRIER:  Correct, Your Honor.

16      THE COURT:  Okay.  So, now then we're here on case

17  conference on everything else, correct?

18      MS. O'TOOLE:  That's correct, Your Honor.  On the main

19  case, as the agenda indicates, the Court at the last hearing

20  denied the motions to lift the stay on behalf of two of the

21  parties.  Those two parties have now appealed.  As the Court

22  encouraged us to do, there has been some discussion.  I'm not

23  going to suggest it's entirely productive, but the parties have

24  had some discussions about some kind of resolution with respect

25  to the property.

In re Bradley C. Reifler - 12/19/17                          9

1          THE COURT:  Okay.

2          MS. O'TOOLE:  And I'm happy to continue that

3   discussion.

4          THE COURT:  No, I don't need to hear anymore, as long

5   as y'all discuss it.  This is a real professional group of

6   people, so I know a lot of people in another life, not just

7   here.

8          MS. O'TOOLE:  Understood.

9          THE COURT:  Go ahead.

10         MS. O'TOOLE:  So, in terms of the Trustee, I have

11  nothing further to report.

12         THE COURT:  Anyone else?  Because this is informal

13  discovery requests, anything else going on here today?  Yes,

14  sir?

15         MR. KINEL:  Good afternoon, Your Honor, Norman Kinel,

16  again from Squire Patton Boggs, on behalf of North Carolina

17  Mutual.  We're here today pursuant to a letter that we wrote to

18  Your Honor for an informal discovery conference.

19         THE COURT:  Okay.

20         MR. KINEL:  Relating to the number of discovery

21  disputes with the Debtors.

22         THE COURT:  Right.

23         MR. KINEL:  And there was a letter the Debtors

24  responded with, a newer letter, and we responded again.  But

25  just to distill it down, Your Honor, it has been like pulling

In re Bradley C. Reifler - 12/19/17                10

1  teeth, to say the least, in getting documents from the Debtor in

2  this case.  The only significant amounts of documents, even

3  though our discovery was issued in August, was produced three

4  business days ago.  And as we set forth in our letter, we had

5  received no email correspondence, or like four or five email

6  correspondences; when on the other hand there are hundreds, if

7  not thousands, that we've received from other parties where the

8  Debtor was either the recipient or the sender of the email.

9            We were taken aback to receive a letter just on

10  December 13 where Debtor's counsel advised -- and this is in my

11  last letter to Your Honor.  Debtor's counsel advised that the

12  Debtor regularly deletes his email communications in the

13  ordinary course of business.

14            THE COURT:  It's still there.

15            MR. KINEL:  Exactly.  And our proposal to Debtor's

16  counsel, even before this revelation, was that we would get a

17  third-party provider, who would take all of Mr. Reifler's

18  electronic devices, computer, cell phones, etcetera; extract the

19  data; and this would be a professional third party.  And then,

20  we would look through the data.  And that's quite a costly

21  exercise, but we offered to do it, because we're concerned about

22  spoliation of evidence.  We were concerned before we got this

23  letter, and now we're really concerned, because they've admitted

24  that Mr. Reifler continues to delete emails, and such.  So, we

25  have a serious problem.  And I think I pointed out in my letter

In re Bradley C. Reifler - 12/19/17                    11

 1  to Your Honor that this isn't only a problem for North Carolina

 2  Mutual; I think this is a problem for everyone sitting in this

 3  courtroom today if the Debtor has been routinely deleting

 4  emails.  So, that's the first and foremost issue.

 5          The second issue that we raised in our initial letter

 6  was that we've had an ongoing dispute, which I think is frankly

 7  kind of silly, about requests for admissions.  The Debtors have

 8  refused repeatedly to respond to our requests for admission that

 9  would require him to admit whether he's an insider under the

10  statutory definition, or whether he has a financial interest in

11  a whole host of entities.  And we all know that Mr. Reifler

12  created a huge web of entities, many of which have names that

13  sound almost identical.  And we think it's entirely appropriate

14  and of paramount importance that we all understand what

15  interests, what financial interests, Mr. Reifler has in these

16  various entities.

17          And the sticking point seems to be that counsel for

18  the Debtor seems to believe that only the statutory definition

19  of insider can be used in our request for admissions.  Well,

20  there's no limitation.  As long as we're asking for information

21  that might be relevant to any claim in this proceeding, we're

22  entitled to it.  So, we don't understand the basis for the

23  objection.  And in thinking about it this morning on the way

24  here, perhaps the concern is that counsel would rather divide it

25  up into the statutory part, and the rest of it.  And we'd be

In re Bradley C. Reifler - 12/19/17                    12

1    fine with them doing that if that made them more comfortable.

2    But the bottom line is, we ought to be entitled --

3              THE COURT:  But aren't you even saying to me that the

4    standard is anything relevant to evidence that would be

5    admissible is admissible?

6              MR. KINEL:  I'm sorry.  Could you repeat that?

7              THE COURT:  The standard, I think is -- the standard

8    is anything relevant to evidence that could be admissible should

9    be given.  Is that what you just said to me?  Or did I misquote

10   you?

11             MR. KINEL:  Relevant evidence is any evidence that

12   would tend to support a claim.

13             THE COURT:  To lead to admissible evidence.

14             MR. KINEL:  Yes.

15             THE COURT:  Very good.

16             MR. KINEL:  But I think here, in a chapter 7

17   proceeding, what interest Mr. Reifler has in all these entities,

18   I can't think of anything that would be much more relevant to

19   the chapter 7 trustee, to all the parties in this room.  So, I

20   think our request for admissions are extremely important, and

21   need to be addressed.

22             THE COURT:  Very good.  Ms. Malin?

23             MS. MALIN:  Yes.  First of all, just to respond to the

24   first one with the emails, our Debtor advised us that he does,

25   in the regular course of business, --

In re Bradley C. Reifler - 12/19/17                    13

1          THE COURT:  And let the --

2          MS. MALIN:  And if they need his computers and they're

3    willing to, you know --

4          THE COURT:  He said they were.  Let's get them.

5          MS. MALIN:  But this is the first time (inaudible).

6    Secondly --

7          THE COURT:  I knew it already.  It was in filed

8    papers.

9          MS. MALIN:  Secondly, Judge, as to --

10         THE COURT:  No, let's go to that.  Let's just deal

11   with that for a moment.

12         MS. MALIN:  Well, I can talk to you about some

13   things --

14         THE COURT:  No, it's not talk.  I want an order that

15   it's going to be given within a week.  So, start giving the

16   computers over, so we can get them to a third party --

17         MS. MALIN:  As long as it's limited to looking for

18   things that would be relevant to the causes of action set forth

19   in their complaint.  Because, Judge, unfortunately, he's no

20   doing the U.S. Trustee's discovery, he's not doing Marianne

21   O'Toole's discovery, and he's not doing anybody else's discovery

22   here.  He's limited on the relevance to the documents only that

23   go to specific causes of action.

24         The first cause of action, Your Honor, is a 523

25   against the Debtor, saying the Debtor defrauded his client

In re Bradley C. Reifler - 12/19/17                    14

1   because the Debtor sold his client --

2            THE COURT:  That's for admissibility at trial.

3            MS. MALIN:  What about his causes of action?

4            THE COURT:  We got discovery that becomes admissible

5   or not admissible at trial.

6            MS. MALIN:  At his trial.  His four walls of his

7   complaint are limited under the civil rules.

8            THE COURT:  Ms. Malin, he is entitled to discover

9   anything that could be relevant in finding evidence.  Anything.

10  Not limited.  It becomes limited at trial, not in discovery.

11           MR. KINEL:  And, Your Honor, if I --

12           MS. MALIN:  Actually, that's correct, Your Honor, but

13  it goes to the four walls of his complaint.

14           THE COURT:  Did you not hear what I said?

15           MS. MALIN:  Yes, but it can't be as to causes of

16  actions that he has not asserted.

17           MR. KINEL:  But, Your Honor, we made a proposal and

18  it's in email correspondence to counsel that once a third-party

19  vendor collects the data, we would agree on appropriate search

20  terms.  We're not looking for personal information.  And that's

21  the way we'd do it.  So, we'd be happy to prepare an order along

22  those lines.

23           MS. O'TOOLE:  Your Honor, for the record, it's

24  Marianne O'Toole, the Chapter Trustee.  Certainly, under Section

25  704, I would join in any attempt to preserve the records, as

In re Bradley C. Reifler - 12/19/17                    15

1   it's the trustee's duties to investigate the financial affairs

2   of the Debtor.  And the Debtor should be preserving the records.

3   There is current litigation, and there should be a litigation

4   hold, even if it is his custom and practice to delete.

5          THE COURT:  And, there can be a filed motion to quash

6   once that's out there.

7          MS. MALIN:  Judge, the second issue is, there wasn't

8   any admission based upon whether or not the Debtor is an insider

9   to his organizations, companies, entities.  We don't have a

10  problem with answering that.  The problem that we have, Judge,

11  is insider, and an admission.  It is serious, because that comes

12  with the job no matter what.  An insider of the United States

13  Bankruptcy Court has a very specific definition.  Their

14  definition of an insider goes so beyond that that I'm an insider

15  in those corporations.  I need it to be limited to what he'd be

16  entitled to under the Code, which is the definition of insider.

17         THE COURT:  Motion to quash if you can't work it out.

18         MS. MALIN:  Well, I'll make the motion, that's why

19  we're here?  I'll make a motion.

20         THE COURT:  Well, you've got to make the motion,

21  but --

22         MS. MALIN:  But I couldn't do it without the informal

23  conference.

24         THE COURT:  Well, the informal conference is going to

25  let do it.  If it's overbroad or whatever, we'll hammer it out.

In re Bradley C. Reifler - 12/19/17                    16

1          MR. KINEL: And I made a proposal that I hope counsel

2    will consider that might solve her problem.

3          THE COURT:  I agree.  I hate to play it this way, but

4    it looks like I'm going to have to play it this way.

5          MR. KINEL:  Your Honor, from my end, I just have one

6    other request.  When we were here last in November, I discussed

7    with the trustee obtaining documents that the trustee has

8    obtained through her investigation, and I don't know why, but,

9    unfortunately, those documents haven't found their way to us.

10   And I would appreciate if -- Your Honor has asked people to

11   cooperate and I don't understand why.  And I wrote to Mr.

12   O'Toole twice in the last two weeks, asking for the documents,

13   and I haven't received a response.

14         THE COURT:  Is there a reason why they're not given?

15         MS. O'TOOLE:  Your Honor, I'm happy to address that.

16   And what I would say to the Court is, I believe in cooperation.

17   I certainly do.  What I will tell you is, on October 27, 2017,

18   we received a letter to produce all documents in the trustee's

19   custody, possession and control relating to the Debtor, which

20   are not otherwise publicly available.

21         MS. O'TOOLE:  Then perhaps, more importantly, --

22         THE COURT:  That's a little broad.

23         MR. KINEL:  It was.  And we corrected it.

24         MS. O'TOOLE:  If you'll just give me the opportunity

25   to finish my presentation?

In re Bradley C. Reifler - 12/19/17                    17

1          THE COURT:  Okay.  Sorry.

2          MS. O'TOOLE:  I don't mean that to the Court, I meant

3    it to counsel, Your Honor.  Forgive me.  So, then on October 31,

4    we received a letter from Squire Patton & Boggs, indicating,

5    notwithstanding the fact that the lift-stay had not been granted

6    by this Court and there's currently pending in North Carolina,

7    as the Court may recall, an action with respect to proceeding

8    against "insiders", Mr. Kinel sent me a letter indicating "To

9    date, the trustee has made no public disclosures, nevertheless,

10   we believe that North Carolina Mutual is fully entitled to

11   enforce the final judgment against Forefront Partners, and that

12   doing so, in no way implicates any assets of the Debtor's

13   bankruptcy estate, or the automatic stay."  So, this brings us

14   back to when --

15         THE COURT:  That belongs to me.  That doesn't belong

16   to North Carolina.  That belongs to this Court.

17         MR. KINEL:  I don't understand how that relates --

18         THE COURT:  I want to be clear --

19         MR. KINEL:  -- to the issue at hand.

20         MS. O'TOOLE:  Well, so the issue --

21         THE COURT:  Well, it's your letter she's quoting.

22         MS. O'TOOLE:  The issue --

23         MR. KINEL:  But that doesn't have to do with

24   documents.

25         THE COURT:  That's for me to decide.

In re Bradley C. Reifler - 12/19/17                    18

1          MS. O'TOOLE:  Your Honor, the issue is, counsel would

2    like to have everything in my files, --

3          THE COURT:  He can't do that.

4          MS. O'TOOLE:  -- but he'd like to proceed on his

5    judgment --

6          THE COURT:  No, no, no, no, no.

7          MS. O'TOOLE:  -- and there's insider issues.  And I'm

8    not going to open my drawers.

9          THE COURT:  We stopped that.

10         MR. KINEL:  Your Honor, we're conflating issues here.

11   Let me try to clear this up.

12         THE COURT:  No, you're conflating issues.

13         MR. KINEL:  The letter that Ms. O'Toole refers to, we

14   actually met and conferred in the hallway of this courtroom to

15   narrow that.  And what was agreed to was that they would send me

16   a list --

17         THE COURT:  I want you to give her the request in

18   detail.  Don't do it that way, you do it the other way.

19         MR. KINEL:  Your Honor, I apologize, but I have to

20   finish what I was saying.

21         THE COURT:  Okay.

22         MR. KINEL:  Ms. O'Toole was kind enough to send me a

23   list of the documents that she had.

24         THE COURT:  Oh, that was kind of her.

25         MS. O'TOOLE:  And documents.

In re Bradley C. Reifler - 12/19/17                    19

1          MR. KINEL:  And we went through the list and said we

2     would appreciate you sending the following.  So --

3          THE COURT:  And she sent them.

4          MR. KINEL:  No, she didn't.

5          MS. O'TOOLE:  Your Honor, I sent certain documents.

6     It was followed up by further requests.  Some of those requests

7     are directly applicable to an adversary proceeding.  So, there's

8     the first argument, which I have which is, I'm not going to open

9     my entire investigation to counsel, who's trying to beat us to

10    the finish line on assets.  The second part of the argument is,

11    there is an adversary proceeding by North Carolina against the

12    Debtor, and what Mr. Kinel is seeking from me, as the trustee,

13    are certain bank records from First Republic Bank and others

14    from Citibank.  He is involved in litigation with Debtor

15    directly, and he should obtain those directly from the Debtor.

16    He's also shown an incredible propensity to issue subpoenas.

17    So, I don't know why he's attempting to have me reproduce

18    documents.  In any event --

19         MR. KINEL:  We could subpoena the trustee.

20         THE COURT:  She's talking.

21         MS. O'TOOLE:  -- that's questionable.

22         THE COURT:  That is questionable.  And it's going to

23    come to me if you do it.

24         MS. O'TOOLE:  My point is, Your Honor, I am a strong

25    believer in open court.  I'm a strong believer in cooperation.

In re Bradley C. Reifler - 12/19/17                    20

1    But there's a little bit of disingenuous conduct going on.

2            THE COURT:  And I'm a strong believer in being

3    specific.  Quit being broad, and set the subpoena pen down until

4    we get some of this straightened out here.  I have not allowed

5    the lift-stay motion.

6            MR. KINEL:  This has nothing to do with the lift-stay

7    motion, Your Honor.

8            THE COURT:  Yes, it has.

9            MR. KINEL:  All I --

10           THE COURT:  It has.  You're trying to go after other

11   people by going through the back door.  You're not going to do

12   it in this Court.  Am I clear?

13           MR. KINEL:  All I --

14           THE COURT:  Am I clear?

15           MR. KINEL:  Absolutely.

16           THE COURT:  You can argue all you want to, but am I

17   clear?

18           MR. KINEL:  Absolutely.

19           THE COURT:  Very good.

20           MR. KINEL:  All I would like, Your Honor, is that --

21           THE COURT:  Don't threaten her with subpoenas and

22   judgment collections.

23           MR. KINEL:  If the --

24           THE COURT:  Don't threaten the trustee with subpoenas

25   and judgment collections.  Did you hear me?

In re Bradley C. Reifler - 12/19/17                    21

1          MR. KINEL:  Certainly.

2          THE COURT:  Good.  Now, then, you asked specifically

3     for some things and if you need me to, I'll decide line by line.

4     If you want to spend all your money doing it this way, I'm more

5     than willing to play that game.

6          MR. KINEL:  Your Honor, I just have one simple request

7     and we can resolve all this.  I just would appreciate if the

8     trustee and her counsel would communicate with me.  Because I've

9     had three unanswered emails on this issue and I think we can

10    resolve it.

11         THE COURT:  Pick up the phone.  Pick up the phone and

12    get off of the iPad.

13         MR. KINEL:  That's fine.  Thank you, Your Honor.

14         THE COURT:  Mr. Zinman, you had something you needed

15    to ask me?

16         MR. ZINMAN:  Yes.  Sorry to jump backwards, but things

17    went faster than I could jump in.

18         THE COURT:  I know.  Exactly.

19         MR. ZINMAN:  With respect to the computers and the

20    deleted emails, it strikes me there is a lot of overlapping

21    litigation.  And so, I would just ask that whatever order gets

22    entered that there's a present order --

23         THE COURT:  How about filing an open motion to me

24    instead of saying it in open court?

25         MR. ZINMAN:  Very well.  Thank you, Your Honor.

In re Bradley C. Reifler - 12/19/17                     22

1          THE COURT:  I mean, let's all make sure we have a good

2     record, because obviously, this is going up.  So, just make sure

3     everybody papers everything.

4          MS. MALIN:  The informal discovery request that we

5     made with regard to JPMorgan Chase, we got a chance to speak and

6     we've gotten letters back and forth to basically solidify what

7     we've agreed to.  There is discovery outstanding, so we're going

8     to extend our scheduling order.  They're going to prepare it and

9     send it to me.  So, I think that we're pretty much okay with the

10    issues that we had there at this time.

11         THE COURT:  Okay.

12         MS. MALIN:  And that we'll resolve those rather

13    quickly.

14         THE COURT:  All right.  Yes, sir?

15         MR. FEIT:  Thank you, Your Honor.  I don't think it

16    made it onto the agenda because we filed out letter request, our

17    request for an informal conference a few hours after the agenda

18    was e-filed.  But Chase does have a request to raise certain

19    discovery disputes with regard to Reifler's document production.

20    If Your Honor I willing to entertain them now, I'll speak to

21    that.

22         THE COURT:  Yes, let me hear them.

23         MR. FEIT:  Okay.  There are two things.  Chase issued

24    document requests to Reifler.  Reifler objected to multiple

25    demands on two theories.  One saying that documents antedating

In re Bradley C. Reifler - 12/19/17                    23

1   the one-year period prior to the filing are outside of the

2   scope.  As we quoted in our letter, there's case law saying that

3   there is no time restraint on the evidence that may be

4   considered.  So, we would either ask Your Honor to order Reifler

5   to withdraw his objection or grant us permission to file a

6   motion to compel with regard to that basis.

7           The second issue that we have, we asked Reifler to

8   produce documents pertaining to any payments he made to his

9   counsel, or that were made on behalf to his counsel.  Counsel

10  has objected.  She stated during our meet and confer that she

11  has no idea how she's getting paid.  She just gets a wire.  We

12  think these documents are relevant to any continuing concealment

13  or any pattern of concealment.  Also, for example, if his mother

14  is paying these fees, that goes to issues pertaining to the

15  mother, and any fraudulent transfer.  So, again, we would ask

16  Your Honor to either order Reifler to withdraw that objection

17  and produce the documents, or allow Chase to proceed with a

18  motion to compel.  Thank you.

19          THE COURT:  Very good.  Response?

20          MS. MALIN:  Sure.  I'm very sick today.  So, I have to

21  apologize.  I'm not as quick as usual.  As to the first issue,

22  they have asserted in their complaint that the Debtor made

23  fraudulent transfers within one year, prior to the filing of the

24  petition, by a particular entity, Kalcoff Inc. Trust.  I have

25  shared our submissions with them.  That's the complaint though.

In re Bradley C. Reifler - 12/19/17                    24

1  You should grant his discharge for transfers made within one

2  year prior to.  So, they go back to 2012 asking for documents

3  first that have already been produced in a very highly litigated

4  district court action, and secondly, that go beyond what their

5  complaint states, Judge.  It's one year transfers.

6          Basically, what happened in 2012, is Kalcoff was

7  created.  That was a transfer.  There's no continuing transfer.

8  The question is, did Kalcoff have assets to which the Debtor was

9  entitled within one of the filing that he transferred.  It

10 cannot go to 2012.  They just dig and dig and dig.

11         THE COURT:  Okay.  I just can tell you right now, I

12 can't necessarily rule on anything where the objection is really

13 not in front of me.  She might have written you that letter --

14         MR. FEIT:  The objections are in Exhibit B to our --

15         THE COURT:  I know, but they're an exhibit, they're

16 not an actual objection.  They're what she says to you.  So, why

17 don't you file a memo with me?  And why do you need more than a

18 year?  Just answer that for me.

19         MR. FEIT:  Your Honor, I'll quote some case law.  An

20 improper --

21         THE COURT:  No, no.  It's not case law.  I want to

22 know why you need it.

23         MR. FEIT:  Okay.  Because in the --

24         THE COURT:  What we're talking about this real case,

25 so I just want to know why you need it.

In re Bradley C. Reifler - 12/19/17                    25

1       MR. FEIT:  As we've set forth in our complaint in the

2   adversary proceeding, there is a history, a pattern, a

3   continuing pattern, and an improper intent within the one-year

4   period can be established through prior years.

5       THE COURT:  Okay.

6       MR. FEIT:  And it's not just as to Kalcoff, just to

7   set the record --

8       THE COURT:  I hear you.  I hear you.  And I think he

9   might have just made his case.  I think I can now rule and say I

10  am compelling you -- no, wait.  You do a motion to me.  I'm

11  going to allow you to file a motion on that, and then I'll let

12  you file an objection to it.

13      MR. FEIT:  A motion to compel, correct?

14      THE COURT:  Yes.

15      MR. FEIT:  Thank you.

16      MS. MALIN:  I would only ask that first -- I mean, he

17  hit me between the eyes at this time with his informal request

18  that wasn't --

19      THE COURT:  It's coming.  It's coming.  It's coming

20  formal.  We just did it right then.  You're going to do it

21  formally.

22      MS. MALIN:  It's not due process, Judge.

23      THE COURT:  He's doing it right now.  He's filing --

24      MS. MALIN:  No.  He's making a memo to compel.  That's

25  not the way it should work, Judge.  He has to put this informal

In re Bradley C. Reifler - 12/19/17                    26

1  discovery request on the docket, so I have an opportunity to

2  respond to it, and then it has to be set down.  It just can't be

3  done like this.  This is really, really a highly litigated and

4  complicated case.  We have the right to due process.

5          Now, if he files a motion to compel, he has a right to

6  get fees from my client for no basis.  I haven't even had a

7  chance, under the 14th Amendment, to take a look at this thing.

8  Well, come on, Judge.  We need to have this informal request

9  made as the rules require.  The rules require it for a specific

10 reason and purpose.  Then I'll respond to it.  If I saw his case

11 law, maybe he's right.  Maybe we can then come to an agreement.

12         THE COURT:  Due process is not appropriate right now,

13 Ms. Malin.

14         MS. MALIN:  When is it appropriate?

15         THE COURT:  So, the 14th Amendment is not in front of

16 us.

17         MS. MALIN:  When is due process appropriate?

18         THE COURT:  Now, then did you file your informal

19 letter with her asking for this discovery?  Was there an

20 informal --

21         MR. FEIT:  We had a meet and confer regarding it, and

22 we filed our letter ECF Number 22, December 15.

23         THE COURT:  Okay.

24         MR. FEIT:  That was Friday.

25         THE COURT:  Okay.  So, we're really --

In re Bradley C. Reifler - 12/19/17                27

1          MR. FEIT:  So, you've had ample notice.

2          THE COURT:  Hey, hey, hey.  There's one person with a

3   black robe in this room, and that means you talk to me only.

4          MS. MALIN:  The Court's supposed to set it down for a

5   hearing and that wasn't done on the docket.  And that's a

6   requirement, Judge.  And I didn't have a chance --

7          THE COURT:  I allowed him to speak.  You don't have to

8   get upset or raise your voice.

9          MS. MALIN:  I'm not.  You know what it is, my throat

10  is so sore.

11         THE COURT:  Well, fine.

12         MS. MALIN:  The raising of the voice is not --

13         THE COURT:  That's the way life is.  Now, then, hold

14  on.  So, what we've got here though is, you filed it, and it is

15  a short period of time.  And I heard it.  It was me that heard

16  it.  It is now on notice, and I will give you time to respond.

17  You'll come back and see me on January, the 9th if it's not to

18  your liking.

19         MR. FEIT:  Sure.

20         THE COURT:  Perfect.  Now, then there's a second part

21  of this.

22         MR. FEIT:  Just for clarification, January 9, in lieu

23  of a motion to compel if we don't like it?

24         THE COURT:  No, not a motion to compel.  You come back

25  and see me on January, the 9th.

In re Bradley C. Reifler - 12/19/17                    28

1        MR. FEIT:  Okay.

2        THE COURT:  And we'll decide on that.  We'll see.  I'm

3   about ready to --

4        MS. MALIN:  Judge, you saw the documents had been

5   produced, Judge.  My office has --

6        THE COURT:  Ms. Malin?

7        MS. MALIN:  We have spent every day on this.

8        THE COURT:  I don't care if you've got four office

9   fills; if there's another four thousand office fills, they need

10  them.

11       MS. MALIN:  That's fine, Judge.

12       THE COURT:  Okay.  Now, then, the second one was the

13  source of the funds, if remember correctly.

14       MS. MALIN:  From my fees.

15       MR. FEIT:  Correct.  We'd like documents

16  demonstrating --

17       THE COURT:  You're going to have to give me some case

18  law on that because vaguely, since I'm not totally prepared for

19  it, vaguely, that could be somewhere near attorney-client

20  privilege.  Maybe.  I don't know that for sure.

21       MS. MALIN:  I did do some research, Judge, and there

22  is a decision that say in certain circumstances that it does

23  breach.

24       THE COURT:  So, you've got to give me some case law.

25       MR. FEIT:  Yes.

In re Bradley C. Reifler - 12/19/17                          29

1    THE COURT:  So, do the same thing.  Make your informal

2    discovery letter.  Do the whole thing.  Cite the law to her.

3    Let her respond, and the y'all will come back to me on January,

4    the 9th.

5         This really isn't appropriate for a Tuesday.  If you

6    turn around, there are a lot of people in this room.  So, we're

7    going to have to change our dates for this to go on.  I'll tell

8    you what, January, the 23rd, at noon.  That's my loss mitigation

9    day; that then can go on afterwards.  And I don't feel compelled

10   to hurry-up because of everybody else in the room.

11        MS. MALIN:  January 23 at 12:00?

12        THE COURT:  That makes it simpler for me, and also

13   lets me take a deep breath.  Because like said, there are a lot

14   of people here.  Yes, sir, Mr. Zinman?

15        MR. ZINMAN:  Just to clarify, does that also include

16   the adjournment for the motion to intervene and dismiss?

17        THE COURT:  Yes, please.  Everything gets adjourned

18   till then.

19        MR. ZINMAN:  All status conferences.

20        THE COURT:  All status conferences, all everything.

21   Mr. and Ms. O'Toole, anything on that?

22        MS. O'TOOLE:  No, Your Honor.  That's fine.

23        MR. O'TOOLE:  No, Your Honor.  Thank you.

24        THE COURT:  Yeah, when I realize how intense I get

25   when I know people are waiting, it's like that's not fair to

In re Bradley C. Reifler - 12/19/17                              30

1  y'all.  I need to be where I can take a deep breath and

2  concentrate too.  So, we'll move it to the 23rd.  Have a happy

3  holiday.  Be safe.  Quit eating the chocolate, and start eating

4  the blueberries.

5          ALL COUNSEL:  Thank you, Your Honor.

6          THE COURT:  Take care.

7                         - oOo -

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

31

1                              CERTIFICATION

2

3          I, Rochelle V. Grant, certify that the foregoing is a

4    correct transcript from the official electronic sound recording

5    of the proceedings in the above-entitled matter.

6    Dated:   December 22, 2017

7

8    _____

9                          Signature of Approved Transcriber

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25