IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NORTH CAROLINA MUTUAL LIFE )
INSURANCE COMPANY, )
 )
        Plaintiff, )
v. ) 1:16CV1174
 )
STAMFORD BROOK CAPITAL, LLC, et al., )
 )
        Defendants. )

ORDER

This matter is before the Court on two Motions: Plaintiff North Carolina Mutual Life Insurance Company's Motion for Sanctions against Defendant Bradley Reifler [Doc. #248] related to Defendant Reifler's destruction of evidence in a related bankruptcy proceeding, and Plaintiff's Motion for Sanctions against Defendant Reifler [Doc. #251] based on his failure to comply with this Court's Order dated November 16, 2020.

Plaintiff NC Mutual brought this action seeking damages for breach of contract, breach of fiduciary duty, and various other claims all related to Defendants' alleged misappropriation of funds entrusted to them by the Plaintiff. Following an extended stay and the resolution of a related bankruptcy proceeding, discovery commenced in this action, and Plaintiff served an initial set of Interrogatories and Requests for Production on Defendant Reifler in February of 2020. In an Order dated November 16, 2020, the Court granted Plaintiff's Motion to Compel and ordered Defendant Reifler to respond to Interrogatory 1 and Requests for Production 6, 8, 9, and 16-32, to identify the data sources and data locations on the servers of the Forefront

Entities, and to provide passwords to the Quickbooks files. Discovery closed in February 2021, trial was set to commence in October 2021, and the present Motions for Sanctions were filed as pre-trial motions in July 2021. However, the case was stayed again while a parallel criminal case proceeded against Defendant Reifler (1:20CR512). Defendant Reifler subsequently pled guilty and was convicted of wire fraud and was sentenced to 60 months imprisonment and restitution of $20,322,220 owed to the Plaintiff in this case, NC Mutual life Insurance Company. The stay in this case was then lifted and the 2021 Motions for Sanctions were referred to the undersigned for consideration.

In the first Motion for Sanctions, Plaintiff seeks judgment in its favor for over $21 million plus attorney's fees and costs, as sanctions against Defendant Reifler for "intentionally destroying relevant evidence with intent to deprive NC Mutual of its use in this litigation." (Pl.'s Mot. [Doc. #248] at 1.) Plaintiff alternatively asks for sanctions striking Defendant Reifler's defenses and/or instructing the jury that it must presume the information Reifler destroyed was unfavorable to Reifler. Plaintiff specifically points to Defendant Reifler's actions in the Adversary Proceeding in the Bankruptcy Court of the Southern District of New York.

Rule 37(e) addresses the destruction of, or failure to preserve, electronically stored information that should have been preserved in the anticipation or conduct of litigation.

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> . . .
> (2) Only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>     A. Presume that the lost information was unfavorable to the party

2

   B. Instruct the jury that it may or must presume the information was unfavorable to the party; or
   C. Dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). A request for a spoliation sanction pursuant to Rule 37(e) must satisfy the following four initial requirements: (1) ESI should have been preserved; (2) ESI was lost; (3) the loss was due to a party's failure to take reasonable steps to preserve the ESI; and (4) the ESI cannot be restored or replaced through additional discovery. Packrite, LLC v. Graphic Packaging Int'l, LLC, No. 1:17CV1019, 2020 WL 7133806, at *3 (M.D.N.C. Dec. 4, 2020). If those four requirements are met, the Court then further considers under Rule 37(e)(2) whether the party "acted with the intent to deprive another party of the information's use in the litigation."

  Here, the evidence from the Adversary Proceeding would support a finding that Defendant Reifler deliberately destroyed evidence from his phone and two computers, and acted with intent to deprive Plaintiff of the electronically stored information. The evidence reflects that the present case was pending and had been stayed pending the bankruptcy proceeding, and therefore Defendant Reifler had a duty to preserve relevant evidence. The evidence further reflects that the day after learning that he would have to turn his phone and computers over for forensic examination in the Adversary Proceeding, Defendant Reifler began researching ways to permanently delete his emails and texts, and then an hour after entry of the ESI Order in the Adversary Proceeding, Defendant Reifler deleted or attempted to delete relevant email folders, including an email folder titled "North Carolina Mutual." The evidence further reflects that on the date by which he was required to turn over his devices, he conducted additional searches regarding how to permanently delete the files and prevent

3

data recovery, and he downloaded a deletion program called Eraser and then installed Eraser on his computer. Defendant Reifler concedes that he attempted to delete emails from his devices and installed Eraser software shortly before the deadline when he was required to turn over his devices as part of the discovery in the Adversary Proceeding, but he contends that he only wanted to delete personal emails. However, the expert report from Plaintiff's expert states that event logs on Defendant Reifler's computer reflect that he moved the folder "North Carolina Mutual" to the deleted items folder and then emptied the deleted items folder to permanently delete the contents. (Pl.'s Expert Report [Doc. #249-7] at 15.) Forensic logs also demonstrate that Defendant Reifler deleted or attempted to delete the following email folders: Water Joel emails, Joel, North Carolina Mutual, Summit Trust George and K. (Pl.'s Expert Report at 15-16.) The forensic report reflects that Defendant Reifler deleted at least 2,545 emails, including multiple attachments containing emails directly related to the claims at issue here. (Pl.'s Expert Report at 16-17.) Some of the emails were recovered, but many were partially overwritten or were unrecoverable, which is consistent with the use of the Eraser software. (Pl.'s Expert Report at 17.) The recovered records also reflect that Defendant Reifler moved hundreds of documents from the "Documents" and "Downloads" folders to the computer's recycle bin, including documents directly relevant to the claims at issue in this case. Finally, the records from the forensic examination reflect that Eraser was installed and was opened and running for the 7 days prior to the devices being turned over for the forensic examination in the Adversary Proceeding.

 Entry of a default judgment is an extreme sanction that would need to be further considered in light of the nature of the claims, the information still available to support

4

Plaintiff's claims, and the evidence regarding the extent of Defendant Reifler's destruction of documents, as well as any updated information following the stay. Nevertheless, even if entry of a default judgment is not warranted, it is likely that a jury instruction would be appropriate under Rule 37(e)(2)(B).

> An adverse inference instruction is warranted here because Defendants have provided sufficient evidence that additional communications between Plaintiff and her witnesses likely existed, were not produced, and were relevant. See DMAC LLC v. City of Peekskill, No. 09-cv-5093, 2012 WL 4459290, at *4 (S.D.N.Y. 2012) (granting defendant's motion for sanctions based upon spoliation of evidence because it found that the moving party "proffered sufficient evidence from which a reasonable factfinder could infer that additional relevant e-mails-favorable to plaintiffs-existed but were not produced" and awarding an adverse inference instruction stating that the destroyed "e-mails would have been favorable to [the non-spoliating party's] case"). When, as here, a spoliating party has acted willfully or in bad faith, a jury can be instructed that "certain facts are deemed admitted and must be accepted as true." Pension Comm., 685 F.Supp.2d at 470 (citations omitted); see also Sawabeh Info. Servs. Co. v. Brody, No. 11-cv-4164, 2014 WL 46479, at *3 (S.D.N.Y. 2014), aff'd & rev'd in part on other grounds, 598 Fed.Appx. 794 (2d Cir. 2015) (describing previous order granting motion for an adverse inference because plaintiffs had been "at least grossly negligent in the preservation and production of [ESI]."). Such an instruction can be "critical to assisting the innocent party in establishing the nature of the evidence that has gone missing." Id. An adverse inference instruction "is imposed to ameliorate any prejudice to the innocent party by filling the evidentiary gap created by the party that destroyed evidence." Orbit One Commc'ns, Inc. v. Numerex Corp., 271 F.R.D. 429, 438 n.12 (S.D.N.Y. 2010).

Ottoson v. SMBC Leasing and Finance, Inc., 268 F. Supp. 3d 570, 584 (S.D.N.Y. 2017). However, the specific nature and scope of the instruction would be a matter for trial, to consider in light of the claims and the evidence presented. Therefore, the Court can consider at trial what jury instruction under Rule 37(e)(2)(B) would be appropriate in light of Defendant Reifler's conduct in the Adversary Proceeding, and can also consider further whether entry of judgment would be appropriate in the full context of the case, with the benefit of expert

5

testimony regarding the scope of the deletions and other updated information in light of the available evidence and the conclusion of the criminal proceedings against Defendant Reifler. As such, Plaintiff may raise its Rule 37(e)(2) request again for consideration at trial. The Court will set a schedule for briefing motions in limine and final pre-trial motions, including the request for sanctions and any requests related to the effect of Defendant Reifler's guilty plea in the criminal proceeding.

As to the second Motion for Sanctions, in that Motion Plaintiff requests sanctions under Rule 37(b)(2) for entry of a default judgment based on Defendant Reifler's failure to identify the data sources and locations on the servers and failure to provide passwords to the Quickbook files used to manage the Forefront Entities' financial information.

Federal Rule of Civil Procedure 37(b)(2) provides that "[i]f a party . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders." Appropriate sanctions for violation of a discovery order may include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order . . . .

Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii). The Fourth Circuit has adopted the following four-factor test to guide district courts as they weigh the appropriate Rule 37(b) sanctions in pending matters: "(1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary. . .; (3) the need for deterrence of the particular sort

6

Case 1:16-cv-01174-LCB-JEP   Document 275   Filed 03/13/24   Page 6 of 9

of noncompliance; and (4) the effectiveness of less drastic sanctions." Mut. Fed. Sav. and Loan Ass'n v. Richards & Assoc., Inc., 872 F.2d 88, 92 (4th Cir. 1989). "Dismissal of an action or the striking of a claim is an extreme sanction reserved for circumstances of bad faith and callous disregard of the federal rules." United States v. Three Tracts of Real Prop. in East Bend Twp., Yadkin Cnty., N.C., No. 1:04-CV-987, 2007 WL 433381, at *1 (M.D.N.C. Feb. 5, 2007).

> Such an evaluation will insure that only the most flagrant case, where the party's noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules, will result in the extreme sanction of dismissal or judgment by default. In such cases, not only does the noncomplying party jeopardize his or her adversary's case by such indifference, but to ignore such bold challenges to the district court's power would encourage other litigants to flirt with similar misconduct.

Mut. Fed. Sav. and Loan Ass'n, 872 F.2d at 92 (internal citations omitted). Thus, when the most severe sanctions are contemplated, "the district court's range of discretion is more narrow because the district court's desire to enforce discovery is confronted head-on by the party's rights to a trial by jury and a fair day in court." Id.

Here, as noted above, Plaintiff requests sanctions under Rule 37(b)(2) for default judgment based on Defendant Reifler's failure to identify the data sources and locations on the servers and failure to provide passwords to the Quickbooks files. However, Defendant Reifler contends that all of the servers were taken from Forefront's offices by the Department of Justice and that he does not have access to them to provide the data sources and locations. As to the passwords, he states that he does not know and has never known the Quickbooks password.

7

In the circumstances, the Court concludes that it would not be appropriate to recommend entry of default judgment against Defendant Reifler for failing to provide information that he contends that he does not have. To the extent there may be credibility issues, those would be for trial. The Court does note that it would be appropriate to prohibit Defendant Reifler from supporting his defenses or opposing Plaintiff's claims with any documents that have not been provided in discovery. In addition, the Court can consider at trial whether to direct certain matters or facts be taken as established, as noted above with respect to the first Motion for Sanctions. However, the Court will not recommend entry of default judgment at this point, given the option of less drastic sanctions, the need for credibility determinations and additional information regarding the information that Defendant Reifler has that he has not provided in order to determine bad faith and need for deterrence, and the need for potentially updated information following the stay and the criminal proceeding.

In light of the December 2024 trial setting and the issues raised here and in the briefing on the lifting of the stay [Doc. #263], the Court will set pre-trial deadlines to address these matters and any other final pre-trial matters. These deadlines will replace the deadlines previously set in the Notice [Doc. #273]. The deadline for final pretrial disclosures will be September 3, 2024. The deadline for proposed jury instructions and for all final pre-trial motions and objections to pre-trial disclosures will be September 24, 2024. This includes motions in limine and well as Plaintiff's updated Motion for Sanctions requesting specific jury instructions or entry of judgment based on Defendant Reifler's spoliation of evidence under Rule 37(e) and any other matters addressed in this Order, any motion regarding the effect of Defendant Reifler's guilty plea and admissions in the criminal proceeding, and any other final

8

pre-trial issues to address and streamline the matters for trial. Responses will be due October 15, 2024, and replies will be due October 29, 2024. Trial briefs should be filed by November 12, 2024. The case remains set for trial on December 2, 2024.

IT IS THEREFORE ORDERED that the Motions for Sanctions [Doc. #248, #251] are DENIED to the extent they seek entry of default judgment at this time, but GRANTED IN PART to the extent that the Court can consider a proposed jury instruction under Rule 37(e)(2) and other appropriate sanctions as part of the trial in this case, and those matters should be presented as part of the final pretrial motions.

IT IS FURTHER ORDERED that the Court will set the following schedule for pre-trial motions and filings: the deadline for final pretrial disclosures is September 3, 2024; the deadline for proposed jury instructions and for all final pre-trial motions and objections to pre-trial disclosures is September 24, 2024, including motions in limine and well as Plaintiff's updated Motion for Sanctions requesting specific jury instructions or entry of judgment based on Defendant Reifler's spoliation of evidence under Rule 37(e) and any other matters addressed in this Order, any motion regarding the effect of Defendant Reifler's guilty plea and admissions in the criminal proceeding, and any other final pre-trial issues to address and streamline the matters for trial; responses are due October 15, 2024; replies are due October 29, 2024; and trial briefs must be filed by November 12, 2024. The case remains set for trial on December 2, 2024.

This, the 13th day of March, 2024.

/s/ Joi Elizabeth Peake
United States Magistrate Judge